Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington  98106-1271
Phone:      206-623-4990
Facsimile: 206-467-4828
Email:  moberg@legros.com
Email:  dpark@legros.com
Attorneys for Movant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD,<br><br>Plaintiff,<br><br>v.<br><br>Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*,<br><br>Defendants. | Case No. 3:19-cv-1671<br><br>IN ADMIRALTY<br><br>EMERGENCY MOTION TO VACATE ARREST AND FOR ATTORNEYS' FEES, COSTS, AND EXPENSES FOR WRONGFUL ARREST; AND REQUEST FOR EXPEDITED HEARING PURSUANT TO ADMIRALTY RULE E(4)(f) AND LOCAL RULE 1017-1<br><br>**EXPEDITED HEARING REQUESTED** |

## I. EMERGENCY MOTION

Movant Amis Integrity, S.A., by restricted appearance under Rule E(8),[1] by and through its counsel of record, moves this Court for an order vacating the arrest of the M/V

---

[1] Amis Integrity, S.A., appears solely for the purpose of disputing and defending against this wrongful arrest pursuant to Rule E(8), and disputes and does not concede that the Court has or that it is subject to personal jurisdiction in Oregon. This entity has no contacts with Oregon; the vessel was directed to the U.S. by a charterer.

AMIS INTEGRITY, and for an award of its expenses incurred, including attorneys' fees and costs, for this wrongful arrest. Movant requests an expedited show cause hearing pursuant to Rule E(4)(f) and Local Rule 1017-1. In compliance with LR 7-1(a), Movant's counsel confirms that the parties made a good faith effort through telephone conference to resolve the dispute and have been unable to do so.

## II. INTRODUCTION

Plaintiff Dry Bulk Singapore, Ltd. ("Dry Bulk") has wrongfully seized the M/V AMIS INTEGRITY in violation of longstanding precedent holding that a sub-charterer has no right to assert a lien against a vessel owner. There is no privity of contract between Plaintiff Dry Bulk and the vessel owner; Plaintiff Dry Bulk's dispute is with a third party ("24Vision"); Dry Bulk has no maritime lien against the vessel; the charter between the vessel owner and 24Vision precludes a maritime lien; and the vessel was properly withdrawn from the charter between the vessel owner and 24Vision under English law.

The facts are clear. Amis Integrity S.A. chartered the vessel to 24Vision Chartering Solutions, DMCC ("24Vision"). Dkt #1 (Complaint), ¶6. 24Vision entered a sub-charter with Plaintiff Dry Bulk. *Id.,* ¶10. The Complaint alleges a further sub-charter between Dry Bulk and Trithorn. *Id*., ¶20.

24Vision failed to make the payments under its charter agreement with Amis Integrity, S.A., and Amis Integrity, S.A., issued notice to 24Vision of its intent to terminate the charter and withdraw the vessel. Ex. 2 to *Declaration of Huan Rong Jang* ("*Jang Decl.*") Under Paragraph 11 of the charter between 24Vision and Amis Integrity, S.A., Amis Integrity, S.A., had an absolute right to "withdraw the Vessel from the service of Charterers"

if 24Vision failed to timely make hire payments. Ex. 1 to *Jang Decl.*, ¶11; *see also* Ex. 1 to *Declaration of M. Nolan Q.C.* ("*Nolan Q.C. Decl.*").

Furthermore, Paragraph 23 of the charter between 24Vision and Amis Integrity, S.A., expressly precludes the charterer from causing any liens to be created against the vessel. *Id.* at ¶23.

Thus, the vessel was withdrawn from the charter with 24Vision, Ex. 3 to *Jang Decl.*, and 24Vision has not disputed this termination of the charter or the validity of the vessel's withdrawal from this time charter. *Jang Decl.*, ¶8.

Indeed, the charter was governed by English law, Ex. 1 to *Jang Decl.*, ¶45; Dkt #9, ¶14, and the withdrawal was valid under English law. Ex. 1 to *Nolan Q.C. Decl*.

