# EXHIBIT 1

The "AMIS INTEGITY"

---

**O P I N I O N**

---

1.     By a charterparty on an amended NYPE 1993 form dated the 25th June 2018 ("the Charterparty"), Amis Integrity SA ("the Owners") chartered their vessel the "AMIS INTEGRITY" to 24Vision Chartering Solutions DMCC ("the Charterers"). That Charterparty was an extension of an earlier one dated the 30th June 2017. On the 12th July 2009 the Owners withdrew the vessel from the Charterers' service for non-payment of hire. I understand that the vessel has been arrested in Vancouver, WA, USA. I am asked to advise whether as a matter of English law, which governed the terms of the Charterparty, the withdrawal of the vessel was valid and lawful.

2.     In my opinion the withdrawal was valid and lawful as a matter of English law. I set out my reasons below.

**The Charterparty**

3.     The Charterparty is evidenced by a fixture recap dated the 12th June 2018 which provides amongst other things that the fixture is to be for a period of about 12 to about 15 months from the 14th October 2018 and that hire is to be US$14,400 daily inclusive of overtime.

4.     The first hire payment was to consist of 15 days hire and the value of bunkers on delivery. Thereafter hire was payable every 15 days in advance. The recap also said:

> "Otherwise as per MV Amis Integrity/24Vision cp dated 30 June 2017 with logical amendments as per main terms agreed and with / except for this following."

5.      The charterparty of the 30th June 2017 is also evidenced by a recap which provides materially:

> *"Otherwise as per Charter Party of MV Amis Leader / 24Vision Chartering Solutions DMCC CP Date 24 March 2017 with logical alterations as per main terms agreed."*

6.      The mv Amis Leader Charterparty dated the 24th March 2017 provided:

> *"10.     "…..Local time to apply for delivery time and hire calculations to be in G.M.T.*
>
> *11…..*
>
> *(a)     Payment*
>
> *Payment of hire shall be made to the Owners' nominated bank in United States Currency as per clause 63 so as to be received by the Owners or their designated payee in ….. viz…. currency or in United States currency, in funds available to the Owners …. Failing the punctual and regular payment of the hire, or any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have on the Charterers…..*
>
> *(b)     Grace Period*
>
> *Where there is a failure to make punctual and regular payment of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners 3 (three) clear banking days (as recognized at the agreed place of payment) written notice to rectify the failure, and when so rectified within those 3 (three) days following the Owners' notice, the payment shall stand as regular and punctual.*
>
> *Failure by the Charterers to pay the hire within those 3 (three days) of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in Sub-Clause 11(a) above."*

7.      Clause 63 provided that the Owners' Bank details were to be advised.  I am instructed that the details provided were those of Wisdom Marine Lines SA at the Bank of Taiwan in Taiwan.

**The failure to pay hire**

8.    I am instructed that the 17th hire instalment covering the period from the 21st June to the 6th July 2019 was not paid by the Charterers.

9.    On the 3rd July, the Owners provided to the Charterers their debit note for the 18th hire instalment for the period from 0000 hours on the 6th July 2019 to 0000 hours on the 21st July 2019.  Since hire was payable in advance, the Charterers were obliged to make that payment by midnight on Friday, the 5th July 2019.  In light of the reference to GMT in clause 10 there is scope for debate as to whether that obligation fell to be performed by midnight GMT or by midnight in Taiwan, where the Owners' bank was.  In the event, that instalment of hire was not paid by either time so it does not matter which is correct.

10.   I am instructed that on Monday, the 8th July, the Owners received an e-mail from the Bank of Taiwan, informing them that as at 1630 hours Taiwan time that day, the 18th hire instalment which had been due on the 5th July had not been paid.   Accordingly at 1729 hours Taiwan time (GMT + 8) on the 8th July, the Owners sent a grace period notice to the Charterers pursuant to clause 11(b) of the Charterparty.

**The grace period notice**

11.   The requirements of a grace period notice have been discussed in several cases.  The most important ones were considered by Jonathan Hirst QC, sitting as a deputy judge of the High Court, in  The Li Hai [2005] 2 Ll. Rep. 389, a case where the clause required the owners to give 72-hours' notice in writing.  At paragraph [87] on page 406 the judge  said:  *"The notice will be sufficient as long as it states unambiguously, one way or another, that payment has not been received and gives the charterer a 72-hour ultimatum to pay or lose the ship."*

12.   Clause 11(b) of the Charterparty provides that the notice is to be given *"Where there is a failure to make punctual and regular payment of hire"*.  Since the charterer has until midnight on the day when payment is due to make payment, the notice cannot be given until

after midnight on the date when payment was due: cf <u>The Afovos</u> [1983] 1 Ll. Rep. 335 at 339 LHC, 340 RHC.

13.     In my opinion the grace period notice sent by the Owners in the present case was valid.  It was sent on Monday the 8th July so was sent after midnight (both GMT and in Taiwan) on the 5th July, the day when payment was due.  It also stated unambiguously that the Owners had not received payment and that if the unpaid hire was not paid within 3 clear banking days (the grace period specified in clause 11(b) of the Charterparty), the vessel would be withdrawn.

**Withdrawal of the vessel**

14.     I understand that the 9th, the 10th and the 11th July 2019 were all banking days in Taiwan, the agreed place of payment, and that no payment was received by the Owners on any of those days.  In those circumstances the Owners became entitled to withdraw the vessel  from the service of the Charterers on the 12th July 2018, 3 clear banking days having elapsed since they sent the grace period notice: see clause 11(b) of the Charterparty.

15.     I am informed that having been told by the Bank of Taiwan that the hire due had not been received by 1330 hours in Taiwan (GMT + 8) on the 12th July, the Owners withdrew the vessel that day as they were entitled to do by virtue of the terms of clause 11 of the Charterparty.

**CONCLUSION**

16.     On the basis of the information provided to me and my perusal of the Charterparty, it is my opinion that the Owners were entitled to withdraw the vessel and that the withdrawal was lawful and valid.

Quadrant Chambers,                                          MICHAEL NOLAN Q.C.

10 Fleet Street,

LONDON EC4Y 1AU                                      18th October 2019

The "AMIS INTEGITY"

---

**O P I N I O N**

---

**The North of England P & I Association Limited,**

80 Anson Rd,
26-03 Fuji Xerox Towers,
SINGAPORE 079907