**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
**Kent Roberts**, OSB #801010
Email: ckroberts@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

Michael G. Chalos, PHV Pending
Email: michael.chalos@chaloslaw.com
CHALOS & CO, P.C.

*Attorneys for Plaintiff,
Dry Bulk Singapore Pte. Ltd.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., <br><br>Plaintiff,<br><br>vs.<br><br>AMIS INTEGRITY S.A. *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc.*, in rem.*,<br><br>Defendants. | No.  3:19-CV-01671-BR<br><br>Admiralty<br><br>**PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S OPPOSITION TO MOTION TO VACATE** |

COMES NOW, Plaintiff Dry Bulk Singapore PTE. LTD. (hereinafter "Dry Bulk" or

"Plaintiff"), by its undersigned counsel, and submits this Memorandum of Law, declaration of

David Boyajian, Esq. ("Boyajian Decl."), declaration of Solicitor Dominic Ward ("Ward

Page 1 -    PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.1

Declaration"), and declaration of Stavros Tsolakis ("Tsolakis Decl.") in opposition to Defendant Amis Integrity, S.A.'s ("Amis" or "Defendant") Motion to Vacate. For the reasons more fully set forth below, the factual allegations contained in Plaintiff's Verified Complaint, the supplemental evidence presented herein, and what may be added at oral argument, it is respectfully submitted that Defendant's motion should be denied in its entirety.

## FACTUAL BACKGROUND

The purpose of the arrest is two-fold: 1) to obtain *in rem* jurisdiction against the M/V AMIS INTEGRITY (hereinafter "the Vessel") in order to exercise a maritime lien against the Vessel, and 2) to obtain security for Plaintiff's claims.[1] The Vessel is owned by Defendant Amis and had been chartered to 24Vision Chartering Solutions DMCC (hereinafter "24Vision") since approximately June 27, 2017. Tsolakis Decl. at ¶ 3. Defendant has purposefully sought to quick pitch its self-serving arguments to the Court in the hope of avoiding the appropriate scrutiny and examination of the facts underlying the Defendant's improper withdrawal of the Vessel from Plaintiff's service.

Plaintiff had time-chartered the M/V AMIS INTEGRITY from 24Vision pursuant to a fixture recap entered into on January 10, 2019, which was subsequently amended two (2) weeks later, and provided that Dry Bulk would have use and enjoyment of the Vessel through a minimum of October 9, 2019 and a maximum period of January 29, 2020. *See, e.g.*, DE 1, ¶¶ 8-10; *see also* Tsolakis Decl. at ¶¶ 4-8. At or about 1734 hours GMT on July 11, 2019, 24Vision wrongfully and without just cause withdrew the Vessel from Plaintiff's service, despite pre-payment of hire through July 23, 2019 totaling $218,551.25, which had been timely and duly received in

---

[1] A longstanding tradition in this Circuit and admiralty law throughout the United States given the peripatetic nature of shipping. *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982); *see also Nikko Shipping Co. v. M/V Sea Wind*, 941 F. Supp. 587 (D. Md. Oct. 22, 1996).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

accordance with the terms and conditions of the charter party agreement. *See*, DE 1, ¶¶ 12-16; *see also* Tsolakis Decl. at ¶¶ 9-12. At the time of the improper withdrawal, Plaintiff had subchartered the Vessel to Trithorn Bulk (a Thornico company) for use of the vessel for a thirty-three day time charter between South America and a port in the Mediterranean at the daily hire rate of $ 26,500. DE 1, ¶ 20.

Just prior to the improper withdrawal of the Vessel, Plaintiff's representative Stavros Tsolakis received a Skype call from Swiss broker Gian Luca Garufi at Lightship Geneva (who was responsible for negotiating the subcharter between Plaintiff and Trithorn Bulk), that Defendant Amis (through its manager or agent Wisdom Marine), was marketing the Vessel on July 11, 2019 for its own account. *See* Tsolakis Decl., at ¶ 18. Plaintiff immediately called and inquired with Thomas Rolin of Barry Rogliano Sales, the longtime chartering broker for Amis and Wisdom Marine to understand why the Vessel had been withdrawn by 24Vision and whether Amis had withdrawn the Vessel from 24Vision on July 11, 2019. *Id.*, at ¶ 19. Mr. Rolin told Mr. Tsolakis that he would check with Wisdom Marine and revert. At 0535 hours Greek time on July 12th (0235 hours GMT) Mr. Rolin, in a series of WhatsApp messages exchanged with Mr. Tsolakis, represented that Amis/Wisdom Marine did not wish to speak about the withdrawal of the Vessel, but represented that the Vessel had been fixed elsewhere by Owners. *Id.*, at ¶ 20. It was clear at this point that Defendant had improperly, and in violation of applicable English Law governing the charter party agreements in this case, withdrawn the Vessel prior to the expiration of the grace period which did not expire until 2400 hours July 11, 2019, and purported to re-fix the Vessel to a third-party while the Vessel was still legally within the employ of 24Vision and Plaintiff. *Id.*, at

