# EXHIBIT B

**"AMIS INTEGRITY"**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

---

**OPINION**

---

1. I have read and considered the Opinion of Michael Nolan QC dated 18 October 2019 (Exhibit 1 to the Declaration of Michael Nolan QC).

2. I adopt the same defined terminology as Mr Nolan QC used in his Opinion.

3. I am asked to advise whether, as a matter of English law, which governed the terms of the Charter party between Amis Integrity S.A., as Head Owner and 24Vision Chartering Solutions DMCC, as Charterer, dated June 30, 2017 (hereinafter "Charter party"), the withdrawal of the vessel was valid and lawful.

4. Mr Nolan QC indicates in his Opinion that the withdrawal of the vessel by the Owners from the Charterers was valid as a matter of English law. Mr Nolan's conclusion is based on his construction of the relevant clauses of the Charter party, the application of English law, and, crucially, instructions from those instructing him that the withdrawal of the vessel occurred on 12 July 2019.

5. My instructions are that the vessel was withdrawn from the Charterers, by the Owners, before 12 July 2019. In my opinion, if the vessel was withdrawn from the Charterers, by the Owners, before midnight on 11 July 2019 GMT, the withdrawal of the vessel would be unlawful and invalid under English law.

The Grace Period Notice

6. The relevant clause of the Charter party, requiring a grace period to be given, in the event of late payment of hire is as follows:-

   *"11.(b) Grace Period*

   *Where there is a failure to make punctual and regular payment of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners 3 (three) clear banking days (as recognised at the agreed place of payment) written notice to rectify the failure, and when so rectified within those 3 (three) days following the Owners' notice, the payment shall stand as regular and punctual.*

   *Failure by the Charterers to pay the hire within those 3 (three) days of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in sub-clause 11.(a) above."*

7. Mr Nolan states in his Opinion that on 8 July 17:29 hours Taiwan time (09:29 hours GMT) the Owners sent a grace period notice to the Charterers pursuant to clause 11.(b) of the Charter party.

Calculation of Time

8. Under English law, where there is a contractual provision referring to "clear days" the calculation of the relevant period of time is required to be undertaken by disregarding the day of the notice being issued and the day of the consequent action that flows from the expiry of the notice.

9. In this case the Grace Period Notice issued by Owners to Charterers was issued on the 8 July and purported to give three clear banking days notice. Monday 8 July being the date the notice was issued, is ignored. It therefore

follows that the Charterers were given three banking days, namely Tuesday 9 July, Wednesday 10 July and Thursday 11 July. It was only after the expiry of Thursday 11 July that any consequential action pursuant to the Notice could be taken by the Owners, i.e. no action could be taken by them until 12 July.

10. Under clause 10 of the Charter party, the following provision can be found:-

    *"Local ...time to apply for delivery time and hire calculations to be in GMT."*

11. In my opinion, the natural reading of that provision is that, in relation to obligations to pay hire, the relevant time is GMT. It therefore follows that no action could be taken by the Owners against the Charterers, pursuant to the Grace Period Notice, until the expiry of 11 July (GMT) or, put another way, until 00:01 GMT on 12 July 2019.

12. In the context of the withdrawal of the vessel, English law places the burden of demonstrating that the requirements of the Charter Party have been strictly fulfilled on the Owner. The right to withdraw a vessel is regarded as a form of forfeiture. In Noemijulia Steamship Co –v- Minister of Food [1951] 1KB 223, Devlin J commented that: "…..*this is a forfeiture clause and so not to be applied lightly."*

13. On appeal in that case, in the Court of Appeal, Lord Justice Tucker commented:-

    *"The principle [is] that he who seeks to enforce a forfeiture clause, which in effect this is, must strictly prove the existence of all matters upon which he relies as justification of his conduct, and in my Devlin J, rightly placed the onus upon him".*

14. Mr Nolan cites the cases of The Afovos [1983] 1 Lloyds Report 335 and the Li Hai [2005] 2 Lloyds Report 389 in relation to the workings of Grace Period Notices and withdrawal. I do not dispute that, pursuant to the principles set

out in those cases, the Grace Period Notice issued by the Owners was a valid Notice. Mr Nolan concludes that, on the assumption the vessel was withdrawn on 12 July, it was validly withdrawn. Mr Nolan expresses the opinion (paragraph 14) that the Owners became entitled to withdraw the vessel from the Charterers on 12 July 2018. I do not disagree with that conclusion save that in my opinion, the right to withdraw the vessel only arose at 00:01 hours GMT on 12 July.

15. I am instructed that the withdrawal of the vessel by the Owners from the Charterers occurred prior to 00:01 hours GMT on 12 July 2019, i.e. at a time when the right to withdraw had not arisen. If that is the case, the withdrawal was invalid and unlawful.

16. Unlawful Withdrawal of Vessel

    Withdrawal of the Vessel by owners prior to the right to withdraw arising, is unlawful and entitles the Charterers to claim damages. In the Li Hai case cited by Mr Nolan QC (Western Carriers K/S v Li Hai Maritime Inc [2005] EWHC 735). The English High Court held that the service of Grace Period Notice by owners of the Vessel was invalid. The Judge in that case (Jonathan Hirst QC) said "... *In my judgment, having failed to comply with Clause 47 [Grace Period Notice] the Owners were in breach of the charterparty in withdrawing the Vessel on 22 October 2003*".

17. Breach of the charterparty in these circumstances gives rise to a claim for damages by the Charterer. The normal measure of Charterer's damages is the difference between the contract rate in the charterparty unlawfully terminated and the market rate for chartering in a substitute Vessel for the balance of the charterparty. This principle was established in The Elena D'Amico [1980] 1 Lloyds Reports 75 which was cited with approval in the Li Hai case. That is the measure of damages whether or not the Charterers actually charter in a substitute Vessel.

18. <u>No-Lien Clause</u>

19. Clause 23 of the Charter party (lines 264-267) reads as follows:-

    *"The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the Owners in the Vessel. The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time, <u>unless previously mutually agreed with the Owners</u> (added by the parties)."*

20. The effect of such a clause under English law is that if there is an arrest of the vessel by a third party, the Charterers (in this case 24Vision) are required to provide security for the vessel's release. The clause does not prohibit an arrest by a third party. The legitimacy of the arrest is determined by the law of the place where the arrest is undertaken.

21. In the <u>Vestland [1980] 2 Lloyds Reports page 171</u> an almost identical clause was contained in the Charter party in that case. The arresting party was a cargo receiver and the claim had arisen as a result of the actions of the time charterer in that case (the equivalent of 24Vision in this case). The time charterer had diverted the vessel and unloaded the receiver's cargo in Antwerp (Belgium) instead of Hartlepool (UK). The time charterers claimed that the Owners of the Vestland repudiated the charter by failing to provide security for the vessel's release. The decision of the arbitrators and the High Court in Vestland was that the receiver's arrest engaged clause 20 and the time charterers therefore had to put up security. The owners' refusal to do so was justified and not a repudiation of the Charter. The clause was not construed so as to prohibit third party arrests.

<u>Conclusion</u>

22. For the reasons given above, if the vessel was withdrawn by the Owners,

from the Charterers, before 00:01 hours GMT on 12 July 2019, it was unlawful. The "no-lien" clause in the Charter Party does not prohibit third party arrests of the vessel.

Marina Court
Castle Street,
Hull
21 October 2019