IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DRY BULK SINGAPORE PTE. LTD.          )
                                      )
        Plaintiff,                    )
                                      )        Case No.: 3:19-cv-1671
v.                                    )
                                      )        IN ADMIRALTY
Amis Integrity S.A. *in personam* and )
M/V AMIS INTEGRITY (IMO 9732412)      )        DECLARATION OF STAVROS
her engines, freights, apparel,       )        TSOLAKIS IN OPPOSITION TO
appurtenances, tackle, etc., *in rem,* )       MOTION TO VACATE ORDER OF
                                      )        ARREST
        Defendant.                    )


I, STAVROS TSOLAKIS, being first duly sworn on oath, depose and say:

1. I am over the age of majority, and, except as otherwise indicated, make this Declaration on personal knowledge, and am competent to testify regarding the facts herein.

2. I am, and have been at all materials times, the Head of Chartering for Plaintiff, Dry Bulk Singapore PTE Ltd., and authorized to act on the company's behalf.

3. On or about June 27, 2017, AMIS INTEGRITY S.A., as owner of the Vessel, and 24VISION CHARTERING SOLUTIONS DMCC, (hereinafter "24VISION"), as charterer, entered into a "NYPE 93" Time Charter Party agreement for 24VISION to charter the Vessel. (see Exhibit 1 to Huan Kong Jang Declaration in Support of Motion to Vacate Arrest, hereinafter "Jang Declaration")

4. On or about January 10, 2019, 24VISION, as disponent owner of the Vessel, entered into a sub-charter agreement with DRY BULK for a "time charter trip via ECSA to PG-Japan range" (hereinafter the "Charter Party agreement"). The charter party hire and ballast bonus rate was determined based on whether the Vessel would be redelivered in the Persian Gulf-Singapore range or the Singapore-Japan range.

5. The charter party agreement between 24 Vision and Dry Bulk was memorialized in a fixture recap. *A copy of the charter party agreement between 24VISION and DRY BULK is attached as **Exhibit 1 to the Verified Complaint**.*

6. The parties amended the charter party agreement on or about February 8, 2019. *A copy of Addendum 1 is attached as **Exhibit 2 to the Verified Complaint**.* Pursuant to the agreement of the parties, the following terms of the charter party agreement were amended as follows:

   - Delivery Time: January 24, 2019 07:42 GMT

   - Delivery AFSPS Recalada, Argentina

   - Period: Minimum October 9, 2019 / Maximum January 29, 2020

   - Daily Hire: USD 15,000 (through October 9, 2019) and USD 14,500 for any period thereafter (through January 29, 2020).

   - Plus a USD 50,000 Gross Ballast Bonus.

   All other terms and conditions of the January 10, 2019 charter party agreement remained unchanged.

7. Pursuant to Clause 10, Line 138 of the charter party, the relevant time zone for the payment of charter hire is GMT (i.e. Greenwich Mean Time).

8.  The exact same provision is contained in the Amis Integrity/24 Vision charter party (see Exhibit. 1 to Jang Declaration, Clause 10, Line 138).

9.  On or about July 8, 2019 at 10:19 GMT, 24VISION served DRY BULK with a three (3) day grace period notice under the charter party demanding payment of the eleventh and twelfth hire installments in the amount of USD 217,372.50 and USD 218,551.25, respectively.

10. DRY BULK had three clear banking days (*i.e.*, July 9, July 10, and July 11} in which to effect payment of hire. Under Clause 11(b) of the charter party agreement, so long as payment of hire was effected prior to July 11, 2019 at midnight (2400 hours GMT), the hire payment would be deemed "regular and punctual." **See Exhibit 1 to Verified Complaint.**

11. The exact same provision is contained in the Amis Integrity/24 Vision charter party. (See Exhibit 1 to Jang Declaration, Clause 11 (b)).

12. On July 11, 2019 at or about 12:55 GMT, DRY BULK's bank transferred the eleventh and twelfth hire payments totaling USD 435,923.75, of which the sum of $218,551.25 was a pre-payment of hire through July 23, 2019. (see nine (9) Swift Transfers of the transaction attached hereto as Exhibits 1A-I).

13. Under Clause 23 of the respective charter parties, when Dry Bulk paid the hire in advance to July 23, 2019, it had a lien against the Vessel for all monies paid in advance and not earned (see Clause 23 of Exhibit 1 to Jang Declaration).

