Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Phone:     206-623-4990
Facsimile: 206-467-4828
Email: moberg@legros.com
Email: dpark@legros.com
Attorneys for Movant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-1671-BR <br><br> IN ADMIRALTY <br><br> REPLY IN SUPPORT OF DEFENDANT'S MOTION TO VACATE ARREST AND FOR ATTORNEY'S FEES, AND EXPENSES FOR WRONGFUL ARREST |

## I. **SUMMARY OF REPLY**

The following facts are undisputed. The parties do not dispute that Amis Integrity, S.A. ("AMIS"), as owner, chartered the M/V AMIS INTEGRITY to 24VISION (the "Head Charter"). Opposition at 2 (Dkt. #27). The parties do not dispute that 24VISION sub-chartered the Vessel to Plaintiff (the "Sub-Charter"). Opposition at 2. Plaintiff does not

dispute that the Head Charter contained a prohibition-of-lien clause. Tsolakis Decl. ¶ 3 (Dkt. #31). Likewise, Plaintiff does not dispute that 24VISION failed to make hire payments under the Head Charter in the amount of USD $208,650,[1] that AMIS provided 24VISION valid notice of its intent to withdraw the Vessel if 24VISION failed to pay the overdue hire within a 3-day grace period,[2] or that 24VISION failed to pay the overdue hire to avoid withdrawal of the Vessel.

With the record now before the Court, there can be no dispute that AMIS's withdrawal of the Vessel from the Head Charter was valid; in addition, Plaintiff had notice of the prohibition-of-lien clause before proceeding with the arrest.

In order to maintain the arrest, Plaintiff must show that it has a valid maritime lien against the Vessel. *Monjasa A/S v. M/V Peristil*, No. 3:12-cv-01489-BR, 2013 U.S. Dist. LEXIS 82583, at *13 (D. Or. June 12, 2013) (Brown, J.). Plaintiff cannot sustain this burden because AMIS's withdrawal of the Vessel complied with the terms of the Head Charter, and the prohibition-of-liens clause in the Head Charter prevents Plaintiff from acquiring a lien against the Vessel. With respect to the validity of AMIS's withdrawal, Plaintiff's own solicitor acknowledges that the withdrawal was proper if made on or after July 12, 2019 at 00:01 GMT. The undisputed record shows that AMIS notified 24VISION of the withdrawal on July 12, 2019 at 05:56 GMT. The withdrawal was valid. Moreover, *Cardinal Shipping Corp. v. M/S SEISHO MARU*, 744 F.2d 461 (5th Cir. 1984), clearly holds that a sub-charterer does not acquire a valid maritime lien against the vessel in identical circumstances where the head charter contains a prohibition-of-lien clause.

---

[1] *See* Jang Decl. ¶ 6, Ex. 2 (Dkt. #19-2); Opinion of Dominic John Ward ("Ward Opinion") ¶ 9 (Dkt. #30-2).

[2] Ward Opinion ¶ 14 (Dkt. #30-2).

Meanwhile, the Vessel, which is fully loaded with grain and ready for shipment, has been arrested since October 17, 2019 (*See* Affidavit of Service; Dkt. #16) and has already incurred at least $160,000 in fees/expenses. AMIS will continue to incur fees/expenses of $20,000, not including attorney's fees, each day the Vessel remains wrongfully detained at Vancouver, Washington.

Any grievance Plaintiff may have with 24VISION regarding 24VISION's withdrawal of the Vessel under the Sub-Charter is a dispute between Plaintiff and 24VISION. 24VISION's alleged violation of the Sub-Charter does not provide Plaintiff with a claim against AMIS, a non-party to the Sub-Charter, or a maritime lien or probable cause to arrest the Vessel. Accordingly, Defendant's Motion to Vacate should be granted,[3] and the Vessel should be immediately released.

