Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Phone:     206-623-4990
Facsimile: 206-467-4828
Email: moberg@legros.com
Email: dpark@legros.com
Attorneys for Defendant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-01671-BR <br><br> IN ADMIRALTY <br><br> **MOTION FOR COUNTER SECURITY** |

### I.    MOTION

Amis Integrity S.A., by restricted appearance under Supplemental Admiralty Rule E(8), respectfully moves this Court pursuant to Supplemental Admiralty Rule E(7) for an Order requiring Plaintiff Dry Bulk Singapore Pte Ltd., to post counter security in the amount

of at least $350,000. Not only does Rule E(7) mandate counter security, counter security is required to place the parties on an equal footing and to provide security to satisfy a judgment.

In compliance with LR 7-1(a), Movant's counsel confirms that the parties made a good faith effort through telephone conference on December 9, 2019, to resolve the dispute and have been unable to do so.

## II.     INTRODUCTION

Plaintiff Dry Bulk Singapore, Ltd., is a foreign corporation registered in Singapore. *Complaint* (Dkt. #1), ¶3.  Upon information and belief, Dry Bulk has no assets and no presence in this District for purposes of satisfying a judgment against it.

On October 17, 2019, Dry Bulk filed a Verified Complaint and *ex parte* request for the Court to issue a warrant for the arrest of the M/V AMIS INTEGRITY to commence this action. Dry Bulk alleged a maritime lien based on Amis Integrity S.A.'s allegedly wrongful withdrawal of the vessel from Amis's charter party with third party 24Vision Chartering Solutions (the "Head Charter"); that the allegedly wrongful withdrawal constituted tortious interference with a sub-charter between Dry Bulk and 24Vision;[1] and that Amis retained advance charter hire payments made by Dry Bulk.  Dry Bulk's allegations were based on unfounded, conclusory statements.  On October 17, 2019, the M/V AMIS INTEGRITY was arrested based on Dry Bulk's *ex parte* request.[2]

Dry Bulk's arrest of the M/V AMIS INTEGRITY was done in bad faith, with malice, or gross negligence.  Dry Bulk did not have a maritime lien against the Vessel and had full

---

[1] The elements of a claim for tortious interference include "intent to interfere." *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-cv-209 (VLB), 2010 U.S. Dist. LEXIS 22425, at *52 (D. Conn. Mar. 11, 2010).

[2] Process has not been served on *in personam* defendant Amis Integrity S.A.

knowledge of this fact when it initiated this action and obtained the arrest order from this Court. Specifically, Dry Bulk knew that Amis had withdrawn the Vessel from its charter with 24Vision, and knew or should have known that this withdrawal was valid. Indeed, there is no dispute that under Paragraph 11 of the Head Charter Amis had an absolute right to "withdraw the Vessel from the service of Charterers" if 24Vision failed to timely make hire payments. Ex. 1 to *Jang Decl*. (Dkt. #19-1), ¶11; *Nolan Opinion* (Dkt. #20-1), ¶6.

Thus, both Dry Bulk's claims against M/V AMIS INTEGRITY and Amis's counterclaim turn on the validity of this withdrawal under the Head Charter.

The record shows Amis's withdrawal fully complied with the terms of the Head Charter.

Clauses 11(a) and 11(b) of the Head Charter Party state in relevant part:

> (a) <u>Payment</u>
> . . . .
> **<u>Failing the punctual and regular payment of the hire</u>**, or any fundamental breach whatsoever of this Charter Party, **<u>the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers</u>** without prejudice to any claims they (the Owners) may otherwise have on the Charterers. . . .
>
> (b) <u>Grace Period</u>
> . . . .
> **<u>Failure by the Charterers to pay the hire within those . . . . 3 (three) . . . . of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in Sub-Clause 11(a) above.</u>**

Ex. 1 to *Jang Decl*. (Dkt. #19-1) (emphasis added); *Nolan Opinion*. (Dkt. #20-1), ¶6.

Dry Bulk does not dispute that 24Vision failed to pay charter hire under the Head Charter or that on July 8, 2019 at 17:29 China Standard Time ("CST") / 09:29 GMT Amis provided valid written notice of its intent to withdraw the Vessel. Ex. 2 to *Jang Decl*. (Dkt.

