IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AMIS INTEGRITY S.A. *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem.*, <br><br> Defendants. | No. 3:19-CV-01671-BR <br><br> **Admiralty** <br><br> DECLARATION OF STAVROS TSOLAKIS IN OPPOSITION TO MOTION FOR COUNTERSECURITY |

I, STAVROS TSOLAKIS, being first duly sworn on oath, depose and say:

1. I am over the age of majority and, except as otherwise indicated, make this Declaration on personal knowledge, and am competent to testify regarding the facts herein.

2. I am, and have been at all materials times, the Head of Chartering for Plaintiff, Dry Bulk Singapore PTE Ltd., and authorized to act on the company's behalf.

3. I have been involved with chartering vessels and the industry practices associated therewith for about 20 years. Since 2000 I have taught courses in ship chartering at various Universities around the world including Erasmus University Rotterdam, The Netherlands, University of Nantes, France, Athens University of Economics and Business, Greece, and Singapore Management University, Singapore. I have also delivered papers and courses in chartering and freight risk management, ship finance and risk management for Lloyds, Informa, UOB Kayhian (investment bank in Malaysia and Singapore), and Neptune Orient Lines/American President Lines (NOL/APL).

4. Based upon my knowledge and experience in chartering vessels and as the Head of Chartering for Plaintiff, I have significant experience in respect to procedures and methods used by parties to conclude a charter.

5. I have reviewed the recent documents produced by Defendant in discovery in this matter which indicate that Defendant, through its exclusive broker, Thomas Rolin of BRS commenced negotiations for the chartering of the vessel to third parties on July 8, 2019, while the vessel was still on charter to 24Vision and Dry Bulk, well within the three day grace period for the payment of hire due. The grace period was to expire at one minute after midnight on July 12th, GMT.

6. Thomas Rolin was known to me to be Amis' and Wisdom Marine Lines, S.A.'s ("Wisdom") long-time exclusive broker and had negotiated the 24Vision/Amis charter party, in which Wisdom is listed as the Manager of the Vessel and a party to the charter agreement (see copy of charter party attached to Jang Declaration as Exhibit 1, DE19-1), as well as the 24Vision/Dry Bulk charter party and the Amis/United Bulk Carriers charter party on July 11, 2019. From my experience in dealing with Mr. Rolin, it was his practice to report to Amis/Wisdom all events affecting the chartering of the vessel.

7. While Mr. Rolin was conducting negotiations with United Bulk Carriers on July 10th and 11th (Ex. 3 to Chalos Declaration), he knew full well from our discussions at that time that Dry Bulk was about to pay the hire due to 24Vision as well a pre-payment of hire through July 23rd by mid-day (GMT time) on July 11th, well within the grace period for such payment under both relevant charter parties. (*see* pars. 14, 16, 19 and 20 of the Tsolakis Declaration Submitted in Opposition to Motion to Vacate the Arrest (DE 31), and exhibits

referred to therein, herein attached as Exhibit 1 to the Chalos Declaration for ready reference).

8. Mr. Rolin also received from me a copy of the wire transmission receipts of the funds paid by Dry Bulk to 24Vision at midday July 11th (*see* par. 14 of Tsolakis Declaration, and exhibits referred to therein, Exhibit 1 to Chalos Declaration).

9. Based on my knowledge of Mr. Rolin's usual practice of notifying his principals Amis and Wisdom of all matters affecting the charter of the vessel M/V AMIS INTEGRITY, the above events were undoubtedly reported to Amis/Wisdom by Mr. Rolin on July 11th, before Defendant concluded the charter agreement with United Bulk Carriers later in the afternoon of July 11th.

10. Based on my experience with the industry practices in the chartering of vessels, knowledge of the pre-payment of the hire through July 23rd by Dry Bulk should have indicated to Mr. Rolin, as an experienced broker, and Amis/Wisdom, as experienced vessel owners/operators, that the vessel could not be withdrawn from Dry Bulk's service, at least not without legal consequences. Defendant apparently chose to gamble with such consequences in light of the much more lucrative agreement it was about to enter into with United Bulk Carriers, which earned Defendant at least USD 800,000 more in charter hire than it would have made under the existing charter party agreement with 24Vision.

