Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Phone: 206-623-4990
Facsimile: 206-467-4828
Email: moberg@legros.com
Email: dpark@legros.com
Attorneys for Defendant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD,<br><br>Plaintiff,<br><br>v.<br><br>Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*,<br><br>Defendants. | Case No. 3:19-cv-01671-BR<br><br>IN ADMIRALTY<br><br>REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR COUNTER SECURITY |

## I. REPLY

Amis Integrity S.A., by restricted appearance under Supplemental Admiralty Rule E(8), respectfully submits the following reply in support of its motion for counter security pursuant to Supplemental Admiralty Rule E(7).

There can be no dispute that counter security may be ordered for a counterclaim based on wrongful arrest, as was recognized by this Court in *Swaidan Trading Co., LLC v. M/V Donousa*, No. 3:18-cv-00398-HZ, 2018 U.S. Dist. LEXIS 116821, *3-4, 2018 AMC 2051, 2018 WL 3414317 (D. Or. July 13, 2018). Indeed, there is a presumption in favor of counter security, and "[t]he burden is on the plaintiff to show that 'good cause exists to relieve the plaintiff of its obligation to provide counter security.'" *Swaidan Trading Co., LLC*, *supra.*, 2018 U.S. Dist. LEXIS 116821, *3-4 (*quoting Seaworthy Serv. Inc.*, *supra.*, 2009 WL 1174654, at *2).

Here, Plaintiff has failed to meet its burden. Plaintiff has made no attempt at a good cause showing as to why it should be relieved of the requirement to provide counter security. Plaintiff has presented no evidence that counter security would either prevent it from pursuing this litigation, or that it cannot afford to provide counter security. Accordingly, an order requiring Plaintiff to provide counter security is appropriate.

## II. DISCUSSION

### A. This Court in *Swaidan* Recognized the Right to Counter Security for a Counterclaim for Wrongful Arrest.

Plaintiff's declaration that "Countersecurity is not available in a wrongful arrest counterclaim" is incorrect. Plaintiff cites *Incas and Monterrey Printing and Packaging, Ltd. v. M.V. Sang Jin*, 747 F.2d 958 (5th Cir. 1984), *cert. den.*, 471 U.S. 1117 (1985), as the "leading case" on the issue, but ignores the relevant discussion by this Court in *Swaidan*. As explained in *Swaidan*, *Incas* is not controlling: "Some courts have seized upon the Fifth Circuit's holding [in *Incas*] in denying requests for counter security. … *Others, looking to the specific facts of the case, have found that a counterclaim for wrongful attachment arises out*

*of the same facts that gave rise to the original claims.*" *Swaidan Trading Co., LLC*, *supra*., 2018 U.S. Dist. LEXIS 116821, *5-7 (citations omitted) (emphasis added).[1]

This Court in *Swaidan* specifically identified *State Bank & Trust Co. of Golden Meadow v. Boat "D.J. Griffin,"* 731 F. Supp. 770, 775 (E.D. La. 1990), and *Norton Lilly Int'l., Inc. v. Kinatsi*, No. 16-4118, 2017 U.S. Dist. LEXIS 17496, 2017 WL 515095 (E.D. La. Feb. 8, 2017), as examples of cases where the courts found that counter security was appropriate for wrongful arrest counterclaims. *Swaidan Trading Co., LLC*, *supra*., 2018 U.S. Dist. LEXIS 116821, *7-8. In fact, this Court recognized that counter security was appropriate in *State Bank*, "because both the claim and counterclaim in *State Bank* depended on the validity of the promissory note and execution of a loan. … Thus, '[t]he claim and the counterclaim [were] logically related because they both involve[d] questions of [the individual's] authority to encumber the Boat Operators' assets as well as State Bank's alleged knowledge of that lack of authority." *Id.,* 2018 U.S. Dist. LEXIS 116821, *7.

Moreover, this Court in *Swaidan* then analyzed the specific facts of the case before it to determine whether there was a logical relationship between the plaintiff's claim and the defendant's counterclaim. *Id*., 2018 U.S. Dist. LEXIS 116821, *9. The Court would not have engaged in such an analysis if there was a general rule precluding counter security for all counterclaims based on wrongful arrest. Clearly this is not the case.

