David R. Boyajian, OSB #112582
Email: dboyajian@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD. | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No.: |
| v. | )<br>) IN ADMIRALTY |
| Amis Integrity S.A. *in personam* and<br>M/V AMIS INTEGRITY (IMO 9732412)<br>her engines freights, apparel<br>appurtenances, tackle, etc., *in rem*, | )<br>)<br>)<br>) |
| | ) |
| Defendant. | ) |

**DECLARATION OF STAVROS TSOLAKIS IN SUPPORT OF MOTION TO AMEND POSTING OF COUNTER SECURITY BOND DATE**

Stavros Tsolakis, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury:

1. I am a representative and the Head of Chartering of Plaintiff DRY BULK SINGAPORE PTE. LTD. (hereinafter "Dry Bulk" or "Plaintiff"), and authorized to act on the company's behalf;

Page 1 -   TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

2.     I submit this Declaration to explain the current financial situation of Dry Bulk and detail the efforts made to date to comply with this Honorable Court's Order of February 11, 2020 (Dkt. 60) requiring Plaintiff, Dry Bulk, to post a surety bond of $350,000 as counter-security in this matter no later than March 12, 2020.

## DRY BULK's CORPORATE AND FINANCIAL STATUS

3.     Dry Bulk Singapore PTE LTD is a small company incorporated under the laws of Singapore on September 15, 2002. Dry Bulk, at all relevant times, employed two (2) individuals to manage its operations.

4.     Dry Bulk's business consists of sub-chartering vessels from charterers and other disponent owners to carry cargoes for third parties to various destinations around the world. Dry Bulk's revenue is primarily derived from the difference between what it charges the third parties for the carriage of their cargo and what it pays to the charterers or disponent owners under the sub-charters.

5.     In early January, 2019, Dry Bulk entered into a sub-charter of the M/V AMIS INTEGRITY (hereinafter "the Vessel") from a company called 24Vision Chartering Solutions DMCC ('hereinafter "24Vision") for a period of about one-year duration. 24Vision, in turn, had chartered the Vessel from its Owner, Amis Integrity, S.A. and its Manager, Wisdom Marine Lines, S.A. (hereinafter "Wisdom Marine").

6.     At the time the charter with 24Vision commenced, the Vessel was located in South Africa. The agreement was for the vessel to be delivered to East Coast South America to load grains for South East Asia. The first cargo the vessel carried was wheat from Argentina to Indonesia. This was a loss-making trip for Dry Bulk, but was strategically taken

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

in anticipation of the rising freight market after Q2 2019. Our strategy was to benefit from the anticipated high market rates to compensate Dry Bulk both for the first voyage loss as well as for the ballast voyage (vessel being empty of cargo) back to Argentina after the first voyage was completed. This strategy, which proved to be correct, was based on extensive analysis and research, as well as from discussions had with the heads of major trading houses like Bunge, Cargill, ADM, Louis Dreyfus, COFCO and big grain shipbrokers such as Lightship, Barry Rogliano Salles ("BRS"), Clarkson etc.

7. On the basis of the above, on or about May 31 2019, Dry Bulk ordered the Vessel to proceed in ballast (empty of cargo) from Singapore to a port in South America in anticipation of a carriage of cargo for a company called Trithorn for a trip from South America to Northern Europe. The expenses incurred by Dry Bulk in positioning the Vessel in ballast from Indonesia to South America were about $950,000. Dry Bulk anticipated a net profit from the Trithorn sub-charter of about $379,500 and in excess of USD 3 million for the balance of charter period to January, 2020 under the 24Vision/Dry Bulk charter party.

8. Based on information and belief and the fact that the Wisdom Marine Lines, S.A., the commercial and operations manager of the M/V AMIS INTEGRITY is a sophisticated player in the charter market, it too saw the anticipated extreme rise in the charter rates. At that time, the charter to 24Vision was for a modest $14,000 per day (see Dkt 19-1, par. 10), as the Amis Integrity charter party with 24Vision was entered into when the freight rate market was fairly low.

