**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

Michael G. Chalos, *admitted PHV*
Email: michael.chalos@chaloslaw.com
CHALOS & CO, P.C.

    *Attorneys for Plaintiff,*
    *Dry Bulk Singapore Pte. Ltd.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AMIS INTEGRITY S.A. *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc*., in rem.*, <br><br> Defendants. | **No. 3:19-CV-01671-BR** <br><br> **ADMIRALTY** |

**DECLARATION OF STAVROS TSOLAKIS IN SUPPORT OF MOTION TO AMEND COMPLAINT**

Stavros Tsolakis, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury:

1. I am a representative and the Head of Chartering of Plaintiff DRY BULK SINGAPORE PTE. LTD. (hereinafter "Dry Bulk" or "Plaintiff"), and authorized to act on the company's behalf;

2. I submit this Declaration in support of Dry Bulk's Motion to Amend the Complaint to add Wisdom Marine Lines, S.A. (hereinafter "Wisdom Marine") as a Defendant in this matter. The information contained herein is based on my personal knowledge of events in this matter, as well as my experience with chartering practices in the maritime industry. To the extent that any information contained herein is not based on personal knowledge or experience, I identify such information as being based on information and belief.

3. I have been involved in the ownership and chartering of ocean-going vessels for over twenty (20) years. During such period of time, I have chartered and sub-chartered vessels as an Owner, Manager and/or Charterer. I am fully familiar with charter party terms and conditions of the charter party form utilized by Wisdom Marine in this matter and for the charter of other vessels identified herein as managed by Wisdom Marine; to wit, the "New York Produce Exchange Form", Code Name "NYPE 93") (see Exhibit 1 attached hereto, also previously submitted as Exhibit 1 to Declaration of Huan Rong Jang-Dkt. 19-1).

4. The printed terms and conditions of the NYPE 93 and most of the Rider Clauses thereto are standard terms utilized by entities which are parties to a NYPE 93 charter party form and recognized as such by the maritime industry, maritime arbitrators and courts that are called upon to adjudicate disputes arising thereunder.

**WISDOM MARINE's ROLE AS "MANAGER" AND AS A PARTY AND PRINCIPAL TO CHARTER PARTIES FOR ITS MANAGED VESSELS**

5. Customarily, the identified parties in any NYPE 93 charter party are the Registered Owner, in this case in respect to the M/V AMIS INTEGRITY, "Amis Integrity, S.A." and the Charterer, in this case 24Vision Solutions DMCC ("hereinafter 24Vision") (see lines 3-8 of Exhibit 1, attached hereto).[1]

6. What is unusual in this particular charter party and, upon information and belief, in all the other charter parties involving Wisdom Marine, as Manager, is that that Wisdom Marine is also named as a party and a principal to the actual charter party. Based on my experience with charter parties, a Manager is never listed as a party or principal to a charter party. Being named as a party in a charter party makes that entity liable for the performance of the terms and conditions of the charter party. (see Lines 4 and 5 of Exhibit 1 hereto).

7. This pattern of naming Wisdom Marine as a party and principal to charter parties involving its managed vessels is the same for the charter party entered into by Amis Integrity, S.A. with United Bulk Carriers International, S.A. (hereinafter "United Bulk") immediately after the wrongful withdrawal of the vessel from Dry Bulk's service by Wisdom Marine. (see first page of the charter party between Amis Integrity, S.A., as Owner, Wisdom Marine, as Manager and United Bulk, as charterer, attached hereto as Exhibit 2). The relevant Rider clauses to the United Bulk charter are attached hereto as Exhibit 3.[2]

---

[1] 24Vision subsequently sub-chartered the Vessel to Dry Bulk on January 10,2019 based on the same NYPE 93 charter party form used in the Amis Integrity/24Vision charter party mentioned above. By amendment the charter period for the Vessel was January 9, 2019 to January 29, 2020.
[2] The documents attached hereto, unless otherwise specified, have been produced by Defendant in response to Plaintiff's Request for Production of Documents in this litigation.

8. This pattern held true for the two subsequent charter parties of the Vessel after the United Bulk charter which involved a company called China Navigation Company PTE Ltd. (hereinafter "CNCO") as charterer (see Exhibit 4, hereto)[3] and Glencore Agriculture B.V. (hereinafter "Glencore"), also as charterer (see Exhibits 5 and 5A, hereto).

