# EXHIBIT 5

Code Name: "NYPE 93"

Recommended by:
The Baltic and International Maritime Council (BIMCO)
The Federation of National Associations of
Ship Brokers and Agents (FONASBA)

# TIME CHARTER©
### New York Produce Exchange Form
*Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.*

November 6th, 1913 – Amened October 20th,1921; August 6th, 1931; October 3rd, 1946;
Revised June 12th, 1981; September 14th, 1993

| | |
|---|---|
| **THIS CHARTER PARTY**, made and concluded in **Taipei, Taiwan** | 1 |
| This **9th** day of **January** 20**20** | 2 |
| Between **Messrs Amis Integrity S.A. MMG TOWER 23 FLOOR, PASEO DEL MAR AND PACIFIC AVENUE COSTA DEL ESTE PANAMA. Managers/ Managers Fullstyle: Wisdom Marine Lines S.A. (as Managers) TEL: +886-2-2755-2637, FAX: +886-2-2755-6865, Address:  2ⁿᵈ FL., NO.237 FUHSING S.RD., SEC.2, TAIPEI, TAIWAN , R.O.C.** as Head | 3 |
| Owners of the Vessel described below, and **Messrs Glencore Agriculture B.V.,** as | 4 5 6 7 |
| Charterers. | 8 |

**Description of Vessel** — 9

Name **M/V Amis Integrity**   Flag **Panama**   Built **2017** (year).   — 10
Port and number of Registry — 11
Classed    in — 12
Deadweight    long*/metric* tons (cargo and bunkers, including freshwater and — 13
stores not exceeding    long*/metric* tons) on a salt water draft of — 14
on summer freeboard. — 15

Capacity    cubic feet grain    cubic feet bale space. — 16
Tonnage    GT/GRT. — 17
speed about    knots **through whole charter period,** ~~fully laden,~~ in good weather — 18
conditions up to and including maximum
Force 4 on the Beaufort wind scale and / or Douglas Sea State 3, on a consumption of about long*/metric* — 19
tons of — 20

For further description   ( SEE CLAUSE 46) — 21, 22

### 1. Duration

The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period — 23, 24
of **1 TCT with lawful/harmless grain in bulk, always *via safe berth(s), safe port(s), safe anchorage(s), always afloat always accessible within Institute Warranty Limits via Vancouver, Canada to India / Bangladesh Range. Intention Chittagong and Kolkata. Duration about 90 – about 100 days wog.*** — 25

within below mentioned trading limits. — 26, 27, 28

### 2. Delivery

The Vessel shall be placed at the disposal of the Charterers at **CJK Anchorage, China, any time day or night , Sundays and Holidays included unless otherwise mutually agreed.** — 29, 30

in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide) as the — 31, 32

NYPE 93 Page 1

AMIS0190

Charterers may direct.   **The Vessel on arrival first load port** 33
shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted 34
for ordinary cargo service, having water ballast and with sufficient power to operate all cargo-handling gear 35
simultaneously. 36

The Owners shall give the Charterers ~~not less than~~ **30, 20, 14, 10, 5, 3, 2 and 1** days notice of expected date of 37
delivery. 38
~~and~~

### 3. On-Off Hire Survey
39

*Prior to delivery and redelivery the parties shall, jointly appoint one(1) surveyor, who shall not later* 40
*than at first loading port/last discharging port respectively, conduct joint on-hire/off-hire surveys,* 41
*for the purpose of ascertaining quantity of bunkers on board and the condition of the Vessel.* 42
*A report shall be prepared on each occasion and signed by the surveyor and on-hire survey shall be on* 43
*Charterers' time off-hire survey on Owners' time but vessel to remain on-hire as long as it does* 44
*not interfere with Charterers option. Both parties hereto shall equally share the cost and expense* 45
*for the said inspection.* 46
47

### 4. Dangerous Cargo/Cargo Exclusions
48

(a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous, 49
injurious, flammable or corrosive nature unless **classified under the IMO regulations. Without prejudice to** 50
**the generality of the foregoing, in addition the followings are specifically excluded from the carriage by**
**the vessel:**

