Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington  98106-1271
Phone:      206-623-4990
Facsimile: 206-467-4828
Email:  moberg@legros.com
Email:  dpark@legros.com
Attorneys for Amis Integrity S.A.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-01671-BR <br><br> IN ADMIRALTY <br><br> **DEFENDANT AMIS INTEGRITY S.A.'S MOTION TO DISMISS FOR PROCESS AND LACK OF PERSONAL JURISDICTION** |

## I. MOTION AND LR 7-1 CERTIFICATION

Defendant Amis Integrity S.A. ("Amis") respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b) to dismiss for improper service, insufficient process and lack of personal jurisdiction.

In compliance with LR 7-1(a), Movant's counsel confirms that the parties made a good faith effort through telephone conference on March 25, 2020, to resolve the dispute and have been unable to do so.

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 1
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

## II.  INTRODUCTION

Plaintiff has not properly served Amis in Panama.  Proper service required compliance with the Inter-American Convention on Letters Rogatory, including service by a court bailiff of translated documents.

In addition, Amis does not have the requisite minimum contacts with Oregon (or the United States) for an exercise of personal jurisdiction.  The courts distinguish between specific and general jurisdiction.  The former requires that Plaintiff's claims arise out of the Defendant's forum-related activities; however, there is no dispute that Plaintiff's claims do not arise out of any activity related to the State of Oregon.  An exercise of general jurisdiction over a foreign corporation is appropriate "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122, 127, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).  Aside from the irrelevant fact that a charterer had directed the vessel to Vancouver, Washington at the time it was arrested, Amis has no contacts with Oregon and by no stretch of the imagination can it be found to be "at home" here.  Defendant Amis should be dismissed.

## III.  FACTS

### A.  Improper Service

Plaintiff initiated this action on October 17, 2019, and in the Complaint named Amis Integrity S.A. ("Amis") as a Defendant.  Dkt. #1.

On March 12, 2020, almost five months later, Plaintiff filed a proof of service representing that service was made on Amis on March 5, 2020 by providing a summons to

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 2
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

the law firm of Morgan & Morgan, as Resident Agents of Amis Integrity S.A. Dkt. 76. As discussed below, personal service is not permissible. Furthermore, Morgan & Morgan is not the registered agent and not a legal representative for Amis Integrity S.A. for purposes of service of process in Panama. *Declaration of Markus Oberg* (hereafter "*Oberg Decl*."), Exhibit 1.

B.     **Amis's Lack of Contacts with Oregon**

There is no dispute that Amis is a foreign corporation. Dkt. 1 (Verified Complaint), ¶4. Amis is in fact a Panamanian corporation with its registered office at Paseo del Mar and Pacific Avenues, Costa del Este, MMG Tower, 23rd Floor, Panama City, Republic of Panama. *E.g*., Dkt. 19-1, p. 2.

Amis does not conduct business in the State of Oregon. Dkt. 79, ¶4. Amis is not licensed to do business in Oregon; has no offices, property, employees, or shareholders in Oregon; has never advertised in Oregon; and has not sold products or services in Oregon. *Id*. Amis does not even have an agent or office anywhere else in the U.S. *Id.*

Neither the vessel or its crew have a local flavor: The M/V AMIS INTEGRITY is a Panamanian flagged vessel, and its Owners typically employ Chinese and Taiwanese crew through manning agencies. Dkt. 79, ¶¶6-7; *see also*, Dkt. 1-2 (Flag: Panama). Indeed, under the standard charter party clauses, the Owners are obligated to provision the vessel, pay crew wages, consular shipping and discharging fees of the crew, and pay all port service charges pertaining to the crew. *E.g*., Dkt. 19-1 (Clause 6).

