**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Ian M. Christy**, OSB No. 160116
ian.christy@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

*Attorneys for Plaintiff Dry Bulk Singapore Pte. Ltd.*

(additional counsel listed on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AMIS INTEGRITY S.A. *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem.*, <br><br> Defendants. | No. 3:19-CV-01671-BR <br><br> **Admiralty** <br><br> **PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT** |

## LR 7-1 CERTIFICATE

In compliance with Local Rule 7-1, the parties made a good faith effort through telephone conference and then email to discuss whether Plaintiff's motion for leave to file an amended verified complaint would be unopposed by Defendants. Despite the good faith efforts of counsel, the parties have not been able to resolve this dispute. The parties have submitted a

Page 1 - PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION
FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

proposed expedited briefing schedule to the Court to address the current motion.  *See* ECF 105.  This motion now follows.

## MOTION

Plaintiff Dry Bulk Singapore Pte. Ltd. (hereinafter "Plaintiff" or "Dry Bulk") respectfully submits this Amended Motion for Leave to Amend the Verified Complaint in accordance with Fed. R. Civ. P. 15 and Local Rule 15-1.  A copy of the proposed Amended Verified Complaint (the "AVC") is attached as **Exhibit A** to this motion.[1]

## LEGAL MEMORANDUM

### I. INTRODUCTION

Dry Bulk seeks leave to amend its Verified Complaint to add three necessary and important parties to this litigation, add a claim of alter ego / veil piercing against and between Defendant Amis Integrity, S.A. ("Amis") and the Wisdom Entities (defined below), and to update the factual allegations in support of the underlying claims.

First, the AVC adds Tradewind GMBH ("Tradewind") as an additional plaintiff. Tradewind provided general financing to Dry Bulk in connection with the transactions at issue, and separately funded the $350,000 in counter-security that Dry Bulk posted into the Court's Registry on June 17, 2020.  It has a financial interest in any recovery made by Dry Bulk in this lawsuit.  As such, Tradewind is a necessary party that should be allowed to participate as a plaintiff in this action.

Second, the AVC adds two new defendants that are related to existing defendant Amis. Those new defendants are Wisdom Marine Lines, S.A. ("Wisdom Marine") and Wisdom Marine

---

[1] This Motion supersedes Dry Bulk's prior Motion for Leave to Amend the Verified Complaint (ECF 61).

Page 2 -   PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION
           FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

Lines Co. Ltd. ("Wisdom Ltd.", and with Wisdom Marine, the "Wisdom Entities").  Discovery produced by Amis has revealed that the Wisdom Entities (1) played a substantial role in the wrongful withdrawal of the Vessel from the service of Dry Bulk and (2) directly benefited financially from the wrongful withdrawal.  Dry Bulk asserts that the Wisdom Entities are liable in tandem with Amis based on the asserted claims for relief for tortious interference, conversion, and unjust enrichment.

Third, the AVC adds a new alter ego / veil-piercing claim against and between current defendant Amis and new defendants Wisdom Marine and Wisdom Ltd. based on the facts showing domination and control of Amis by the Wisdom Entities, and use of that domination and control by the Wisdom Entities to commit a fraud or wrong that injured Dry Bulk when the Vessel was improperly withdrawn from the charter party at issue.

The AVC is both timely and proper under the Federal Rules of Civil Procedure and the Local Rules of this Court, for the reasons addressed herein.  Those rules, and other relevant authorities, provide that leave to amend a complaint is to be granted freely as justice requires.  Accordingly, the Court should grant Dry Bulk leave to amend its Verified Complaint.

## II. PROCEDURAL BACKGROUND

Plaintiff filed its Verified Complaint in this action on October 17, 2019, naming as Defendants Amis Integrity S.A. *in personam*, and M/V AMIS INTEGRITY *in rem* (hereinafter "the Vessel").  ECF 1.

On October 17, 2019, this Court (Hon. Michael Simon) signed a Warrant of Arrest of the Vessel, in accordance with the provisions of Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Vessel was arrested on the same day.  ECF 11.

