**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Ian M. Christy**, OSB No. 160116
ian.christy@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

*Attorneys for Plaintiffs Dry Bulk Singapore Pte. Ltd.
and Tradewind GMBH*

(additional counsel listed on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD. and TRADEWIND GMBH<br><br>Plaintiffs,<br><br>vs.<br><br>AMIS INTEGRITY S.A., WISDOM MARINE LINES, S.A., and WISDOM MARINE LINES CO. LTD. *in personam* and M/V AMIS INTEGRITY (IMO 9732412), her engines, freights, apparel, appurtenances, tackle, etc., *in rem*,<br><br>Defendants. | No.  3:19-CV-01671-BR<br><br>**Admiralty**<br><br><br>**AMENDED VERIFIED COMPLAINT** |

For their Amended Verified Complaint [1] against Defendants Amis Integrity S.A. *in personam* (hereinafter, "Amis Integrity"), Wisdom Marine Lines S.A. *in personam*, (hereinafter "Wisdom Marine"), Wisdom Marine Lines Co. Ltd. (hereinafter "Wisdom Ltd.") *in personam*, and M/V AMIS INTEGRITY, *in rem*, (hereinafter, "the Vessel"), Plaintiffs Dry Bulk Singapore PTE. Ltd. (hereinafter, "Dry Bulk") and Tradewind GMBH (hereinafter "Tradewind"), allege as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1), and this case is brought pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims (hereinafter "Supplemental Rules").  This case is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves the following claims: for the improper and unjustified withdrawal of the Vessel by the Defendants under an existing charter party fixture between Dry Bulk and 24 Vision Chartering Solutions (hereinafter, "24 Vision"), for conversion of unearned charter hire and bunkers, for tortious interference with the existing charter fixture agreement, for unjust enrichment, and for alter ego.

2.      Venue is proper in this Court pursuant to 33 U.S.C. § 1391(b)(2) because the Vessel was arrested in this district while afloat on the Columbia River on or about October 17, 2019.

## THE PARTIES

3.      At all times material hereto, Plaintiff Dry Bulk was and still is a foreign corporation registered in Singapore.

4.      At all times material hereto, Plaintiff Tradewind was and still is a foreign corporation registered in Germany.

---

[1] The original Verified Complaint against Amis Integrity S.A. *in personam*, and M/V AMIS INTEGRITY *in rem*, was filed on October 17, 2019 (ECF 1).

5.    At all times material hereto, Defendant Vessel was and still is a 35,825 gross tonnage bulk carrier built in 2017, with IMO No. 9732412, with an International Call Sign of H9XQ, flying the Panamanian flag and registered in Panama.

6.    At all times material hereto, Defendant Amis Integrity was and still is a foreign corporation doing business within the District of Oregon with an office Care of Wisdom Marine Lines S.A, 2nd Floor, 237 Fuxing S Road, Section 2, Da-an District, Taipei City, 10667, China, Republic of (Taiwan).  Defendant Amis Integrity is the registered owner of the Vessel.

7.    At all times material hereto, Defendant Wisdom Marine was and still is a foreign corporation doing business within the District of Oregon with an office located at: 2nd Floor, 237 Fuxing S Road, Section 2, Da-an District, Taipei City, 10667, China, Republic of (Taiwan). Defendant Wisdom Marine is the commercial manager, operator and beneficial owner of the Vessel, as well as the parent company of Defendant Amis Integrity.

8.    At all times material hereto, Defendant Wisdom Ltd. was and still is a foreign corporation doing business within the District of Oregon with an office Care of Wisdom Marine Lines Co. Ltd., Room 711, 237 Fuxing S Road, Section 2, Da-an District, Taipei City, 10667, China, Republic of (Taiwan).  Defendant Wisdom Ltd. is the parent company of Defendant Wisdom Marine.

## THE FACTS

9.    Dry Bulk is, among other things, engaged in the business of chartering vessels in international commerce in connection with the maritime transportation of goods.

10.    At all times material hereto, Tradewind provided financing to Dry Bulk to assist with its commercial endeavors, including but not limited to providing financial support to Dry Bulk with respect to the chartering transactions referenced herein.  Tradewind funded the counter-

security of USD $350,000 paid into the Court Registry and has a "financial interest" in any recovery obtained in this lawsuit.

**11.**     Upon information and belief, Amis Integrity, Wisdom Marine, and Wisdom Ltd. operate under the D/B/A trade name "Wisdom Marine Group."

**12.**     Upon information and belief, Amis Integrity, Wisdom Marine, and Wisdom Ltd. operate at the same office address in Taiwan.  The listed address for the Wisdom Marine Group is also the same as that listed for Amis Integrity, Wisdom Marine, and Wisdom Ltd.

