Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Phone:    206-623-4990
Facsimile: 206-467-4828
Email: moberg@legros.com
Email: dpark@legros.com
Attorneys for Amis Integrity S.A.,

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-01671-BR <br><br> IN ADMIRALTY <br><br> **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR LEAVE TO AMEND COMPLAINT** |

## I. <u>INTRODUCTION</u>

This case arises from Plaintiff's unfounded claim that Amis Integrity S.A. breached a charter party and Plaintiff's wrongful arrest or seizure of the M/V AMIS INTEGRITY (the "Vessel") pursuant to that unfounded claim. Plaintiff bemoans that Amis Integrity S.A., as owner, withdrew the Vessel from a charter party even though Plaintiff, as sub-charterer, had allegedly made timely charter hire payments to the charterer. However, the record clearly shows that Amis Integrity S.A.'s withdrawal of the Vessel was proper as based on the

charterer's failure to make timely charter hire payments to Amis Integrity S.A.  Even though Plaintiff's claims lie against the charterer, rather than Amis Integrity S.A., Plaintiff filed suit against Amis Integrity S.A. and wrongfully arrested the Vessel.  Amis Integrity S.A. and the Vessel posted a **$2.5 million surety bond** to obtain the release of the Vessel.  Now, nine (9) months after filing the original complaint, Plaintiff files an Amended Motion to Amend seeking to add an additional plaintiff, additional defendants, and a new alter ego claim to the lawsuit, which would drastically alter and expand the scope of the lawsuit.  Significantly, Plaintiff had the information in the proposed amendment before ever filing suit.  Moreover, Plaintiff's alter ego claims are meritless and personal jurisdiction is lacking over the new defendants.  Plaintiff's Amended Motion to Amend should be denied as futile, unduly delayed, prejudicial, and made in bad faith.

## II.  FACTS

The basic facts are simple.  The M/V AMIS INTEGRITY is a bulk carrier, sailing under the flag of Panama, which is owned by Amis Integrity S.A. and managed by Wisdom Marine Lines S.A. (also referred to as "Wisdom S.A.").  On or about June 30, 2017, Amis Integrity S.A. and Wisdom Marine Lines S.A., as manager, chartered the Vessel to 24Vision Chartering Solutions, DMCC ("24Vision") (hereinafter referred to as the "Head Charter").  Complaint ¶ 6 (Dkt. 1).[1]  24Vision subsequently sub-chartered the Vessel to Plaintiff Dry Bulk (hereinafter referred to as the "Sub-Charter"), and the Sub-Charter was memorialized in a fixture recap.  Complaint ¶¶ 7-8.

---

[1] A copy of the Head Charter is attached as Exhibit 1 to the Declaration of Huan Rong Jang in Support of Motion to Vacate Order of Arrest ("Jang Decl.") (Dkt. 19-1).

Under Paragraph 11 of the Head Charter, Amis Integrity S.A. had an absolute right to "withdraw the Vessel from the service of Charterers" if 24Vision failed to make timely charter hire payments. Jang Decl. ¶ 4, Ex. 1. 24Vision failed to make timely payments under the Head Charter. Accordingly, on July 8, 2019, Amis Integrity S.A. issued a notice to 24Vision of its intent to terminate the Head Charter and withdraw the Vessel pursuant to Paragraph 11(b) of the Head Charter. Jang Decl. ¶ 6, Ex. 2. The Head Charter provides that "[t]he terms of this Charter Party shall be governed by English law." Jang Decl. ¶ 4, Ex. 1 (p. 15). As explained by barrister Michael Nolan, Q.C., under the terms of the Head Charter, the "Owners became entitled to withdraw the vessel from the service of the Charterers on the 12th July 2018 [sic], 3 clear banking days having elapsed since they sent the grace period notice." Exhibit 1 (¶ 14) to Declaration of Michael Nolan (Dkt. 20-1). This fact is undisputed. Plaintiff's English law expert, solicitor Dominic John Ward, agrees. Exhibit B (¶ 14) to Declaration of Dominic Ward (Dkt. 30-2) (agreeing with barrister Nolan's opinion that "Owners became entitled to withdraw the vessel from the Charters on 12 July 2018 [sic] . . . save that in [his] opinion, the right to withdraw the vessel only arise at 00:01 hours <u>GMT</u> on 12 July").

On July 12, 2019, at 05:56 GMT, following the expiration of a 3-bank day grace period and well clear of the undisputed deadline, *see id.*, Amis Integrity S.A. withdrew the Vessel after 24Vision failed to make the past-due charter hire payments. Jang Decl. ¶ 7, Ex. 3. 24Vision has not disputed the termination of the Head Charter or the validity of the Vessel's withdrawal. Jang Decl. ¶ 8. Indeed, the M/V AMIS INTEGRITY was but one of several vessels under long-term charter to 24Vision, and when 24Vision failed to pay charter hire under these time charters, the Owners had no choice but to withdraw to mitigate damages.