The case law clearly establishes (over the last 35 years) that a sub-charterer cannot assert a maritime lien in these circumstances. *See Cardinal Shipping Corp. v. M/S SEISHO MARU*, 2641, 744 F.2d 461, 467-70 (5th Cir. 1984) (sub-charter lien cannot arise where it conflicts with charter's right of withdrawal; or where barred by prohibition-of-lien clause) (Ex. 1 to *Declaration of Markus Oberg* ("*Oberg Decl.*"))*; MMI International, Inc. v. M/V SKYROS*, 1991 AMC 1264, 1267-68, 1274 (N.D. Cal. 1991) (dismissing sub-charterer lien claim where primary charter party included prohibition-of-lien clause) (Ex. 2 to *Oberg Decl.*).

Plaintiff must know this, yet proceeds with this wrongful arrest, and the vessel owner is entitled to its fees and costs.

### III. APPLICABLE LAW

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated…"

"Plaintiff has the burden of justifying a continued attachment." *Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing Fed. R. Civ. P., Supp. R. E(4)(f); *see also Vitol, S.A. v. Primerose Shipping Co. Ltd.,* 708 F.3d 527, 541 (4th Cir. 2013). Plaintiff must show "it has a valid prima facie admiralty claim against the defendant; the defendant cannot be found within the district; the defendant property may be found in the district; and there is no statutory or maritime law bar to the attachment" *Id.* Plaintiff is required to show that it is "'reasonably likely to prevail' on the merits." *Monjasa A/S v. M/V Peristil*, No. 3:12-cv-01489-BR, 2013 U.S. Dist. LEXIS 82583, at *10-11 (D. Or. June 12, 2013) (citations omitted). Under Rule C, a "plaintiff must establish that it was entitled to a maritime lien." *Newport News Shipbuilding & Dry Dock Co. v. S.S. Indep.*, 872 F. Supp. 262, 265 (E.D. Va. 1994); Rule C(1)(a).

Furthermore, Rule E(2)(a) requires that Plaintiff plead the allegations with particularly. "Rule E(2)(a)'s requirement for pleading specific circumstances is one part of the process which guards against the improper use of admiralty seizure proceedings. Thus, the rule's heightened particularity in pleading requirement is always subject to the general standard that the complaint sufficiently notifies the defendant of the incident in dispute and afford a reasonable belief that the claim has merit." *Riverway Co. v. Spivey Marine and Harbor Service Co.,* 598 F. Supp. 909, 913 (S.D. Ill. 1984). Indeed, the initial arrest process proceeds *ex-parte* with no opportunity for the vessel interests to object to any representations made.

## IV. ARGUMENT

**1. Plaintiff has Not Plead a Valid Maritime Lien; No Lien is Created when a Vessel Is Withdrawn from Service Under a Charter**

The claim asserted by Plaintiff here is virtually identical to that rejected in *Cardinal Shipping Corp. v. M/S SEISHO MARU, supra.,* 744 F.2d at 467-69. As here, that case involved a sub-charterer's claim for loss of use and damages when a primary charterer withdrew the vessel from its charter. In *Cardinal Shipping,* the vessel owner (Aizawa Kaiun) chartered the vessel to Nakamura Steamship. Nakamura Steamship in turn subchartered the

vessel to Clover Trading Corp. Clover Trading then entered into a voyage charter with Cardinal Shipping. After a dispute over payment between Nakamura Steamship and Clover Trading, Nakamura Steamship withdrew the vessel from the charter with Clover Trading. Cardinal Shipping, a sub-charterer further down the chain, lost use of the vessel and suffered damages. The Fifth Circuit rejected the existence of a maritime lien against the vessel where the vessel had been withdrawn from service. The Court explained that allowing such a lien would "effectively torpedo the owner's right of withdrawal." *Id.* at 468.[2]

This is the situation before the Court in this case. There is no direct contractual relationship between Plaintiff Dry Bulk and the owner of the vessel. Instead, Dry Bulk is merely a sub-charterer further down the chain. Its contractual relationship is with 24Vision. Dkt #1 (*Complaint*), ¶10.