Page 3 -   PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

¶¶ 21-26.[2]

The improper withdrawal of the Vessel has caused Plaintiff to suffer considerable damages and losses, all of which attach to the Vessel as a maritime lien and are recoverable. "Without the security obtainable through such a lien, the rights of a time charterer would often be very hollow, especially if the vessel owner is a foreign, single-vessel corporation. The existence of such maritime liens is commercially useful, for it provides a modicum of stability to, or assurance against, the transience of maritime affairs." *E.A.S.T., Inc. of Stamford v. M/V Alaia*, 673 F. Supp. 796, 804, 1987 U.S. Dist. LEXIS 10771, *23, 1988 AMC 1396 (5th Cir. 1987) (citing *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987)). Plaintiff respectfully submits that for the reasons more fully set forth below, it has satisfied its minimal burden to show that it has a maritime lien against the Vessel that can be executed by an *in rem* arrest of the Vessel and that Defendants' motion to vacate must be denied in its entirety.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff commenced the instant action on October 17, 2019 against Defendant *in personam* and the M/V AMIS INTEGRITY *in rem*, asserting causes of action sounding in maritime tort and seeking an order authorizing the warrant of arrest of the M/V AMIS INTEGRITY in accordance with Supplemental Admiralty Rule C. *See* Verified Complaint, DE 1. Plaintiff has sufficiently

---

[2] Critical for this Court's consideration and analysis of the present motion is the review of the Defendant's declaration of Huan Rong Jang (DE 19) and particularly the alleged notice of withdrawal of the Vessel dated July 12, 2019 (DE 19-3), when the Vessel had already been marketed the day before and had been confirmed to be fixed directly by Owners to a third party by its long time broker (BRS) three (3) hours before the service of the purported notice of withdrawal. *See* Tsolakis Decl. at ¶¶ 22-23. Plaintiff has served Interrogatories and Requests for Production on Defendant before filing this Opposition Brief to address, *inter alia*, the timing of the alleged withdrawal of the Vessel. As set forth in the Tsolakis Declaration, the ostensible reason for the improper early withdrawal of the Vessel was for Owners AMIS to obtain a more financially lucrative charter for themselves. Upon information and belief, the additional charter hire earned under the new charter agreement was worth approximately $800,000 to Amis.

Page 4 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

plead a *prima facie* admiralty claim against Defendants and has sought security for its claims in an amount of no less than $ 5,651,407.00. *Id*., at ¶ 34. In its Verified Complaint, Dry Bulk presented detailed factual allegations explaining that Defendant is liable to Plaintiff for, *inter alia*, tortious interference with a maritime contract, unjust enrichment, and conversion, and Plaintiff's tort claims attach to the vessel as a maritime lien. *Id*. at ¶¶ 17-26. Plaintiff has also detailed the losses sustained ($3,760,938) as a result of the wrongful withdrawal of the Vessel by Amis. *Id*. at ¶¶20-21, 25-26, and 34; *see also* Tsolakis Decl. at ¶¶ 28-30.

District Judge Simon reviewed the Verified Complaint (DE 1) and the Motion for issuance of Order Authorizing Warrant of Arrest (DE 4), and found that the conditions authorizing a Rule C arrest of the Vessel had been met. The Order and Warrant were issued on October 17, 2019 (DE 11 and 15). On or about that same day, the Vessel was seized at Vancouver, Washington. Defendant Amis filed its Emergency Motion to Vacate on Friday October 18, 2019. Following a brief telephone conference before Judge Simon, a briefing schedule was set and the parties were directed to appear for an Evidentiary Hearing on Wednesday, October 23, 2019 at 1:30 PM before this Honorable Court. DE 23.