14. Moreover, on July 10, 2019, I had spoken with a Mr. Thomas Rolin of Barry Rogliano Salles (hereinafter "BRS"), the longtime chartering broker for Amis Integrity and Wisdom Marine and told him that payment of hire to 24Vision was being arranged for the next day (see WhatsAPP message to Mr. Rolin dated July 10, 2019 in this regard attached hereto as

Exhibit 2A). I thereafter sent a notice of payment to 24Vision, with a copy to Mr. Rolin, at the time such payment was made (see e-mails to 24Vision, with a copy to Mr. Rolin, attached hereto as Exhibit 2B).

15. Under Clause 23 of the respective charter parties, Amis Integrity had a lien of any hire and/or sub freights paid or to be paid by Dry Bulk to 24Vision. At no time did Amis Integrity send to Dry Bulk a "Notice of Lien" which is customary in these types of situations (i.e. when hire is unpaid and the owner knows that the charterer has sublet the vessel to another party) and despite knowing as of July 10th that payment of hire to 24Vision would be forthcoming the next day.  The obvious reason for the failure to send a customary Notice of Lien to Dry Bulk was because Amis Integrity had already chartered the Vessel to a third party and intended to withdraw it from both 24Vison's and Dry Bulk's service before the expiration of the grace period.

16. Despite the timely payment of hire by Dry Bulk under the Dry Bulk.24 Vision charter party, at 1734 hours GMT, July 11, 2019, well within the charter party grace period of 2400 hours GMT, July 11th, 24 Vision wrongfully and without just cause withdrew the Vessel from Dry Bulk's service. (see Notice of Withdrawal indicating that it was sent at 1934 hours Greek time (GMT +2) attached hereto as Exhibit 3).

17. This withdrawal of the Vessel after payment of the hire due was duly and timely made was both in breach of the charter party and puzzling. All efforts to contact 24 Vision to ascertain their reason for the withdrawal went unanswered.

18. Just prior to receiving the Notice of Withdrawal from 24 Vision, I also received a Skype call from a Swiss broker, Gian Luca Garufi  CEO/Partner, Lightship Geneva, who had negotiated the subsequent sub-charter for the Vessel on behalf of Dry Bulk  to a company

called Trithorn. Mr. Garufi informed Your Affiant that Amis Integrity, through Wisdom Marine, was marketing the vessel on July 11th for its own account. (see screen shot of telephone with Gian Luca Garufi, dated July 11th, attached hereto as Exhibit 4).

19. I immediately thereafter called Thomas Rolin of BRS, the longtime chartering broker for Amis Integrity and Wisdom Marine, to ascertain whether Amis Integrity, through Wisdom Marine, had, in fact, withdrawn the Vessel from 24 Vision on July 11th and the reason therefor. Mr. Rolin told me he would check with his client, Wisdom Marine and revert.

20. I received a WhatsApp message from Mr. Rolin at about 0535 hours, Greek time (0235 hours GMT) on July 12th, informing me that Wisdom had fixed the Vessel elsewhere with another charterer and that Wisdom Marine did not wish to speak with me about the withdrawal of the Vessel (see screen shots of my WhatsApp discussions with Mr. Rolin attached hereto as Exhibits 5A-C).

21. This was a clear indication to me and both brokers that I was communicating with that Amis Integrity, through Wisdom Marine, had withdrawn the Vessel from 24 Vision before 2400 hours GMT, July 11th, as based on my many years of chartering experience, one cannot negotiate, conclude and enter into a charter party with a third party within two hours of a purported Vessel withdrawal. Consequently, the empirical information and all logical indications are that Wisdom Marine, acting on behalf of Amis Integrity, wrongfully withdrew the vessel from 24 Vision on July 11th, before the grace period had expired under their relevant charter party.

22. Amis Integrity has submitted as part of its opposition papers a purported "Notice of Withdrawal" e-mail from Wisdom Marine/Amis Integrity to 24Vision and others at 1354 hours Taiwan time (0854 hours Greek time and 0554 hours GMT) July 12th (see Jang

Declaration, Exhibit 3). However, Mr. Rolin, Wisdom Marine's broker, had confirmed to

me that Wisdom Marine/Amis Integrity had a clean fixture with a third-party charterer

(believed to be United Bulk Carriers, a Philadelphia based shipping company), three (3)

hours (0535 Greek time and 0235 GMT) before the purported Notice of Withdrawal was

given to 24Vision. As stated above, it is implausible that a fixture was negotiated and

concluded in two (2) hours' time after the grace period expired at midnight GMT, July 11th,

in the middle of the night, with a charterer, United Bulk Carriers, located in the United

States. The more plausible explanation as supported by the empirical evidence, was that the

fixture with the third-party charterer was concluded sometime on July 11th before the grace

period had expired. As such, the chartering of the Vessel to a third-party before the

expiration of the grace period would be an unlawful withdrawal of the Vessel from Dry

Bulk's service.