## II. ARGUMENT

### A. AMIS Properly Withdrew the Vessel Under the Head Charter.

All of Plaintiff's causes of action (tortious interference, conversion, and unjust enrichment) are predicated upon its allegation that 24VISION improperly withdrew the Vessel under the Sub-Charter. Complaint ¶¶ 12-15. Plaintiff's Complaint, however, conveniently ignores whether AMIS's withdrawal of the Vessel from 24VISION under the

---

[3] There is no dispute that the parties conferred prior to the motion. Plaintiff's counsel challenges the sufficiency of that conference based on the unfounded contention that this is a dispositive motion requiring a discussion of each claim, defense, or issue. Counsel ignores the express exception in the local rule for motions for temporary restraining orders. LR 7-1(a)(1). Such motions, which typically seek a show cause hearing, are far more analogous to the unique Rule E(4)(f) rights of the party who's property has been subjected to arrest. Indeed, under Rule E(4)(f), such party "shall be entitled" to a prompt hearing at which the plaintiff shall be required to show cause. Rule E(4)(f). The right to a hearing is express in the Rule, and no motion conference requirement applies. *See id.* Nonetheless, when the parties conferred by telephone and email regarding whether the vessel had been arrested and the quantum of any security, there was no doubt that Plaintiff's counsel had no intend of compromising his position. *See* Supplemental Oberg Declaration ¶ 2.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO VACATE
ARREST - Page 3
[Case No. 3:19-cv-1671-BR]

terms of the Head Charter was proper. The record shows that AMIS's withdrawal fully complied with the terms of the Head Charter.

Clauses 11(a) and 11(b) of the Head Charter Party state in relevant part:

> (a) <u>Payment</u>
>
> . . . .
>
> **<u>Failing the punctual and regular payment of the hire</u>**, or any fundamental breach whatsoever of this Charter Party, **<u>the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers</u>** without prejudice to any claims they (the Owners) may otherwise have on the Charterers. . . .
>
> (b) <u>Grace Period</u>
>
> **<u>Where there is a failure to make punctual and regular payment of hire</u>** due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, **<u>the Charterers shall be given by the Owners . . . . 3 (three) . . . . clear banking days (as recognized at the agreed place of payment) written notice to rectify the failure</u>**, and when so rectified within those *. . . . 3 (three) . . . .* days following the Owners' notice, the payment shall stand as regular and punctual.
>
> **<u>Failure by the Charterers to pay the hire within those . . . . 3 (three) . . . . of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in Sub-Clause 11(a) above.</u>**

Jang Decl. ¶ 4, Ex. 1 (emphasis added) (Dkt. #19-1); Nolan Decl. ¶ 3, Ex. 1 (Nolan Opinion ¶ 6) (Dkt. #20-1).

Plaintiff does not dispute that 24VISION failed to pay charter hire under the Head Charter or that AMIS provided valid written notice of AMIS's intent to withdraw the Vessel on July 8, 2019 at 17:29 China Standard Time ("CST") / 09:29 GMT. Jang Decl. ¶ 6, Ex. 2; Nolan Opinion ¶ 10; Ward Opinion ¶ 14. After 24VISION failed to pay the overdue hire, AMIS notified 24VISION of its withdrawal of the Vessel on July 12, 2019 at 13:56 CST / 05:56 GMT. Jang Decl. ¶ 7, Ex. 3.

As explained by barrister Michael Nolan, Q.C., under the terms of the Head Charter Party, the "Owners became entitled to withdraw the vessel from the service of the Charterers on the 12th July 2018 [sic], 3 clear banking days having elapsed since they sent the grace period notice." Nolan Opinion ¶ 14 (citing Clause 11(b)). The opinion of solicitor Dominic John Ward, which Plaintiff offers in opposition, specifically states, "I do not disagree with the conclusion that save that in my opinion, the right to withdraw the vessel only arose at 00:01 hours <u>GMT</u> on 12 July." Ward Opinion at 14 (Dkt. #30-2). Solicitor Ward's conclusion that AMIS's withdrawal was premature is based on incorrect information. Ward Opinion ¶ 15 ("I am instructed that the withdrawal of the vessel by the Owners from the Charterers occurred prior to 00:01 hours GMT on 12 July 2019[.]").

Regardless whether Solicitor Ward's remaining statements about English law set forth in his Opinion are correct, Barrister Nolan, Solicitor Ward, and the parties do not dispute that AMIS certainly had the absolute right to withdraw the Vessel on or after July 12, 2019 at 00:01 GMT. The clear evidence shows that AMIS in fact withdrew the Vessel on July 12, 2019 at 05:56 GMT. Jang Decl. ¶ 7, Ex. 3 (Dkt. #19-3). Accordingly, AMIS's withdrawal of the Vessel was valid and lawful and does not support Plaintiff's tort claims or entitle Plaintiff to assert a maritime lien against the Vessel.