#19-2); *Nolan Opinion* (Dkt. #20-1), ¶10; *Ward Opinion* (Dkt. #30-2), ¶14.

As explained by barrister Michael Nolan, Q.C., under the terms of the Head Charter, the "Owners became entitled to withdraw the vessel from the service of the Charterers on the 12th July 2018 [*sic*], 3 clear banking days having elapsed since they sent the grace period notice." *Nolan Opinion* (Dkt. #20-1), ¶14 (*citing* Clause 11(b)). Dry Bulk's solicitor agrees: "I do not disagree with that conclusion save that in my opinion, the right to withdraw the vessel only arose at 00:01 hours GMT on 12 July." *Ward Opinion* (Dkt. #30-2), ¶14.

Solicitor Ward's conclusion that Amis's withdrawal was premature is based on incorrect information. *Ward Opinion* (Dkt. #30-2), ¶15 ("I am instructed that the withdrawal of the vessel by the Owners from the Charterers occurred prior to 00:01 hours GMT on 12 July 2019[.]"). The record establishes the withdrawal occurred on July 12, 2019 at 05:56 GMT (13:56 CST). Ex. 3 to *Jang Decl*. (Dkt. #19-3). Accordingly, Amis's withdrawal of the Vessel was valid and lawful and there is no support for Dry Bulk's tort claims or alleged entitlement to assert a maritime lien against the Vessel.

Dry Bulk also knew or should have known that the charter party between Amis and 24Vision contained a no-lien clause, precluding any maritime lien against the Vessel by Dry Bulk, *see Tsolakis Decl*. (Dkt. #31), ¶¶11 and 13; and knew or should have known that Amis never received any charter hire payment and was in no position to return or refund any hire. *Id*., ¶¶ 14-17 (payment made to 24Vision, not Amis).

Amis, by restricted appearance, sought to vacate the arrest and requested counter security. Dkt. #18, pp. 1, 2, and 11. Amis's motion was withdrawn without prejudice. Dkt. #41. Amis (on behalf of *in rem* Defendant M/V AMIS INTEGRITY) has now answered the Complaint and asserted a counterclaim for wrongful arrest. Dkt. #46.

To date, the total cost incurred by Amis as a result of the wrongful arrest is $298,951.05, excluding attorney fees and costs. *Declaration of C. Tsao* ("*Tsao Decl.*"), ¶3.

At the time of Dry Bulk's arrest of the Vessel on October 17, 2019, the M/V AMIS INTEGRITY was under charter to The China Navigation Company Pte. Ltd. ("CNCO"), and scheduled to transport grain cargo for a third party. *Id.*, ¶4; Ex. 1 to *Tsao Decl.*

Under the charter with CNCO, the daily charter hire rate was $14,000, *id.*, ¶7; Ex. 1 to *Tsao Decl.*, Article 8; and as a result of the arrest Amis lost 8.1583333 days of charter hire, or $114,216.67. Ex. 2 to *Tsao Decl.*

In addition to the loss of charter hire, Owners incurred costs for bunkers consumed while the vessel was off-hire/under arrest in the amount of $16,636.10. *Id.*; *Tsao Decl.*, ¶10.

Amis also incurred an additional $4,139.70 for cost associated with deviation for bunkers, and an additional related loss of charter hire in the amount of $18,083.33. Ex. 3 to *Tsao Decl.*; *Tsao Decl.*, ¶11.

Amis also incurred $95,765.25 in Port Disbursements through Interport PNW, LLC, relating to pilotage, towage, dockage, and line handling that were necessitated solely as a result of the arrest. *Tsao Decl.*, ¶12; Exs. 4 and 5 to *Tsao Decl.*

In order to secure the release of the vessel from arrest, Amis was forced to post security in the amount of $2,500,000 at a first term premium of 2 percent, or $50,000, along with a $100 additional fee, for a total first term cost of $50,100. *Tsao Decl.*, ¶15.

Amis incurred and continues to incur attorney fees and costs relating to the wrongful arrest, to date in excess of $40,000 in attorney fees and costs, for total costs incurred to date as a result of the wrongful arrest exceeding $340,000. *Id.*, ¶¶16-17.