11. With respect to Exhibit 4 to the Chalos Declaration, the e-mail sets forth the "main terms" of the agreement with United Bulk which in industry parlance means the charter was concluded and an agreement was reached to charter the vessel to United Bulk Carriers on July 11th, while the vessel was still under charter to 24Vision and Dry Bulk and before the grace period for 24Vision to pay any hire due to Defendant had expired.

12. When the charter with United Bulk Carriers was concluded on the afternoon of July 11th, (GMT time), it was an unlawful withdrawal of the vessel from both 24Vision and Dry Bulk, as the vessel was now committed to perform under the United Bulk/Amis charter party in derogation of the existing 24Vision/Amis and 24Vision/Dry Bulk charter parties which were still in force at the time.

13. Exhibit. 4 to the Chalos Declaration indicates that the "main terms" of charter with United Bulk Carriers was concluded on July 11th (GMT time). Once the "main terms" were concluded, Defendant had no further obligations in respect to the agreed main terms and was irrevocably bound to such terms.

14. The main terms e-mail indicates the only ministerial item remaining was for United Bulk to reconfirm the main terms by 11 pm Taiwan time (2300 hours) on July 12th (or 4 pm GMT time, July 12th). The e-mail clearly states at par. 16 of the main terms: "16. SUB CHTRS' RECFM BY 2300HRS TAIPEI TIME **TOMORROW**, 12TH JULY." (*See* Exh. 4 at AMIS 0046).

15. Based on industry practice, this ministerial reconfirmation of the terms by the charterer, United Bulk Carriers, is pro forma in chartering situations. The charterer, in this case United Bulk Carriers, is normally given 24 hours to make such re-confirmation. According to par. 16 of Exhibit 4, United Bulk had until 2300 (11pm Taiwan time, 4pm GMT time) on July 12th to make such re-confirmation. This indicates to me that the main terms with United Bulk were agreed at about 4pm July 11th (GMT time); hence, the reference to the word "TOMORROW" in par. 16 of Exhibit. 4 to the Chalos Declaration.

16. Once the main terms were agreed on July 11th, Defendant was irrevocably bound and could not cancel the agreement with United Bulk Carriers, without serious legal

consequences. Defendant apparently made a calculated, albeit, in hindsight, erroneous, decision that the legal consequences of wrongfully withdrawing the vessel from 24Vision's (and, consequently, Dry Bulk's) services would be less onerous than losing the lucrative charter it had just concluded with United Bulk Carriers.

17. With the latest production of documents by Defendant it becomes clear as to why 24Vision sent the withdrawal notice to Dry Bulk at about 5:30 pm (GMT time) on July 11th (*see* Tsolakis Declaration par. 16, and exhibits referred to therein, Exhibit 1 to Chalos Declaration). That is, Defendant had concluded its charter with United Bulk at about 4pm GMT time on July 11th and, undoubtedly, notified 24Vision that it was withdrawing the vessel from its service at or near that time.

18. This comports with information that was received by me on July 11th from the two brokers involved in this matter, Gian Luca Garufi and Thomas Rolin, as well as the notice of vessel withdrawal from 24Vision all of which took place at about 5:30 pm on July 11th (GMT time) (*see* Tsolakis Declaration, pars. 14-21, and exhibits referred to therein, Exhibit 1 to Chalos Declaration).

19. As a result of the premature unlawful withdrawal of the vessel by Defendant, 24Vision found itself without a vessel and, as result, had no choice but to unlawfully withdraw the vessel from Dry Bulk, even though it had received timely payment of the charter hire due and a pre-payment of hire to July 23rd several hours before such withdrawal.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF OREGON AND THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE ANDCORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED THIS 30TH DAY OF DECEMBER 2019

STAVROS TSOLAKIS

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

BY: *s/ David R. Boyajian*
David R. Boyajian, OSB #112582

Page 8 -   DECLARATION OF STAVROS TSOLAKIS IN
OPPOSITION TO MOTION FOR COUNTER SECURITY

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900