As set forth in the Motion (Dkt. #48, pp. 9-10), here there is a logical relationship between Plaintiff Dry Bulk's claims and Amis's counterclaim. Dry Bulk's bad faith, malice, or gross negligence will be proven by the same facts that underlie Dry Bulk's claims of

---

[1] The other cases cited by Plaintiff, *e.g*., *Result Shipping Co. v. Ferruzzi Trading USA*, are *Incas'* progeny, which this Court in *Swaidan* address in this same section establishing that *Incas* (and its progeny) is not controlling. *Id*.

interference with contract, conversion, and unjust enrichment. As in *State Bank*, both the claim and the counterclaim depend on the validity and interpretation of the underlying documentation—here the terms and conditions governing the manner of proper withdrawal and Plaintiff's lien rights (Clause 23), as well as Dry Bulk's knowledge of that valid withdrawal, and the fact that Amis never received timely charter hire payment. The claims and the counterclaim are logically and inextricably linked. Valid withdrawal under the contract, and Dry Bulk's knowledge or reasonable ability to learn of the same, defeats Dry Bulk's claims and proves Amis's counterclaim. Likewise, Dry Bulk's knowledge or reasonable ability to learn that 24Vision failed to timely make hire payments defeats Dry Bulk's claims and proves Amis's counterclaim.

More to the point, Supplemental Admiralty Rule E(7)(a) presumes counter security will be provided. *Island Tug & Barge Co. v. Barge ProWest II*, No. C13-0031RSM, 2013 U.S. Dist. LEXIS 93058, *3 (W.D. Wash. July 2, 2013) (*citing Seaworthy Serv., Inc. v. NANEA*, No. 09-5062BHS, 2009 U.S. Dist. LEXIS 40750, 2009 WL 1174654, *2 (W.D. Wash. Apr. 28, 2009). "The burden is on the plaintiff to show that 'good cause exists to relieve the plaintiff of its obligation to provide counter security,'" *Swaidan Trading Co., LLC*, *supra*., 2018 U.S. Dist. LEXIS 116821, *3-4 (*quoting Seaworthy Serv. Inc.*, *supra*., 2009 WL 1174654, at *2), and Plaintiff has made no attempt at a good cause showing as to why it should be relieved of the requirement to provide counter security. Plaintiff has presented no evidence that counter security would either prevent it from pursuing this litigation, or that it cannot afford to provide counter security. Instead, Plaintiff engaged in irrelevant and erroneous argument relating to whether or not it has a valid maritime lien. An order requiring Plaintiff Dry Bulk Singapore Pte Ltd., to provide counter security is

consistent with the Supplemental Admiralty Rules and essential to place parties on a basis of equality as regards security and to protect Amis Integrity S.A.'s ability to recover from the foreign Plaintiff any judgment awarded by the Court.

**B.       Plaintiff's alleged Advance Payment of Charter Hire Does <u>Not</u> Create a Maritime Lien against the Vessel.**

Plaintiff's Response in Opposition makes a number of arguments not relevant to the issue of counter security, including the erroneous contention that Plaintiff's (the Sub-Charterer's) alleged payment of advance hire to the Charterer, 24Vision, created a valid maritime lien. To the contrary, under English law, which indisputably governs, Plaintiff's alleged hire payment does *not* create a maritime lien against the Vessel. Such a lien is not recognized under English law, and is not created by Clause 23 of the charter party.

First, there can be no dispute that English law governs. Plaintiff so asserted in its Opposition to Motion to Vacate. Dkt. #27, p. 3 ("…in violation of applicable English Law governing the charter party agreements in this case…"). Furthermore, Plaintiff contends in its present Opposition that the "24Vision/Dry Bulk Charter Recap incorporated by reference the terms and conditions of the 24Vision/Amis Integrity charter party." Opp. (Dkt. #53), p. 4, Fn. 3. That charter party, the Head Charter Party, expressly provides: "The terms of this Charter Party shall be governed by English law." Dkt. #19-1, ¶45. [2]

---

[2] Under U.S. law, the prohibition-of-lien clause defeats any lien. U.S. legal precedent establishes that a lien cannot be created in favor of a sub-charterer when a vessel is withdrawn from service; and where the primary charter party contains a prohibition-of-lien provision the creation of any lien is in fact precluded. *See Cardinal Shipping Corp. v. M/S SEISHO MARU*, 744 F.2d 461, 469-70 (5th Cir. 1984); *MMI International, Inc. v. M/V SKYROS*, 1991 AMC 1264, 1270 (N.D. Cal. 1991).

Furthermore, the cases cited by Plaintiff are not on point: among other things, they do not address English law; do not involve a sub-charterer's claim as against the vessel; and do not involve a prohibition of lien clause or even a clause that resembles Clause 23.

REPLY IN SUPP. OF MOTION FOR COUNTER SECURITY – Page 5
[Case No. 3:19-cv-01671-BR]

Contrary to Plaintiff's contention, Opp. (Dkt. #53), pp. 3-4, the underlying charter parties did *not* give Plaintiff, the *Sub-Charterer*, a maritime lien for advance charter hire against the Vessel. Clause 23 in the Head Charter, *to which Plaintiff is not a party*, provides that "the *Charterers* shall have a lien on the Vessel for all monies paid in advance and any overpaid hire or excess deposit to be returned at once." Dkt. #19-1, ¶23 (emphasis added). In the present case, the Charterers (24Vision) did not pay hire in advance to the owners—Amis Integrity S.A. withdrew the vessel for failure to pay any hire. *E.g.*, Dkt. #19-2; Dkt. #19-3. Since the Charterer did not make any advance hire payment, there can be no question of a lien in their favor attaching to the Vessel by virtue of any term of the Head Charter. Ex. 1 to Declaration of Michael Nolan, Q.C. ("Nolan Opinion"), ¶5.