9. On July 11, 2019, Dry Bulk paid to 24Vision $217,000 for hire due under its charter with 24Vision for the period of June 23 to July 8, 2019 and an additional $217000,

Page 3 -    TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

as pre-paid freight for the period of July 8 through July 23, 2019. This information was known to both Amis Integrity, S.A. and Wisdom Marine Lines, S.A. before the Vessel was wrongfully withdrawn from 24Vision, and, consequently, from Dry Bulk's service.

10. As a result of the wrongful withdrawal of the Vessel and the resulting tortious interference by Amis Integrity and Wisdom Marine of the 24Vision/Amis Integrity charter party, Dry Bulk lost the Trithorn charter and expected profit ($379,500), the pre-paid charter hire of $217,000 and the expenses of positioning the Vessel in South America of about $950,000, together with the loss incurred in the first positioning voyage of USD 850,000, which loss would have been made up in the rising freight market.

11. The loss of the Trithorn hire and anticipated profits from available sub-charters in the 3Q and 4Q, 2019, together with the payment of the above described substantial expenses resulted in severe economic consequences to Dry Bulk's operations and ability to finance future charter activities.

12. Amis Integrity and Wisdom Marine, following the wrongful withdrawal of the Vessel, chartered the Vessel to a third-party (United Bulk Carriers) for the carriage of a cargo from South America, where Dry Bulk had positioned the Vessel, and earned over $800,000 in profit, as well as saved the costs of positioning the Vessel (about $950,000) which were paid by Dry Bulk before the wrongful withdrawal.

13. In addition, Amis Integrity and Wisdom Marine were able to take advantage of the rising freight and charter hire rates for the remainder of 2019 (which were opportunities that Dry Bulk would have had available, but for the wrongful withdrawal of the Vessel) and earned substantial profits for that period of time.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

14. The maritime chartering industry is relatively small and as soon as word got out that the Vessel was withdrawn from Dry Bulk, vessel owners, charterers and brokers, as well as third party companies that had done business with Dry Bulk in the past, refused to work with Dry Bulk going forward. In the meantime, Dry Bulk could not fulfill its obligations towards the other shipowners since the multi-million US dollar financial hit taken by Dry Bulk as a result of Amis Integrity's/Wisdom Marine Lines' unlawful withdrawal and the tortious interference with the 24Vision/Dry Bulk charter party, put the company in severe financial distress.

15. As a result, Dry Bulk has been unable to sub-charter any vessels as part of its regular business since the wrongful withdrawal, and thus has been unable to earn monies to sustain its regular business. Furthermore, prior to the wrongful withdrawal of the M/V AMIS INTEGRITY, Dry Bulk had booked cargoes with major shippers such Olam, Amaggi, Trithorn and COFCO to be carried on other vessels that Dry Bulk was anticipating chartering, but, after the withdrawal of the Vessel from Dry Bulk's service and the resulting bad publicity in the marketplace, Dry Bulk was unable to charter any vessels to fulfill its contractual obligations to these shippers or to sustain its regular business. This resulted in claims from third parties and made operations extremely difficult.

16. In an effort to stay in business, Dry Bulk used its prior savings to continue to finance its operations in Singapore. As a result of the above described situation and the fact that Dry Bulk has not been able to generate income, Dry Bulk's current financial situation is precarious.

Page 5 -    TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

17.     As a result, it became necessary for Dry Bulk to seek external lenders to continue its action against Amis Integrity and the Vessel, as well as to cover legal fees in the UK and Singapore incurred as a result of both this pending action and the cascading defaults in other agreements as a result of the Vessel wrongful withdrawal.

## DRY BULK's EFFORTS TO SECURE BOND

18.     As part of that effort, immediately upon receiving the Court's Order on February 12th, your Declarant commenced exploring ways and means to post the required counter-security bond recognizing the difficult financial condition Dry Bulk found itself.

19.     In this regard, Dry Bulk, through counsel, contacted International Sureties of New Orleans, the same bonding company that provided the surety bond on behalf of Amis Integrity, S.A. in the amount of $2.5 million in this action.  International Sureties is the company through which most surety bonds for maritime based actions are secured.