**WISDOM MARINE IS THE RECEPIENT OF ALL CHARTER HIRE PAID BY CHARTERERS FOR ITS MANAGED VESSELS**

9. Based on my experience in the maritime industry, the Registered Owners of the vessels in Wisdom Marine's managed fleet (128 vessels) are what are commonly known as single vessel owning "shelf companies" incorporated and registered in countries known as "Flags of Convenience" (i.e. such as Panama) for tax and liability purposes. (see **https://en.wikipedia.org/wiki/Flag_of_convenience**).

10. Generally, such companies have no employees, no offices and no say in the operation of the vessel. Amis Integrity, S.A. is believed to be such a company. Amis Integrity, S.A. is registered in Panama, with no office and no employees, either in Panama or elsewhere. It has an agent for the service of process in Panama, which agent is the law firm that incorporated the company for its principals. (see Proof of Service of Amis Integrity at its Panama (attached hereto as Exhibit 6). On its Debit Note letterhead, Amis Integrity, S.A. is shown to have an office address in Taiwan at the same address as Wisdom Marine Group and Wisdom Marine (see Exhibit 6A, attached hereto).

---

[3] It was under the CNCO charter that the vessel called at Vancouver, Washington in October 2019 and was subsequently arrested by Plaintiff. This charter of the Vessel by Wisdom Marine was part of the unjust enrichment period that the vessel should have remained with Dry Bulk, but for the wrongful withdrawal by Wisdom Marine and resulting tortious interference with the 24Vision/Dry Bulk charter party. Wisdom Marine vessels made more than 18 trips to Columbia River ports between July 11, 2019 and January 29, 2020 (see Exhibit 11, hereto), when the Dry Bulk charter of the vessel would have expired, during which time, Wisdom Marine earned substantial sums of charter hire calling and doing business at District of Oregon ports.

11. The principal and owner of Amis Integrity, S.A. is Wisdom Marine. Upon information and belief, Wisdom Marine is the principal and owner of all of the 128 single purpose subsidiary companies which are listed as the registered owners of the 128 vessels for which Wisdom Marine acts as a "Manager". (see Exhibit 8, hereto). Wisdom Marine and all of its subsidiaries, including Amis Integrity S.A., as well as Wisdom Marine's parent company, Wisdom Marine Lines Co. Ltd., operate under the "D/B/A" trade name "Wisdom Marine Group" (see www.wisdomlines.com.tw). Wisdom Marine Group's website lists all of the 128 vessels "managed" by Wisdom Marine, including the M/V AMIS INTEGRITY, as its "Fleet". The listed address for the Wisdom Marine Group is the same as that listed for Wisdom Marine, Wisdom Marine Lines Co. Ltd. and Amis Integrity, S.A. (see Exhibit 8A attached hereto).

12. The employees and officers of the Wisdom Marine Group are the same for Wisdom Marine Lines Co. Ltd. and Wisdom Marine, all of which are housed in the same office address, on the same floor, with common e-mail addresses and telephone numbers. The main players of the Wisdom Marine Group and Wisdom Marine involved in this matter are Curly Tsao, Mike Chao, Huan Rong Jang, Tina Lai, Bryan Chang and Bruce Hsueh, who recently filed a Declaration in this matter (Dkt. 79).

13. Wisdom Marine is listed as a party in all of the charter parties for the vessels it manages and is the designated "beneficiary" of all charter hires paid for such vessels. As such, Wisdom Marine is the real party in interest and principal in all of the charter parties where it is listed as "Manager", including those identified above with 24Vision, CNOC and Glencore, as charterers for the vessel M/V AMIS INTEGRITY (see

Exhibit 6A in regards to being designated as the Beneficiary for hire payments for the M/V AMIS INTEGRITY).

14. In this regard, attached are a series of Debit Notes to 24Vision and payments by 24Vision in regards to the Amis Integrity/24Vision charter party listing "Wisdom Marine Lines, S.A. as the "Beneficiary" and recipient of all charter hire paid by 24Vision for the charter of the M/V AMIS INTEGRITY (see Exhibit 7, hereto).

15. This same pattern of naming Wisdom Marine as the "Beneficiary" of the charter hire earned for the M/V AMIS INTEGRITY was followed in the subsequent United Bulk charter party (see Clause 63, page 10 of Exhibit 3, hereto), as well as for the Glencore charter party (see clause 63, page 14 of Exhibit 5A, hereto).