51
52
53
54
55
**(ALSO SEE CLAUSE 49)** 56
57
58
59
60
61
62
63
64
~~(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited to~~ 65
~~tons and the Charterers shall provide the Master with any evidence he may~~ 66
~~reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO~~ 67
~~regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at~~ 68
~~the Charterers' risk and expense.~~ 69

### 5. Trading Limits
70

The Vessel shall be employed in such lawful trades between safe ports and safe places 71
within   **(SEE CLAUSE 50)** 72
~~excluding~~ 73
74
75
~~as the Charterers shall direct~~ 76

### 6. Owners to Provide
77

The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for 78
all provisions, cabin, deck, engine-room and other necessary stores, including boiler water, **drinking water** 79
**and lubricating oil**; shall pay for
wages, consular shipping and discharging fees of the crew and charges for **immigration and for** port services 80
pertaining to the

| | |
|---|---|
| crew; shall **pay for all consular fees incurred due to the vessel's flag-state and shall** maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and | 81 |
| equipment for and during the service. | 82 |

### 7. Charterers to Provide

| | |
|---|---|
| | 83 |
| The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise | 84 |
| agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and compulsory | 85 |
| garbage disposal), all communication expenses pertaining to the Charterers' business ~~at cost~~, **compulsory or recommended by the port authority including Skaw, Dardanelles and Bosporus** pilotages, | 86 |
| towages, agencies, commissions, consular charges (except those pertaining to individual crew members | 87 |
| or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel | 88 |
| puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all | 89 |
| such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew | 90 |
| shall be for the Owners' account. Fumigations ordered because of cargoes carried or ports visited while | 91 |
| the Vessel is employed under this Charter Party shall be for the Charterers' account. ~~All other fumigations~~ | 92 |
| ~~shall be for the Charterers' account after the Vessel has been on charter for a continuous period of six~~ | 93 |
| ~~months or more.~~ | 94 |

| | |
|---|---|
| The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a | 95 |
| special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard | 96 |
| the Vessel. Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in | 97 |
| their time. | 98 |

### 8. Performance of Voyages

| | |
|---|---|
| | 99 |
| (a) The Master shall perform the voyages with due despatch, and shall render all customary assistance | 100 |
| with the Vessel's crew. The Master shall be conversant with the English language and (although | 101 |
| appointed by the Owners) shall be under the orders and directions of the Charterers as regards | 102 |
| employment and agency; and the Charterers shall perform all cargo handling, including but not limited to | 103 |
| loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk | 104 |
| and expense, under the supervision of the Master. | 105 |

| | |
|---|---|
| (b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or | 106 |
| officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if | 107 |
| necessary, make a change in the appointments at a convenient port. | 108 |

### 9. Bunkers

| | |
|---|---|
| | 109 |
| *(a) Bunkers on delivery : LSFO ( SULPHUR < 0.5%): ABOUT 520 - ABOUT 540 TONS.* | 110 |
| *LSMGO ( SULPHUR < 0.1%): ABOUT 85 – ABOUT 90 TONS* | |
| *Prices on delivery to be USD 715 per metric ton for LSIFO and USD 715 per metric ton for LSMDO respectively.* | |
| *Bunkers on redelivery: to be about similar (+/-5%) quantities as on delivery for LSFO/LSMGO* | 111 |
| *Prices on redelivery to be same with delivery.* | |
| **BOTH "BIMCO 2020 FUEL TRANSITION CLAUSE FOR TIME CHARTER PARTIES" AND "BIMCO 2020 MARINE FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES" TO BE APPLIED.** | |
| ~~The Charterers have the privilege to bunker the vessel~~ | 112 |
| ~~prior to delivery, provided the bunkering does not interfere with the Owners'/Builder's operation, if interfered time lost to be for the Charterers' account.   Similar privilege is granted to the Owners prior to redelivery.~~ | 113 |
| Charterers have the right to supply bunkers before delivery subject not to interfere with usual shipyard/ | 114 |
| delivery operation. | 115 |
| Owners have the right to supply bunkers before redelivery subject to not interfere with Charterers' | 116 |
| cargo operation. | |

| | |
|---|---|
| (b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines | 117 |
| and auxiliaries and which conform to the specification(s) as set out in **CLAUSE 46** | 118 |
| The Owners reserve their right to make a claim against the Charterers for any damage to the main engines | 119 |
| or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed | 120 |
| specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed | 121 |

| | |
|---|---|
| specification(s) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences. | 122<br>123<br>124 |