Plaintiff contends without support, in its motion to amend the complaint, that payment by a Wisdom group entity for charges incurred by the vessel in connection with the subject arrest while in Washington somehow qualifies as goods and service purchased in

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 3
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

Oregon. *See* Dkt. 80, p. 9; Dkt. 81, ¶31, n. 7. To the contrary, Owners are typically obligated under a charter party to pay for any charges incurred in connection with a cause that is solely the vessel's responsibility and not the charterers—such as in connection with an arrest unrelated to the current charter—otherwise the charterer pays. *E.g.*, Dkt. 19-1, p. 4, ¶7. In fact, vessel interests are bringing a counter claim to recover such charges from Plaintiff, as they were forced to incur such charges as a result of wrongful arrest. *See* Dkt. 46.

Likewise, the emphasis on a Longview clause in some charter parties is misplaced. *See* Dkt. 80, p. 11. In the international trade, the charter parties often contain boilerplate clauses covering the *possibility* that a vessel may call at a U.S. port. *E.g.*, Dkt. 19-1, p. 27 (United States Security Clause: If the Vessel calls in the United States…); p. 35 (Clause 84 (a)(i) …If trading to or from the United States…) (emphasis added); Dkt. 81-3, p. 7 (United States Security Clause: If the Vessel calls in the United States…). Such prudence and possibility is in no way tantamount to a purposeful availment by the vessel owner. Notably, a "Longview" clause appears in the charter party in effect before the charter party during which the vessel was arrested, *see* Dkt. 81-3, p. 8 and yet there is no evidence that the vessel called in a Washington (or Oregon) port during that charter. *See*, Dkt. 81-12, 81-13, 81-14. These contractual clauses address obligations under certain eventualities which may or may not come into play.

In support of its motion to amend the complaint to add Wisdom Marine Lines S.A. as a party, Plaintiff submitted documents purporting to identify port calls in the U.S. by vessels in some manner allegedly affiliated with Wisdom Marine Lines S.A. If this data is correct, then over the past five years the M/V AMIS INTEGRITY was direct by its charterer(s) to the

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 4
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

U.S. at most *three* times, including the time it was arrested at Vancouver, Washington. *See*, Dkt. 81-13, pp. 22-24, and 44.

Moreover, when the withdrawal occurred, the Vessel was en route to South America, having last called at Cape Town, South Africa. Dkt. 79, ¶10.

**C.     The Charterers Control and Direct the Vessel**

Amis Integrity S.A. chartered the Vessel to 24Vision, based in Dubai, United Arab Emirates on/about June 30, 2017 (hereafter the "Charter Party") and placed the vessel at Charterer's disposal on/about July 14, 2017. Dkt. 19-1, p. 1; Dkt. 79, ¶8. Under the Charter Party, the Master was under the orders and directions of the Charterers, Dkt. 19-1, ¶8(a), and the Charterer directed the movement of the Vessel. *Id*., ¶15.

The foregoing arrangement pertaining to Vessel control and direction is accurate with regard to subsequent charters as well, including the charter during which the Vessel was arrested. Dkt. 79, ¶¶8-9. After delivery, the charterer directs the Master and the Vessel's movement. *See e.g*., *Amoco*, 1 F.3 at 850.

Lastly, there is no dispute that English law governs, or that both charter parties at issue called for dispute resolution by arbitration in London, England. The Charter Party expressly provides: "The terms of this Charter Party shall be governed by English law," and states that all "disputes shall be referred to arbitration in London." Dkt. 19-1, ¶45. Indeed, Plaintiff asserted in its Opposition to Motion to Vacate that English law governs, Dkt. 27, p. 3 ("…in violation of applicable English Law governing the charter party agreements in this case…"); and has consistently maintained that the same terms and conditions in the Head Charter Party governed the sub-charter between it and 24Vision. *See, e.g*., Dkt. 31 (*Tsolakis Decl.*), ¶13; Dkt. 1-2, p. 10 ("… as per Owner Pro Forma Charter Party as attached . . . ")

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 5
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

## IV. DISCUSSION

Defendant Amis Integrity S.A. ("Amis") should be dismissed with prejudice for improper service and insufficient process, and lack of personal jurisdiction.