Amis filed a Notice of Restricted Appearance on behalf of the Vessel on October 18, 2019, together with an Emergency Motion to Vacate Arrest of the Vessel. ECF 17, 18.

On October 23, 2019, Amis agreed to post a surety bond in the amount of $2,500,000 for release of the Vessel from arrest. ECF 40.1. Upon posting of the surety bond, the Vessel was released. ECF 41.

On November 14, 2019, Amis answered Dry Bulk's original Verified Complaint, and in turn filed a counterclaim against Dry Bulk for the alleged "wrongful arrest" of the Vessel, with a corresponding demand for counter-security. ECF 46. On February 11, 2020, the Court ordered Dry Bulk to post counter-security in the amount of $350,000.00 by no later than March 12, 2020. ECF 60. That deadline was initially extended by the Court to April 30, 2020, so that Dry Bulk could have additional time to secure funding from a third-party interest for the counter-security amount. *See* ECFs 68, 71, and 75.

On March 3, 2020, Dry Bulk filed a motion for leave to file an amended verified complaint in order to add a necessary defendant, Wisdom Marine. Amis filed an Opposition on March 13, 2020, and Dry Bulk filed a Reply on March 20, 2020. *See* ECFs 61, 77, and 80.

On **April 9, 2020** (i.e., 21 days before Dry Bulk's April 30, 2020, counter-security posting deadline and prior to the Court's ruling on Dry Bulk's Motion to Amend), Dry Bulk's then counsel from the law firms Schwabe, Williamson & Wyatt and Chalos & Co. moved to withdraw as counsel of record for Dry Bulk. ECF 85. The Court granted prior counsel's motion and stayed resolution of Dry Bulk's pending Motion for Leave to Amend Verified Complaint

Page 4 -     PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION
              FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

148906.06501/123536238v.1

pending appearance of new counsel of record.[2]  The Court also directed Dry Bulk to appoint new counsel of record and post counter-security by no later than June 15, 2020.  ECF 89.

In compliance with the Court's order, Dry Bulk retained the undersigned counsel, along with Blank Rome LLP, to represent it in this action.  *See* ECFs 90, 91, 97, 99, and 102.  At the same time, Dry Bulk was able to obtain additional financing from one of its third-party lenders—Tradewind—in order to comply with the Court's requirement to post $350,000 in counter-security.  With the Court's approval of a further one-day extension on the deadline to post counter-security, undersigned counsel deposited the counter-security into the registry on June 16, 2020.  ECF 93.

Following the appointment of Dry Bulk's new counsel, the parties conferred regarding the status of various pending motions and the need to establish future case deadlines.  These discussions resulted in a July 1, 2020, Joint Status Report to the Court.  ECF 105.  As noted therein, Dry Bulk confirmed it would file this Amended Motion for Leave to Amend the Verified Complaint in order to **(a)** add Tradewind as an additional plaintiff; **(b)** add Wisdom Marine as a necessary party (as was contemplated in the previous Motion to Amend); and **(c)** add a veil-piercing / alter ego claim against and between Amis and Wisdom Marine.  Dry Bulk subsequently advised Defendants that it also intended to add Wisdom Ltd. as a defendant.  The Parties have proposed the following briefing schedule concerning this motion:

    a. **July 10, 2020**:  Dry Bulk's deadline for filing an amended *Motion to Amend Verified Complaint*

    b. **July 17, 2020**:  Amis's Opposition deadline

    c. **July 24, 2020**:  Dry Bulk's Reply deadline

---

[2] The Court also stayed resolution of Amis's Motion to Dismiss for Lack of Personal Jurisdiction.  *See* ECF 83.

On July 9, 2020, the Court granted the parties' proposed briefing schedule as set forth above.

Initial Discovery Disclosures and Supplemental Discovery Requests have been exchanged by the parties, with Amis responding to and propounding Initial and Supplemental Discovery Requests on behalf of the Vessel. No depositions have yet been taken.

## III. FACTUAL BACKGROUND

### A. Tradewind

The AVC adds Tradewind as an additional plaintiff. Tradewind is an international trade financing company that has a commercial relationship with Dry Bulk. Tradewind provided general financing to Dry Bulk in connection with the transactions at issue in this action and has a financial interest in any recovery obtained in this action. Tradewind also separately funded the $350,000 in counter-security that Dry Bulk posted into the Court's Registry on June 17, 2020.