**13.**     The employees and officers of the Wisdom Marine Group are the same as those for Wisdom Ltd. and Wisdom Marine, all of whom are housed at the same office address, on the same floor, with common e-mail addresses and telephone numbers.

**14.**     Wisdom Marine Group's website lists all of the 128 vessels "managed" by Wisdom Marine, including the Vessel.

**15.**     On or about June 27, 2017, Amis Integrity, as the registered owner of the Vessel, together with Wisdom Marine, as manager of the Vessel, and 24 Vision, as charterer, entered into a "NYPE 93" Time Charter Party agreement for 24 Vision to charter the Vessel.

**16.**     On or about January 10, 2019, 24 Vision, as disponent owner of the Vessel, entered into a sub-charter agreement with Dry Bulk for a "time charter trip via ECSA to PG-Japan range" (hereinafter the "Charter Party agreement").  The Charter Party agreement hire and ballast bonus rate was determined based on whether the Vessel would be redelivered in the Persian Gulf-Singapore range or the Singapore-Japan range.

**17.**     The Charter Party agreement between 24 Vision and Dry Bulk was memorialized in a fixture recap.  *A copy of the Charter Party agreement between 24 Vision and Dry Bulk is attached hereto as* **Exhibit 1**.

18.    The parties amended the Charter Party agreement on or about February 8, 2019. *A copy of Addendum 1 to the Charter Party agreement is attached hereto as* **Exhibit 2**. Pursuant to the agreement of the parties, the terms of the Charter Party agreement were amended as follows:

    A.    Delivery Time: January 24, 2019 07:42 GMT

    B.    Delivery AFSPS Recalada, Argentina

    C.    Period: Minimum October 9, 2019 / Maximum January 29, 2020

    D.    Daily Hire: USD 15,000 (through October 9, 2019) and USD 14,500 for any period thereafter (through January 29, 2020).

    E.    Plus a USD 50,000 Gross Ballast Bonus.

19.    All other terms and conditions of the January 10, 2019 Charter Party agreement remained unchanged. Under the circumstances, that charter extended through **January 29, 2020**.

20.    Pursuant to Clause 10 of the Charter Party agreement, the relevant time zone for the payment of charter hire is GMT (i.e. Greenwich Mean Time).

21.    On or about July 8, 2019 at 10:19 GMT, 24 Vision served Dry Bulk with a three (3) day grace period notice under the Charter Party agreement demanding payment of the eleventh and twelfth hire installments in the amount of USD 217,372.50 and USD 218,551.25, respectively.

22.    Pursuant to the Charter Party agreement, Dry Bulk had three clear banking days (*i.e.*, July 9, July 10, and July 11) in which to effect payment of hire. Under Clause 11(b) of the Charter Party agreement, so long as payment of hire was effected prior to July 11, 2019 at midnight (2400 hours GMT), the hire payment would be deemed "regular and punctual." *See* Exhibit 1.

23.    On July 11, 2019 at or about 12:55 GMT (and 14:55 in the Netherlands - *i.e.* the location of 24 Vision's bank account), Dry Bulk's bank transferred the eleventh and twelfth hire payments totaling USD 435,923.75 to 24 Vision. Under applicable English law, the payment is

treated as having been made on the date of the interbank value date, which was July 11, 2019. Dry Bulk's pre-paid twelfth hire installment totaling USD 218,551.25 creates and attaches as a maritime lien to the Vessel when the Vessel was wrongfully withdrawn.

24.     Accordingly, the outstanding hire payments were deemed regular and punctual under the Charter Party agreement and Dry Bulk had timely pre-paid hire for the Vessel through **July 23, 2019.**

25.     On or about July 11, 2019, Dry Bulk entered into an agreement to sub-charter the Vessel to Trithorn Bulk (hereinafter, "Trithorn"). By that date, the Vessel had been positioned in the waters off Argentina in anticipation of the Dry Bulk /Trithorn sub-charter at a daily hire rate of USD 26,500 and with an intended voyage of thirty-three (33) days, i.e., a total profit to Dry Bulk of USD 379,500 (i.e. USD 26,500 – USD 15,000 x 33 days).

26.     Upon information and belief, Defendants Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. were aware as of July 11, 2019 that the Vessel had in fact been sub-chartered by Dry Bulk to Trithorn Bulk.