The resulting losses from 24Vison's time charter breaches have not yet been fully accounted for but exceed USD $2,108,000, exclusive of third-party claims.  Declaration of Bruce Hsueh ("Hsueh Decl.") ¶ 18, filed herewith.[2]

Ignoring 24Vision's breach of the Head Charter, Plaintiff alleges that it never breached the Sub-Charter because it made timely charter hire payments to 24Vision.  Complaint ¶¶ 12-15.  Plaintiff alleges damages as a result of Amis Integrity S.A.'s withdrawal of the Vessel from 24Vision because Plaintiff pre-paid a $218,551.25 installment under the Sub-Charter to 24Vision.  Complaint ¶ 16.  Plaintiff also claims it incurred damages of $379,500 for lost profits because Plaintiff had apparently further sub-chartered the Vessel to a separate company called Trithorn.  Complaint ¶ 20.

"In order to invoke [Supplemental Admiralty] Rule C to arrest a vessel, a plaintiff must have a valid maritime lien against the defendant's vessel." *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 313 (1st Cir. 1997).  As explained by barrister Nolan, Plaintiff did not have a valid lien against the Vessel because "as a matter of English law a charterer does not have a general authority to create liens over a vessel in favour of a sub-charterer in respect of the sub-charterers' claims under a sub-charterparty[.]"  Exhibit 1 (¶ 6(2)) to Declaration of Michael Nolan in Support of Motion for Counter-Security (Dkt. 59-1).  Moreover, Paragraph 23 of the Head Charter contained an express prohibition-of-liens

---

[2] Plaintiff's suggestion that the withdrawal was a calculated or opportunistic termination orchestrated by Wisdom S.A., or any Wisdom entity or employee, demonstrates a complete lack of understanding or intentional disregard of the facts and the nature of the time charter business.  The whole purpose of time charter parties is to insure against market risk—to secure a contract of daily hire that would be sufficient to cover the operating expenses (*i.e.* to pay employees, ship's crew, insurance, etc.) and generate a reasonable profit; and to enter into long charters especially is to safeguard against the uncertainties of the freight market.  Owners or managers who place vessels into time charters are generally regarded as more risk averse.  They avoid trading their vessels on the spot market where charterers who are less risk-averse may shoulder both the risk and enjoy the rewards of the market as it falls or rises.  Hsueh Decl. ¶ 18.

clause. Jang Decl. ¶ 4, Ex. 1 ("The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, Which might have priority over the title and interest of the Owners in the Vessel.").[3]

Nevertheless, despite lacking a valid maritime lien, on October 17, 2019, Plaintiff filed a Verified Complaint seeking a Rule C arrest of the Vessel. Dkt. 1. On or about October 17, 2019, Plaintiff successfully arrested the Vessel at a grain terminal in Vancouver, Washington. Dkt. 16. On October 18, 2019, Amis Integrity S.A. made a restricted appearance under Supplemental Admiralty Rule E(8) to defend the Vessel. Dkt. 17. On October 25, 2019, after the Vessel sat idle following the arrest, the Vessel and Amis Integrity S.A. (with Aspen American Insurance Company as surety), posted a $2.5 million bond for the benefit of Plaintiff to obtain the release of the Vessel. Dkt. 40-1, 41.

### III. <u>DISCUSSION</u>

A decision to grant leave to amend "is within the sound discretion of the trial court." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Although Rule 15 sets forth a liberal policy favoring amendments, the policy is not unlimited. Courts consider five factors when determining whether to grant a motion to amend the complaint: (1) futility of the amendment; (2) prejudice to the opposing party; (3) undue delay; (4) bad faith; and (5) previous amendments. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Robillard v. Opal Labs, Inc.*, 337 F. Supp. 3d 962, 966 (D. Or. 2018) ("A district court,

---

[3] As a matter of U.S. admiralty law, the Fifth Circuit has held that a sub-charterer does not possess a valid maritime lien against a vessel where the owner properly withdrew the vessel from the charterer, because such a rule would "effectively torpedo the owner's right of withdrawal[.]" *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 468 (5th Cir. 1984). The Fifth Circuit further noted that prohibition-of-lien clauses serve a "valid purpose" and "encourage freer trade in the chartering and subchartering of vessels" insomuch as owners "will be more likely to permit their charterers to enter freely into contracts of affreightment if the owners know that no 'secret liens' will arise from those obscure provisions in sub-agreements." *Id.* at 471.

however, may, within its discretion, deny a motion to amend 'due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'"). "Futility alone can justify the denial of a motion to amend." *Johnson*, 356 F.3d at 1077; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (court should deny motion to amend when the amendments "would be nothing more than an exercise in futility.").

## A. Tradewind is Not a Necessary Party and Should Not Be Added as a Plaintiff to the Lawsuit.

Plaintiff first seeks to amend the Complaint to add Tradewind GMBH ("Tradewind"), described as "an international trade financing company" registered in Germany, as an additional plaintiff on the grounds that Tradewind is a "necessary party." Motion at 2; AVC ¶ 4. Plaintiff vaguely asserts that Tradewind has a "commercial relationship with Dry Bulk" and a "financial interest in any recovery obtained in this action." Motion at 6.