Moreover, under the primary charter (between 24Vision and Amis Integrity) the vessel could be withdrawn for nonpayment of charter hire. Indeed, it is undisputed that the same right existed in the sub-charter between Plaintiff Dry Bulk and 24Vision. Dkt #1 (*Complaint*), ¶13. Paragraph 11 of the charter between 24Vision and Amis Integrity, S.A., provides that if payments are not timely received, Amis Integrity, S.A., has an absolute right to "withdraw the Vessel from the service of Charterers." Ex. 1 to *Jang Decl.*, ¶11. Here, Amis Integrity, S.A., exercised that right. Dkt#1 (Complaint), ¶18. After non-payment, Amis Integrity, S.A., had the right to withdraw, and Dry Bulk cannot assert a maritime lien simply because Amis Integrity, S.A., exercised its contractual right.

---

[2] Indeed, in *Cardinal Shipping* the court stated it could identify "no cases in which a subcharterer obtained a lien because the owner had exercised its right of withdrawal" before cargo was loaded. *Id.* n.10.

EMERGENCY MOTION TO VACATE, FOR FEES AND COSTS; AND
REQUEST FOR EXPEDITED HEARING - Page 5
[Case No. 3:19-cv-1671]

{29293-00550342;3}

This withdrawal is valid under English law.  Ex. 1 to *Nolan Q.C. Decl*. Indeed, there is no allegation that this withdrawal was improper.

Dry Bulk cites only one case to support the arrest, *E.A.S.T v. M/V ALAIA*, 876 F.2d 1168 (5th Cir. 1989), but this case does not even relate to a withdrawal of a vessel. Plaintiff completely ignores the authority directly on point. *See Cardinal Shipping*, *supra*. 744 F.2d at 467-69.

 A valid maritime lien is a fundamental pre-requisite to the right to arrest. *See* Rule C(1)(a); *Spooner v. Multi Hull Foiling AC45 Vessel "4 Oracle Team USA"*, No. 15-cv-00692-JCS, 2015 U.S. Dist. LEXIS 33716 (N.D. Cal. Mar. 18, 2015) (granting request for release of vessel and vacating arrest warrant where plaintiff failed to show he has a valid maritime lien); *KTB Oil Corp. v. M/V Cielo Di Tokyo*, No. 2:12-cv-01834-MCE-KJN, 2013 U.S. Dist. LEXIS 26385, at *4 (E.D. Cal. Feb. 25, 2013) ("Absent a maritime lien, Plaintiff cannot prove that Plaintiff had the authority to arrest Defendant.").  Here, there is no maritime lien, and Plaintiff had no right to arrest the M/V AMIS INTEGRITY.

   2.     **The Primary Charter Party's Prohibition-of-Lien Clause Prevents Any Lien**

Not only does legal precedent establish that a lien cannot be created in favor of a sub-charterer when a vessel is withdrawn from service, where the primary charter party contains a prohibition-of-lien provision the creation of any lien is in fact precluded.  *See Cardinal Shipping Corp. v. M/S SEISHO MARU, supra.,* 744 F.2d at  469-70; *MMI International, Inc. v. M/V SKYROS*, *supra*., 1991 AMC at 1270.

Here, paragraph 23 of the charter party contains  such a prohibition-of-lien clause, Ex. 1 to *Jang Decl*., ¶23, and Plaintiff Dry Bulk has no legal basis for asserting the existence

of a maritime lien. The fact that the clause appears in the primary charter is no defense. Plaintiff Dry Bulk, as sub-charterer, is charged with a duty of inquiry into the terms of this primary charter. *E.g., MMI International*, 1991 AMC at 1268 (notice of prohibition-of-lien clause held satisfied where sub-charterer could have by reasonable diligence ascertained vessel already under charter). Moreover, there can be no doubt that Dry Bulk either knew of the provision or would have discovered the provision upon reasonable inquiry. The charter that Dry Bulk entered into with 24Vision stated that 24Vision was not the owner of the vessel, identified the actual owner, and provided contract information. *See* Dkt#1.2 (Ex. 1 to Complaint), p. 6 (identifying the owner and manager), p. 7 (noting that the vessel is under charter by 24Vision), and p. 8 (referencing Owners Pro Forma Charter Party).