## I.  **DEFENDANT FAILED TO COMPLY WITH LOCAL RULE 7-1**

Defendant Amis, failed, neglected, and/or refused to meaningfully confer with Plaintiff as required by LR 7-1 before filing its dispositive motion to vacate the arrest of the M/V AMIS INTEGRITY. As Plaintiff has alleged *in rem* claims directly against the Vessel, a defendant in this action, which give rise to a maritime lien against the Vessel, the issuance of an order by the Court which potentially vacates the warrant of arrest and permits the Vessel to depart the jurisdiction is dispositive in nature. *See, e.g. Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982). The Ninth Circuit Court of Appeals has stated:

Page 5 -   PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

> A ship ***may be here today and gone tomorrow***, not to return for an indefinite period, perhaps never. Assets of its owner, including debts for freights, as in this case, within the jurisdiction today, may be transferred elsewhere or paid off tomorrow. It is for these reasons that maritime actions *in rem*, libeling a ship or other assets of a defendant, Supplemental Rule C, or attachment in actions *in personam*, Supplemental Rule B, were developed. These reasons are as valid today as they ever were.

*Id.* (emphasis added).

LR 7-1 requires that "the parties must discuss each claim, defense, or issue that is the subject of the proposed motion." *See* LR 7-1.[3] Local Admiralty Rule 1000-1 (c) confirms that "The Local Rules of the United States District Court for the District of Oregon apply to all civil cases, including admiralty and maritime proceedings, but if a local rule is inconsistent with an admiralty rule, the admiralty rule will control." *Id.* There are no inconsistent motion practice rules in the Local Admiralty Rules and Defendant Amis was obligated to meaningfully confer with counsel for Plaintiff prior to filing the motion to vacate. The failure to do so in and of itself is grounds to deny the relief sought by Defendant in its entirety. *See, e.g.*, LR 7-1 (3); *see also Paatalo v. JPMorgan Chase Bank*, No. 6:15-cv-01420-AA, 2016 U.S. Dist. LEXIS 121195, 2016 WL 4708539, at *3-4 (D. Or. September 7, 2016) (finding that a three-sentence email was insufficient to meet the conferral standard and admonishing the plaintiff's counsel to comply with the standard in the future).

Here, opposing counsel never advised that Amis was planning to file an Emergency Motion to Vacate the arrest, much less conferred about any of the defenses and factual/legal grounds which

---

[3] In the applicable practice tips, the Court further directs that "If a motion is to be passed on the inadequacy of the evidence, the parties should discuss the inadequacy of the evidence in detail." LR 7-1, Practice Tip 3. Here, counsel for Amis not only failed to discuss any of the grounds to support its motion to vacate, counsel also failed to raise and confer about any of the alleged deficiencies in Plaintiff's evidentiary proof supporting its claims.

Page 6 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

would be pursued in support of the motion. *See* Boyajian Decl., at ¶¶ 5-7. Rather, the discussion was limited to the standard exchange of contact details for counsel of record and a brief discussion about the type and quantum of substitute security which would be acceptable to Plaintiff to obtain the release of the M/V AMIS INTEGRITY. *Id*., at ¶¶ 2-4. By its nature, a Rule E(4)(f) Motion to Vacate shifts the burden of sustaining the arrest of a Vessel to the Plaintiff, wherein Plaintiff must present reasonable grounds to sustain the arrest. Defendant failed to meaningfully confer with Plaintiff about the factual, legal, and evidentiary challenges which Defendant planned to raise and the potential to resolve or clarify one or more of those challenges prior to filing the motion to vacate. Moreover, as set forth in the Tsolakis Declaration, there are critical questions of fact and in particular the timing of the purported notice of withdrawal and improper removal of the Vessel from Plaintiff's employ which go to the heart of Plaintiff's maritime lien claim. *See* Tsolakis Decl. at ¶¶ 15-25. As such, the Court may <u>and should</u> deny the motion for failure to comply with the Court's Local Rules.