23. Moreover, a closer review of the purported "Notice of Withdrawal" (Jang Declaration

Exhibit 3) appears to indicate that the e-mail addresses listed therein lack the customary

blue highlighting and underlining of e-mail addresses when they are actually sent to the

recipients. As such, this document appears to have been prepared after the fact, but not

actually sent, to give the impression that the Notice of Withdrawal occurred on July 12th

(after the grace period expired) when, in fact, the Vessel has been fixed on July 11th to a

third party before the grace period had expired.

24. The withdrawal of the Vessel from the service of 24 Vision before 2400 hours GMT, July

11th by Amis Integrity is a breach of the Amis Integrity charter party and a wrongful

withdrawal by Amis Integrity of the Vessel from the service of Dry Bulk which had pre-

paid hire through July 23rd.

25. Dry Bulk had sub-chartered the Vessel to accompany called Trithorn for one voyage from
Argentina to a port in the Mediterranean (see copy of Dry Bulk/Trithorn clean fixture dated
July 11th, 2019 attached hereto as Exhibit 6)

26. At the time of the wrongful withdrawal of the vessel by Amis Integrity from Dry Bulk's
service, Amis Integrity and Wisdom Marine were fully aware that Dry Bulk was arranging
for a sub-charter of the Vessel from Argentina to a port in Europe, as the Vessel's Master
was receiving regular messages from Dry Bulk directing the vessel to Recalada, Argentina
to pick up a cargo of soybeans and other bulk commodities for discharge at a Mediterranean
port. (see messages to Master of the AMIS Integrity dated May 31st, June 15th and July
10th, 2019 attached hereto as Exhibits 7A-C, respectively).

27. The Master of a vessel always acts as the agent of the Owner, in this case, Amis Integrity, in
respect to the receipt of messages directing the Vessel to a particular port. Amis Integrity
and Wisdom Marine knew or should have known of the existence of the sub-charter to
Trithorn from the regular messages sent to the Vessel's Master by Dry Bulk.

28. At the time of the wrongful withdrawal by Amis Integrity, the charter hire rates for Atlantic
Ocean loadings had increased substantially. The hire rates starting in the period June/July
for Atlantic Ocean loadings had increased from the daily hire equivalent of $26,000 to
$31,000 for vessels operating in the Mediterranean to the Far East, a nine-year high. (see
reports of The Baltic Exchange Freight Market Review, an industry accepted publication for
the charter rates for the June/July, 2019 time period for Atlantic Ocean loadings attached
hereto as Exhibits 8A and 8B).

29. As a result, Amis Integrity was motivated to unlawfully and wrongfully withdraw the vessel
from 24 Vision and Dry Bulk. Upon information and belief, Amis Integrity, through

Wisdom Marine on or about July 11th chartered the Vessel to a company called United Bulk

Carriers at $16,000 hire per day, plus a $600,000 ballast bonus for one voyage out a port in

South America East Coast (where Dry Bulk had previously directed the Vessel) for a profit

of $800,000 over and above what they would have received from 24 Vision under the Amis

Integrity/Amis Vision charter party.

30. As a result of the wrongful withdrawal of the Vessel by Amis Integrity and tortious

interference of its contract with 24Vision, Dry Bulk was deprived of the calculated profit it

expected under the Trithorn charter in the sum of $379,500, as well for at least two

additional charters before the expiration of the 24Vision/DB charter party in the sum of

$560,000 and $1,920,00, respectively, together with the pre-paid unearned charter hire of

$180,000 and unreimbursed pre-paid port fees ($16,437.90 and SGD $3,622.18) and hire

paid for wasted in ballast voyage to South America ($705,000) for a total calculated loss of

$3,760,938. (*see pars. 20 and 21 of Verified Complaint*).


I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF

OREGON AND THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE

ANDCORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED THIS 21ST DAY OF OCTOBER, 2019.

_____

STAVROS TSOLAKIS