While Plaintiff laments that it was not notified of 24VISION's default so "hire payments due and owing under the Amis/24Vision charter party agreement could have been paid directly to Amis from Plaintiff Dry Bulk," Opposition at 12, Plaintiff cites no provision within the Head Charter Party *requiring* AMIS to give Plaintiff an opportunity to remedy 24VISION's default. Again, AMIS never contracted with Plaintiff. The only parties to the Head Charter were AMIS and 24VISION.

**B. The Prohibition-of-Lien Clause in the Head Charter Precludes Plaintiff's Claim of Lien.**

Plaintiff's Opposition misstates the law and the facts.

Plaintiff misstates the law. *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461 (5th Cir. 1984), does <u>not</u> require "actual" knowledge. Opposition at 12. To the contrary, *Cardinal* holds: "The party entering a contract has a duty of inquiry." *Cardinal*, 744 F.2d at 470 (citing Gilmore & Black, at 672, 687-88). Indeed, Plaintiff bears the burden of showing that a reasonable inquiry would not have brought the anti-lien clause to surface." *Id.* at 471. Because Plaintiff cannot meet this burden "so its lien must likewise fail." *Id.*[4]

Plaintiff misstates the facts. Plaintiff contends that "the terms of the Head Charter between AMIS and 24VISION were never disclosed to Plaintiff and there was never any notice provided . . . ." Opposition at 13. Plaintiff's own Exhibit 1 to its Complaint (Dkt. #1-2) establishes that Plaintiff (a) was aware of the Head Charter, which is sufficient to satisfy the notice requirement,[5] and (b) that Plaintiff actually received a copy of the Head Charter, insomuch as the Head Charter is expressly referenced in the Recap of the 24VISION/DRY

---

[4] The other cases Plaintiff relies upon to attempt to distinguish *Cardinal* do not support Plaintiff's position. *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988), is not applicable. That case involved a lien for necessaries asserted by a supplier. Indeed, in *Cardinal*, the Fifth Circuit distinguished such liens as treated differently (under the 1971 amendment to the Marine Lien Act), and held that a sub-charterer in fact has a duty of inquiry. *Cardinal,* 744 F.2d at 471. Likewise, *Caribbean Maritime Finance Co. v. Marine Mercante Nicaraguense, S.A.*, 470 F.2d 277 (5th Cir. 1972), is not applicable. The owner was deemed to have authorized expenses for its vessel and thus authorized the lien. Here, the case law clearly establishes (over the last 35 years) that a sub-charterer cannot assert a maritime lien in these circumstances. *See* Motion to Vacate at 3.

[5] *See MMI International, Inc. v. M/V SKYROS*, 1991 AMC 1264, 1268 (N.D. Cal. 1991) (notice of prohibition-of-lien clause held satisfied where sub-charterer could have by reasonable diligence ascertained vessel already under charter).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO VACATE
ARREST - Page 6
[Case No. 3:19-cv-1671-BR]

{29293-00551226;1}

BULK Sub-Charter that Plaintiff attached to its Complaint. *See* Dkt. #1-2, p. 10 ("Otherwise as per Owner Pro Forma Charter Party as attached . . . .").

This misrepresentation is particularly troubling given that Plaintiff cites and is relying upon paragraph 11(b), Complaint ¶13 (Dkt #1); and Plaintiff admits the same clause existed in Sub-Charter. Tsolakis Decl. ¶13 (Dkt. #31).

Likewise, Plaintiff's contention that the prohibition-of-lien clause at issue applies only to third party services is utterly unfounded. Opposition at 13. First, the language in the clause relied upon here is virtually identical to that endorsed in *Cardinal* as effective to preclude any lien by the sub-charterer. *Compare* Jang Decl. ¶ 23, Ex. 1 *to Cardinal* 744 F.2d at 469 n.11. This same prohibition-of-lien clause language was held effective by the Second Circuit in *The Lucie Schulte*. *Cardinal*, 744 F.2d at 469. Second, the language Plaintiff appears to be referring to is expressly limited to third-party suppliers, and even then requires owners' approval. This portion of the clause is completely irrelevant here.[6] *See* Supplemental Declaration of Michael Nolan.

The argument advanced by Plaintiff's English solicitor Ward addresses only the third party context of the second part of the prohibition-of-lien clause, and fails to address the material language endorsed by the Second and Fifth circuits as effective to bar a lien claim by a sub-charterer. *See Cardinal*, 744 F.2d at 469; Supplemental Nolan Decl. ¶¶ 4-5.