Nevertheless, as things stand presently, given Dry Bulk's lack of contact with this District, Amis has no assurance whatsoever of collecting on a judgment on its counterclaim.

### III. APPLICABLE LAW

Supplemental Admiralty Rule E(7)(a) of the Federal Rules of Civil Procedure governs security on counterclaims in admiralty actions and states as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given **must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise**. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Fed. R. Civ. P. Supp. Admiralty R. E(7)(a) (emphasis added).[3]

As explained by this Court, "[t]he purpose of Supplemental Rule E(7) is to 'place the parties on a basis of equality as regards security.'" *Swaidan Trading Co., LLC v. M/V Donousa*, No. 3:18-cv-00398-HZ, 2018 U.S. Dist. LEXIS 116821, *3-4, 2018 AMC 2051, 2018 WL 3414317 (D. Or. July 13, 2018) (*quoting Whitney-Fidalgo Seafoods, Inc. v. Miss Tammy*, 542 F. Supp. 1302, 1305 (W.D. Wash. 1982). It is intended as a means by which to remedy a defendant's insecurity with regard to the plaintiff's ability to satisfy a judgment

---

[3] It is an established principle of maritime law that one who suffers a wrongful arrest or attachment may recover damages from the party who obtained the arrest or attachment. *See Furness Withy (Chartering), Inc., Panama v. World Energy Systems Associates, Inc.*, 854 F.2d 410, 411 (11th Cir. 1988) (*citing Consolidated Rail Corp. v. M/T Hoegh Forum*, 630 F. Supp. 83, 88 (E.D. Pa. 1985) (*in personam* attachment); *Ships & Freights, Inc. v. Farr, Whitlock & Co.*, 188 F. Supp. 438, 439 (E.D.N.Y. 1960) (same); *Applewhaite v. S.S. Sunprincess*, 136 F. Supp. 769, 771 (D.N.J. 1956) (same); *Walsh Transp. Co. v. Iroquois Transit Corp.*, 16 F.2d 475, 476 (S.D.N.Y. 1926) (same); *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) (*in rem* attachment); *Incas & Monterey Printing & Packaging, Ltd. v. M/V Sang Jin*, 747 F.2d 958, 964 (5th Cir. 1984) (same), *cert. denied*, 471 U.S. 1117, 105 S. Ct. 2361, 86 L. Ed. 2d 261 (1985); *Ocean Ship Supply, Ltd. v. M/V Leah*, 729 F.2d 971, 974 (4th Cir. 1984) (same); *John W. Stone Oil Distrib., Inc. v. M/V Miss Bern*, 663 F. Supp. 773, 778 (S.D. Ala. 1987) (same)). A party has the right to recover damages for wrongful arrest or seizure in admiralty on a showing of bad faith, malice, or gross negligence. *See Stevens v. F/V BONNIE DOON*, 655 F.2d 206, 209 (9th Cir. 1981) (citation omitted).

awarded by the court. *Whitney-Fidalgo*, *supra*., 542 F. Supp. at 1305. Indeed, the cases generally involve an equitable balancing approach guided by two principles: (1) the intent under Rule E(7) to make the parties equal as regards security; while (2) avoiding imposition of too great a burden on the plaintiff so as to prevent it from bringing suit. *Seaworthy Serv. v. NANEA*, No. 09-5062BHS, 2009 U.S. Dist. LEXIS 40750, *5, 2009 WL 1174654 (W.D. Wash. 2009) (*citing Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 404 (5th Cir. 1987); *Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.,* 56 F.3d 394, 399 (2nd Cir. 1995)); *see also MMI Int'l, Inc. v. M/V SKYROS*, No. C 90-3016 THE, 1991 A.M.C. 1264, 1272 (N.D. Cal. 1991) ("[P]osting countersecurity makes the parties equal unless the original complainant cannot afford it.") (*citing Titan Nav., supra.*, 808 F.2d at 403).