Clause 23 does not, as a matter of English law, create any rights in the *Sub-Charterer* over the Head Owner's (Amis Integrity S.A.'s) vessel. Nolan Opinion, ¶¶4 and 6. The Clause does not give the *Sub-Charterers* any rights against the Owners or the Vessel for at least three reasons:

(1) the Owners were not party to the Sub-Charterparty. They did not agree that the *Sub-Charterers* should have a lien over their vessel for hire paid in advance to the *Charterers*;

(2) Clause 23 specifically provides that the Charterers will not suffer or permit to be continued, any lien or encumbrance incurred by them or their agents which might have priority over the interests of the owners. In the absence of any authority to do so, the Charterers cannot grant the Sub-Charterers a right of lien over the Owners' vessel in respect of advance hire; and

(3) the types of claim which, as a matter of English law, give parties a claim *in rem* against a vessel (which claims might be said to be a *"lien"* for the purposes of Clause 23: *see The Vestland* [1980] 2 Ll.Rep. 171 at 182) are listed in section 20(2) of the Senior Courts Act 1981, and do not reach the claim at issue here. Section 21(4) of the Act makes it clear that a claim of that kind can only be brought against a ship if:

(a) the claim arises in respect of a ship;

(b) the person who would be liable on the claim in an action *in personam* ("the relevant person") was, when the cause of action arose, the owner or charterer of or in possession of the ship or in control of the ship; and

(c) at the time when the action is brought, the relevant person is either the beneficial owner of the ship as respects all the shares in it or a demise charterer of the ship. However at the time when the claim was brought, the Charterers were neither the Owners of the vessel nor the Demise Charterers of it.

Nolan Opinion, ¶6.

Clause 23 gives the Sub-Charterer no right against the Owners and no proprietary or possessory right against the Vessel. Nolan Opinion, ¶8. Clause 23 does not create a lien enforceable by the Sub-Charterers against the vessel for unearned hire not repaid by the Charterers to the Sub-Charterers. *Id.*, ¶11(1). Furthermore, English law does not recognize a general authority in a Charterer to create liens in favor of the Sub-Charterer against the vessel in respect of its claims under the Sub-Charterparty. Nolan Opinion, ¶6(2).

As a matter of English law, the Sub-Charterers' claims for damages for wrongful withdrawal and for the return of unearned advance hire, both of which arise under the Sub-Charterparty, do not give rise to rights *in rem* against the vessel. Nolan Opinion, ¶11(2).

REPLY IN SUPP. OF MOTION FOR COUNTER SECURITY – Page 7
[Case No. 3:19-cv-01671-BR]

## C. The Evidence Establishes that the Vessel Was neither Fixed to another Charter nor Withdrawn until after Valid Notice of Withdrawal.

Plaintiff falsely claims that the Vessel was chartered to a third party (United Bulk Carriers) on July 11, and thus wrongfully withdrawn on July 11 and not on July 12. Opp. (Dkt. #53), p. 4, Fn. 4.

First, under English Law, in order for a withdrawal to be effective, unequivocal notice must be given to the Charterers: *see The Georgios C* [1971] 1 Ll. Rep. 7 at 14 and *The Aegnoussiotis* [1977] 1 Ll. Rep. 268 at 275. Even if the third-party fixture was made before midnight GMT on July 11, 2019, that would not amount to withdrawal. Nolan Opinion, ¶10; ¶11(3).

The evidence in the court record and the documentation produced in discovery establishes that Amis provided proper and timely notice of withdrawal to the Charterer (24Vision) on July 12, 2019, directly to 24Vision at 13:56 CST (05:56 GMT), Dkt. #19-3, and also via the brokers at 14:00 CST (06:00 GMT). Ex. 1 to Declaration of M. Oberg ("Oberg Decl.") (C. Tsao 7/12/19 14:00 email).

As outlined in Amis' discovery responses, broker Eddie Lin also transmitted the withdrawal notice via other brokers and then, at 14:36 CST (06:36 GMT), provided confirmation of these transmissions. Ex. 2 to Oberg Decl. (answer to Interrogatory 4); Ex. 3 to Oberg Decl. (E. Lin 7/12/19 14:36 email with attachments).