20.     I am informed that the general practice of International Sureties is to require some form of counter-security before issuing a surety bond. Such counter-security can be in the form of: a) a cash deposit in an amount slightly higher than the face value of the requested Surety Bond; b) a strong balance sheet that indicates the requesting company is sufficiently funded to satisfy any demand on the bond; c) a P&I (Protection & Indemnity) Underwriter's counter-security letter. With such P&I counter-security letter, no funds are required to be deposited with International Sureties to secure the bond.[1]

---

[1] Upon information and belief, Amis Integrity S.A. used the third method (through a P&I counter-security letter) to secure its bond in this matter.

Page 6 -    TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

21. Given Dry Bulk's current financial situation, options a) and b), above, were not available. Option c) was also unavailable to Dry Bulk's, as its tort claim in this action is not one that its P&I Club would provide coverage or a counter-security letter to International Sureties. As detailed above, Dry Bulk, stretched to the limits of its financial capabilities, could not post the bond without financial assistance from third parties willing to finance both the bond and the continuing litigation.

22. Under the circumstances, Your Declarant commenced contacting professional litigation funding companies in the US, UK, Luxembourg, the Netherlands, Switzerland, Germany and in Singapore to ascertain interest in funding both the counter-security bond and the on-going litigation.

23. In this regard, I reached out to twenty-four (24) different litigation funding companies. The majority of the companies contacted advised that the investment required in this matter was below the 1 million threshold they normally financed. After further research and discussions, four (4) litigation funding companies were identified as willing to finance litigation expenses below the $1 million threshold.

24. All four companies expressed an interest in providing funding for the pending litigation, subject to Dry Bulk providing information requested regarding the pending litigation in this matter and agreeing to the standard terms of financing, after which each of the companies indicated, as a matter of practice and policy, they intended to conduct a regular due diligence examination of the materials submitted and an evaluation of the matter for which financing was requested.

Page 7 -   TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

25. Dry Bulk immediately provided the requested information regarding this litigation and negotiations for the terms of the financing ensued. At present, negotiations with all four of the litigation funding companies have concluded, with each company currently undertaking due diligence described above.

26. The current positions of the request for funding of both the litigation and bond currently stand as follows:

a) Company "A", based in the US, has provided its term sheet to Dry Bulk for signature, which is required in order to commence its due diligence analysis, which is expected to last about 30 days. If company "A" agrees to provide financing, it will do so within 45 days from the signing of the termsheet. Negotiations of the terms the termsheet has been concluded and same is expected to be signed on March 6th;

b) Company "B", also based in the US, has agreed to fund USD 200,000. They are currently preparing for submission to Dry Bulk their termsheet and have advised that realistically the transaction could close in 45-60 days after the term sheet is signed;

c) Company "C", based in the UK, is studying the matter and is expected to make a decision within two-three weeks;

d) Company "D", based in the US, has indicated that they are interested in investing in his matter at a later stage of the proceedings (i.e. after fact discovery and depositions are completed) and negotiations for a termsheet are on-going in this regard;

Page 8 -   TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

e) Dry Bulk was approached this week by a fifth company (Company "E"), based in Holland and Singapore, who indicated that they are interested in investing (i.e. covering the bond and litigation fees). They are currently in the initial stages of their evaluation of the matter.

27. As it is evident from the above, each of the funding companies indicated that once the terms of financing are agreed, they require at least 30 days to complete their due diligence and an additional 15-30 days to process the requested funds to obtain the bond and finance the litigation going forward.

28. Based on discussions had to date with the litigation funding companies described above, Dry Bulk verily believes that, with the additional time requested herein, it will secure the required funding for the counter-security bond and the anticipated litigation expenses going forward.

29. Accordingly, it is respectfully requested that the date for posting of the counter-security be amended from March 12, 2020 to April 30, 2020 to allow Dry Bulk to conclude its arrangements with the funding companies to finance the posting of the counter-security bond required in this matter (Dkt.60).

30. I believe the matters set forth herein to be true based on my personal knowledge, as well as documents and information in this litigation and from third parties.

I declare under penalty of perjury that the foregoing is true and correct.

Page 9 -    TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

By: _____     Date:   March 4, 2020
Stavros Tsolakis
Head of Chartering and
Authorized Representative for
Dry Bulk Singapore PTE. Ltd.

Page 10 -   TSOLAKIS DECLARATION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900