**WISDOM MARINE KNEW and EXPECTED THAT ITS MANAGED VESSELS WOULD CALL AT US PORTS, INCLUDING PORTS IN OREGON**

16. In the Declaration of Bruce Hsueh submitted in support of Defendant's Response in Opposition to the Motion to Amend (Dkt.79), he identifies himself as a Director of Wisdom Marine and the Chief Financial Officer of Wisdom Marine Lines Co. Ltd. which is consistent with the mixing and matching of officers, directors and employees of all of the Wisdom Marine Group companies. Defendant's Initial Disclosures state that the following individuals made or were involved in the decision to withdraw the Vessel: Huan Rong Hahn, Curly Tsao, Tina Lai and Mike Chao, all of which are listed in the Disclosure as representatives of Wisdom Marine Lines Co. Ltd., but yet all of the contemporaneous correspondence regarding the M/V AMIS INTEGRITY has them signing off e-mails and/or correspondence either for Wisdom Marine or the trade name Wisdom Marine Group. Since the vessel is managed on a day to day basis by Wisdom

Marine, all of these individuals were necessarily acting for and on behalf of Wisdom Marine when the vessel was wrongfully withdrawn (see Exhibit 13, pages 2 and 3).

17. Mr. Hsueh states in par. 9 of his Declaration that the charterers of vessels managed by Wisdom Lines make the decision as to what ports its vessels will call. This may be true; however, the 24Vision charter party and all the other NYPE 93 charter parties entered into by Wisdom Marine, as Manager, are for worldwide trading, with some minor exceptions not relevant here. As such, when Wisdom Marine charters its managed vessels to third parties, it has, or should have, a reasonable expectation that the vessels will call at US ports, in general, and within the District of Oregon, in particular. (See Clauses 5 (a) and 50 of Exhibit 1 hereto).[4]

18. The Amis Integrity/24Vision charter party, as well as all other NYPE 93 charter parties entered into by Wisdom Marine as Manager, contain a "Clause Paramount" requiring all bills of lading issued for carriage of cargo on board the managed vessel to contain reference to the US Carriage of Goods Act for any shipments to and from the US; a "US Trade Drug Clause" (Clause 31 (a) and (d), pages 10 and 11 of Exhibit 1); a reference to compliance with the US Maritime Security Code when sailing in US waters (page 27 of Exhibit 1); a "United States Transportation Security Clause" (Clause 84, page 35 of Exhibit 1); and, a US Oil Pollution clause (Clause 100, page 40 of Exhibit 1).

19. In the charter party with United Bulk (Exhibit 2, hereto), in addition to the above identified US Clauses there is a clause entitled "Longview" relating to port calls of the vessel in the Longview, Washington area on the Columbia River (see Clause 50, page 7, Exhibit 3, hereto).

---

[4] That expectation was a certainty given the fact that Wisdom Marine managed vessels called at US ports over 1000 times and in ports on the Columbia River over 190 times in the last five years (see pars 25, 26 and 27, below, and Exhibits 9, 10 and 11, attached hereto).

20.     The same "Longview Clause", together with the other US related clauses mentioned above, appears in the charter party between Amis Integrity S.A., as Owner and Wisdom Marine, as the Manager and a company called China Navigation Company PTE Ltd. (hereinafter "CNCO"), as charterer. This is the charter party for the Vessel immediately following the charter with United Bulk which sent the vessel to Vancouver, Washington where it was arrested by Plaintiff (see Exhibit 4, hereto, pages 1 and 10).

**WISDOM MARINE MANAGED VESSELS HAVE CALLED AT US PORTS, INCLUDING PORTS IN THE DISTRICT OF OREGON, ON OVER ONE THOUSAND OCCASSIONS IN THE LAST FIVE YEARS**

21.     In an effort to ascertain the number of vessels managed by Wisdom Lines, I consulted with the industry recognized website called "Equasis" ([www.equasis.org](www.equasis.org)) which is an independent source used regularly by the industry, including shipowners, charterers, marine insurers, Flag States, governmental agencies such as the US Coast Guard, and other port state control authorities.