### 10. Rate of Hire/Redelivery Areas and Notices

| | |
|---|---|
| | 125 |
| The Charterers shall pay for the use and hire of the said Vessel at the rate of $ **USD 8,400 daily including overtime.** | 126 |
| U.S. currency, daily, *including overtime payable every 15 days in advance* ~~or $~~         ~~U.S. currency per ton on the Vessel's total deadweight~~ | 127 |
| ~~carrying capacity, including bunkers and stores, on summer freeboard, per 30 days,~~ | 128 |
| commencing on and from the *time of the* day of her delivery, as aforesaid, and at and after the same rate for any part | 129 |
| of a *day* ~~month~~; hire shall continue until the hour of the day of her redelivery in like good order and condition, *as when the vessel was delivered,* | 130 |
| ordinary wear and tear excepted, to the Owners (unless Vessel lost) at *dropping last outward sea pilot or passing one safe port Skaw/Passero range including U.K./EIRE (exclude Baltic Sea/Black Sea/East of Cape Passero) or in Charterers' option PMO/Japan range (exclude Red Sea/Aden Gulf/Somalia area) and incase vessel trading to Persian Gulf then redelivery to be Passing Muscat Outbound. Port in Charterers' option in all above cases,* at any time day or night, Sundays and Holidays included unless otherwise mutually agreed. | 131<br>132<br>133 |
| | 134 |
| *The Charterers shall give the Owners not less than 30, 15, 7, 5 and 3 approximate days notice of the Vessel's expected date and 2 and 1 day of definite notice of date and time and probable port of redelivery.* | 135<br>136 |
| For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be adjusted to UTC. | 137<br>138 |

### 11. Hire Payment

| | |
|---|---|
| | 139 |
| (a) *Payment* | 140 |
| Payment of Hire shall be made to the Owners' nominated bank in Taipei in United States currency **(SEE CLAUSE 63)** | 141<br>142 |
| *1st hire including 15 days hire , value of BOD and C/V/E to be paid within three banking days after vessel's delivery to Charterers.* | 143 |
| | 144 |
| *Hire payable every 15 days in advance together with C/V/E value.* | 145 |
| | 146 |
| ~~15 days in advance~~, and for the last 15 days or part of same the approximate | 147 |
| amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire, or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have on the Charterers. | 148<br>149<br>150<br>151<br>152 |
| At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account. | 153<br>154<br>155<br>156<br>157<br>158 |
| (b) *Grace Period* | 159 |
| Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners ~~2~~ **3 (three)** clear banking days from the original hire due date to rectify the failure, and when so rectified within those ~~2~~ **3 (three)** days following the original hire due date, the payment shall | 160<br>161<br>162<br>163 |

stand as regular and punctual. 164

Failure by the Charterers to pay the hire within ~~2~~ **3 (three)** days of the original hire due date as provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above. 165 166

(c) <u>Last Hire Payment</u> 167

Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be refunded by the Owners or paid by the Charterers, as the case may be. 168–174

(d) <u>Cash Advances</u> 175

Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required by the Owners, subject to 2½ percent commission **in total** and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances. 176–178

## 12. <u>Berths</u> 179

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat at any time of tide **except to the extent that NAABSA applies to the areas stipulated in Clause 50**. ~~Master has the sole right to refuse to enter any port, berth or place that deem unsafe by his discretion; it is charterers' responsibility to provide sufficient information and evidence to show such port, berth, and or place is proven safe before owners will grant the entering of vessel to such port, berth, place. And the vessel is to remain on hire at full time.~~ 180–182

## 13. <u>Spaces Available</u> 183

(a) The whole reach of the Vessel's holds, decks, ~~and other cargo spaces~~ (not more than she can reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle, apparel, furniture, provisions, stores and fuel. 184–187

(b) ~~In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.~~ 188–190

## 14. <u>Supercargo and Meals</u> 191

The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers' risk and see that voyages are performed with due despatch. He is to be furnished with free accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of **US$15.** per day. The Owners shall victual pilots and customs officers, and also, when authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., Charterers paying ~~at the rate of~~ **AS PER CLAUSE 53** ~~per meal~~ for all such victualling. 192–197