### A.    Improper Service/Insufficient Process

Where there is an internationally agreed means of service of process on a foreign corporation, such means must be employed to effect service of process. *See*, Fed. R. Civ. P. 4(h)(2); 4(f). The U.S. and Panama are parties to the Inter-American Convention on Letters Rogatory. The Convention governs service of process and requires the use of letters rogatory. *Inter-American Convention on Letters Rogatory*, Article II. Service of process under the Convention is made through the Panamanian Central Authority. Furthermore, the documents to be served must be translated to the official language of the State of Destination. *Id*., Article IV. Plaintiff made no attempt to comply with the Convention, and simply left an envelope containing a copy of the complaint in English with Amis's Resident Agent. Dkt. 76 ("as Resident Agents"); *Oberg Decl*., Exhibit 1 ("Under Panamanian law, the legal representative of the company – Chun Sheng Lan – is the proper agent for service."). This does not constitute proper service, and Amis should be dismissed on this basis alone.

### B.    Plaintiff Cannot Establish Personal Jurisdiction Over Amis

Plaintiff bears the burden of establishing that this Court has personal jurisdiction. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) (*citing Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir. 1984), *cert. den.*, 470 U.S. 1005, 105 S. Ct. 1359, 84 L. Ed. 2d 380 (1985)). Where the action is brought in admiralty, to meet that burden Plaintiff must show that Oregon's jurisdictional statute confers personal jurisdiction, and that the exercise of

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 6
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

jurisdiction accords with federal constitutional principles of due process. *Id*. at 380 (*citing Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir. 1985)); *see also Amoco Egypt Oil Company v. Leonis Navigation Company, Inc.*, 1 F.3d 848, 850-51 (9th Cir. 1993) (affirming dismissal of claims against bareboat charterer for lack of personal jurisdiction despite unrelated contacts with forum state via sub-charterer).

Courts may exercise either specific or general jurisdiction over non-resident defendants.  Specific jurisdiction requires that Plaintiff satisfy the Ninth Circuit's three-part test, an element of which requires that Plaintiff's claim arise out of Defendant's forum-related activities.  *Shute*, 897 F.2d at 381 (*citing Haisten v. Grass valley Med. Reimbursement Fund,* 784, F.2d 1392, 1396, 1397 (9th Cir. 1986); *Data Disk, Inc. v. Systems Tech. Assocs., Inc.*, 557. F.2d 1280, 1287 (9th Cir. 1986)).  Plaintiff cannot establish specific jurisdiction. Plaintiff's claims arise out of an action taken by and between foreign corporations relating to a foreign flagged vessel while in international waters between South Africa and South America.  Under these circumstances, the only basis for jurisdiction would be general jurisdiction.  *See*, *Amoco*, 1 F.3 at 850 ("Because Amoco's claim against Leonis did not arise out of, and is unrelated to, Leonis' contacts with Washington, Amoco concedes that the district court may only hear the claim if Washington can exercise 'general jurisdiction' over Leonis.") (*citing Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, n. 9, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)); *see also*, *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1127, 2002 (9th Cir. 2002) (affirming dismissal for lack of personal jurisdiction where defendant previously shipped to the forum 16 times and the East Coast seven times).

An exercise of general jurisdiction over a foreign corporation is appropriate "only

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 7
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122, 138-39, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). Indeed, the concept of "purposeful availment" requires that the contacts result from actions by the defendant itself; the point is to ensure that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476, 105 S. Ct. 2174, 2183-2184, 85 L. Ed. 2d 528, 542-543 (1985) (*citing Keeton* v. *Hustler Magazine, Inc*., 465 U.S. 770, 774, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984); *World-Wide Volkswagen Corp*. v. *Woodson*, 444 U.S. 286, 299, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980); *Helicopteros Nacionales de Colombia, S.A*. v. *Hall,* 466 U.S. at 417. Notably, in *Daimler AG*, the U.S. Supreme Court jettisoned the reasonableness prong of general jurisdiction previously applied by the Courts of Appeal, and it is no longer part of the jurisdictional analysis. *Daimler AG*, 571 U.S. at 139, n. 20; 144, n. 1.[1]