### B. The Wisdom Entities

The proposed Verified Amended Complaint seeks to add Wisdom Marine and Wisdom Ltd. as additional defendants and seeks to assert a new claim for alter ego / veil piercing against and between Amis, Wisdom Marine, and Wisdom Ltd. Wisdom Marine is the parent company of Amis and all 128 Wisdom-related shelf companies (all of which are organized in "flag of convenience" jurisdictions) who are the registered owners of its managed vessels and the "beneficiary" recipient of all charter hire paid by charterers for the use of such vessels. *See* ECF 81, Tsolakis Decl. ¶¶ 9-15. Wisdom Marine and Wisdom Ltd. are wholly owned and controlled by the "Wisdom Lines Group." Wisdom Ltd. is listed on the Wisdom Marine Group website as the parent company of Wisdom Marine. *See id.* ¶ 11, and Ex. 8A at 2. Both entities, as well as Amis, have the same Taiwan address, telephone numbers, email addresses, employees,

officers, and directors. *Id.* ¶¶ 10-12, 16, and Ex. 8A at 2. Together, the Wisdom Entities made all of the decisions in respect to the wrongful withdrawal of the Vessel from the service of Dry Bulk. Wisdom Marine is the active manager, operator, and beneficial owner of the Vessel. *See id.* ¶¶ 5-8, 11, and Ex. 8.

In addition, the charter party between Amis and 24Vision Solutions DMCC ("24 Vision"), included not only Amis as the "Owner," but also included Wisdom Marine as a "party and principal" to the agreement. ECF 81, Tsolakis Decl. ¶¶ 5-6. This same mechanism was utilized by Amis and Wisdom Marine in the subsequent charter party entered into by Amis (after withdrawal of the Vessel from Dry Bulk) with United Bulk Carriers International, S.A. ("United Bulk"). *Id.* ¶ 7, and in the two subsequent charter parties of the Vessel after the United Bulk charter. These subsequent charters involved a company called China Navigation Company PTE Ltd. (hereinafter "CNCO") as charterer (*see id.* ¶ 8, and Ex. 4)[3] and a company called Glencore Agriculture B.V. (hereinafter "Glencore"), also as charterer (*see id.* Exs. 5 and 5A).

The Wisdom Entities were intimately involved in the planning and execution of the torts alleged by Dry Bulk in this action. They were also the beneficiaries of the unjust enrichment set forth in the AVC. ECF 81, Tsolakis Decl. ¶¶ 11-17. Specifically, in its initial disclosures, Amis identified Mr. Huan Rong Jang, Mr. Curly Tsao, Ms. Tina Lai, and Mr. Mike Chao as being

---

[3] It was under the CNCO charter that the Vessel called at Vancouver, Washington in October 2019 and was subsequently arrested by Dry Bulk. This charter of the Vessel by Wisdom Marine occurred during the period when the vessel should have remained with Dry Bulk, but for the wrongful withdrawal by the Wisdom Entities and resulting tortious interference with the 24Vision/Dry Bulk charter party. The Wisdom Entities' Vessels made more than 18 trips to Columbia River ports between July 11, 2019, and January 29, 2020 (*see* ECF 81, Tsolakis Decl., Ex. 11). As such, the Wisdom Entities earned substantial sums in charter hire for their managed vessels calling and doing business at District of Oregon ports.

Page 7 -   PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION
            FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

involved in the decision to withdraw the Vessel from Dry Bulk's service. All four individuals are listed in the disclosures as representatives of Wisdom Ltd.