27.     Unbeknownst to Dry Bulk, on or about July 11 or 12, 2019, Defendants Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. secretly chartered the Vessel to a separate charterer, United Bulk Carriers International, S.A, (hereinafter, "United Bulk") even though Dry Bulk had prepaid charter hire for the Vessel through **July 23, 2019** and had a charter for the Vessel through **January 29, 2020.**

28.     On or about July 12, 2019, Defendants Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. wrongfully withdrew the Vessel from Dry Bulk's service, even though Dry Bulk had pre-paid charter hire through **July 23, 2019** and had a charter for the Vessel through **January 29, 2020.**

29.    The July 12, 2019 email withdrawing the Vessel from service is signed by Curly Tsao of "Wisdom Marine Group."  Representatives of Wisdom Ltd., including Section Chief of Business Operations Huan Rong Jang, Operations PIC Curly Tsao, Supervisor Tina Lai and Chief Operating Officer Mike Chao, were aware of the withdrawal of the Vessel from Dry Bulk's possession and/or had knowledge relating to the subsequent charter of the Vessel to United Bulk.

30.    Dry Bulk later conferred with the Vessel's broker, BRS Group, which referred to "Wisdom" (and not Amis Integrity) in correspondence following the wrongful withdrawal.

31.    Upon information and belief, by chartering the Vessel to United Bulk, Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. obtained a profit of at least USD 800,000, plus savings of the positioning costs of at least USD 950,000 which costs were incurred by Dry Bulk to bring the Vessel to South America, at which time it was improperly withdrawn from Dry Bulk and delivered to United Bulk.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS AMIS INTEGRITY S.A., WISDOM MARINE LINES, S.A., and WISDOM MARINE LINES Co. LTD, *in personam*, and the M/V AMIS INTEGRITY, *in rem* for MARITIME LIEN AND TORTIOUS INTERFERENCE WITH CONTRACT**

32.    Plaintiffs reallege paragraphs 1- 31 of this Amended Verified Complaint as if fully set forth herein.

33.    Despite the timely payment of charter hire by Dry Bulk, which payment Defendants Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. knew, or should have known, was made timely, Defendants Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. improperly and without basis withdrew the Vessel from Dry Bulk's service thereby tortiously interfering with its charter agreement with 24 Vision, while at the same time converting the unearned charter hire paid by Dry Bulk for the direct benefit of Amis Integrity and /or Wisdom Marine and/or Wisdom Ltd. and the Vessel.

34.    In addition, Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. knew, or should have known, that the Charter Party agreement between 24 Vision and Dry Bulk extended through **January 29, 2020**.  This tortious interference with the agreement wrongfully deprived Dry Bulk of the use of the Vessel, in a substantially rising daily hire charter market, for a period of over six and one half months (approximately 200 days) during which time Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. utilized the Vessel to unjustly enrich themselves and wrongfully deprive Dry Bulk of the benefits of utilizing the Vessel to the end of the Charter Party agreement it had with 24 Vision.

35.    At the time the Vessel was wrongfully withdrawn from Dry Bulk's service, Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. knew or should have known that the Vessel had already been fixed by Dry Bulk to sub-charterers Trithorn at a daily hire rate of USD 26,500 with an intended voyage of thirty-three (33) days, providing lost profits of USD 379,500 (i.e. USD 26,500 – USD 15,000 x 33 days).

36.    Plaintiffs estimate that, based on the remaining time (approximately 200 days) in the Charter Party agreement after the Vessel was wrongfully withdrawn, at least two (2) additional voyages could have been fixed for the Vessel as follows:

> A.    Intra Mediterranean Voyage - 35 days at estimated USD 31,000 hire (based on comparable fixtures at the time), which would total lost profits of USD 560,000 (i.e. USD 31,000 – USD 15,000 x 35 days).
>
> B.    Redelivery Voyage from Black Sea to Bangladesh/Indonesia - 120 days at estimated USD 30,500 (based on comparable fixtures at the time), which would total lost profits of USD 1,920,000 (i.e. USD 30,500 – USD 14,500 x 120 days).

37.     Damages caused by tortious interference with a maritime contract create a maritime lien against the involved vessel, and, accordingly, a maritime lien exists against the Vessel, which lien can be enforced by the *in rem* arrest of the Vessel and foreclosure of that lien. Accordingly, the Vessel was arrested on October 17, 2019 and, after substitute security was posted in the amount of USD 2,500,000, was released on October 25, 2019.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS AMIS INTEGRITY S.A., WISDOM MARINE LINES S.A., and WISDOM MARINE LINES CO. LTD., *in personam*, and the M/V AMIS INTEGRITY, *in rem* for MARITIME LIEN AND CONVERSION**

38.     Plaintiffs reallege paragraphs 1-37 of this Amended Verified Complaint as if fully set forth herein.

39.     Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. have not returned and/or refunded the hire which was paid by Dry Bulk in advance and not earned for the use of the Vessel through July 23, 2019, thereby converting funds for their own benefit to which they were not entitled.  Hire payments made in advance create a lien on the Vessel for all monies paid by Dry Bulk in advance and not earned, which lien can be enforced by the *in rem* arrest of the Vessel and foreclosure of that lien.  Accordingly, the Vessel was arrested on October 17, 2019 and, after substitute security was posted in the amount of USD 2,500,000, was released on October 25, 2019.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS AMIS INTEGRITY S.A., WISDOM MARINE LINES S.A., WISDOM MARINE LINES CO. LTD., *in personam*, and the M/V AMIS INTEGRITY, *in rem* for MARITIME LIEN AND UNJUST ENRICHMENT**

40.     Plaintiffs reallege paragraphs 1-39 of this Amended Verified Complaint as if fully set forth herein.

41.     At the time of the tortious interference with contract by Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. resulting in the wrongful withdrawal of the Vessel, Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. knew that the daily spot charter market was

substantially higher and rising from the amount they were receiving in daily hire from 24 Vision under Dry Bulk's charter with 24 Vision.