Contrary to Plaintiff's assertion, Tradewind is not a necessary party to the litigation. Tradewind was not a party to the Head Charter or Sub-Charter. There is no evidence that Tradewind was involved in the operation of or chartering of the Vessel, and the record is devoid of any evidence that Tradewind suffered a direct injury-in-fact by Amis Integrity S.A.'s withdrawal of the Head Charter from 24Vision. If Tradewind indeed funded Plaintiff's $350,000 counter-security, Tradewind acquired this financial interest in the litigation months after the lawsuit had been filed and the Vessel had been arrested.

Tradewind is merely a third-party with no connection to the underlying facts and circumstances giving rise to Plaintiff's existing claims. Tradewind's purported financial interest in the litigation—an interest that could be shared by an indefinite number of

Plaintiff's business partners and creditors—is not sufficient to make Tradewind a necessary party. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) ("Under Fed. R. Civ. P. 19(a)(2), a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action."); *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153 DMS (BGS), 2013 U.S. Dist. LEXIS 202156, at *12 (S.D. Cal. Sep. 17, 2013) ("Although the local franchise may have some financial interest in the outcome of this case, that alone is insufficient to rise to the level of a necessary party."). Plaintiff fails to show that the Court cannot accord complete relief among the existing parties in the absence of Tradewind, or that the existing parties fail to adequately represent Tradewind's interests. *See* Fed. R. Civ. P. 19(a)(1)(A); Fed. R. Civ. P. 24(a)(2). Indeed, Dry Bulk and Tradewind share the same counsel and the same motivation in the lawsuit.

In short, Tradewind is not a necessary party and nothing is gained by adding Tradewind as a new plaintiff, and the additional delay and discovery of adding Tradewind—a foreign corporation registered in Germany—nine months after Plaintiff filed its original complaint, strongly disfavors Plaintiff's proposed amendment. Accordingly, leave to amend should not be granted to add Tradewind as an additional plaintiff.

**B.      Plaintiff's Proposed Amendment Adding Alter Ego Claim and New Defendants is Futile.**

Plaintiff also seeks to amend the complaint to add a new alter ego claim and add Wisdom Marine Lines, S.A. and Wisdom Marine Lines Co. Ltd. as new defendants to the lawsuit. Leave to amend should be denied as to these amendments because they are futile. "Amendment is futile if the amended pleading fails to state a claim on which relief may be granted." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 13 F. Supp. 3d 1116, 1123 (D. Or. 2014).

1.    <u>Plaintiff's alter ego claim is futile and subject to immediate dismissal.</u>

"Admiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant."  *Chan v. Soc'y Expeditions*, 123 F.3d 1287, 1294 (9th Cir. 1997) (citations omitted).  "Piercing the corporate veil is 'the rare exception' rather than the rule[.]" *G.O. Am. Shipping Co. v. China Cosco Shipping Corp.*, No. C17-912 MJP, 2017 U.S. Dist. LEXIS 200095, at *11 (W.D. Wash. Dec. 5, 2017) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (referring to alter ego liability as the "exception to the general rule that a subsidiary and the parent are separate entities").

The Ninth Circuit has held that "disregard of corporate separateness 'requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own.'" *Chan*, 123 F.3d at 1294 (citing *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)).  "[F]ederal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Id.* (citing *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)); *OS Shipping Co. v. Glob. Mar. Tr.(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist. LEXIS 49054, at *15 (D. Or. May 6, 2011) (same).

Here, Plaintiff does not allege, nor could it possibly prove, that the *in personam* defendants used the corporate form to perpetuate a fraud.  While Plaintiff generally states that the *in personam* defendants caused Dry Bulk's charter party to be "fraudulently and wrongfully terminated," Plaintiff merely uses the word "fraudulently" as a synonym for

"wrongful" or "improper" termination of the charter party. AVC ¶¶ 45-47. Moreover, if Plaintiff's alter ego claims were grounded in fraud, Plaintiff's AVC must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Wimbledon Fund v. Graybox, LLC*, No. CV15-6633-CAS(AJWx), 2016 U.S. Dist. LEXIS 192161, at *17 (C.D. Cal. Aug. 31, 2016) ("[A] majority of courts in this Circuit have found that plaintiffs must satisfy Rule 9(b)'s particularity standard as to the fraud element of plaintiff's alter ego theory."). To adequately plead fraud, "[t]he Ninth Circuit interprets Rule 9(b) as requiring 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Bibiji Inderjit Kaur Puri v. Sopurkh Kaur Khalsa*, No. 3:10-cv-01532-MO, 2017 U.S. Dist. LEXIS 166089, at *11-12 (D. Or. Oct. 5, 2017) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Plaintiff's AVC contains no allegations regarding the time, place or specific content of false representations, the identities of the defendants who made the misrepresentations, or the roles of each defendant in any type of fraudulent scheme.[4]