### 3. Movant is Entitled to Attorneys' Fees and Costs for Wrongful Arrest

It is an established principle of maritime law that one who suffers a wrongful arrest or attachment may recover damages from the party who obtained the arrest or attachment. *See Furness Withy (Chartering), Inc., Panama v. World Energy Systems Associates, Inc.*, 854 F.2d 410 (11th Cir. 1988) (citations omitted). A party has the right to recover damages for wrongful arrest or seizure in admiralty on a showing of bad faith, malice, or gross negligence. *Stevens v. F/V BONNIE DOON*, 655 F.2d 206, 209 (9th Cir. 1981) (citations omitted).

Here, Plaintiff acted in bad faith and with wanton disregard for the rights of vessel owners by arresting the M/V AMIS INTEGRITY without a legal basis. As explained above, the law is clear that there was no maritime lien available to Dry Bulk, the sub-charterer, in this situation. As a result, the vessel owner has incurred expenses, costs, and attorneys' fees, and will continue to incur costs estimated at $43,300 - $61,000 per day—off-hire alone is

$14,000 per day. Under the circumstances, the arrest should be vacated and the vessel owner awarded is costs and attorneys' fees through the date of the release.

### 4. An Expedited Show Cause Hearing Pursuant to Rule E(4)(f) and LR 1017-1 is Warranted[3]

Local Rule 2017-1 states in relevant part:

> A person or entity claiming ownership of, or an interest in, property arrested or attached, or having a right to intervene with respect to such property, may request a prompt hearing under Rule E(4)(f) at which plaintiff must show cause why the arrest or attachment should not be vacated.

Rule E(4)(f) provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

As the owner, Amis Integrity, S.A., obviously has the requisite interest in the vessel under Rule E(4)(f) and Local Rule 2017-1. The vessel's scheduled departure on October 17, 2019 for Manila, Panama, loaded with cargo, was thwarted by this wrongful arrest proceeding, and is presently incurring additional costs and penalties as a direct consequence. The costs exceed $50,000 already; off-hire alone is $14,000 per day; and expenses are estimated at $43,300 - $61,000 per day while the vessel remains at berth under arrest. Accordingly, it is crucial the Court afford Amis Integrity, S.A., by restricted appearance, the opportunity to be promptly heard and require Plaintiff to show cause before the vessel owner suffers considerable additional damage from delay.

---

[3] Additionally, the arrest warrant was not served in strict compliance with Rule C(3)(b)(i), which requires service by a U.S. Marshal, or a person qualified to be deputized as such. *See* 28 CFR §0.112; Dkt #8. And, the summons is not directed to the M/V AMIS INTEGRITY or its owners. *See* Dkt #14.

This Court has held that a "probable cause" standard applies to a Rule E(4)(f) hearing. *OS Shipping Co.*, 2011 U.S. Dist. LEXIS 49054, at *12-13; *Greger Leasing Corp. v. Barge Pt. Potrero*, No. C-05-5117 SC, 2006 U.S. Dist. LEXIS 18863, at *4 (N.D. Cal. Apr. 5, 2006) (noting that plaintiff bears the burden of showing at Rule 4(E)(f) hearing that that "probable cause" existed to arrest vessel which "translates roughly to requiring that plaintiff show entitlement to a maritime lien").

Plaintiff cannot meet this standard. Because Amis Integrity's withdrawal of the vessel under the primary charter was proper, Plaintiff's claims for conversion and unjust enrichment cannot succeed. "[A] conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Middleton v. M/V Glory Sky I*, No. 13-21588-CIV-KING/MCALILEY, 2013 U.S. Dist. LEXIS 197098, at *5 (S.D. Fla. July 19, 2013). Unjust enrichment "requires proof of five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and the impoverishment; and (5) the lack of any other remedy at law." *Glob. Towing, L.L.C. v. Marine Tech. Servs.*, CIVIL ACTION NO. 98-1765 c/w 99-1590 SECTION "N", 2000 U.S. Dist. LEXIS 2278, at *18 (E.D. La. Feb. 29, 2000). Amis Integrity's withdrawal of the vessel was neither "unauthorized" nor unjustified—its actions were expressly authorized under the primary charter.