## II. **PLAINTIFF NEED ONLY DEMONSTRATE PROBABLE CAUSE/ REASONABLE GROUNDS TO SUSTAIN THE ARREST**

An *in rem* action may be brought under Rule C of the Supplemental Admiralty Rules against a Defendant Vessel "to enforce <u>*any*</u> maritime lien." Fed. R. Civ. P., Supp. Admiralty R. C(1)(a). Rule C(3)(a)(I) provides the district court may issue a warrant for arrest of the vessel or other property that is the subject of the action upon the filing of a verified complaint. Here, the M/V AMIS INTEGRITY was arrested on or about October 17, 2019 pursuant to Plaintiff's Verified Complaint (DE 1) and the Order authorizing Warrant of Arrest (DE 11, 15).[4]

---

[4] Defendant also cites to various Rule B attachment cases and asserts that plaintiff must establish the Rule B factors in order to sustain the present arrest. The present case is not subject to Rule B and therefore *Equatorial Marine v.*

Page 7 -    PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

The plaintiff need not prove its case at the Rule E(4)(f) hearing. The purpose of the hearing is not "to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." *Lion de Mer v. M/V Loretta V*, 1998 U.S. Dist. LEXIS 10182, at *5 (D. Md. Apr. 3, 1998). Plaintiff Dry Bulk only needs to show "probable cause" for the issuance of the warrant (*i.e.*, that the plaintiff is "reasonably likely to prevail" on the merits of the contested issue). *See, e.g. Monjasa A/S v. M/V Peristil*, 2013 U.S. Dist. LEXIS 82583, *11, 2013 AMC 2832, 2013 WL 2932680 (D. Or. June 12, 2013); *OS Shipping Co. Ltd. v. Global Mar. Trust(s) Private Ltd.*, 2011 U.S. Dist. LEXIS 49054, 2011 WL 1750449, at *5 (D. Or. May 6, 2011). As this Court has held, the "'reasonable grounds/probable cause' requirement 'translates roughly to requiring that plaintiff show entitlement to a maritime lien.'" *Monjasa A/S*, at *11 (quoting *Newport News Shipbuilding and Dry Dock Co. v. S.S. Independence*, 872 F. Supp. 262, 265 (E.D. Va. 1994)); *see also Sea Prestigio, LLC v. M/Y Triton*, 2010 U.S. Dist. LEXIS 135377, *5, 2010 WL 5376255 (S.D. Cal. Dec. 22, 2010).

The Rule E(4)(f) hearing has a low threshold of proof as "[t]he plaintiff's burden is not onerous." *S & S Diesel Marine Servs. v. M/V F-Troop*, 2011 U.S. Dist. LEXIS 53808, *9 (S.D. Fla. 2011). The Court at this stage must not engage in "a mini-trial" and must be careful not to impose a "higher burden on [Plaintiff] than is authorized[.]" *Am. Overseas Marine Co. LLC v. M/V Seattle*, 2016 U.S. Dist. LEXIS 185629, *9-10 (M.D. Fla. 2016) (quoting *PDS Gaming Corp. v. M/V Ocean Jewel of St. Petersburg*, 2007 U.S. App. LEXIS 24407, *1 (11th Cir. 2007).

---

*MISC Berhad,* 591 F.3d 1208, 1210 (9th Cir. 2010) and *Vitol S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527 (4th Cir. 2013) are inapposite and inapplicable.

Page 8 -   PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

Plaintiff's good faith allegations against Defendants in its Verified Complaint satisfy the particularity pleading requirement of Rule E(2)(a) and are sufficient to demonstrate reasonable grounds/probable cause to sustain the arrest. *See* DE 1 ¶¶ 1-26. Rule E(2)(a) requires that a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). Plaintiff's Verified Complaint has met the heightened pleading requirements of Rule E(2)(a) in this matter and Defendant's motion should be denied in its entirety.[5]

## ARGUMENT

### III. PLAINTIFF HAS PLEAD A VALID MARITIME LIEN AGAINST THE VESSEL.

Plaintiff's Verified Complaint sets forth reasonable grounds in support of its maritime lien claim and properly establishes Plaintiff's right to seize the Vessel pursuant to Rule C to enforce the lien. Defendant's reliance on *Cardinal Shipping Corp. v. M/S SEISHO MARU*, is misplaced and as such, the motion to vacate should be denied in its entirety. *See* DE 18, citing *Cardinal Shipping Corp. v. M/S SEISHO MARU*, 744 F.2d 461 (5th Cir. 1984).