---

[6] Likewise, *Roberts v. Echternach*, 302 F.3d 370 (5th Cir. 1962), is not applicable. Similar to *Marin Fuel Supply* (which relied on *Roberts*), this case deals with an owner binding the vessel, in this case by requesting a prospective charter to do work on the vessel. It was no bearing on the issued before the court. In fact, the court warned it was unique and should not be interpreted as laying down any new principles, or extending or restricting those of long standing. *Id.* at 371. *Inland Credit Corp. v. M/V Bow Egret*, 552 F.2d 1148 (5th Cir. 1997), does not even involve a prohibition of lien clause. This case centers on lien rights and priorities in the context of financing and sales.

Finally, Plaintiff attempts to distinguish *Cardinal* based on the nature of the charter party involved; however, Cardinal involved both time charters and a voyage charter and the court's decision did not turn on the nature of the charter party. The decision turned on a sub-charterer's failure to meet its payment obligations, and the Court held inviolate the right to withdraw the vessel from the charter in this circumstance. *See Cardinal*, 744 F.2d at 468. The two cases cited in support (*E.A.S.T. Inc. of Stamford* and *Bank One La. V. Dean*) did not involve a withdrawal or a prohibition of lien clause.

C. **Plaintiff Cannot Establish Its Burden to Maintain Arrest of the Vessel.**

Plaintiff acknowledges that it bears the burden of proving its entitlement to a continued attachment. Opposition at 8; *see also Monjasa A/S*, 2013 U.S. Dist. LEXIS 82583, at *11 (Brown, J.) ("Under Rule E(4)(f), the 'plaintiff has the burden 'to show why the arrest . . . should not be vacated.'").

Although Plaintiff is not required to prove its case at a Rule E(4)(f) hearing, Plaintiff's burden is not to be taken lightly. "Rule E(4)(f) was 'designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings'" *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 102 (2d Cir. 2009) (citing Advisory Committee's Notes to 1985 Amendment). "[A]t a post-attachment hearing, both parties can present additional evidence, including testimony and affidavits, allowing the court to review a more complete record in order to decide whether the arrest should continue or be vacated." *S & S Diesel Marine Servs. v. M/V F-Troop*, No. 11-60020-CIV-ZLOCH/ROSENBAUM, 2011 U.S. Dist. LEXIS 53808, at *27 (S.D. Fla. May 18, 2011). Courts routinely vacate

arrests where the plaintiff fails to meet its burden under Rule E(4)(f). *Lion De Mer S.A. v. M/V Loretta D*, CIVIL NO. L-98-921 IN ADMIRALTY, 1998 U.S. Dist. LEXIS 10182, at *6 (D. Md. Apr. 3, 1998) (granting defendant's motion to quash arrest where plaintiff failed to show that it is entitled to a maritime lien).

**D.     No Further Discovery Is Required to Vacate the Arrest.**

No amount of discovery will change the fact that AMIS's withdrawal of the Vessel complied with the terms of the Head Charter or the Head Charter contains a prohibition-of-lien clause that precludes Plaintiff from acquiring a lien against the Vessel. Plaintiff asserts that there are "critical questions of fact" with respect to the timing of AMIS's withdrawal "despite hire being prepaid through July 23, 2019[.]" Plaintiff's alleged pre-payment of hire, however, relates to the Sub-Charter. The effect of the prohibition-of-lien clause is a legal question—no discovery is needed for the Court to address that issue. Moreover, the Declaration of Stavros Tsolakis, which Plaintiff also relies upon to support its request for post-attachment discovery, is filled with inadmissible hearsay and wild speculation. *E.g.* Tsolakis Decl. ¶¶ 18, 20 (referencing Skype and WhatsApp conversations with non-parties); ¶ 21 (speculating that AMIS withdrew the Vessel from 24VISION before July 11, 2019 at 2400 GMT based on his "many years of chartering experience"); ¶ 23 (speculating that AMIS never sent the withdrawal notice due to the lack of "blue highlighting and underlining of e-mail addresses").[7] Mr. Tsolakis' declaration, however, does show that Plaintiff learned of AMIS's withdrawal at or near the time it occurred, and had contemporaneous communications with managers, brokers, and other individuals familiar with the transactions. If there was evidence that AMIS's withdrawal was invalid, Plaintiff apparently had the

---

[7] Movant expressly reserves its evidentiary objections to this declaration for trial.

means of obtaining such evidence prior to the arrest.