"Nevertheless, courts have found that SAR E(7) 'assumes security will usually be required.'" *Island Tug & Barge Co. v. Barge ProWest II*, No. C13-0031RSM, 2013 U.S. Dist. LEXIS 93058, *3 (*quoting MMI Int'l*, *supra*., 1990 U.S. Dist. LEXIS 19093, 1990 WL 304062 at *6). "[R]ecent decisions of the district courts in this circuit have concluded that the plain language of SAR E(7) creates a presumption in favor of counter-security." *Id.*, 2013 U.S. Dist. LEXIS 93058, *5 (granting motion for counter security and ordering plaintiff to post bond in amount of $250,000) (*citing Seaworthy Service, Inc.,* 2009 U.S. Dist. LEXIS 40750, 2009 WL 1174654 at *2); *see also Seaworthy Service, Inc., supra.*, 2009 U.S. Dist. LEXIS 40750, *8 (ordering counter security in same amount as defendant required to post).

> The purpose is to force litigants to "put their money where there mouth is [*sic*]," so to speak. For example, Judge Learned Hand once required the United States of America to post counter-security on the defendant's cross-libel (today's counterclaim), staying the original action until such security was posted. *See The Gloria,* 267 F. 929, 930-931 (S.D.N.Y. 1919). One can hardly

> imagine a more financially secure plaintiff than the government, yet counter-security was required.

*Continental Shipping, Ltd. v. Telfair Int'l Corp.*, No. 88 Civ. 7257 (MBM), 1990 U.S. Dist. LEXIS 11549, *4-7, 1990 WL 130765 (S.D.N.Y. 1990).

Insecurity is a particular concern where the plaintiff is a foreign corporation with no presence in the District. *Cf. Superior Derrick Servs., LLC v. Lonestar 203*, No. 6:09-0484, 2010 U.S. Dist. LEXIS 61601, *3, 2010 WL 2606234 (W.D. La. 2010) (plaintiff argued counter-security not warranted because it was a Louisiana corporation with substantial assets within the court's jurisdiction and therefore no insecurity with respect to satisfaction of any judgment awarded by the court in defendant's favor); *see also Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318, 326-327 (S.D.N.Y. 2006) (recognizing that a foreign corporation's lack of assets or presence and the substantial risk any judgment against such corporation would be unenforceable justifies imposition of security).

"The burden is on the plaintiff to show that 'good cause exists to relieve the plaintiff of its obligation to provide counter-security.'" *Swaidan Trading Co., LLC*, *supra.*, 2018 U.S. Dist. LEXIS 116821, *3-4 (*quoting Seaworthy Serv. Inc.*, *supra.*, 2009 WL 1174654, at *2).

## IV. ARGUMENT

### A. Claims and Counterclaim Depend on Resolution of Same Underlying Facts.

As this Court recognized in *Swaidan Trading Co., LLC*, where both the claim and the counterclaim depend on resolution of the same underlying factual dispute—here the terms of the Head Charter, Plaintiff's knowledge that the withdrawal from the Head Charter party was valid, its knowledge that there was a no-lien clause in the head charter party, and/or that Amis was never paid—the claim and the counterclaim are logically related, and counter security for the counterclaim (for wrongful arrest) is appropriate. *See Swaidan Trading Co.,*

*LLC, supra.,* 2018 U.S. Dist. LEXIS 116821, *6 (*citing State Bank & Trust Co. of Golden Meadow v. Boat "D.J. Griffin"*, 731 F. Supp. 770, 775 (E.D. La. 1990)).

In *Swaidan Trading Co., LLC*, this Court rejected a request for counter security on the basis that the facts underlying the claim and the counterclaim were unrelated: "the issue of Plaintiff's bad faith, negligence, or malice will not be proven by the facts underlying the breach of contract claim or its theory of alter ego liability." *Swaidan Trading Co., LLC, supra.,* 2018 U.S. Dist. LEXIS 116821, *11. This Court distinguished its facts from those in *State Bank & Trust Co. of Golden Meadow*, *supra*. The Court recognized that counter security was appropriate in *State Bank*, "because both the claim and counterclaim in *State Bank* depended on the validity of the promissory note and execution of a loan. … Thus, '[t]he claim and the counterclaim [were] logically related because they both involve[d] questions of [the individual's] authority to encumber the Boat Operators' assets as well as State Bank's alleged knowledge of that lack of authority." *Swaidan Trading Co., LLC, supra.,* 2018 U.S. Dist. LEXIS 116821, *7.