There is no dispute that Amis had the right to withdraw the vessel on July 12, 2019. Motion (Dkt. #48), p. 4 (Plaintiff's own solicitor agrees that right arose at 00:01 GMT on July 12, 2019).

More to the point, the documentation produced in discovery establishes also that the Vessel was *not* chartered to a third party until July 12, 2019 at 22:10 CST (14:10 GMT), after it had been properly withdrawn from the charter with 24Vision for non-payment of hire.[3]

The documentation produced in discovery establishes that on July 12 at 9:29 a.m. (CST) (1:29 a.m. GMT), Amis Integrity S.A.'s management representatives were provided with a "recap" indicating "main terms *agreed so far*." Dkt. #54-4, p. 2 (emphasis added). Significantly, this email "recap" expressly provided that there would not be confirmation until 23:00 Taipei time on July 12, or 15:00 GMT on July 12. Dkt. #54-4, p. 9. Thus, as of July 12, 2019 at 1:29 a.m. GMT there was no other fixture.[4]

The documentation produced in discovery further establishes that the Vessel was not confirmed to the subsequent charter until July 12, 2019 at 22:10 CST (14:10 GMT), approximately eight hours *after* it had been properly withdrawn from the charter with 24Vision. Ex. 2 to Oberg Decl. (answer to Interrogatory No. 5); Ex. 4 to Oberg Decl. (7/12/19 22:10 email confirming fixture recap with charter party dated July 12). There was no obligation to deliver the Vessel to any third party until well after the fixture was

---

[3] Plaintiff cites Exs. 3, 4, and 5 A-C to the Tsolakis Declaration (Dkt. 31) for the proposition that Amis withdrew the vessel on July 11. The exhibits do not support the proposition. Ex. 3 is 24Vision's notice of withdrawal, not Amis's, and completely irrelevant; Ex. 4 is hearsay and speculation, to which Amis objects on that basis, indicating only that T. Rolin did not know if Wisdom was marketing the AMIS INTEGRITY, because he was "out watching the cricket"; and Ex. 5A-C, also hearsay and speculation, to which Amis objects on that basis, indicate only that Plaintiff's broker T. Rolin assumed the vessel had been fixed elsewhere, but did not know. As stated, the documentation produced in discovery establishes that the vessel was not fixed to another charter until 22:10 on July 12, 2019, after proper notice of withdrawal. Ex. 4 to Oberg Decl.

[4] The fact that a prudent owner may have explored alternative charter opportunities in the face of non-payment of charter hire and probable breach by the charterer is simply a prudent business practice, and does not constitute or effect a breach of the charter party. Indeed, owners were never paid. Notably, the broker informing owners of other opportunities was the broker involved on behalf of Plaintiff. Oberg Decl., ¶8; Ex. 5 to Oberg Decl. (Plaintiff's answer to Interrogatory No. 1 establishing broker T. Rolin was not Defendant's "exclusive broker" but rather involved on behalf of Plaintiff Dry Bulk with its charter of the vessel from 24Vision).

confirmed on July 12, 2019 at 22:10 CST (14:10 GMT), after it had been properly withdrawn from the charter with 24Vision. Plaintiff conveniently ignores this key piece of evidence.

Thus, contrary to Plaintiff's arguments, the record establishes beyond dispute that there was proper notice of intent to withdraw, proper notice of withdrawal, and only thereafter was the vessel chartered to a third party.

### III. CONCLUSION

An order requiring Plaintiff to provide counter security is warranted. Not only does the Supplemental Admiralty Rule presume such security will be provided, this Court has previously recognized that counter security is appropriate for counterclaims based on wrongful arrest where there is a logical relationship between the plaintiff's claims and the movant's counterclaim. Such a logical relationship exists here. Moreover, the burden is on Plaintiff to show good cause why security should not be provided, and Plaintiff has not even attempted such a showing. Indeed, counter security is required to place these parties on an equal footing and to ensure that Amis Integrity S.A. will be able to recover in the event it prevails on its counterclaim.

DATED this 14th day of January, 2020.

        LE GROS, BUCHANAN & PAUL

        By: *s/ Markus B.G. Oberg*
        By: *s/ Daniel J. Park*
           MARKUS B.G. OBERG, OSB #112187
           DANIEL J. PARK, OSB #132493
           4025 Delridge Way SW, Suite 500
           Seattle, Washington 98106-1271
           Phone: 206-623-4990
           Facsimile: 206-467-4828
           Email: moberg@legros.com
           Email: dpark@legros.com
           Attorneys for Defendant Amis Integrity, S.A.,
           by restricted appearance

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it does not exceed 11,000 words, or in the alternative, 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to The Honorable Anna J. Brown and serve it on all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 14th day of January, 2020.

*s/ Shelley Courter*
Shelley Courter, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone: 206-623-4990
Facsimile: 206-467-4828
E-mail: scourter@legros.com