22.     Equasis was established jointly by the European Commission and the French Maritime Administration with the following mission, in relevant part:

> "The **European Commission** and the **French Maritime Administration** decided to cooperate in developing an information system which collates existing safety-related information on ships from both public and private sources, and makes it available on the Internet.
> 
> The main principles associated with the set-up of the Equasis information system were as follows:
> 
> Equasis has no commercial purpose; it addresses a public concern and should act accordingly;
> 
> Equasis should be an international database covering the whole world fleet;
> 
> The set-up and effective operation of Equasis will help promote the exchange of unbiased information and transparency in maritime transport and thus allow persons involved in maritime transport to be better informed about the performance of ships and maritime

organisations with which they are dealing. The Equasis website went live on 17th May 2000." (see "About Equasis" at: www.equasis.org)

23.     According to the "Equasis" website, Wisdom Marine manages one hundred twenty-eight (128) vessels, including the M/V AMIS INTEGRITY, most of which vessels call at worldwide ports, including ports in the United States, in general, and ports within the District of Oregon, in particular (see Equasis listing of vessels managed by Wisdom Marine attached hereto as Exhibit 8).

24.     I also contacted another well-known and recognized marine information provider called "Marine Traffic" (www.marinetraffic.com) and requested, and received, in Excel format, a list of US port calls made by vessels managed by Wisdom Marine in the last five (5) years. Marine Traffic is a global ship tracking intelligence entity that uses Automatic Identification System (AIS) technology to track movements of ocean vessels in real time using the particular vessel's Maritime Mobile Service Identity (MMSI) number which is a "series of nine digits sent in digital form over a radio frequency channel in order to uniquely identify ship stations, ship earth stations, coast stations, coast earth stations, and group calls". Every ocean vessel is equipped with an MMSI number, including the vessels listed in Equasis as being managed by Wisdom Marine.

25.     According to Marine Traffic, they found two thousand one hundred ninety seven (2,197) "hits" of Wisdom Marine managed vessels calling at US ports in the last five years through the end of February, 2020. (see Marine Traffic US port call breakdown attached hereto as Exhibit 9).[5]

---

[5] Exhibits 9, 10 and 11 hereto have been converted from the native Excel format to PDF format for ease of reading. The original Excel native format has been retained and will be made available if so requested by the Court or Defendants.

26. In further analyzing the data received, it is obvious that there was more than one "hit" for any vessel while in a US ports. Accordingly, I manually eliminated any additional hits while the vessel indicated in the Excel listing was in any US port. In other words, I only counted one hit per each US port call. Even with the elimination of duplicate hits, there were over one thousand (1000) US port calls of Wisdom Lines managed vessels in the last five years (see "US Port Calls Revised" attached hereto as Exhibit 10).[6]

27. Additionally, of the over 1000 US port calls, the Marine Traffic Data indicates that over the last five years there were approximately 190 calls by more than 50 different vessels managed by Wisdom Lines to the Columbia River area calling at ports in Portland, Longview, Kalama, Vancouver, the Lower Vancouver Anchorage and the Astoria Anchorage (see "Wisdom Lines Managed Vessels Calls to Columbia River Ports" attached hereto as Exhibit 11).

28. Based on its practice of being designated as the "Beneficiary" of all charter hire paid by the charterers of the vessels it manages, Wisdom Lines earned substantial sums of monies for the US calls made in the last five years by its managed vessels, in general, and for the calls in the Columbia River area, in particular. As such, the statement contained in paragraph 4 of the Hsueh Declaration in Support of the Response in

---

[6] Statistically speaking, there was one US port call approximately every two days for the Wisdom Marine managed vessels. This is consistent with the corporate statement on the Wisdom Marine Group website touting the fact that the Wisdom Marine Group does business with "global commodity traders Glencore, Cargill and the Louis Dreyfuss Group". Cargill is headquartered in Minneapolis, MN and has an office at 800 North River Street, Portland, OR 97227; Louis Dreyfuss has six (6) offices in the United States, including an office at: 222 SW Columbia Street, Suite 1133, Portland, OR 97201; and Glencore has over twenty (20) offices in the US, including a major warehouse for the storage of commodities to be shipped overseas in Portland, Oregon. Contrary to Mr. Hsueh's Declaration (Dkt.79), Wisdom Marine does a substantial amount of business in the United States, and with major commodity traders either headquartered in the US or with substantial number of offices and commodity warehouses in the US, including offices in Portland, Oregon for the three commodity traders identified on the Wisdom Marine Group website (see Exhibit 8A, hereto).