## 15. <u>Sailing Orders and Logs</u> 198

The Charterers shall furnish the Master from time to time with all requisite instructions and sailing directions, in writing, in the English language, and the Master shall keep full and correct deck and engine logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the Charterers, their agents or supercargo, when required, with a copy of **abstract Logs of which formats to be supplied by Charterers,** showing the course of the Vessel, distance run and the consumption of bunkers. 199–204

## 16. <u>Delivery/Cancelling</u> 205

If required by the Charterers, time shall not commence before **00:00 hours 8th January 2020** and should the Vessel not be ready for delivery on or before **23:59 9th January, 2020** ~~but not later than hours,~~ 206–207

AMIS0194

| | |
|---|---:|
| the Charterers shall have the option of cancelling this Charter Party. **Owners to give 30/20/14/10/5/3/2/1 days delivery notice.** | 208 |
| ~~Extension of Cancelling~~ | 209 |
| ~~If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready for delivery by the canceling date, and provided the Owners are able to state with reasonable certainty the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers in accordance with this Clause.~~ | 210–217 |

## 17. Off Hire

In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the arrest of the Vessel, (unless aforesaid events is caused by events for which the Charterers, their servants, agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or painting bottom, or by any other similar cause preventing the full working of the Vessel (other cause refers to the one(s) directly affect the efficient running of the vessel and exclude external events which, while delaying performance of contract, do not relate to the physical condition of the vessel or crew) the payment of hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time of her deviating or putting back until she is again in the same or equidistant position from the destination and the voyage resumed there from. All bunkers used by the Vessel while off hire shall be for the Owners' account. In the event of the Vessel being driven into port or to anchorage through stress of weather, trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses directly incurred may be deducted from the hire.

## 18. Sublet

Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this Charter Party.

## 19. Drydocking    (SEE CLAUSE 67)

~~The Vessel was last drydocked~~

~~*(a) The Owners shall have the option to place the Vessel in drydock during the currency of this Charter at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for bottom cleaning and painting and/or repair as required by class or dictated by circumstances.~~

~~*(b) Except in case of emergency no drydocking shall take place during the currency of this Charter Party.~~

~~* Delete as appropriate~~

## 20. Total Loss

Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

## 21. Exceptions

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the

| | |
|---|---|
| seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always mutually excepted. | 254<br>255 |
| **22. Liberties** | 256 |
| The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property. | 257<br>258 |
| **23. Liens** | 259 |
| The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due under this Charter Party, including general average contributions, and the Charterers shall have a lien on the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. | 260<br>261<br>262<br>263 |
| The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the Owners in the Vessel. The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time. | 264<br>265<br>266<br>267 |
| **24. Salvage** | 268 |
| All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting Owners' and Charterers' expenses and crew's proportion. | 269<br>270 |
| **25. General Average** | 271 |
| General average shall be adjusted according to York-Antwerp Rules **1994**, ~~1974 as amended 1990~~, or any subsequent modification thereof,   in **London and settled in US Dollars** | 272<br>273<br>274 |
| The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1974, as amended ~~1990,~~ **1994** or any subsequent modification thereof and will include the "New Jason Clause" as per Clause 31. | 275<br>276<br>277<br>278 |
| ***Charterers are obligated to assist owners obtaining security from cargo receivers.*** | |
| Time charter hire shall not contribute to general average. | 279 |
| **26. Navigation** | 280 |
| Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, and all other matters, same as when trading for their own account. ***(SEE CLAUSE 82)*** | 281<br>282<br>283 |
| **27. Cargo Claims** | 284 |
| Ultimate responsibilities as between owners and charterers for all cargo claims arising out of charter voyages shall be settled in accordance with Inter-Club New York Produce Exchange Agreement dated 20th Feb 1970 and reprint of May 1972 and reprint of May 1984 and revised September 1996 and any subsequent amendment which terms are indemnity Club is, in fact, covering either Owners and Charterers.<br>Owners agree that provided they are kept regularly advised by Charterers of all claims, settlements and extension of time, the Charterers may deal with and handle all cargo claim arising of charterer voyage and with owners' agreement, may settle cargo claims upto a limit of US$1000.00 per claim and grant extension of time as against owners and charterers in respect of all claims not yet time barred. | 285 |
| Owners shall bear no responsibility for damages to the cargo which caused due to bad handling of the Stevedores. | |
| **28. Cargo Gear and Lights** | 286 |
| The Owners shall maintain the cargo handling gear of the Vessel as fitted, | 287<br>288<br>289 |

providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners shall also provide on the Vessel for night work lights as on board, but all additional lights over those on board shall be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. If required by the Charterers, **subject to the Owners' consent to hire shore gear,** the Owners shall bear the cost of hiring shore gear in lieu thereof, in which case the Vessel shall remain on hire.