Given Plaintiff's pending motion to amend the complaint to add Wisdom Marine

---

[1] Nonetheless, the seven factors defining reasonableness militate against jurisdiction. *See*, *Amoco*, 1 F.3d at 851. (1) The extent of purposeful interjection parallels the question of minimum contacts, *id*., at 852, and Amis does not have the requisite contacts; (2) The burden on Amis to defend in this foreign legal system would be considerable, *id*., at 852 (*quoting Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 114, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)) (unreasonable where claim between Taiwanese plaintiff and Japanese defendant arose out of transaction in Taiwan); (3) "where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco*, 1 F.3d at 852 (*citing Pacific Atl. Trading Co.*, 758 F.2d at 1330); (4) Oregon has no interest in this dispute; (5) The key witnesses are in Taiwan, Singapore, and Dubai, Dkt. #73; (6) *Convenient and effective relief for Plaintiff* lies in England; and (7) *An alternative forum exists* in London, England. English law governs and Plaintiff agreed to London arbitration (in its sub-charterer with 24Vision). Plaintiff has the burden of proving the unavailability of that alternative forum. *Amoco*, 1 F.3d at 853 (*citing Pacific Atl. Trading Co.*, 758 F.2d at 1331).

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 8
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

Lines S.A. as a party, it is also worth noting that "a parent corporation's ties to a forum do not create personal jurisdiction over the subsidiary." *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301-302 (9th Cir. 1986) (*citing Uston v. Hilton Casinos, Inc.*, 564 F.2d 1218, 1219 (9th Cir. 1977)).[2]

Here, Amis has no contacts with Oregon—there are no constant and pervasive affiliations to render it at home in Oregon. Amis is a non-resident, foreign corporation that does not have the requisite minimum contacts with Oregon for an exercise of general jurisdiction. Amis does not conduct business in Oregon; is not licensed to do business in Oregon; has no offices, property, employees, or shareholders in Oregon; has never advertised in Oregon; and has not sold products or services in Oregon. Dkt. 79, ¶4.

Amis also did not direct the vessel to Oregon at any time. The vessel was at all times under charter and directed by the charterers. *E.g.*, Dkt. 19-1; Dkt. 49. In fact, if the data submitted by Plaintiff in support of its motion to amend the complaint to add Wisdom Marine Lines S.A. as a party is correct, then over the past five years the M/V AMIS INTEGRITY was direct by its charterer(s) to the United States at most only three times, including the time it was arrested at Vancouver, Washington. *See*, Dkt. 81-13, pp. 22-24, and 44. Of course, neither of these three port calls have anything to do with Plaintiff's claims. When the withdrawal occurred, the Vessel was en route to South America, having last called at Cape Town, South Africa. Dkt. 79, ¶10.

Moreover, the fact that a charterer or sub-charterer may have directed the vessel to a port in the U.S. (or even Oregon) is immaterial. *See*, *Amoco*, 1 F.3 at 850. In *Amoco,* the

---

[2] Defendant contends this Court also lacks jurisdiction over Wisdom Marine Lines S.A. Dkt. 77, Section III, B.

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 9
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

plaintiff failed to establish personal jurisdiction in the State of Washington even though four vessels that the defendant had sub-chartered called on Washington ports at the direction of sub-charterers. A bareboat charterer (Leonis) had sub-chartered four vessels to Leo Maritime, one of which was further sub-chartered to a sub-charterer (Navix) that directed the vessel to transport logs between the State of Washington and Japan (that vessel made seven trips); the other three vessels also called on Washington ports, but less frequently. Similarly, in *Glencore Grain Rotterdam B.V.*, 284 F.3d at 1127, the Ninth Circuit affirmed dismissal for lack of personal jurisdiction on the basis that forum and national contacts were insufficient where the defendant previously shipped to the forum 16 times and the East Coast seven times.