Mr. Tsao was also identified as the person in charge of the day to day operations for the Vessel. Since the day to day operations of the Vessel were being handled by Wisdom Marine as the Manager of the Vessel, it can be reasonably assumed that Mr. Tsao was acting on behalf of Wisdom Marine in that capacity. ECF 81, Tsolakis Decl. ¶ 33, and Ex. 13. In the Notice of Withdrawal of the Vessel dated July 12, 2019, Mr. Tsao identifies his title as "Operations Department of the Wisdom Marine Group" and his e-mail address is listed as op04@wisdomlines.com.tw. *Id*. ¶ 34, and Ex. 14. This is the same email address used by Wisdom Marine in respect to the day to day operations of the Vessel. In email exchanges between Wisdom Lines personnel and the Master of the Vessel on July 12, 2019, after the wrongful withdrawal of the Vessel, both Mr. Tsao and a Bryan Chang identify themselves as the "Operation Department of Wisdom Marine Group (as Managers)". They both use the same email address (op04@wisdomlines.com.tw).

Before withdrawal of the Vessel, the Wisdom Entities were aware that (1) the Vessel was positioned off the coast of Brazil at Dry Bulk's expense; (2) Dry Bulk had timely paid the hire due under its charter party with 24 Vision in full, as well as pre-paid hire through July 23, 2019, and, as such, was in full compliance with the terms of that charter party; and (3) Dry Bulk had a sub-charter with a third party called Trithorn for which charter the vessel was positioned off the coast of Brazil . *See* ECF 81, Tsolakis Decl. ¶¶ 36-42. Knowing all of the above, the Wisdom Entities nevertheless orchestrated the wrongful withdrawal of the Vessel and tortiously interfered with the 24 Vision/Dry Bulk charter party primarily because they saw an opportunity to unjustly enrich themselves. Wisdom Marine earned over $800,000 in windfall profits on the United Bulk

charter and saved over $950,000 in the positioning costs paid by Dry Bulk to place the vessel off Brazil, which permitted Wisdom Marine to charter the vessel to United Bulk at no positioning expense. *Id*. The Wisdom Entities also saw an opportunity to earn substantially more daily hire than they were earning under the charter party with Dry Bulk in a rising freight market. All of these actions by the Wisdom Entities were calculated, wrongful and resulted in substantial damages to Dry Bulk, as alleged in the AVC.

But for the tortious interference and wrongful withdrawal of the Vessel by Amis and the Wisdom Entities, Dry Bulk would have been in a position to earn significant additional freights. Instead, the Wisdom Entities foreclosed that opportunity by wrongfully withdrawing the Vessel for their own benefit and unjust enrichment. As such, the Wisdom Entities are significant, consequential, and necessary parties to this pending action.

## IV. ARGUMENT

### A. Leave to Amend is to be Granted with "Extreme Liberality."

Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave when justice so requires." "[T]his policy is to be applied with extreme liberality." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "When considering whether to grant leave to amend, a district court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962)). Of these factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent

prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.*

Here, the procedural and factual status of this case supports granting Dry Bulk's request for leave to amend. The substantive revisions to the original Verified Complaint are largely based on discovery recently obtained by Amis and a recent investigation by Amis's new counsel. They are therefore not the product of undue delay by Dry Bulk. In addition, the amendment is not brought in bad faith or with a dilatory motive and will not cause undue prejudice to Defendants. Fact discovery is still in its initial stages, and no depositions have yet been taken. In fact, the contemplated depositions of Defendants in this matter are of individuals who are employed by or were involved in the decision-making process on behalf of the proposed additional defendants—the Wisdom Entities—with respect to withdrawal of the Vessel and the subsequent unjust enrichment by Amis and the Wisdom Entities.

The amendment is also not futile. A proposed amendment is futile *only* "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient legal claim or defense." *Sweany v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997); *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Moreover, a proposed amended pleading is futile only if "it appears beyond a doubt" that the claims sought to be added would be dismissed for failure to state a claim. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987); *see also Miller*, 845 F.2d at 214; *Moore v. Kayport Package Express*, 885 F.2d 531, 542 (9th Cir. 1989). The futility standard only applies to resolution of the legal sufficiency of the proposed amended complaint; it does not provide a basis for analysis of the facts of the proposed amendment. If there is no statutory or legal bar to the claims presented, leave to amend should be granted freely under Rule 15.