42.     Despite knowing that Dry Bulk was in full compliance with its obligations under the 24 Vision Charter Party agreement, Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. knowingly, willfully and wrongfully interfered with the 24 Vision/Dry Bulk Charter Party agreement to take advantage of the rising daily hire market to unjustly enrich themselves and deprive Dry Bulk of the opportunity to utilize the Vessel for the remaining period of the Charter Party agreement between it and 24 Vision.  The Vessel was the instrumentality and means for Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. to carry out the scheme to unjustly enrich themselves thereby creating a maritime lien against the Vessel for the damages incurred which can be enforced by the *in rem* arrest of the Vessel and foreclosure of that lien.

43.     As a result of Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. and the Vessel's tortious interference with contract resulting in the wrongful withdrawal of the Vessel from Dry Bulk's service, the conversion of the unearned charter hire and the unjust enrichment of Amis Integrity and/or Wisdom Marine and/or Wisdom Ltd. and the loss of opportunity for Dry Bulk as a result, Plaintiffs incurred damages estimated to be no less than **USD 3,760,938**, plus interest and costs.  Accordingly, the Vessel was arrested on October 17, 2019 and, after substitute security was posted in the amount of USD 2,500,000, was released on October 25, 2019.

/ / /

/ / /

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS AMIS INTEGRITY S.A., WISDOM MARINE LINES S.A., AND WISDOM MARINE LINES CO. LTD.,** *in personam*, **for ALTER EGO LIABILITY**

44.     Plaintiffs reallege paragraphs 1-43 of this Amended Verified Complaint.

45.     Amis Integrity, Wisdom Marine, and Wisdom Ltd. are the alter egos of one another. The alter ego doctrine applies when either (1) one corporate entity exhibits total domination of the subservient entity, or (2) when the corporate form is used to perpetuate a fraud.[2]

46.     Amis Integrity, Wisdom Marine, and Wisdom Ltd. are individually and/or collectively part of a single business enterprise operating opaquely as the "Wisdom Marine Group" and are disguised as separate business entities.  The facts above demonstrate these three parties are actually dominated and controlled by Wisdom Marine (the parent of Amis Integrity) and/or Wisdom Ltd. (the parent of Wisdom Marine) through their common key personnel, all of whom share the same office, physical address, and website.

47.     Amis Integrity, Wisdom Marine, and Wisdom Ltd., at all material times, operated as an intermingled web of companies doing business as a single economic enterprise that disregarded corporate formalities, whereby Wisdom Marine and/or Wisdom Ltd. abused the corporate form of each other and Amis Integrity to totally dominate and control Amis Integrity, causing the Dry Bulk Charter Party agreement to be fraudulently and wrongfully terminated, thereby injuring Plaintiffs.

48.     As a result of the above-mentioned actions taken as alter egos of each other, Amis Integrity, Wisdom Marine and Wisdom Ltd. have caused Plaintiffs to incur damages estimated to be no less than **USD 3,760,938**, plus interest and costs.

---

[2] *OS Shipping Co. v. Glob. Mar. Tr.(s) Private Ltd.*, No. 11-CV-377-BR, 2011 WL 1750449, at *6 (D. Or. May 6, 2011) (quoting *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997)).

WHEREFORE, Plaintiffs pray for judgment as follows:

**A.**    That Process having been issued against  the M/V AMIS INTEGRITY, *in rem,* and the Vessel having been arrested and released in exchange for a surety bond posted in substitution thereof, that Plaintiffs' maritime lien against the Vessel be foreclosed and judgment be entered against the substitute security for the sum of USD 2,500,000, the full amount of the substitute security;

**B.**    That judgment be entered against the *in personam* Defendants in the sum of **USD 3,760,938**, plus applicable interest and costs;

**C.**    That, in the alternative, the *in personam* Defendants be ordered to disgorge and pay to Dry Bulk any and all profits earned as a result of their wrongful conduct as set forth in this Amended Verified Complaint, should such profits exceed the amounts sought herein by Plaintiffs; and