Instead, Plaintiff's claim for alter ego liability is premised upon the speculative claim that the *in personam* defendants disregarded corporate separateness and that the Wisdom defendants controlled and dominated Amis Integrity S.A. AVC ¶¶ 11-14; 45-47. In support

---

[4] Indeed, Plaintiff lacks evidence that the *in personam* defendants, who were never in contractual privity with Plaintiff, made *any* representations to Plaintiff whatsoever. Amis Integrity, S.A. chartered the Vessel to 24Vision, and 24Vision sub-chartered the Vessel to Plaintiff Dry Bulk. AVC ¶¶ 15-16. Plaintiff merely alleges that Amis Integrity, S.A. "knew, or should have known," of 24 Vision's sub-charter with Dry Bulk. AVC ¶ 34. Plaintiff's AVC contains no allegation that the *in personam* defendants made any statements—false or otherwise—to Plaintiff. Moreover, a claim of actual or inferred knowledge of a sub-charter does not state a claim for fraud. A false statement or misrepresentation is required. *See Diesel Repower, Inc. v. Islander Invs., Ltd.*, 271 F.3d 1318, 1325 (11th Cir. 2001) ("Admiralty law incorporates common law fraud."); *Su v. M/V S. Aster*, 978 F.2d 462, 473 (9th Cir. 1992) ("The failure to show a misrepresentation is alone enough to undermine the seamen's claim of fraud[.]").

{29293-00619685;3}

of its alter ego theory, Plaintiff alleges that these entities share "common key personnel, all of whom share the same office, physical address, and website." AVC ¶¶ 46; 11-14. However, "[m]ere overlap of a few directors or officers, without more, is insufficient to prove a theory of alter ego." *Shagang Shipping*, 2018 U.S. Dist. LEXIS 52169, at *9 (citing *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.")); *Chan*, 123 F.3d at 1294 ("Common ownership alone is insufficient to support disregard of the corporate form."). "To determine whether an individual so dominated and disregarded a corporate entity's corporate form [to impose alter ego liability], a court may consider several factors, including: (1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements for the corporation." *Cabasug v. Crane Co.*, No. 12-00313 JMS/BMK, 2014 U.S. Dist. LEXIS 18217, at *30 (D. Haw. Feb. 7, 2014) (applying admiralty law) (citing *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008)).[5]

As set forth in the Hsueh Declaration, filed herewith, Wisdom Marine Lines Co., Limited (Cayman) ("Wisdom Co. Ltd"), Wisdom Marine Lines S.A. ("Wisdom S.A."), and Amis Integrity S.A. are all separate corporations with their own boards of directors, corporate books, and corporate accounts. Hsueh Decl. ¶ 3. Amis Integrity S.A. is the registered owner

---

[5] *See also Shagang Shipping*, 2018 U.S. Dist. LEXIS 52169, at *7 ("In determining domination or control, courts may consider several factors, including . . . 1. Disregard of corporate formalities; 2. Inadequate capitalization; 3. Intermingling of funds; 4. Overlap in ownership, officers, directors, and personnel; 5. Common office space, address and phone numbers; 6. Degree of discretion exercised by the allegedly dominant and/or dominated corporation; 7. The existence of 'arms' length' dealing between the entities; 8. The treatment of the corporations as independent profit centers; 9. Payment or guarantee of the dominated corporation's debts by the dominating entity; 10. Intermingling of property between the entities.").

of the M/V AMIS INTEGRITY and has distinct and separate obligations, including bank loans and other vessel financing arrangements. *Id.* at ¶ 5. Wisdom S.A. has never been the owner or operator of the M/V AMIS INTEGRITY. *Id.* at ¶ 6. Wisdom S.A. has acted as manager of the Vessel, on behalf of the owner, Amis Integrity S.A., and in its capacity as manager, Wisdom S.A. facilitated the charter of the vessel to 24Vision in 2017. *Id.* at ¶ 6. Wisdom S.A.'s management of the Vessel is made pursuant to a Ship Management Contract under which the Owner pays Wisdom S.A. a monthly management fee. *Id.* at ¶ 6. Wisdom Co., Ltd. has no direct ownership interest or control over Amis Integrity S.A. *Id.* at ¶ 3.

Moreover, even if, for the sake of argument, Plaintiff's conclusory allegations that the *in personam* defendants operated as a single enterprise were taken as true, Plaintiff's alter ego claim fails as a matter of law because Plaintiff fails to plausibly state that veil-piercing is required to avoid an injustice. "Corporate separateness is respected unless doing so would work injustice upon an innocent third party." *Chan*, 123 F.3d at 1294; *Kilkenny*, 800 F.2d at 859 (same). Alter ego liability is an equitable doctrine that is inapplicable where there is no equity to be gained by piercing the corporate veil. *Siegel v. Warner Bros. Entm't, Inc.*, 581 F. Supp. 2d 1067, 1075 (C.D. Cal. 2008). Here, the record demonstrates that Amis Integrity S.A. properly withdrew the Vessel under the Head Charter due to 24Vision's failure to make timely charter hire payments, and that Plaintiff lacked a valid maritime lien on the Vessel. Moreover, the Vessel and Amis Integrity S.A. have posted a **$2.5 million surety bond** to release the Vessel from the Court's arrest. Dkt. 40-1. If Plaintiff prevails on its claims, adequate security exists to cover Plaintiff's claims. Veil-piercing is not required to avoid an injustice in light of the substantial bond that has already been posted.