Likewise, Plaintiff has not provided evidence to support his claim for tortious interference. "A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with that relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff

which was caused by the defendant's tortious conduct." *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-cv-209 (VLB), 2010 U.S. Dist. LEXIS 22425, at *52 (D. Conn. Mar. 11, 2010). Plaintiff's tortious interference claim appears to be predicated upon the belief that Amis Integrity's withdrawal of the vessel interfered with Plaintiff's sub-charter with Trithorn. Complaint ¶ 20. Plaintiff, however, has provided no evidence that Amis Integrity knew about this sub-charter. Unless Plaintiff can establish that Amis Integrity had knowledge of Plaintiff's contractual relationship with Trithorn, Plaintiff's tortious interference claim fails as a matter of law. Moreover, as stated, the withdrawal from Amis Integrity's charter was valid.

Local Rule 2017-1 clearly places the burden upon Plaintiff to "show cause why the arrest or attachment should not be vacated." Unless Plaintiff can provide prima facie evidence to show it has a valid maritime lien or can prevail on its maritime tort claims, the arrest should be vacated.

### 5. In the Alternative, Movant Requests the Court Set a Security Amount

The security amount of $5,641,407 requested in Plaintiff's Complaint is grossly inflated and unfounded. It is inconsistent with the facts and without legal support in the case law or facts. The only damages alleged suffered relating to Plaintiff's next fixture is $379,500, Dkt#1, ¶20, and there is no evidence that Amis Integrity, S.A., knew or should have known of the alleged sub-charter with Trithorn. *See also Cardinal Shipping Corp., supra.,* 744 F.2d at 469 (precluding sub-charter's lien against withdrawn vessel.).

Moreover, without the alleged sub-charter there is no way to substantiate this claim, and as part of the show cause hearing Plaintiff should be required to produce such evidence.

EMERGENCY MOTION TO VACATE, FOR FEES AND COSTS; AND
REQUEST FOR EXPEDITED HEARING  - Page 10
[Case No. 3:19-cv-1671]

{29293-00550342;3}

The remaining claims for lost profits and damages for future potential fixtures are not cognizable. As stated by the Eastern District of Louisiana, the lower court in the only case cited by Plaintiff in its Complaint: a "charterer may not assert a lien for loss of future, speculative profits from subcharters not yet entered into." *E.A.S.T., Inc. of Stamford v. M/V Alaia*, 673 F. Supp. 796, 803 (E.D. La. 1987).

Additionally, as stated, the vessel owner is incurring fees and costs as a result of the arrest and is entitled to counter security. The vessel owner has already incurred in excess of $50,000, and will continue to incur expenses estimated at $43,300 - $61,000 per day while the vessel remains under arrest.

## V. **CONCLUSION**

There is no valid maritime lien and Movant, by restricted appearance, requests the Court hold an immediate hearing, vacate the arrest, release the vessel, and award fees and cost incurred. In the alternative, Movant requests the Court set a reasonable amount for security and counter security for its expenses.

DATED this 18th day of October, 2019.

> LE GROS, BUCHANAN & PAUL
>
> By: *s/ Markus B.G. Oberg*
>    MARKUS B.G. OBERG, OSB #112187
>
> By: *s/ Daniel J. Park*
>    DANIEL J. PARK, OSB #132493
>    4025 Delridge Way SW, Suite 500
>    Seattle, Washington  98106-1271
>    Phone: 206-623-4990
>    Facsimile: 206-467-4828
>    Email:  moberg@legros.com
>    Email:  dpark@legros.com
>    Attorneys for Movant Amis Integrity, S.A., by restricted appearance

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 18th day of October, 2019.

                              *s/ Shelley Courter*
                              Shelley Courter, Legal Assistant
                              LeGros Buchanan & Paul
                              4025 Delridge Way SW, Suite 500
                              Seattle, Washington 98106-1271
                              Telephone:     206-623-4990
                              Facsimile:      206-467-4828
                              E-mail:          scourter@legros.com