**1.** *Plaintiff's Maritime Lien is Valid and the Purported Withdrawal by AMIS was Wrongful.*

---

[5] Even though Plaintiff has met the pleading standard, there is no requirement that **all** allegations in support of the arrest must be made at the time the Order is issued. When conducting a review to determine whether reasonable grounds exist to sustain the arrest, "Supplemental Rule E *does not restrict review* to the adequacy of the allegations in the complaint." *Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001) (emphasis added). This Court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing. *Id.* at 1357-58. "[I]t comports with due process to permit the initial seizure on sworn *ex parte* documents, followed by the early opportunity to put the creditor to his proof." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 609 (1974).

Page 9 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

Plaintiff's motion relies almost exclusively on the holding from *Cardinal Shipping*, *supra*. However, a brief review of the facts from that case demonstrate a fundamental and compelling difference in the position of the sub-charterer in that case, Cardinal Shipping, and Plaintiff Dry Bulk here. Specifically, Cardinal Shipping had contracted for the use of the M/S SEISHO MARU pursuant to a Voyage Charter Party agreement for the transport of cargo of steel coils from Oxeloesund, Sweden to the ports of Detroit and Chicago, *i.e.* the vessel was chartered for a specific voyage. *Id*., at 463. As such, the contract was executory in nature, and the right to a maritime lien did not arise until the cargo in question was loaded onboard the vessel for the anticipated voyage. *Id*. In *Cardinal Shipping*, the cargo had commenced loading, before subsequently discharging the cargo back to the dock and withdrawing the vessel. *Id*. at 467-68.

In contrast, the M/V AMIS INTEGRITY was time-chartered for a period of a minimum of nine (9) months and a maximum of twelve (12) months and had already been in the employ of Plaintiff for several months. *See* DE 1, ¶¶ 8-10. The Fifth Circuit Court of Appeals in *E.A.S.T., Inc. of Stamford, Connecticut v. M/V Alaia*, confirmed that a charterer may exercise a lien directly against the ship which caused the loss and benefited by the wrongful conduct to make good on that loss. *Id.*, 876 F.2d 1168 (5th Cir.1989). In *Bank One La. v. Dean*, the Fifth Circuit Court of Appeals further clarified that a charterer which had time-chartered the vessel accrued a lien at a distinct juncture from that of the voyage charterer discussed in *Cardinal Shipping*. *Id*., 293 F.3d 830, 2002 U.S. App. LEXIS 10977, 2002 AMC 1617 (5th Cir. 2002). The Fifth Circuit Court of Appeals provided an in depth discussion and distinction between the types of liens which arise for a time charterer as set forth in *M/V Alaia*, from voyage charter cases such as *Cardinal Shipping*, holding:

Page 10 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

> A time charterer does not pay freight to the vessel owner for the safe transport of a specific cargo to a specific destination, but pays instead for the use of the vessel for a specified period of time-the intended use of the vessel may not include the transportation of any cargo at all or may be to make a series of voyages, carrying different cargo to various destinations.
>
> For that reason, even though a contract for affreightment ceases to be executory only when the cargo is loaded, "the vessel begins performance of the [time charter] contract when it 'is placed at the charterer's disposal'" and ceases to be executory at that point. Under the logic we expressed in *Alaia*, then, ***a maritime lien for breach of a time charter attaches when the owner places the vessel at the charterer's disposal***. In the present case, the vessel had already been delivered to BargeCarib and BargeCarib had made several voyages with it.

*Id.*, at 1171.

Plaintiff had prepaid hire through July 23, 2019 and the wrongful and unlawful withdrawal of the Vessel by Amis/24Vision gives rise to a maritime lien on two (2) grounds: 1) the lien attaches against the Vessel for hire paid and not earned, and 2) the wrongful withdrawal led to various damages, losses, and expenses due to Plaintiff's inability to perform the Trithorn Bulk charter party agreement, all of which give rise to a valid maritime lien. *See, e.g.*, *M/V Alaia*, *supra*; *see also The Capitaine Faure,* 10 F.2d 950, 954, 961 (2d Cir. 1926); *Tube Products of India v. S.S. Rio Grande,* 334 F. Supp. 1039, 1041 (S.D.N.Y. 1971); *W. Poor, American Law of Charter Parties and Ocean Bills of Lading* § 10, at 33 (1968) [hereinafter cited as *Poor on Charter Parties*]; 2A *Benedict on Admiralty, supra,* § 35, at 4-19.).