Given the mounting costs of Plaintiff's wrongful arrest, Plaintiff's request for post-arrest should be denied unless Plaintiff can articulate what specific discovery will establish probable cause to maintain the arrest. *Mason Agency, Ltd. v. Eastwind Hellas SA*, 2009 U.S. Dist. LEXIS 89927, at *19-20 (S.D.N.Y. Sep. 29, 2009) (holding plaintiff's request for "fact discovery prior to vacatur is unwarranted" because it "manifestly failed to carry its burden of proof under Supplemental Rule E(4)(f)"). Thus far, Plaintiff has offered only conjecture and conspiracy theories—the Vessel should not be detained further while Plaintiff engages in a fishing expedition with the hopes of somehow acquiring evidence to bolster its claims.

Finally, even if the Court was inclined to allow some post-arrest discovery, AMIS has made arrangements for a representative to travel from Taiwan to attend the Rule E(4)(f) hearing who, if needed, can authenticate records and testify about AMIS's withdrawal of the Vessel from 24VISION under the Head Charter and AMIS's damages with respect to Plaintiff's wrongful arrest.

**E.  AMIS is Entitled to Attorney's Fees and Costs Due to Plaintiff's Wrongful Arrest.**

The record now before the Court establishes that Dry Bulk had no basis for a maritime lien and knew it had no basis for a lien claim against owners, yet proceeded with the arrest.

As stated, even Dry Bulk's English Solicitor acknowledges that withdrawal after 00:01 GMT on July 12 would be valid. While his is a constrained and erroneous reading of the charter party as to the grace period time zone, even under his reading the withdrawal at 13:56 (05:56 GMT) on July 12 was valid. This was information available to Dry Bulk from the

outset. This information establishes a valid withdrawal and precludes any lien by Dry Bulk. *See*, *Cardinal*, 744 F.2d at 467-470. Yet, Dry Bulk pursued the arrest action.

Perhaps even more troubling, the prohibition-of-lien clause was readily available to Plaintiff and its counsel, and Plaintiff was therefore on notice of the prohibition on any lien. *See Cardinal*, 744 F.2d at 470; *MMI International*, 1991 AMC at 1268 (notice of prohibition-of-lien clause held satisfied where sub-charterer could have by reasonable diligence ascertained vessel already under charter). Here, as stated at Dkt. #18 (Motion) at p. 7, Dkt #1-2 establishes that the Vessel was being chartered by 24Vision, identified AMIS as the owner, and Wisdom Marine Lines as managers. Most important, the owners charter party was attached to the Recap. See Dkt #1-2, p. 10 ("as per Owners Pro Forma Charter Party as attached.") This charter party was not produced to the Court with the Verified Complaint.

Plaintiff attempts to shield itself behind its counsel, Opposition at 15 (Dkt. #27) (advise of competent counsel a defense); however, where the arresting party had access to all the relevant information and fails to provide this to counsel it cannot rely on the advice of counsel defense. *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 2015 AMC 1978, 1993 (5th Cir. 2015).

In addition, Dry Bulk delayed the arrest to force payment from owners. The public record shows that the vessel entered U.S. waters on October 10, 2019, yet Plaintiff delayed the arrest until October 17, 2019, when the vessel was scheduled to leave for Panama. *See* Suppl. Oberg Decl., Ex. 1. If Plaintiff was acting in good faith, it would have initiated the arrest one week earlier and this motion could then have been resolved without any delay in the vessel's schedule and without additional costs being incurred by owners.

There is ample support for a finding or bad faith, malice, or gross negligence, and

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO VACATE
ARREST - Page 11
[Case No. 3:19-cv-1671-BR]

{29293-00551226;1}

owners are entitled to an award of costs and fees incurred.

**F.      Plaintiff's Demand for Security is Unjustified and Excessive.**

The Vessel should be immediately released because Plaintiff cannot sustain its burden of showing probable cause to maintain the arrest.  Even if the Court disagrees, and finds that AMIS must post alternate security to obtain the release of the Vessel, Plaintiff's request for substitute security in excess of $5 million, Complaint ¶ 34, is completely unfounded.  If the parties are unable to stipulate to the amount of security, Rule E(5)(a) provides that the Court "shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim **<u>fairly stated</u>** with accrued interest and costs[.]"  (emphasis added).  For good cause shown, the Court may "reduce the amount of security given[.]"  Fed. R. Civ. P. Supp. A. R. E(6).