Here, contrary to the facts in *Swaidan Trading Co., LLC,* Dry Bulk's bad faith, malice, or gross negligence *will* be proven by the same facts that underlie Dry Bulk's claims of interference with contract, conversion, and unjust enrichment—namely the terms of the contract and whether Amis complied with those terms when it withdrew its vessel from the Head Charter; and Dry Bulk's knowledge of these facts, ability to learn these facts, and its knowledge of the no-lien clause in the charter party, which in turn prove that Dry Bulk knew it had no basis upon which to arrest the vessel. As in *State Bank*, both the claim and the counterclaim depend on the validity of the underlying documentation—the withdrawal at issue as well as Dry Bulk's knowledge of that valid withdrawal, in addition to the no lien

clause and the fact that Amis never received timely charter hire payment. The claims and the counterclaim are logically and inextricably linked. For example, valid withdrawal under the contract, and Dry Bulk's knowledge or reasonable ability to learn of the same, defeats Dry Bulk's claims *and* proves Amis's counterclaim. Likewise, there is no dispute that Amis had an absolute right to "withdraw the Vessel from the service of Charterers" if 24Vision failed to timely make hire payments. Ex. 1 to *Jang Decl*. (Dkt. #19-1), ¶11; *Nolan Opinion* (Dkt. #20-1), ¶6. Dry Bulk's knowledge or reasonable ability to learn that 24Vision failed to timely make hire payments thus defeats Dry Bulk's claims *and* proves Amis's counterclaim.

**B.     No Good Cause for Denying Counter Security**.

Counter security would place the parties on equal footing as regards security, *see Swaidan Trading Co., LLC*, *supra*., 2018 U.S. Dist. LEXIS 116821, *3; and is the only means by which to remedy Amis's insecurity with regard to Dry Bulk's ability to satisfy a judgment awarded by this Court. *See Whitney-Fidalgo*, 542 F. Supp. at 1305.

Amis has already been required to post security in the amount of $2,500,000 to satisfy any judgment against it; it is only fair that Dry Bulk be required to provide security for any judgment against Dry Bulk. *See e.g. Seaworthy Serv.*, *supra*., 2009 U.S. Dist. LEXIS 40750, *5; *Result Shipping Co., Ltd., supra*., 56 F.3d at 399; *MMI Int'l, Inc.*, *supra*., 1991 A.M.C. at 1272; *Island Tug & Barge Co.*, *supr*a., 2013 U.S. Dist. LEXIS 93058, *3.

Counter security would also provide the security that funds will available to satisfy a judgment against Dry Bulk. Dry Bulk is a foreign corporation with no assets or presence in this District. There are no assurances whatsoever that Amis will be able to obtain satisfaction of a judgment against Dry Bulk. Dry Bulk obtained security by arresting Amis's vessel. Amis has no similar remedy, except that afforded by Rule E(7) to ensure such security is

provided. As things stand, Dry Bulk was able to wrongfully arrest without fear of any repercussions. The language of Rule E(7) is mandatory, *see* Supplemental Rule E(7) ("must"), and the plain language of "E(7) creates a presumption in favor of counter-security." *Island Tug & Barge Co.*, *supra*., 2013 U.S. Dist. LEXIS 93058, *5 (*citing Seaworthy Service, Inc.*, *supra*., 2009 WL 1174654 at *2).

Thus, under the circumstances of this case, counter security in the amount of at least $350,000 is warranted and there can be no good cause for denying such security.

DATED this 11th day of December 2019.

> LE GROS, BUCHANAN & PAUL
>
> By: *s/ Markus B.G. Oberg*
> By: *s/ Daniel J. Park*
>    MARKUS B.G. OBERG, OSB #112187
>    DANIEL J. PARK, OSB #132493
>    4025 Delridge Way SW, Suite 500
>    Seattle, Washington 98106-1271
>    Phone: 206-623-4990
>    Facsimile: 206-467-4828
>    Email: moberg@legros.com
>    Email: dpark@legros.com
>
>    Attorneys for Defendant Amis Integrity S.A., by restricted appearance

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-l(c), or 54-3(e) because it does not exceed 11,000 words, or in the alternative, 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to The Honorable Anna J. Brown and serve it on all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 11th day of December, 2019.

*s/ Shelley Courter*
Shelley Courter, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone: 206-623-4990
Facsimile: 206-467-4828
E-mail: scourter@legros.com