Opposition to the Motion to Amend that Wisdom Lines does not conduct any business in Oregon and that it does not provide any services in Oregon is misleading, at best. The empirical data shows Wisdom Marine doing a substantial business in the United States, in general, and in the District of Oregon, in particular over the last five (5) years (see Exhibits 10 and 11, hereto).

**WISDOM LINES IS OBLIGATED UNDER ITS NYPE 93 CHARTER PARTIES TO DESIGNATE LOCAL PROTECTIVE AGENTS TO HANDLE OWNER RELATED ITEMS WHILE THE VESSEL IS IN US PORTS**

29. Clause 6 of the NYPE form charter provides as follows:

> "6. **Owners to Provide**
> The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for all provisions, cabin, deck, engine-room and other necessary stores, including boiler water**, *drinking water and lubricating oil***; shall pay for wages, consular shipping and discharging fees of the crew and charges for ***immigration and for*** port services pertaining to the crew; shall ***pay for all consular fees incurred due to the vessel's flag-state and shall*** maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service."

(See Clause 6 of 24Vision Charter Party, Exhibit 1, hereto)

30. Based on my experience in the maritime industry, the Manager of the Vessel normally appoints protective agents at loading and discharge ports to carry out these Owner related charter party obligations. As such, Wisdom Lines does business in the US with such agents, including the protective agents appointed in Oregon, to deal with repatriation and port services for the crewmembers (such as medical issues and examinations), as well as purchase of lubricating oils and provisions for deck and engine room stores and repairs that may be required to maintain the vessel in Class.

31. Again, Mr. Hsueh in par. 4 of his Declaration disingenuously states that Wisdom

Lines has "not sold any products or services" in Oregon. He ostensibly fails to mention any goods and services purchased by Wisdom Marine on behalf of its managed vessels in Oregon and other ports and places in the US.[7] This statement is not only mis-leading, but it ignores both the usual practice in the maritime industry to appoint port protective agents, and the empirical evidence that Wisdom Lines managed vessels have made over 1000 port calls in the US in the last five (5) years and approximately 190 calls to Columbia River ports. It is inconceivable that no goods and services were purchased by Wisdom Lines during such calls, or that any of its crewmembers were not repatriated from US ports to their home countries during such period of time requiring Wisdom Marine to engage local protective agents to handle the formalities.

32. In par. 5 of his Declaration, Mr. Hsueh attempts to downplay and minimize Wisdom Marine's role as the Manager of the M/V AMIS INTEGRITY. Mr. Hsueh focuses on one part of Wisdom Marine's functions which is the commercial management of its vessels. He ignores the more important role of Wisdom Marine as the Manager of the day to day operations of the vessels it manages. In this role, Wisdom Marine dictates all of the major decisions taken on behalf of its managed vessels, including the wrongful withdrawal of the M/V AMIS INTEGRITY from Dry Bulk's service. Contrary to Mr. Hsueh's statement, Wisdom Marine is the "Operator" of the vessels it manages. (See Equasis description of Wisdom Marine's roles as both the Ship Manager (Operator) and Commercial Manager attached hereto as Exhibit 12)

**INDIVIDUALS WORKING FOR WISDOM MARINE MADE ALL THE DECISIONS TO WRONGFULLY WITHDRAW THE VESSEL FROM DRY BULK'S SERVICE AND TO UNJUSTLY ENRICH ITSELF**

33. In its Initial Disclosures, Defendant Amis Integrity identified Mr. Huan Rong

---

[7] See Exhibit 4 to Tsao Declaration in Support of Motion for Countersecurity (Dkt.49-4) wherein an entity called Interport, located in Vancouver, Washington billed the Operations Department of Wisdom Marine Group (care of Mr. Tsao) for services rendered to the M/V AMIS INTEGRITY as "Owners Protective Agent".

Jang, Mr. Curly Tsao, Ms. Tina Lai and Mr. Mike Chao as being involved in the issuance of the withdrawal notice of the Vessel from Dry Bulk's service. All four individuals are listed in the Disclosure as representatives of "Wisdom Marine Lines Co. Ltd.". Mr. Tsao was also identified as the person in charge of the day to day operations for the M/V AMIS INTEGRITY. Since the day to day operations of the Vessel were being handled by Wisdom Marine as the Manager of the Vessel, it can be reasonably assumed that Mr. Tsao was acting on behalf of Wisdom Marine in that capacity (see Defendant M/V AMIS INTEGRITY Rule 26 Initial Disclosures attached hereto as Exhibit 13, pages 2 and 3).