**Vessel is equipped with grabs, Charterers have the right to use free of charge. Owners undertake to carry out usual maintenance of the grabs and their accessories. Owners are not to be responsible for the breakdown of grabs if such breakdown/lack of performance is caused by default of shore labour/stevedores and vessel to remain on-hire at all times. If such breakdown of grabs is caused by lack of usual maintenance of the grabs and its accessories, then actual time lost as a result of breakdown to be prorate by actual working grabs shall be for Owners' account and the vessel shall be off-hire and if vessel's grabs breakdown don't delay vessel's schedules in ports then vessel shall remain on hire.**

### 29. ~~Crew Overtime~~

~~In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents, the Charterers shall pay to owners, concurrently with the hire       per month or pro rata.~~

### 30. **Bills of Lading**

(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts.

(b) All bills of lading or waybills shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master at their request.

(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for any loss, damage, expense or delay howsoever caused." **General deck cargo clause to be incorporated in B/L covering deck cargo.**

~~(d) When loading bulk cargo, the cargo quantity must accord to the draft survey agreed by master. And the mate's receipt should be remarked as "Cargo weight and condition unknown, the vessel is not responsible for the quality and or quantity."~~

### 31. **Protective Clauses**

This Charter Party is subject to the following clauses all of which are also to be included in all bills of lading or waybills issued hereunder:

(a) CLAUSE PARAMOUNT
"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further."

and  327

(b) BOTH-TO-BLAME COLLISION CLAUSE  328
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any  329
act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in  330
the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against  331
all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents  332
loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other  333
or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the  334
other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.  335

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or  336
objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or  337
contact."  338

and  339

(c) NEW JASON CLAUSE  340
"In the event of accident, danger, damage or disaster before or after the commencement of the voyage  341
resulting from any cause whatsoever, whether due to negligence or not, for which, or for the  342
consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods,  343
shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the  344
payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred,  345
and shall pay salvage and special charges incurred in respect of the goods.  346

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship  347
or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover  348
the estimated contribution of the goods and any salvage and special charges thereon shall, if required,  349
be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."  350

and  351

(d) U.S. TRADE - DRUG CLAUSE  352
"In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986 or any re-enactment thereof, the  353
Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested  354
narcotic drugs and marijuana to be loaded or concealed on board the Vessel.  355

Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences  356
of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel  357
harmless and shall keep them indemnified against all claims whatsoever which may arise and be made  358
against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines,  359
as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account  360
and the Vessel shall remain on hire.  361

Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this  362
clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable  363
time the Vessel is released and at their expense put up the bails to secure release of the Vessel.  364

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the  365
event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the  366
Vessel's personnel."  367

and  368

(e) WAR CLAUSES  369
"(i) ~~No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the~~  370
~~Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state~~  371
~~of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration~~  372
~~of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture,~~  373
~~seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de~~  374
~~facto authority or any purported governmental organization maintaining naval, military or air forces).~~  375

~~(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of                    In addition, the Owners may purchase and the Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program, the Vessel shall not be required to enter or remain at any such port or zone.~~

~~(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter, or while the Vessel is on hire under this Charter, the Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities.~~

~~(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the Charterers' account."~~ **Bimco Standard War Risk Clause for Timecharters 2004 – code name "Conwartime 2004" hereto attached applies for this clause**

### 32. War Cancellation

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: ~~Fed. Rep. Russia / P.R.C. /U.S.A. / E.U. country~~ **United Kingdom, USA, Commonwealth of Independent States (CIS) former called USSR, People's Republic of China, Italy and Japan**

either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this Charter Party shall apply until redelivery.