The Ninth Circuit has consistently held that "[t]he level of contact with the forum state necessary to establish general jurisdiction is quite high." *See*, *Shute*, 897 F.2d at 380 (*citing Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). In *Shute,* defendant Carnival Cruise Line ("Carnival") had no offices, exclusive agents, was not registered to do business, and paid no taxes in Washington State, but advertised, mailed brochures, paid commissions to travel agents, conducted promotional seminars and sold vacation cruises to Washington residents. *Shute*, 897 F.2d at 381. Despite these contacts, the *Shute* court held that Carnival's contacts with Washington State were insufficient to create general jurisdiction. *Id*.

The Ninth circuit has also dismissed defendants for lack of minimum general jurisdictional contacts under the following circumstances:

1. "Non-resident doctors despite significant number of patients in forum, use of forum's state medical insurance system and telephone directory listing that reached forum.

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 10
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

*Shute*, 897 F.2d at 380-381 (*citing Cubbage*, 744 F.2d at 667-68).

2. Defendants who made "several visits and purchases in forum, solicitation of contract in forum which included choice of law provision favoring forum, and extensive communication with forum." *Shute*, 897 F.2d at 381 (*citing Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th Cir. 1984), *cert. den.*, 471 U.S. 1066, 85 L. Ed. 2d 500, 105 S. Ct. 2143 (1985)).

3. Foreign corporation, with "sales and marketing efforts in forum state, including solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings." *Shute*, 897 F.2d at 381 (*citing Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242-43 (9th Cir. 1984)).

Synthesizing the holdings of the Ninth Circuit reinforces the necessity of dismissing Amis for lack of personal jurisdiction.  Amis is a Panamanian corporation that does not do business in Oregon and by no stretch of the imagination could Amis be considered at home in Oregon (or in the U.S.).  There simply are no contacts with Oregon.  In fact, based on Plaintiff's own evidence relating to the vessel's operations it has called on U.S. ports only three times in the last five years.  There is no doubt that forcing this corporation to appear and defend in this foreign forum would impose undue burden, prejudice, and does not comport with due process.

## V.  **CONCLUSION**

Amis should be dismissed as an *in personam* defendant in this matter with prejudice. Plaintiff delayed any attempt at servicing process on Amis for five months, and then did not comply with the Inter-American Convention on Letters Rogatory.  Amis has not been

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF.
PROCESS AND LACK OF PERSONAL JURISDICTION - Page 11
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

properly served.  Moreover, this Court does not have personal jurisdiction over Amis.  Amis simply does not have the requisite minimum contacts with Oregon, and an exercise of personal jurisdiction over Amis does not comport with due process.

DATED this 26th day of March, 2020.

                                      LE GROS, BUCHANAN & PAUL

                                      By: *s/ Markus B.G. Oberg*
                                            MARKUS B.G. OBERG, OSB #112187
                                            4025 Delridge Way SW, Suite 500
                                            Seattle, Washington  98106-1271
                                            Phone: 206-623-4990
                                            Facsimile: 206-467-4828
                                            Email:  moberg@legros.com
                                            Attorneys for Amis Integrity, S.A.

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF. PROCESS AND LACK OF PERSONAL JURISDICTION - Page 12
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 26th day of March, 2020.

*s/ Shelley Courter*
Shelley Courter, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone:	206-623-4990
Facsimile:	206-467-4828
E-mail:	scourter@legros.com

DEFENDANT'S MOT. TO DISMISS FOR IMPROPER SERVICE/INSUFF. PROCESS AND LACK OF PERSONAL JURISDICTION - Page 13
[Case No. 3:19-cv-01671-BR]

{29293-00594505;1}