The AVC adds three necessary and important parties (Tradewind as a plaintiff and the two Wisdom Entities as defendants), adds a claim of alter ego / veil piercing against and between Amis and the Wisdom Entities, and updates the factual allegations in support of the underlying claim(s). These additions are both factually and legally supported, and are necessary to allow Dry Bulk and Tradewind to assert their rights in this action against all potentially culpable parties.

### B. Tradewind Should be Added as a Plaintiff.

Tradewind has a direct financial interest in the claims against Defendants and should be permitted to pursue those claims jointly with Dry Bulk in this action. Tradewind provided general financing to Dry Bulk in connection with the transactions at issue, and separately funded the counter-security that Dry Bulk posted. Tradewind has an interest in any recovery made by Dry Bulk in this action. As such, Tradewind can and should be joined to the present litigation as a plaintiff. *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (holding that a necessary party is one who has an interest in the controversy, and who ought to be made a party, so that the court may finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it).

### C. The Wisdom Entities Should be Added as Defendants.

#### 1. The Amended Verified Complaint States Direct and Alter Ego Claims Against the Wisdom Entities.

As alleged in the AVC and set forth in the facts above, the Wisdom Entities are inseparable from Amis and its alleged wrongdoing. The Wisdom Entities, through Amis and otherwise, directly participated in the intentional torts which caused direct damages to Dry Bulk. But for the tortious interference and wrongful withdrawal of the Vessel by Amis and the Wisdom

Entities, Dry Bulk would have been in a position to earn significant additional freights. Instead, the Wisdom Entities foreclosed that opportunity by wrongfully withdrawing the Vessel for their own benefit and unjust enrichment. As such, the Wisdom Entities are significant, consequential, and necessary parties to this pending action. *See CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991).

The Wisdom Entities are also liable for Amis's torts based on a theory of alter ego liability, which the AVC asserts as a new claim against and between Amis and the Wisdom Entities. "Admiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant." *OS Shipping Co. v. Glob. Mar. Tr.(s) Private Ltd.*, No. 11-CV-377-BR, 2011 WL 1750449, at *6 (D. Or. May 6, 2011) (quoting *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997)). Alter ego liability exists either "when the corporate form is used to perpetuate a fraud *or* when one corporate entity exhibits 'total domination of the subservient entity.'" *OS Shipping*, 2011 WL 1750449, at *6 (citing *Chan*, 123 F.3d at 1294).

The AVC alleges numerous facts showing that the Wisdom Entities dominate and control Amis and are therefore alter egos of Amis, including:

- Wisdom Marine is Amis's parent company and is the active manager, operator, and beneficial owner of the Vessel. Wisdom Ltd. is the parent company of Wisdom Marine. AVC ¶¶ 7-8, 46.

- All three entities operate collectively, along with other affiliated entities, as part of a single business entity known as the "Wisdom Marine Group." AVC ¶¶ 11, 46.

- All three entities share common key personnel, including individuals identified in Amis's initial disclosures as relevant witnesses. AVC ¶¶ 13, 46.

PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION
          FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

148906.06501/123536238v.1

- All three entities share the same office, physical address, and website, among other things. AVC ¶¶ 12, 46.

- Employees of the Wisdom Entities made all of the decisions related to the wrongful withdrawal of the Vessel that led to this dispute. AVC ¶¶ 29, 47.

- The Wisdom Entities were the beneficiaries of the alleged unjust enrichment— a profit of at least $800,000, plus savings of positioning costs of at least $950,000. AVC ¶ 31.

These facts, among others, demonstrate that, far from being separate entities, Amis is a mere appendage of the Wisdom Entities and acted solely at the direction of the Wisdom Entities to serve their economic interests. The Wisdom Entities abused the corporate form to totally dominate and control Amis and cause the Dry Bulk charter at issue to be fraudulently and wrongfully terminated, thereby injuring Dry Bulk as a result.

Based on these allegations, the Wisdom Entities should be added as necessary parties under Fed. R. Civ. P. 19. But, even if the Wisdom Entities are not necessary parties, they should be added to this action pursuant to Fed. R. Civ. P. 20(a), which states in relevant part:

> (2) *Defendants.* Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Joinder of claims, parties, and remedies is strongly encouraged as Rule 20 aims to promote "'trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. General Motors*, 497 F.2d 1330, 1332 (8th Cir. 1974). The AVC and

Tsolakis Declaration set forth a right to relief that is joint, several, and/or in the alternative against the Wisdom Entities that arises out of the same transaction or occurrence as the claim against Amis and includes questions of fact and law common to all defendants in the action. *See* Fed. R. Civ. P. 20(a)(2).

Accordingly, the Court should permit Dry Bulk to amend the complaint to add the Wisdom Entities and assert a claim for alter ego liability against and between the Wisdom Entities and Amis.

### 2. Jurisdictional Considerations do Not Render the Proposed Amendment Futile.

The addition of Wisdom Marine also is not futile on jurisdictional grounds. As an initial matter, whether a defendant is subject to the personal jurisdiction of the court is more appropriately litigated, following service of process, in a motion to dismiss rather than in the context of a motion for leave to amend. *See, e.g.*, William W. Schwarzer, et al., Practice Guide; Federal Civil Procedure Before Trial § 8:422; *see also* Rule 12(b)(2). Importantly, Dry Bulk has not yet had an opportunity to conduct jurisdictional discovery with regard to Wisdom Marine, which is warranted once Wisdom Marine appears in the action.

In any event, however, the court has personal jurisdiction over Wisdom Marine. Because this claim arises under "federal admiralty law" the relevant test for jurisdiction is the "national contacts" standard set forth in Rule 4(k)(2) of the Federal Rules of Civil Procedure. This rule "authorizes jurisdiction based on a defendant's national contacts." *Glencore Grain Rotterdam B. V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). It applies, " when three conditions are met: (1) the cause of action must arise under federal law; (2) the defendant must

not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process." *Id*.

All three conditions are satisfied here. The first condition is satisfied because "federal law includes admiralty cases for the purposes of Rule 4(k)(2)." *World Tankers Carriers Corp. v. M/V YaMawlaya*, 99 F.3d 717, 721-22 (5th Cir. 1996); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 461 (9th Cir. 2007); *Ali v. Rogers*, 780 F.3d 1229, 1235 (9th Cir. 2015) (*Kossick v. United Fruit Co*, 365 U.S. 731, 735 (1961)). The second condition is satisfied because there is no indication that Wisdom Marine is subject to jurisdiction in any other state. *Monster Cable Products v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009) ("[t]he plaintiff is not required to prove lack of jurisdiction in every state. Defendants . . . have not conceded to jurisdiction in another state, so the second factor is satisfied.") (internal citations omitted). The third condition requires a minimum contacts analysis that "is identical to the analysis for the forum state except the relevant forum is in the United States as a whole." *Id*. at 1008. As discussed in the Tsolakis Declaration (*see* ECF 81 ¶¶ 16-32), Wisdom Marine has engaged in more than enough national contacts (indeed, Oregon contacts) to meet this standard.

Accordingly, joinder of the Wisdom Entities is both necessary under Fed. R. Civ. P. 19, or, alternatively, permitted under the more liberal standard in Fed. R. Civ. P. 20.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 15 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

148906.06501/123536238v.1

## V. CONCLUSION

For the reasons more fully stated above, Plaintiff respectfully requests that this Court enter an order pursuant to Fed. R. Civ. P. Rule 15 and Local Rule 15-1, granting Dry Bulk Singapore PTE. Ltd.'s Motion for Leave to File an Amended Verified Complaint.

DATED: July 10, 2020

MILLER NASH GRAHAM & DUNN LLP

 *s/ Ian M. Christy*
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
Ian M. Christy, OSB No. 160116
ian.christy@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155
Attorneys for Plaintiff
Dry Bulk Singapore PTE. LTD.

and

BLANK ROME LLP

 s/ John D. Kimball
John D. Kimball, *pro hac vice*
jkimball@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.885.5000
Facsimile: 212.885.5001

and

Jeremy A. Herschaft, *pro hac vice*
jherschaft@blankrome.com
Zachary Cain, *pro hac vice*
zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: 713.632.8655
Facsimile: 713.228.6605

*Attorneys for Plaintiff*
*Dry Bulk Singapore Pte. Ltd.*