**D.**    That the Court grant such other and further relief as it deems just, equitable, and proper.

DATED:    July 10, 2020                    Respectfully submitted,

MILLER NASH GRAHAM & DUNN LLP


 *s/ Ian M. Christy*
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
Ian M. Christy, OSB No. 160116
ian.christy@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

 and

BLANK ROME LLP

 *s/ John D. Kimball*_____
John D. Kimball, *pro hac vice*
jkimball@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.885.5000
Facsimile: 212.885.5001

 and

Jeremy A. Herschaft, *pro hac vice*
jherschaft@blankrome.com
Zachary Cain, *pro hac vice*
zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: 713.632.8655
Facsimile: 713.228.6605

*Attorneys for Plaintiffs*
*Dry Bulk Singapore Pte. Ltd. and Tradewind*
*GMBH*

-------- Αρχικό μήνυμα --------

**Θέμα:** MV Amis Integrity/DBS clean fixture recap
**Ημερομηνία:** 2019-01-10 12:08
**Αποστολέας:** Thomas Rolin <Thomas.Rolin@brsbrokers.com>
**Παραλήπτης:** "operations@drybulksingapore.com" <operations@drybulksingapore.com>
**Κοινοποίηση:** Rabaa Naouali Private <Rabaa.Naouali.P@brsbrokers.com>

Stavros/Thomas

++CLEAN FIXTURE RECAP++

CP DATED 10TH JAN 2019

MV AMIS INTEGRITY

BUILT/YEAR: 2017

VESSEL TYPE: BULK CARRIER

BUILDER: IMABARI SHIPBUILDING CO

FLAG: PANAMA

CLASS: TBN

1

2

Exhibit 1
Page 1 of 10

DWT: 63,469 M/T

DRAFT (SUMMER): 13.418 M

LENGTH (L.O.A.) / (L.B.P.): 199.98 M / 195.00 M BREADTH : 32.24 M GROSS / NET TONNAGE: 35,825 / 21,075 CAPACITY(GRAIN/ BALE) : 80,497.70 M3 / 76,176.27 M3 HOLD / HATCH: 5/5 HATCH COVER : FOLDING TYPE (HYDRAULIC DRIVEN) HATCH OPEN

1.: L. 18.40M X B. 18.72M

2.~5.: L. 23.20M X B. 18.72M

VESSEL IS CO2 FITTED.

VESSEL IS FITTED WITH A60 BULKHEAD

CARGO GEAR :

CRANE 4 SETS X 30 MT

CRANE UNABLE TANDEM AT SAME TIME

GRAB X4 (12M3)


SPEED & CONSUMPTION (DAILY):


BALLAST: ABOUT 14.0 KTS ON ABOUT 23.2 MT IFO + ABOUT 0.1 MT MDO LADEN : ABOUT 13.3 KTS ON ABOUT 24 MT IFO + ABOUT 0.1 MT MDO


IN PORT (DAILY):

WORKING: ABOUT 4.7 MT IFO + ABOUT 0.2 MT MDO

IDLE      : ABOUT 2.3 MT IFO + ABOUT 0.2 MT MDO

(D.O.TO BE USED IN CASE OF LOW LOAD RUNNING (BELOW 30%) OF G/E)


ECO SPEED / CONSUMPTION BASIC BELOW: (REF ONLY/WOG)


BALLAST ABOUT 12.0 KTS ON ABOUT 15.4 MT IFO + ABOUT 0.1 MT MDO LADEN  ABOUT 11.5 KTS ON ABOUT 16.7 MT IFO + ABOUT 0.1 MT MDO


BALLAST  ABOUT 12.5 KTS ON ABOUT 17.3 MT IFO + ABOUT 0.1 MT MDO

LADEN   ABOUT 12.0 KTS ON ABOUT 18.5 MT IFO + ABOUT 0.1 MT MDO

+++

- ECO/SPEED CONSUMPTION CLAUSE:

OWNERS CONFIRM THAT VESSEL IS CAPABLE OF BEING CONTINUOUSLY OPERATED ON MINIMUM MAIN ENGINE LOAD SAFELY CLOSE TO THE CUT-IN POINT OF THE VESSEL'S ENGINE AUXILIARY BLOWERS. OWNERS CONFIRM THEY WILL ALLOW THE VESSEL TO SAIL AT 50% OF THE MAIN ENGINE LOAD (BUT WITH MAIN ENGINE ALWAYS OPERATING ABOVE THE CUT-IN POINT OF THE VESSEL'S ENGINE AUXILIARY BLOWERS).

ALL LOW LOAD OPERATIONS WILL BE PERFORMED UNDER OWNERS/OWNERS TECHNICAL MANAGERS' SUPERVISION AND ALWAYS IN STRICT CONFORMITY WITH THE RECOMMENDATIONS FROM VESSEL'S MAIN ENGINE MANUFACTURERS.

OWNERS/OWNERS' TECHNICAL MANAGERS WILL PROVIDE PROPER GUIDANCE AND INSTRUCTIONS TO THE MASTER/SHIP STAFF AND ENSURE STRICT COMPLIANCE WITH APPLICABLE LOW LOAD OPERATING PROCEDURES AS DEEMED NECESSARY BY OWNERS/ENGINE MANUFACTURERS.

OWNERS/MASTER TO PROVIDE CHARTERERS WITH ALL ME PARAMETERS AND LOGS UPON CHARTERERS' REQUEST.

+++

SPEED AND CONSUMPTION BASIS GOOD WEATHER CONDITIONS, NO ADVERSE CURRENT, NO NEGATIVE INFLUENCE OF SWELL AND NOT EXCEEDING BEUFORT SCALE FORCE 4 AND DOUGLAS SEA STATE SCALE 3.

VESSEL MAY CONSUME MDO FOR MAIN ENGINE WHEN STEAMING IN SHALLOW, CONFINED WATERS, MANOEUVERING IN/OUT PORT(S), TRANSITING CANALS AND ALSO HAS LIBERTY TO CONSUME FOR AUXILIARY ENGINE WHEN STARTING, STOPPING AND WORKING WITH LOW LOAD.

CHARTERERS HAVE FULL USE OF VESSEL'S BUNKER TANK CAPACITY UP TO 80PCT NO COMMINGLING OF IFO IS ALLOWED FOR THE DURATION OF THIS C/P

ALL DETAILS ABOUT AND SOME DATA LIKE DWAT/DRAFT/GRAIN CAPACITY ETC ETC WILL BE RECFMD AFTER DELIVERY.

+++ ALL DETAILS ABOUT +++

TPC ABOUT 61.4

- PLSE PROVIDE FULL VESSEL DESCRIPTION AS PER BALTIC EXCHANGE

  FORMAT ONLY ON 'ABOUT' BASIS, IE NO REFERENCE TO 'WITHOUT

  GUARANTEE'.

- PLEASE PROVIDE VSL'S POCKET PLAN

- OWNERS CONFIRM VSL'S GEAR IS IN FULL WORKING CONDITION AND TO BE

  SO MAINTAINED AT CHTRS DISPOSAL FOR THE ENTIRE DURATION OF C/P,

- OWNERS CONFIRM VESSEL HAS VALID GEAR CERTIFICATE ON BOARD

  COVERING THE DURATION OF THE C/P AND OWNERS TO GUARANTEE THAT

  VESSEL'S GEAR CAN LIFT ..MTS SWL AT EACH HATCH SIMULTANEOUSLY.

As per attached description

- OWNERS CONFIRM THAT VSL IS AND WILL REMAIN FOR THE WHOLE

  DURATION OF THIS C/P CLASSED HIGHEST LLOYDS OR EQUIVALENT.

- OWNERS CONFIRM THAT VSL IS AND WILL REMAIN FOR THE WHOLE

  DURATION OF THIS CP FULLY P+I COVERED WITH SUCH CLUB BEING A

  MEMBER OF THE INTERNATIONAL GROUP OF P+I CLUBS, PLSE ADVISE

  DETS.

Attached certificate

- OWNERS CONFIRM THAT VSL IS AND WILL REMAIN FOR THE WHOLE

  DURATION OF THIS C/P FULLY H+M INSURED, PLSE ADVISE DETS.

4

Exhibit 1
Page 4 of 10

Attached certificate

- OWNERS CONFIRM VSL IS ITF FITTED AND COMPLIANT.

- OWNERS CONFIRM VSLS MASTER AND OFFICERS ARE ALL CAPABLE OF
  COMMUNICATING FLUENTLY IN ENGLISH BOTH ORALLY AND WRITTEN FORM.

- OWNERS CONFIRM VSL FULLY ISM COMPLIANT.

- OWNERS CONFIRM THAT VSL HAS ON BOARD ALL RELEVANT CERTIFICATES
  FOR TRADING ANY PORTS, PLACES, AREAS ALLOWED UNDER THIS C/P.
  COPIES OF SUCH CERTIFICATES TO BE FURNISHED BY OWRS IMMEDIATELY
  UPON REQUEST OF THE CHTRS.

- OWNERS CONFIRM VESSEL TO BE FREE OF ASIAN GYPSY MOTH AND THAT
  VESSEL HAS NOT CALLED CIS PACIFIC PORTS IN THE LAST 2 YEARS.

CIS Calling : Vessel Called Nakhodka + Vostochny between 21/2/18 to 07/03/18 but not in AGM Season

- OWNERS CONFIRM VESSEL'S HOLDS/HATCHES ARE FREE OF ANY
  OBSTRUCTIONS/BULKHEADS/CENTRE LINE BEAMS OR BULKHEADS ETC.

- OWNERS CONFIRM VESSEL SHALL NOT CHANGE OWNERSHIP DURING THIS C/P
  WITHOUT CHARTERERS' WRITTEN CONSENT.

- CARGO TO BE LOADED IN UNOBSTRUCTED MAIN HOLDS
  SPACES ONLY AND OWNERS/VESSEL GUARANTEE THAT
  CHARTERERS HAVE AS PER VSLS DESCRIPTION CB FT GRN/BLE AVAILABLE
  IN UNOBSTRUCTED MAIN HOLDS AND HATCHCOAMINGS ONLY.

Exhibit 1
Page 5 of 10

- PLEASE ADVISE LAST 3 CARGOES, CHARTERERS AND PORTS FOR LAST

  THREE LEGS

Latest

Bagged Cement from Hongai, Vietnam to Durban + Port Elizabeth + Cape Town, South Africa

Coal from Indonesia (Muara Berau) to Taichung, Taiwan

Coal from Taboneo to Xinsha


- DID VESSEL ENCOUNTER ANY COLLISION/GENERAL AVERAGE/MAJOR ENGINE

  DAMAGE DURING PAST 12 MOS?

Collision in Mongla in August 2018 – she was in drydock for repairs in septmeber / October and has been in service
ever since with no issues.


- PLEASE ADVISE LAST SS/DD?

New Built in 2017 – last Drydock for repairs in September / October 2018


- PLEASE ADVISE MASTER'S NAME/NATIONALITY: Capt Li Maofeng – Chinese

  NATIONALITY OF CREW: 17 Chinese and 3 Mayanmar (Excluding Capt)


- PLEASE ADVISE OWNERS' AND MANAGERS FULL STYLE/ADDRESS/CONTACT

  DATA INCL AOH:

HEAD OWNERS:

AMIS INTEGRITY SA.

MMG TOWER, 23RD FL., AVE. PASEO DEL MAR, COSTA DEL ESTE, PANAMA CITY, PANAMA


MANAGER:

WISDOM MARINE LINES S.A. (AS MANAGERS)

2F., NO.237, SEC.2, FU-HSING S. RD., TAIPEI 106, TAIWAN R.O.C.

TEL.: +886-2-2755-6911

6

Exhibit 1
Page 6 of 10

FAX: +886-2-2755-6865

- IN CASE VESSEL ON TIME OR BARE BOAT CHARTER PLSE ADV FULL

   STYLE/ADDRESS OF PRESENT OPERATORS TOGETHER WITH NAMES OF OTHER

   VESSELS UNDER THEIR CONTROL:

Time Charter Owners:

24VISION CHARTERING SOLUTIONS DMCC

2801, PLATINUM TOWER, CLUSTER I

JUMEIRAH LAKE TOWERS

DUBAI UNITED ARAB EMIRATES

- IN CASE VSL IS DISPONENTLY OWNED PLSE ADVISE FULL LIST OF ALL

   DISPONENT OWS INVOLVED, IF ANY, INCL THEIR FULL NAME AND CONTACT

   DETS:

- PLEASE ADVISE VSL'S CONTACT DETAILS:

Master LI

MV Amis Integrity

TEL: +870 773804096

FAX: +870 783404550

TELEX:  435342410

Mobile: +886 966650286

E-MAIL: master.amisintegrity@wisdom.amosconnect.com

500 kb limit on incoming emails

- BIMCO ISM/ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES TO BE

   INCORPORATED IN THE C/P.

- Owners confirm the vessel is at least 3 star Rightship rated.

Owners are not members of Rightship but charterers are free to check same directly.

- OWNER CONFIRM THAT THE VSL IS NEITHER IRANIAN OWNED NOR THAT

  THERE ARE ANY IRANIAN SHAREHOLDERS/INTEREST IN THE VESSEL

- OWNERS CONFIRM VSL HAS NOT TRADED TO IRAN IN LAST 6 MONTHS

UPON FXG M'TERMS AND PRIOR LIFTING SUBS OWS TO PROVIDE CHRTRS WITH

  FLWG CERTIFICATES:

   1 CLASSIFICATION CERTIFICATE

   2 INTL LOAD LINE CERTIFICATE

   3 INTL REGISTER OF SHIPPING

   4 INTL TONNAGE CERTIFICATE

   5 IOPP CERTIFICATE (INTL OIL POLLUTION PREVENTION)

   6 GEAR CERTIFICATE

   7 ISPS CERTIFICATE (INTL SHIP SECURITY)

   8 P AND I CERTIFICATE

   9 RADIO CERTIFICATE

   10 REGISTRATION CERTIFICATE

   11 SAFE MANNING CERTIFICATE

   12 SAFETY CONSTRUCTION CERTIFICATE

   13 SAFETY EQUIPMENT CERTIFICATE

   14 SAFETY MANAGEMENT CERTIFICATE

   15 GEAR CERTIFICATE

for

- acent Dry Bulk Singapore

 Address:

DRY BULK SINGAPORE PTE LTD

1 Robinson Road, #17-00 AIA Tower

Singapore 048542

email: operations@drybulksingapore.com

PIC: Dr. Stavros Tsolakis +306945414924

Key personnel

Thenappan Vellachami +6596812815

Yiowmin Chay     +6598625292

- Delivery AFSP Up River - Maceio range ATDNSHINC

- One time charter trip via ECSA to PG-Japan range, always trading via safe port(s), safe berth(s) and safe anchorage(s), always within International Navigation Limits in/out geographical rotation, always afloat, not always afloat but safely aground allowed referred to NAABSA clause.

- rdly dlosp 1 sp PG/Sin range in chopt Sin/Japan rge atnshinc

- hire :

Redelivery PG-Sin range USD 13,750 plus USD 375,000 ballast bonus payable three banking days after delivery In chopt redelivery sin-jpn range usd 13,900 per day prorata plus usd 390,000 ballast bonus

1st hire to consist of 15 days hire, ballast bonus and bunkers on delivery and to be payable within 3 banking days of vessel's delivery.

Charterers to declare redel range latest upon vessel arriving load port

- Laycan January 20-30 2019

If upon sailing or latest by January 12 1700 hrs dubai time a port is not declared then the vessel to sail towards Santos-Upriver range.

- ilohc usd 4000, incl removal etc

- c/v/e usd 1500 pmpr

Exhibit 1
Page 9 of 10
10

- Bunker clause

BOD about 300-350 Metric Tons IFO and about 25 Metric Tons LSMGO BOR about same as on delivery Prices both ends US$ 400 Per Metric Ton IFO and US$ 625 Per Metric Ton LSMGO About means 5% tolerance on actual quantity on delivery.

Owner's option to stem 500 Metric Tons prior to redelivery, concurrently with Charterers.

Charterers to keep Owners closely informed on bunker schedule.


- Bunker specs:

Charterers to bunker the vessel with fuel ISO 8217:2010 standards only.

Charterer's option to supply RMF 25 in South Africa where RME not available.

But Charterers are allowed to stem ISO 8217: 2005 standards where ISO 8217: 2010 standards is not available

- Bimco Piracy Clause as per Charter Party


- Owners confirm vessel has not called Iran in the last 6 months

- Underwater cleaning: Owners confirm vessel's hull is clean, however if Charterers find out she is underperforming then they will deduct vessels underperformance from hire payment(s) => deductions allowed against supporting evidence and mutual agreement.

- Kindly adv owner's  TRADE/CARGO EXCL: as per BTB cp


- 3,75add to chrts + 1.25 pct to BRS


- Otherwise as per Owner Pro Forma Charter Party as attached with logical alterations as per mainterms agreed

And with following amendment:


Clause 91 add ultrasonic test in addition to hose test.


e n d


Please confirm above is according to your notes and understanding


Thanks for the good support in concluding this fixture

Dated 08th of February, 2019

**24Vision Chartering Solutions DMCC**

**-and-**

**Dry Bulk Singapore Pte Ltd**

---

Addendum No. 1

to

Charter party dated 10th January, 2019

---

This Addendum No.1 is entered into on this 08th day of February 2019

Between:

 **Dry Bulk Singapore Pte Ltd**

 (hereafter **The Charterer**)

 **1 Robinson Road**
 **#17-00 AIA Tower**
 **Singapore**

 and

 **24Vision Chartering Solutions DMCC**
 (hereafter **The Owner**)
 **2801, Platinum tower**
 **Cluster I, Jumeirah Lakes Towers**
 **Dubai**
 **United Arab Emirates**

1

Exhibit 2
Page 1 of 2

NOW IT IS AGREED by both parties to make the following amendments to existing charter

Party dated 10th January 2019:

1. Delivery time: 24.01.2019 07:42 GMT (24.01.2019 04:42 LT)
2. Delivery AFSPS Recalada
3. Time Charter period: Minimum 9 October 2019/ maximum 29 January 2020
4. Hire daily inclot US$ 15,000 until 9 October 2019, thereafter daily hire US$ 14,500 for balance of period.
   Plus US$ 50,000 GBB.
5. All other terms and conditions as per Amis Integrity / Dry Bulk Singapore charter party dated 10 January 2019

**Dry Bulk Singapore Pte Ltd**

------------------------------------------------------

**Name:**

**Title:**

**24Vision Chartering Solutions DMCC**

------------------------------------------------------

**Name:**

**Title:**

2

Exhibit 2
Page 2 of 2