Additionally, Plaintiff's underlying claims arise from nothing more than a simple (alleged) breach of contract. Plaintiff asserts that the Amis Integrity S.A. improperly withdrew the Head Charter from 24Vision, which allegedly adversely impacted Dry Bulk, which had sub-chartered the Vessel from 24Vision. AVC ¶¶ 15-17; 33. Courts have repeatedly found that a mere breach of contract—without more—is not the type of wrong or injustice sufficient to support the equitable doctrine of alter ego liability. *Highland Cdo Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 732 (S.D.N.Y. 2017) ("[I]t is well-established that an ordinary 'breach of contract, without evidence of fraud or corporate misconduct, is not sufficient to pierce the corporate veil.'"); *Allied Diversified Constr., Inc. v. Elite Mech., Inc.,* No. 1:16cv334, 2016 U.S. Dist. LEXIS 166611, at *13 (S.D. Ohio Dec. 2, 2016) ("Courts have often held that a breach of contract claim, without more, is not sufficient to pierce the corporate veil.").

Accordingly, Plaintiff fails to state a claim for alter ego liability and Plaintiff's proposed amendment should be denied as futile. *See, e.g.*, *Brown v. Pfeiffer*, No. 0:19-cv-03132-MWW-KMM, 2020 U.S. Dist. LEXIS 42310, at *21 (D. Minn. Mar. 11, 2020) (denying motion to amend, in part, where proposed amended complaint contained "insufficient allegations to support a plausible claim for piercing the corporate veil, so allowing amendment to permit those claims would be futile"); *Atel Mar. Inv'rs, LP v. Sea Mar Mgmt., L.L.C.*, No. 08-1700, 2010 U.S. Dist. LEXIS 80169, at *4 (E.D. La. June 25, 2010) (affirming magistrate's denial of plaintiff's motion to amend to add veil-piercing claim as futile); *Indianapolis Life Ins. Co. v. Hentz*, No. 1:06-CV-2152, 2009 U.S. Dist. LEXIS 618, at *19 (M.D. Pa. Jan. 6, 2009) (denying leave to amend where proposed amendment as to alter-ego liability "would be futile").

2.      Plaintiff's proposed claims against the Wisdom entities are futile because the Court lacks personal jurisdiction over the Wisdom entities.

Plaintiff bears the burden of establishing that this Court has personal jurisdiction. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).  Where the action is brought in admiralty, to meet that burden, Plaintiff must show that Oregon's jurisdictional statute confers personal jurisdiction, and that the exercise of jurisdiction accords with federal constitutional principles of due process.  *Id.* at 380 (*citing Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir. 1985)); *see also Amoco Egypt Oil Company v. Leonis Navigation Company, Inc.*, 1 F.3d 848, 850-51 (9th Cir. 1993) (affirming dismissal of claims against bareboat charterer for lack of personal jurisdiction despite unrelated contacts with forum state via sub-charterer).

Courts may exercise either specific or general jurisdiction over non-resident defendants.  Specific jurisdiction requires that Plaintiff satisfy the Ninth Circuit's three-part test, an element of which requires that Plaintiff's claim arise out of Defendant's forum-related activities.  *Shute*, 897 F.2d at 381 (*citing Haisten v. Grass valley Med. Reimbursement Fund,* 784, F.2d 1392, 1396, 1397 (9th Cir. 1986); *Data Disk, Inc. v. Systems Tech. Assocs., Inc.*, 557. F.2d 1280, 1287 (9th Cir. 1986)).  Plaintiff cannot establish specific jurisdiction.  Plaintiff's claims arise out of an action (withdrawal of the Head Charter) taken by and between foreign corporations relating to a foreign-flagged vessel while in international waters between South Africa and South America.  Hsueh Decl. ¶¶ 2, 5, 19.

An exercise of general jurisdiction over a foreign corporation is appropriate "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 122, 138-39 (2014) (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*,

564 U.S. 915, 919 (2011)).  Plaintiff does not argue that the Wisdom entities are subject to general jurisdiction in Oregon nor could it.  Motion at 15 ("[T]here is no indication that Wisdom Marine is subject to jurisdiction in any other state.").  Neither of the Wisdom entities mentioned in the AVC has any contacts with Oregon—there are no constant and pervasive affiliations to render it at home in Oregon.  Hsueh Decl. ¶¶ 4, 19.  These entities are non-resident, foreign corporations that do not have the requisite minimum contacts with Oregon for an exercise of general jurisdiction.  They do not conduct business in Oregon; are not licensed to do business in Oregon; have no offices, property, employees, or shareholders in Oregon; have never advertised in Oregon; and have not sold products or services in Oregon.  Hseuh Decl. ¶ 4.

Instead, Plaintiff contends that personal jurisdiction exists over the Wisdom entities based on their "national contacts" pursuant to Fed. R. Civ. P. 4(k)(2), because the Wisdom entities are not subject to the personal jurisdiction over any state court of general jurisdiction.  Motion at 15-16.  Under Fed. R. Civ. P. 4(k)(2), personal jurisdiction may exist when three conditions are met: "(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process."  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002)).

At the outset, it should be noted that the Ninth Circuit has "not squarely decided whether claims invoking admiralty jurisdiction 'arise[] under federal law' for purposes of Rule 4(k)(2)."  *Read v. Moe*, 899 F. Supp. 2d 1024, 1034 (W.D. Wash. 2012).  Nevertheless, even if admiralty claims arise under federal law for the purposes of Rule 4(k)(2), and—as

Plaintiff concedes—the Wisdom defendants are not subject to personal jurisdiction in any state, personal jurisdiction is lacking over the Wisdom defendants under the third element.

Plaintiff relies upon the Tsolakis Declaration (Dkt. 81) to argue sufficient national contacts to meet the third element of Rule 4(k)(2). However, the Tsolakis Declaration fundamentally misapprehends the nature of a time charter. The charterer, rather than the owner, directs the vessel's movements. Hseuh Decl. ¶ 10. Here, at the times relevant to the complaint, the M/V AMIS INTEGRITY was under charter to 24Vision, and 24Vision "controlled and directed the vessel's movements." Hseuh Decl. ¶ 9. Indeed, Plaintiff has acknowledged that the charterer's control and direction of the vessel "may be true." Tsolakis Decl. ¶ 17 (Dkt. 81).

The nature of the charter is fundamental to the general jurisdiction analysis. In those instances where a vessel listed as under Wisdom management may have called at a U.S. port, it was as a result of the "unilateral activity of another party or a third person," which activity cannot be attributed to the defendant and cannot support an exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (1985) (citations omitted). Subjecting a defendant to jurisdiction due to the unilateral actions of a third-party would not comport with federal constitutional principles of due process.

In *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008), the Second Circuit squarely addressed this issue when affirming the district court's finding that personal jurisdiction was lacking under Rule 4(k)(2). The plaintiffs argued that sufficient national contacts existed due to the vessel's "repeated visits to various ports on the Eastern Seaboard and the Gulf Coast." *Porina*, 521 F.3d at 128. The Second Circuit, however, noted that the "difficulty of the plaintiffs' reliance on the [vessel's] American port visits is that none of the

visits were made at [defendant's] direction." *Id.* Rather, the "decision to bring the [vessel] to the United States was made, in each case, by the ship's charterers, who were free under the charters to take the ship to any safe port in the world." *Id.* "The unilateral activities of third parties—here, the charterers—cannot, in themselves, satisfy the requirement of contact with the forum." *Id.*; *see also Nursan Metalurji Endustrisi A.S. v. M/V "Torm Gertrud"*, No. 07 CV 7687 (GBD), 2009 U.S. Dist. LEXIS 75805, at *11-12 (S.D.N.Y. Feb. 27, 2009) ("The allegation of vessel calls to U.S. ports in the past year, many of which are at the behest of time charterers, cannot amount to the purposeful contact necessary to satisfy constitutional due process guarantees. . . . The mere fact that vessels might foreseeably call at ports in the United States, without any indication that the defendant otherwise conducts business here, does not qualify as evidence that Defendant Torm has so 'purposefully avail[ed] itself of the privilege of conducting activities within the forum' that obligations should attach, thus requiring the exercise of personal jurisdiction.").

Finally, Plaintiff argues that "whether a defendant is subject to the personal jurisdiction of the court is more appropriately litigated, following service of process, in a motion to dismiss rather than in the context of a motion for leave to amend." Motion at 14. Defendants have already filed a motion to dismiss Amis Integrity S.A. for lack of personal jurisdiction (and improper service) which is currently pending with the Court. Dkt. 83. Courts have repeatedly refused to allow leave to amend on futility grounds where the amendment is subject to dismissal for lack of personal jurisdiction. *E.g.*, *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 962 (N.D. Ohio 2018) (denying amendment on "the grounds of futility because the amended Complaint would not survive Defendant's motion to dismiss for lack of personal jurisdiction"); *Sampson v. Delta Air Lines, Inc.*, No. 2:12-CV-

244 TS, 2013 U.S. Dist. LEXIS 175296, at *20 (D. Utah Dec. 9, 2013) ("Because the Court finds that Plaintiffs' Proposed Amended Complaint is subject to dismissal for lack of personal jurisdiction, it follows that Plaintiffs' Motion to Amend is futile."); *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) ("Where a complaint as amended would be subject to dismissal for lack of jurisdiction, the complaint is futile and leave to amend should be denied."); *JJCO, Inc. v. Isuzu Motors Am., Inc.*, No. 08-00419 SOM-LEK, 2009 U.S. Dist. LEXIS 94479, at *22 (D. Haw. Oct. 9, 2009) (finding that amendment to add non-resident defendant is futile where court lacks personal jurisdiction over defendant).

## C.     Plaintiff Unduly Delayed in Seeking the Amendment.

Leave to amend can be appropriately denied where a plaintiff unduly delayed in seeking the amendment.  "To evaluate undue delay, the Court must determine when the moving party became aware of the 'facts and theories raised by the amendment[.]'" *Pineda v. Ratliff*, No. 3:18-cv-01630-SB, 2019 U.S. Dist. LEXIS 203143, at *5 (D. Or. Nov. 22, 2019) (citing *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)).  Here, Plaintiff falsely contends that it did not unduly delay in seeking the amendment because the amendment is "based on discovery recently obtained by Amis [sic] and a recent investigation by Amis's [sic] new counsel."  Motion at 10.

Plaintiff's claim that it "recently obtained" the information supporting the amendment is demonstrably false.  To the contrary, the record clearly demonstrates that Plaintiff was well aware of the facts supporting the proposed amendment at least ten (10) months prior to filing the original complaint.  On October 17, 2019, Plaintiff filed a copy of the Sub-Charter between Dry Bulk and 24Vision as Exhibit 1 to its Verified Complaint.  Dkt. 1-2.  The Sub-

Charter, dated January 10, 2019, expressly referred to Wisdom Marine Lines, S.A. as the manager of the Vessel:

MANAGER:

WISDOM MARINE LINES S.A. (AS MANAGERS)

2F., NO.237, SEC.2, FU-HSING S. RD., TAIPEI 106, TAIWAN R.O.C.

TEL: +886-2-2755-6911

Dkt. 1-2 (page 6).

Additionally, the Declaration of Stavros Tsolakis in Opposition to the Motion to Vacate Order of Arrest ("Tsolakis Decl."), states as follows:

14. Moreover, on July 10, 2019, I had spoken with a Mr. Thomas Rolin of Barry Rogliano Sales (hereinafter "BRS"), the longtime chartering broker for Amis Integrity and **Wisdom Marine** and told him that payment of hire to 24Vision was being arranged for the next day (see WhatsApp message to Mr. Rolin dated July 10, 2019 in this regard attached hereto as Exhibit 2A). I thereafter sent a notice of payment to 24Vision, with a copy to Mr. Rolin, at the time such payment was made (see e-mails to 24Vision, with a copy to Mr. Rolin, attached hereto as Exhibit 2B).

. . . .

19. I immediately thereafter called Thomas Rolin of BRS, the longtime chartering broker for Amis Integrity and **Wisdom Marine**, to ascertain whether Amis Integrity, through **Wisdom Marine**, had, in fact, withdrawn the Vessel from 24Vision on July 11th and the reason therefor. Mr. Rolin told me he would check with his client, **Wisdom Marine** and revert.

20. I received a WhatsApp message from Mr. Rolin at about 0535 hours Greek time (0235 hours GMT) on July 12th, informing me that **Wisdom** had fixed the Vessel elsewhere with another charterer and that **Wisdom Marine** did not wish to speak with me about the withdrawal of the Vessel (see screen shots of my WhatsApp discussions with Mr. Rolin attached hereto as Exhibits 5A-C).

Tsolakis Decl. ¶¶ 14, 19-20; Exs. 2B, 5A-C (Dkt. 54-1) (emphasis added).

Thus, Plaintiff clearly had knowledge of the facts supporting his amended pleading before filing the lawsuit but inexplicably waited until nine (9) months after filing suit to file the Amended Motion to Amend. Such delay constitutes undue delay for the purposes of Rule 15. *E.g.*, *Walton v. United States Marshals Serv.*, No. C 03-01460 SI, 2005 U.S. Dist. LEXIS 60268, at *5 (N.D. Cal. Feb. 11, 2005) ("Undue delay can be found when plaintiff is aware of all facts, yet delays in filing a motion for leave to amend."). Although these facts might be new to Plaintiff's recently retained counsel (Dkt. 90-91, 97, 99, 102), Plaintiff's retention of new counsel does not excuse Plaintiff's undue delay in seeking the amendment. *Berns v. EMI Music Publ'g, Inc.*, 95 Civ. 8130 (KTD), 1999 U.S. Dist. LEXIS 17541, at *16 (S.D.N.Y. Nov. 10, 1999) ("[A] change in counsel, or the dissatisfaction with the manner in which previous counsel pleaded claims, as Plaintiffs suggest is the reason for their delay, cannot excuse undue delay in moving to amend.").

**D.      Defendants Would Be Unduly Prejudiced By the Proposed Amendment.**

Plaintiff's Amended Motion to Amend should also be denied because the proposed amendment substantially prejudices Defendants. "A motion for a leave to amend causes substantial prejudice when it creates additional discovery or cost, whether by altering the nature of the litigation or causing an extreme delay late in the litigation." *Robillard v. Opal Labs, Inc.*, No. 03:16-CV-00780-AC, 2018 U.S. Dist. LEXIS 100689, at *18-19 (D. Or. Mar. 14, 2018); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (denying leave to amend on prejudice ground because new claims would "advance different theories and require proof of different facts" and noting that subjecting defendant employees to additional deposition also inhibits them from engaging in their "normal duties"); *Morongo*

*Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding prejudice where new claims set forth in amended complaint "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense"); *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1492 (9th Cir.1983) (affirming denial of motion to amend when new allegations based on facts moving party already knew would "totally alter the basis of the action" and necessitate additional discovery because "they covered different acts, employees and time periods").

Plaintiff's proposed amendment drastically expands and alters the scope of the litigation, which will inevitably cause additional discovery, delay and defense costs. Plaintiff's proposed alter ego claims have no relation to the claims set forth in the original complaint and will force the employees of the *in personam* defendants, whom are located in Taiwan and other countries, to take time away from their normal duties to address Plaintiff's veil-piercing theories. Plaintiff also claims that it intends to seek jurisdictional discovery of Wisdom Marine. Motion at 14. Plaintiff initially agreed to an expedited, 6-month period for fact discovery,[6] and under Plaintiff's original claims, discovery of Defendants' employees could have been narrowly focused on the withdrawal of the Head Charter and the information or knowledge Defendants had about Dry Bulk and/or the Sub-Charter at the time of the withdrawal. Plaintiff's proposed amendment significantly expands discovery into the legal and financial relationships of the *in personam* defendants—issues that have no bearing

---

[6] On October 30, 2019, the existing parties agreed to an expedited, 6-month period for fact discovery ending on April 30, 2019. *See* Joint Status Report and Case Schedule (Dkt. 42). Thereafter, the Court set a deadline of April 30, 2019 for fact discovery following the parties' Rule 16 conference. Dkt. 50. On March 10, 2020, the parties requested a brief, 60-day extension of fact discovery due to travel restrictions and delays caused by the COVID-19 pandemic, and the Court subsequently extended fact discovery until June 30, 2020. Dkt. 72, 74.

whatsoever on whether Amis Integrity S.A. was legally entitled to withdraw the Head Charter from 24Vision.

All of this additional discovery and time spent litigating unnecessary alter ego claims will cause further delay and costs to Defendants. In addition to increased defense (legal) costs, further delay of the proceedings could cause Defendants to incur additional premiums and costs with respect to the $2.5 million bond posted to obtain the release of the Vessel. As previously discussed, Defendants have already been forced to pay a $50,100 first-term premium to obtain the $2.5 million bond, not to mention other loss of hire and expense caused by Plaintiff's wrongful arrest of the Vessel. *See* Declaration of Curly Tsao in Support of Motion for Counter Security ¶ 15 (Dkt. 49). Further delay of the proceedings could cause Defendants to incur additional premiums and expenses with respect to bond and extend the encumbrances on the assets posted as collateral to obtain the bond.

E.    **Plaintiff's Proposed Amendment is Made in Bad Faith.**

"In the context of a motion to amend, bad faith exists where a party intends 'to deceive, harass, mislead, delay, or disrupt." *Adidas Am., Inc. v. TRB Acquisitions Ltd. Liab. Co.*, No. 3:15-cv-2113-SI, 2016 U.S. Dist. LEXIS 199562, at *13 (D. Or. July 26, 2016) (citing *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015)). "More generally, 'bad faith' means 'not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity[.]" *Id.* (citing *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003)).

Here, Plaintiff delayed in seeking the amendment and falsely claimed that it only recently obtained the information to support the amendment. Plaintiff seeks to add additional

defendants and alter ego claims despite the fact that a $2.5 million bond has already been posted to obtain the release of the Vessel. Plaintiff's motive in seeking the amendment is clearly to harass, delay, and force Defendants to incur unnecessary expense—all of which demonstrates Plaintiff's bad faith. Plaintiff should not be permitted to amend the complaint under these circumstances.

## IV. CONCLUSION

For all the above reasons, Plaintiff's Amended Motion for Leave to Amend the Verified Complaint should be denied.

DATED this 17th day of July, 2020.

LE GROS, BUCHANAN & PAUL

By: *s/ Markus B.G. Oberg*
  *s/ Daniel J. Park*
MARKUS B.G. OBERG, OSB #112187
DANIEL J. PARK, OSB #132493
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Phone: 206-623-4990
Facsimile: 206-467-4828
Email: moberg@legros.com
Attorneys for Amis Integrity S.A., by restricted appearance

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,703 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 17th day of July, 2020.

*s/ Shelley Courter*
Shelley Courter, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone:        206-623-4990
Facsimile:        206-467-4828
E-mail:            scourter@legros.com