Defendant knew or should have known that the Vessel was on sub-time charter to Plaintiff and had been since January 10, 2019. *See* Tsolakis Decl., at ¶¶ 25-27; *see also*, *Duferco S.A. v. Ocean Wide Shipping Corp.*, 210 F. Supp. 2d 256, 2000 U.S. Dist. LEXIS 20286, 2001 AMC 536 (S.D.N.Y. April 7, 2000) (confirming that the vessel's Master wears the dual hat of being the Owner's agent for purposes of ensuring a sound vessel and receives instructions from the charterer for the commercial control of the vessel during a voyage). The unlawful and improper withdrawal

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

of the Vessel was an extreme remedy meant only to serve the self-interests of Owner to re-fix the Vessel for a new and more lucrative charter party. *See* Ward Decl., at *Exhibit B* ¶¶ 12-17. Owners could have provided Plaintiff with a notice of lien on subfreights and subhire so that hire payments due and owing under the Amis/24Vision charter party agreement could have been paid directly to Amis from Plaintiff Dry Bulk. *See* DE 19-1, Cl. 23; *see also United States v. Freights, etc., of the Mount Shasta*, 274 U.S. 466, 47 S. Ct. 666, 71 L. Ed. 1156 (1927). Instead, the Vessel was impermissibly and wrongfully withdrawn from Dry Bulk's service despite the prepayment of hire through July 23, 2019[6] and, as such, Plaintiff has established probable cause and reasonable grounds to support its right to a maritime lien in this matter and the arrest of the Vessel.

### 2. *The Notice of No-Lien Clause in the Head Charter Party Agreement is Insufficient to Defeat Plaintiff's Lien against the Vessel.*

Amis relies upon Clause 23 of its charter party agreement with 24Vision as further support for the vacatur of the arrest of the Vessel on the grounds that the primary charter party contained a "prohibition of lien" clause. However, Cardinal requires that a sub-charterer, such as Plaintiff, must have actual knowledge of the prohibition of lien clause for it to become effective against the sub-charterer. *Cardinal Shipping Corp.*, 744 F.2d at 470 (citing *The Kate*, 164 U.S. at 470, 17 S.Ct. at 140; *The Lucie Schulte*, 343 F.2d at 901); *see also*, *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988) (granting appellant's a maritime lien against the vessel holding that prohibition of lien clause was not effective without proof that Marine Fuel had actual knowledge); *Caribbean Maritime Finance Co. v. Marina Mercante Nicaraguense, S.A.*, 470

---

[6] As evidenced by Clause 23 of the Charter Party, Plaintiff has a maritime lien on the Vessel for any pre-paid and unused hire. *See* DE 19-1, Cl. 23;

Page 12 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

F.2d 277 (5th Cir. 1972) (holding that Caribbean Maritime had a valid maritime lien because the prohibition-of-lien clause did not operate to preclude imposition of a lien where advances were authorized under the charter party). Here, the terms of the charterer party between Amis and 24Vision were never disclosed to Dry Bulk and there was never any notice provided by either Amis or 24Vision as to the notice of no lien provision contained in the head charter party agreement.[7]

Furthermore, even if there was prior notice of the prohibition of lien clause (which is denied), the provision relied upon by Amis only applies to third party service providers to the Vessel, it does not serve to protect an Owner such as Amis from a lien created by the actions of Amis itself, here the wrongful and improper withdrawal of the Vessel. *See* Tsolakis Decl., at ¶¶ 16-29; *see also* Ward Decl., *Exhibit B* at ¶¶ 10-18. As the Fifth Circuit Court of Appeals has explained, such a prohibition of liens clause does not undertake to deal with the power of the Owner to subject his own Vessel to maritime liens through his own actions and/or breach of charter party agreements.

Here, Amis caused the wrongful withdrawal of the Vessel and failed to exercise diligence in attempting to amicably resolve the dispute as required by Clause 45 of the charter party agreements. Specifically, the purpose behind such a clause has to "do with the power of others —

---

[7] Indeed, it is uncommon in the maritime industry for a sub-charterer to know or otherwise be told of the terms of the head charter between an Owner (Amis) and the time charterer (24Vision). This makes sense as the parties to the head charter do not want a sub-charterer to know the terms and conditions of the head charterer, especially, the daily hire rate. Consequently, the reasonable inquiry requirement in practice is theoretical, at best. As *Cardinal* pointed out, the best way for an Owner (Amis) to shield itself against prospective liens is to give notice to sub-charterers such as Dry Bulk. *Cardinal Shipping*, 744 F.2d at 469-70. This was not done in this case and Amis does not allege that such notice was given to Dry Bulk before this dispute arose.

Page 13 -   PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

master, agent, charterer, etc. — to subject the vessel to liens for work done by third parties at the request of those presuming to speak for the ship." *Roberts v. Echternach*, 302 F.2d 370, 372-73 (5th Cir. 1962) (footnote omitted). In fact, as Judge Brown noted with regard to such a clause, "the circumstances in which the owner could restrict his own power [to subject the vessel to liens] are severely limited and one could safely say, never to permit the owner, as such, to obtain any advantage." *Id*. at 372. The Fifth Circuit Court of Appeals (*i.e.* the Court wherein the *Cardinal Shipping* decision was issued), has routinely upheld the maxim that an Owner's prohibition of lien clause cannot serve to waive a validly existing and exercised lien right by a Vessel's lawful charterer, when the circumstances giving rise to the breach and lien claim, here the wrongful withdrawal of the Vessel, were caused by the vessel Owners. *Id*., *see also Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1152 n.4 (5th Cir. 1977).

Finally, as a matter of English Law, the clause under applicable English Law merely requires that 24Vision, as the counterpart charterer to Amis, is required to provide security for the Vessel's release, the clause does not prohibit the Vessel's arrest by Plaintiff when exercising a validly accrued lien. *See* Ward Decl., at *Exhibit B* ¶¶ 18 – 22. As such, Amis' motion to vacate should be denied in its entirety.

## IV. DEFENDANT'S CLAIM OF WRONGFUL ARREST IS WITHOUT MERIT AND MUST BE DENIED

It is telling that despite relying upon Cardinal Shipping throughout its motion to vacate, Defendant Amis wholly fails to identify for this Court that the Fifth Circuit Court of Appeals refused to grant costs and fees for an alleged "wrongful arrest" in that matter. *See Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 474 (5th Cir. 1984). That is because decades of case law has held the Claimant must *prove* that the party seizing the vessel acted in bad faith

Page 14 -   PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

with malice or with wanton disregard for the rights of his opponent. *See also*, *Ocean Ship Supply, Ltd. M/V Leah*, 729 F.2d 971, 974 (4th Cir. 1984) (holding that the seizure of the *M/V Leah* was not wrongful and damages granted by the lower court must be rejected as there was no proof of malice or bad faith); *Frontera Fruit v. Dowling*, 91 F.2d 293, 297 (5th Cir.1937); *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 730-31 n. 5 (5th Cir.1980).

*Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) stands for the proposition that the advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense an action for wrongful arrest and detention of a vessel. *See also Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992). In *Frontera*, the Fifth Circuit stated that, as in a case for malicious prosecution, damages cannot be awarded except in the case of bad faith, malice, or gross negligence:

> The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party. . . . The reasons for the award of damages are analogous to those in cases of malicious prosecution. The defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith, with malice, or through a wanton disregard of the legal rights of his adversary. ***The courts are institutions for the settlement of disputes both as to law and facts. Where citizens reasonably disagree concerning their rights, powers, and privileges, the doors should be kept open for an orderly determination of their differences***.

*Frontera, supra* (emphasis added) (internal citations omitted). The Fifth Circuit Court of Appeals went on to say that acting on advice of counsel is a complete bar to a claim for wrongful arrest. "It has been held by this court that the ***advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution***. . . ." *Id.* (emphasis added).

The arrest of the Vessel was done in good faith, without malice. As more fully stated above,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

Plaintiff has reasonable grounds (and probable cause) to assert a maritime lien against the Vessel pursuant to the facts and applicable law. Accordingly, this Court should deny Claimant's request for attorneys' fees and costs for the alleged "wrongful arrest" of the AMIS INTEGRITY.

### V. SUBSTITUTE SECURITY SHOULD BE SET IN THE AMOUNT OF $5,641,407.00 PURSUANT TO SUPPLEMENTAL RULE E(5)(a).

Plaintiff's request that Claimant post security is reasonable under the Supplemental Rules. Pursuant to Rule E(5)(a), "the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim." Fed. R. Civ. P., Supp. Rule E(5)(a). Plaintiff requests that Claimant post substitute security at one-half (1.5) times Plaintiff's claim. *See* DE 1, ¶¶ 33-34. Plaintiff's request is less than the statutory sum which provides that security shall not exceed twice the amount of Plaintiff's claim. Rule E(5)(a). Plaintiff has incurred damages of no less than $3,760,938.00 for the wrongful withdrawal of the Vessel from service. *See* DE 1, ¶¶ 1-26; *see also* Tsolakis Decl.¶¶ 26-30. Plaintiff requests that Claimant post security in the amount of $5,641,407.00, which is less than twice the amount of Plaintiff's claim and is based on the provable damages Dry Bulk sustained and attach as a lien against the Vessel. Therefore, Plaintiff request for security is reasonable under Rule E(5)(a).

### VI. DISCOVERY IS NECESSARY AND WARRANTED IN THIS MATTER

Plaintiff's Verified Complaint contains sufficient factual allegations, with supporting exhibits, to satisfy its reasonable grounds burden to sustain the arrest – namely, that Plaintiff has a valid and enforceable maritime lien against the M/V AMIS INTEGRITY. Notwithstanding, critical questions of fact with respect to the timing of when Amis wrongfully withdrew the Vessel

Page 16 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

from Plaintiff's service despite hire being prepaid through July 23, 2019 have been raised by Defendant's self-serving declarations submitted in this matter. In response, Plaintiff has served narrowly tailored interrogatories and requests for production to probe the representations made in the Defendant's declarations. The purpose of the requested discovery is to establish further evidence which will support Plaintiff's evidence submitted through the Tsolakis declaration that Amis wrongfully and unlawfully withdrew the Vessel on July 11, 2019 in violation of the charter party agreements and in contravention of applicable English law.

Accordingly, Plaintiff respectfully requests that it be given an opportunity to conduct and complete this limited discovery before a final decision is taken which may result in the release of the vessel M/V AMIS INTEGRITY currently arrested as security for Plaintiff's maritime lien claims, and permit supplemental briefing on the issue prior to issuing any order which may vacate the arrest. *See, e.g.*, *Interpool, Ltd. v. Char Yigh Marine, S.A.*, 890 F.2d 1453, 1457 (9th Cir. 1989); *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 Fed. Appx. 651 (9th Cir. 2010); *Swaidan Trading Co., LLC, v. M/V DONOUSA, in rem, et al.*, 3:18-cv-0398-HZ. If the Defendants require the service of the Vessel in the interim, they are free to post the requested surety bond security so that the Vessel can sail to its destination while the Court conducts its factual and legal inquiry as to the issues raised in this matter. *See Fed. R. Civ. P. Supp. Admiralty R. E(5); see Monjasa A/S v. M/V Peristil*, 2013 U.S. Dist. LEXIS 82583, *21-22, 2013 AMC 2832, 2013 WL 2932680 (D. Or. June 12, 2013)(stating that an "*in rem* proceeding to enforce a maritime lien, the posting of a bond or other security transfers the plaintiff's maritime lien from the arrested property to the substitute security.")

/ / /

/ / /

Page 17 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

## CONCLUSION

WHEREFORE, for the reasons more fully stated above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Vacate in its entirety, order expedited discovery, and for such other and just relief as Plaintiff may be entitled to.

Dated this 21st day of October, 2019.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　SCHWABE, WILLIAMSON & WYATT, P.C.

　　　　　　　　　　　　　　　　　　BY:　*s/ David R. Boyajian*
　　　　　　　　　　　　　　　　　　　　　David R. Boyajian, OSB #112582
　　　　　　　　　　　　　　　　　　　　　dboyajian@schwabe.com
　　　　　　　　　　　　　　　　　　　　　Kent Roberts, OSB #801010
　　　　　　　　　　　　　　　　　　　　　Email: ckroberts@schwabe.com
　　　　　　　　　　　　　　　　　　　　　Telephone: 503.222.9981
　　　　　　　　　　　　　　　　　　　　　Facsimile: 503.796.2900

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff, Dry Bulk Singapore Pte. Ltd.,*

OF COUNSEL

CHALOS & CO, P.C.
Michael G. Chalos, PHV Pending
55 Hamilton Avenue
Oyster Bay, NY 11771
Email: michael.chalos@chaloslaw.com

Page 18 -   PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12

## CERTIFICATE OF SERVICE

      I hereby certify that on October 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

      BY:   *S/DAVID R. BOYAJIAN*
           David R. Boyajian, OSB #112582

Page 19 - PLAINTIFF'S OPPOSITION TO MOTION TO VACATE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\124008\183116\DBO\26401433.12