A claim is not "fairly stated" if it is speculative.  *See, e.g., Blueye Navigation v. Oltenia Navigation*, 94 Civ. 2653 (LAP), 1995 U.S. Dist. LEXIS 1844, at *5 (S.D.N.Y. Feb. 15, 1995) (noting that the amount of security was reduced where court found that plaintiff's claim was "speculative"); *Barnett Bank, N.A. v. Tug Chauncey*, No. 98-848-Civ-J-21A, 1999 U.S. Dist. LEXIS 23602, at *13 (M.D. Fla. July 14, 1999) (finding that mere projections or estimates are not "fairly stated" for the purposes of Rule E(5)).  In determining the amount of security, the Court must also be "satisfied that the Plaintiff's claims are not frivolous." *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 111 (2d Cir. 2009).  The Court weighs the "reasonableness of plaintiff's damages claim when setting a security under Rule E(5) and may weigh this and other equitable considerations when evaluating whether good cause exists to reduce a security under Rule E(6)." *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO VACATE
ARREST - Page 12
[Case No. 3:19-cv-1671-BR]

{29293-00551226;1}

F.3d 96, 111 (2d Cir. 2009).

Again, Plaintiff's underlying causes of action are all predicated upon the false assertion that AMIS's withdrawal of the Vessel was improper. Plaintiff's claims are fatally flawed, so the "fairly stated" value of its claims is zero. *See E.A.S.T., Inc. of Stamford v. M/V Alaia*, 673 F. Supp. 796, 803 (E.D. La. 1987) (noting that "may not assert a lien for loss of future, speculative profits from subcharters not yet entered into.").

However, even if one were to assume that Plaintiff could acquire a maritime lien due to AMIS's withdrawal of the vessel, Plaintiff's Complaint shows that his alleged damages are wholly speculative and unsubstantiated. Plaintiff's requested security is apparently based upon the 1.5 times the expenses and lost profits it expected to receive from its own sub-charter with Trithorn. Complaint ¶ 20. According to its Complaint, Plaintiff had fixed a 33-day sub-charter with Trithorn, providing estimated lost profits of $379,500, at the time of the allegedly wrongful arrest. *Id.* Plaintiff asserts, without evidence, that it could have secured "additional voyages" providing $1,752,000 of additional lost profits. Complaint ¶ 21. Plaintiff also asserts damages of $1,629,438 for various expenses, such as pre-paid charter hire (paid to 24VISION). Tsolakis Decl. ¶ 30 (Dkt. #31). Of course, Plaintiff has never substantiated these speculative damages by establishing that it could have secured additional voyage charters. Plaintiff likewise provides no evidence that AMIS received the pre-paid hire or other expenses Plaintiff allegedly paid to 24VISION.

Because Plaintiff's claims are speculative, unsubstantiated, and frivolous, security should not be set anywhere close to $5 million. Indeed, given the overwhelming evidence that Plaintiff's arrest of the vessel was wrongful, Plaintiff should be required to post counter-security if the Court is not inclined to vacate the arrest and release the Vessel. *See* Fed. R.

Civ. P. Supp. A. R. E(7) (authorizing the court to set security for a counterclaim that "arises from the transaction or occurrence that is the subject of the original action[.]").

### III. CONCLUSION

For all the reasons set forth above and in Defendant's initial motion, Defendant's Motion to Vacate should be granted, and the Vessel should be released immediately.

DATED this 22nd day of October, 2019.

>LE GROS, BUCHANAN & PAUL
>
>By: *s/ Markus B.G. Oberg*
>    MARKUS B.G. OBERG, OSB #112187
>
>By: *s/ Daniel J. Park*
>    DANIEL J. PARK, OSB #132493
>    4025 Delridge Way SW, Suite 500
>    Seattle, Washington 98106-1271
>    Phone: 206-623-4990
>    Facsimile: 206-467-4828
>    Email: moberg@legros.com
>    Email: dpark@legros.com
>
>Attorneys for Movant Amis Integrity, S.A., by restricted appearance

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-l(c), or 54-3(e) because it does not exceed 11,000 words, or in the alternative, 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO VACATE
ARREST - Page 15
[Case No. 3:19-cv-1671-BR]

{29293-00551226;1}

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to The Honorable Anna J. Brown along with all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 22nd day of October, 2019.

*s/ Shelley Courter*
Shelley Courter, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone:    206-623-4990
Facsimile:    206-467-4828
E-mail:    scourter@legros.com