34. In the Notice of Withdrawal of the Vessel dated July 12, 2019 submitted as Exhibit 3 to Jang Declaration (Dkt. 19-3), Mr. Tsao identifies his title as "Operations Department of the Wisdom Marine Group". There is no mention of Wisdom Marine Lines Co. Ltd. In addition, his e-mail address is listed as op04@wisdomlines.com.tw. (Tsao's Notice of Withdrawal e-mail is attached hereto as Exhibit 14).

35. This is the same e-mail address used by Wisdom Marine in respect to the day to day operations of the vessel. In e-mail exchanges between Wisdom Lines personnel and the Master of M/V AMIS INTEGRITY, both Mr. Tsao and a Bryan Chang identify themselves as the "Operation Department of Wisdom Marine Group (as Managers)". They both use the same e-mail address (op04@wisdomlines.com.tw). Wisdom Marine, as is customary for vessel managers, was in regular communication with the Masters of its managed vessels, including the Master of the M/V AMIS INTEGRITY (see exchanges of e-mails between Wisdom Marine

personnel and the Master of the M/V AMIS INTEGRITY after the Vessel was wrongfully withdrawn from Dry Bulk's service, attached hereto as Exhibit 15).[8]

36. The Exhibit 15 attached e-mails from Messrs. Chang and Tsao, both acting of Wisdom Marine, indicate that Wisdom Marine personnel were fully aware that the vessel had been positioned in the waters off Argentina in anticipation of the Dry Bulk/Trithorn charter and that they knew of the existence of such charter with Trithorn. The instructions to the Master to proceed to Paranagua, Brazil was to load the United Bulk Carriers cargo.

37. In this regard, the time of the message was at 2:06 pm, Taiwan time (0606 hours GMT time) on July 12th. Since 0606 hrs GMT July 12, was in the middle of the night in South America, and Europe, where United Bulk is located, was closed, it is evident that Wisdom Marine had already fixed the United Bulk business via its broker Barry Rogliano Salles ("BRS") on July 11th, not July 12th as has been previously alleged by Defendant in filings in this matter. Accordingly, the fixture with United Bulk was concluded before the vessel had been withdrawn and while Wisdom Marine personnel were fully aware that Dry Bulk had pre-paid hire to July

---

[8] A rough translation of these messages dated July 12, 2019, written in Taiwan Chinese, are as follows: 1) The message from Bryan Chang to the Master on page 1 of Exhibit 15 says: "In order to avoid harassing or causing trouble on board the ship with false information on the part of the charter or sub-charterer, the captain is requested if he receives any letter from any person other than the owner, to notify the owner as soon as possible after learning his identity, and if there is a suspicious person claiming to be in contact with the ship, it is also necessary to confirm his identity to the person in charge of the business, Please obtain the owner's consent from any immediate external response on board until the owner has follow-up instructions. Thanks to the captain for his cooperation!; 2) The messages from Curly Tsao to the Master on page 1of Exhibit 15 sent at 2;06 pm on July 12th (Taiwan time) says as follows: "Dear Master, Good Day, As we have officially notified the charterers that your vessel is withdrawn, the troublesome captain is now immediately instructed to divert course and sail to Paranagua, Brazil with the following:1. Please continue ECO-SPD to Paranagua and report the BROB of ETA and heavy oil on arrival? 2. Please do not reply to the original head charterer 24 Vision and sub charterer Drybulk anymore, the company will talk to them.3. What is the captain's TPC of 13.418 meters in summer? If you are unclear, please contact me anytime, thank you, Curly Tsao"

23rd and had committed the vessel to Trithorn (a copy of the Dry Bulk/Trithorn sub-charter Recap dated 7:52 am (Geneva time), July 11, 2019 is attached hereto as Exhibit 16) [9]

38. My communications with Wisdom Lines, as Manager of the M/V AMIS INTEGRITY have always been with Mr. Tsao at his Wisdom Lines e-mail address (see e-mail exchanges on July 9 and 10, 2019 with Master of the Vessel, to which Mt. Tsao is copied), advising the Vessel to proceed to a port in South America to await further instructions for the upcoming Trithorn charter (see e-mail exchanges attached hereto as Exhibit 17).

39. I also sent an e-mail on the afternoon of July 11th, 2019 advising Wisdom Marine's broker, Thomas Rolin of BRS, with proof of payment attached, of the payment of both the hire due and the pre-payment of the hire through July 23, 2019. I followed that e-mail with a second e-mail, after I received a "Notice of Default" from 24Vision, having already paid the hire and advance hire in a timely manner, to which both Mr. Rolin of BRS and the Master of the Vessel were copied. Based on my knowledge of previous usual practices, all communications relating to the M/V AMIS INTEGRITY sent to Mr. Rolin of BRS and the Master of the Vessel were immediately sent by the Master and Mr. Rolin, respectively, to Wisdom Marine and Mr. Tsao (see e-mails dated July 11, 2019 to 24Vision, with copies to Mr. Rolin and the Master of the M/V AMIS INTEGRITY are attached hereto as Exhibit 18).[10]

40. In addition to the above exchanges of e-mails, Dry Bulk's UK Solicitor, Dominic

---

[9] It should be noted that neither the Defendants in this action nor Barry Rogliano Salles ("BRS") in response to a subpoena issued by Dry Bulk have produced any correspondence or exchanges of communications between themselves or between BRS and United Bulk regarding the negotiations leading up to the conclusion of the Wisdom Marine charter with United Bulk citing vague "confidentiality or relevancy" objections. Clearly, such communications are neither confidential nor irrelevant to this matter.

[10] Again, even though requests have been made in Discovery in this matter and by subpoena to BRS for all exchanges of e-mails or other communications between BRS and Wisdom Marine, as well as communications between the Master of the AMIS INTEGRITY and Wisdom Marine, relating to the withdrawal of the Vessel, none have been produced by either Defendants in this matter or BRS pursuant to the subpoena.

Ward, sent an e-mail on the evening of July 11, 2019 (UK time) to 24Vision, with copies to Curly Tsao, the Master of the M/V AMIS INTEGRITY, and Thomas Rolin objecting to the so-called "Notice of Default" received from 24Vision, setting forth, in detail, the reasons that such "Notice" was invalid. This e-mail was circulated in the early morning hours Taiwan time amongst Wisdom Marine personnel, including, Mike Chao, Curly Tsao, Tina Lai and Huan Rong Jang. The circulation of Mr. Ward's e-mail amongst the Wisdom Marine personnel was before midnight GMT time on July 11, 2019 (see e-mail from Dominic Ward dated July 11, 2019 and the circulation of this e-mail amongst Wisdom Marine personnel shortly thereafter attached hereto as Exhibit 19).

41. Accordingly, before the Vessel was wrongfully withdrawn from Dry Bulk's Service, Wisdom Marine, through its operations manager, Mr. Tsao and others working for Wisdom Marine, knew: a) that the Vessel was positioned off the coast of South America at Dry Bulk's expense in anticipation of a charter to a third party; b) knew that the vessel had been chartered by Dry Bulk to a third party (Trithorn); c) knew that the hire due for the M/V AMIS INTEGRITY was paid in full and a pre-payment of additional hire was paid through July 23, 2019; and, d) that Dry Bulk was in full compliance with the terms and conditions of its charter party with 24Vision. Notwithstanding such knowledge, Mr. Tsao and his colleagues wrongfully withdrew the Vessel because they saw an opportunity to unjustly enrich Wisdom Marine by chartering the Vessel to United Bulk Carriers for a profit of at least $800,000, plus the savings of the positioning costs of at least $950,000 which costs were incurred by Dry Bulk to bring the Vessel to South America where it was conveniently delivered by Wisdom Marine to United Bulk

42. These actions resulting in the tortious interference with the Dry Bulk/24Vision

charter party and the resulting unjust enrichment of Wisdom Marine of having the Vessel positioned in South America at Dry Bulk's expense, together with the loss of the Trithorn charter and future earnings in a rising freight market are the basis for the pending action and the Motion to Amend to add Wisdom Marine Lines S.A. as an additional defendant.

43. I believe the matters set forth herein to be true based on documents an information obtained through discovery in this matter, my personal involvement and my experience in the maritime industry, and where stated upon information and belief. I declare under penalty of perjury that the foregoing is true and correct.



By: _____ Date: March 29, 2020
Stavros Tsolakis
Head of Chartering and
Authorized Representative for
Dry Bulk Singapore PTE. Ltd.