### 33. Ice

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and remain in the port or area or to get out after having completed loading or discharging. Subject to the Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her size, construction and ice class.

### 34. Requisition

Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by the Owners. The period during which the Vessel is on requisition to the said government shall count as part of the period provided for in this Charter Party.
If the period of requisition exceeds…***30***……………………………… days, either party shall have the option of cancelling this Charter Party and no consequential claim may be made by either party.

### 35. Stevedore Damage *(SEE CLAUSE 88)*

~~Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.~~

~~(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.~~

~~(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.~~ 426
427
428
429
430

### 36. Cleaning of Holds 431

The Charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by Local regulations, at the rate of **USD 500 per hold actually used** ~~Charterers direct negotiation with crews.~~ *All consumable cleaning materials, supplies including fresh water required for such cleaning to be on charterers' account.* 432 433 434

In connection with any such operation, the Owners & vessel shall not be responsible if the Vessel's holds are not accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver the Vessel with unclean/upswept holds against a lump sum payment of **USD5,000 excluding removal disposal of dunnage, lashing, debris** In lieu of cleaning. 435 436 437

### 37. Taxes 438

Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including any taxes and/or dues on cargo and/or freights and/or sub-freights ~~and/or hire (excluding taxes levied by the country of the flag of the Vessel or the Owners)~~. 439 440 441 442

### ~~38. Charterers' Colors~~ 443

~~The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers shall be for the Charterers' account.~~ 444 445 446 447

### 39. Laid up Returns 448

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum period of 30 days if on full hire for this period or pro rata for the time actually on hire. 449 450 451

### 40. Documentation 452

The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' P & I club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel's gear. 453 454 455 456 457

### ~~41. Stowaways~~ 458

~~(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers.~~ 459 460 461

~~(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.~~ 462 463 464 465 466 467 468

~~(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the~~ 469 470 471

| | |
|---|---|
| ~~Vessel.~~ | 472 |
| ~~(b) (i)  If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.~~ | 473<br>474<br>475<br>476 |
| ~~(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.~~ | 477<br>478<br>479<br>480 |

### 42. Smuggling

| | |
|---|---|
| In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof. | 481<br>482<br>483 |

### 43. Commissions

| | |
|---|---|
| A commission of **1.25**           percent is payable by the Vessel and the Owners to **Benefit Transport S.A.** | 484<br>485<br>486<br>487<br>488 |
| on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter. | 489 |

### 44. Address Commission

| | |
|---|---|
| An address commission of    **3.75**           percent is payable to **the Charterers** | 490<br>491<br>492 |
| on hire earned and paid under this Charter. | 493<br>494 |

### 45. Arbitration

| | |
|---|---|
| ~~(a) NEW YORK~~<br>~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and subject to U.S. Law:~~ | 495<br>496<br>497<br>498 |
| ~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.~~ | 499<br>500<br>501<br>502<br>503 |
| ~~For disputes where the total amount claimed by either party does not exceed US $_____~~ **  ~~the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.~~ | 504<br>505<br>506 |
| (b) LONDON<br>All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made. Any dispute arising hereunder shall be governed by English Law. | 507<br>508<br>509<br>510<br>511<br>512<br>513<br>514 |
| For disputes where the total amount claimed by either party does not exceed **US $ 50,000**           ** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association. *If one party fail to appoint an arbitrator either originally or by way of substitution as aforesaid within 21 clear days after the party having appointed its arbitrator has served the party in default notice to make an appointment, the party who has appointed an arbitrator is allowed to appoint that arbitrator to act as sole arbitrator in the reference and his award shall be binding on both parties as* | 515<br>516<br>517 |

*if had been appointed by consent.*

\*Delete para (a) or (b) as appropriate     518

\*\* **Where no figure is supplied in the blank space this provision only shall be void but the other provisions of this clauses shall have full force and remain in effect.**     519

520

If mutually agreed, clauses **46** to **98**, both inclusive, as attached hereto are fully incorporated in this Charter Party.     521 522

523

**APPENDIX "A"**
~~To Charter Party dated~~     524
~~Between~~     ~~Owners~~     525
~~and~~     ~~Charterers~~     526

527
528

Owners:            Charterers:

_____       _____

By:                By:
Title:            Title: