Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington  98106-1271
Phone:      206-623-4990
Facsimile: 206-467-4828
Email:  moberg@legros.com
Email:  dpark@legros.com
Attorneys for Defendant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> Amis Integrity S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-01671-BR <br><br> IN ADMIRALTY <br><br> DECLARATION OF BRUCE HSUEH IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT |

I, BRUCE HSUEH, declare as follows:

1. I am over the age of majority and, except as otherwise indicated, make this declaration on personal knowledge, and am competent to testify regarding the facts contained herein.

2. I serve as the Chief Financial Officer of Wisdom Marine Lines Co., Limited

(Cayman) ("Wisdom Co. Ltd"). In my capacity as a Director of Wisdom S.A., I have extensive knowledge of the corporate structure of the Wisdom group of corporations, including affiliated corporations such as Amis Integrity S.A., and their nationality and business operations. I am also familiar with the chartering of dry bulk vessels.

3.   Wisdom Co. Ltd., Wisdom S.A., and Amis Integrity S.A. are all separate corporations with their own boards of directors,[1] corporate books, and corporate accounts. Wisdom Co. Ltd., is a Cayman corporation, which was formed in 2008. Wisdom S.A. and Amis Integrity S.A., on the other hand, are Panamanian corporations. Wisdom S.A. was formed in 1999; Amis Integrity S.A. was formed in 2017 in connection with the construction/acquisition of the M/V AMIS INTEGRITY. Wisdom S.A. is a shareholder of Amis Integrity S.A.; Wisdom Co., Ltd., has no direct ownership interest or control over Amis Integrity S.A.

4.   Wisdom Co. Ltd., Wisdom S.A., and Amis Integrity S.A. do not conduct business in the State of Oregon. They are not licensed to do business in the State of Oregon; have no offices, property, employees, or shareholders in Oregon; have never advertised in Oregon; and have not sold products or services in Oregon. They have no agent or office in the United States.

5.   The M/V AMIS INTEGRITY is a Panamanian flagged vessel with IMO No. 9732412 and the International Call Sign H9XQ. Amis integrity S.A. is the registered owner

---

[1] To be clear, there is some overlap. For example, I sit on the board of Wisdom S.A. and Amis Integrity S.A. However, I do not sit on the board of Wisdom Co. Ltd., which in turn includes two directors who do not sit on the Wisdom S.A. board. Importantly, each director is under strict law and internal control to act for the best interest of the corporate entity—when I sit on the board of Wisdom S.A., for example, I am required by law and internal control to act in the best interest of Wisdom S.A.

HSUEH DECL. IN SUPP. OF OPP. TO MOT. TO AMEND- Page 2
[Case No. 3:19-cv-1671]

{29293-00620823;1}

of the M/V AMIS INTEGRITY, and as such has distinct and separate obligations, including bank loans and other vessel financing arrangements. Amis Integrity S.A. also employs the crew, which generally consists of Chinese and Taiwanese citizens, through manning agencies, *e.g.*, Qingdao Enhance International Ship Management Co., Ltd. in the case of Chinese crew.

6. Wisdom S.A. is not now and never was the owner or operator of the M/V AMIS INTEGRITY. Wisdom S.A. has acted as manager on behalf of the Owners, Amis Integrity S.A. In this capacity, Wisdom S.A. facilitated the charter of the vessel to 24Vision in 2017, and later to The China Navigation Company Pte. Ltd. ("CNCO")—the charter in effect at the time of the arrest in October 2019. Such management is pursuant to a Ship Management Contract under which the Owner pays Wisdom S.A. a monthly management fee. In the capacity of manager, Wisdom S.A. may collect and distribute charter hire payments on behalf of the Owners. In such circumstances, Wisdom S.A. may be designated as the beneficiary to whom the charterer should make the charter hire payments. But such cash flow for income would be recorded as belonging to the Owners. The accounts of revenue and costs to Owners would be properly recorded by the Managers and regularly audited by CPAs, currently Ernst and Young.

7. When providing management services, Wisdom S.A., regularly engages persons employed by Wisdom Marine International, Inc. ("Wisdom International"). These are also separate corporations. Wisdom S.A. has no ownership interest in Wisdom International and vice versa. Further, Wisdom International has no ownership interest in Amis Integrity S.A. Wisdom S.A. regularly pays Wisdom International management fees for services provided by Wisdom International employees.

HSUEH DECL. IN SUPP. OF OPP. TO MOT.TO AMEND- Page 3
[Case No. 3:19-cv-1671]

{29293-00620823;1}

8. Huan Jang, Curly Tsao, Tina Lai, and Mike Chao are Wisdom International employees. Wisdom International employees who provide services for Wisdom S.A. as outlined above in exchange for a management fee are not acting on behalf of Wisdom International or Wisdom Co. Ltd. They are then acting on behalf of Wisdom S.A., which in turn, in its capacity as manager under a Ship Management Contract, acts on behalf of the Owners, in this instance Amis Integrity S.A. Further, neither these employees, Wisdom S.A., nor the Owners control or direct the vessel under a time charter such as is at issue here.

9. Under the charter party with 24Vision Chartering Solutions DMCC ("24Vision"), once Owners delivered the vessel the Master was under the orders and directions of 24Vision and 24Vision controlled and directed the vessel's movements. Please refer to paragraphs 8(a) and 15 of the charter party. Owners placed the vessel at 24Vision's disposal on/about July 14, 2017.

10. This is consistent with subsequent time charters of this vessel. The charterer directs the vessel's movements. For example, at the time of the arrest in October 2019, the M/V AMIS INTEGRITY was under charter to The China Navigation Company Pte. Ltd. ("CNCO"). CNCO had directed the vessel to load grain cargo in Vancouver, Washington.

11. I have reviewed the Declaration of Stavros Tsolakis in Support of Motion to amend Complaint (Dkt. #81) and found a number of errors, including a number of errors:

12. Among other things, Wisdom S.A. does not own the M/V AMIS INTEGRITY and is not its Registered Owner.

13. Wisdom S.A. does not direct, operate, or otherwise control the vessels that are under time charter. It merely serves as the manager of the relationship with the charterer. See paragraphs 8 and 9 above. Further, Wisdom S.A. is not a party or principal under the

time charter.  Wisdom S.A. is merely listed for purposes of disclosing its involvement as manager.  The only parties to the time charter are the Owners and Charterers.

15. Wisdom S.A. does not receive all charter hire payments. Mr. Tsolakis's unfounded claim at ¶¶9-15 of his declaration (Dkt #81) is speculation, and the inference that Wisdom S.A. receives and retains all charter hire in fact false.  In the capacity of manager, Wisdom S.A. may collect and distribute charter hire payments on behalf of the Owners.  In such circumstances, Wisdom S.A. may be designated as the beneficiary to whom the charterer should make the charter hire payments. But such cash flow for income would be recorded as belonging to the Owners. The accounts of revenue and costs to Owners would be properly recorded by the Managers and regularly audited by CPAs, currently Ernst and Young.

15. The inference that a "Longview" clause in a charter party somehow indicates knowledge or an expectation that a vessel will call at a U.S. port is unfounded and suggests a complete lack of understanding of charter parties. The charter parties used are in significant part based on boiler plate.  This boiler plate is developed over time based on experiences during prior charters.  The "Longview" clause is an example of such boiler plate.  We often request, on behalf of the Vessel Owner, that such clause be included in the charter party under negotiation, as we wish to avoid a repeat of a prior experience in the event the vessel should call at said port.  It may now be found in what we term our pro forma charter party.  Consequently, this clause may appear in a number of charter parties where there is no expectation whatsoever that the vessel will call at any U.S. port.  Indeed, the clause may be found in a number of charter parties where the vessel is engaged in an exclusively Asian

HSUEH DECL. IN SUPP. OF OPP. TO MOT.TO AMEND- Page 5
[Case No. 3:19-cv-1671]

{29293-00620823;1}

trade. The clause does not in any way signal an expectation that the vessel will call at Longview or anywhere else in the U.S.

16. Wisdom S.A. itself does not fix voyage charters to the U.S. Once a vessel is under charter, aside from prohibited ports under the charter party, Wisdom S.A. has no control over a vessel's movements or to what port its charterer may direct it.

17. Mr. Tsolakis's statements regarding agents are particularly misleading. Wisdom S.A. does not appoint agents in foreign ports as a general rule. In the rare event that need for an agent to assist with a particular matter arises, Wisdom S.A. is almost always able to utilize the charterer's agent. The charterer is the entity that directs the vessel and therefore entity more likely to have an agent in the port to which it directs the vessel.

18. Lastly, the suggestion that the withdrawal was a calculated or opportunistic termination orchestrated by Wisdom S.A., or any Wisdom entity or employee, demonstrates a complete lack of understanding or intentional disregard of the facts and the nature of the time charter business. The whole purpose of time charter parties is to insure against market risk—to secure a contract of daily hire that would be sufficient to cover the operating expenses (i.e. to pay employees, ship's crew, insurance, etc) and generate a reasonable profit; and to enter into long charters especially is to safeguard against the uncertainties of the freight market. Owners or managers who place vessels into time charters are generally regarded as more risk averse. They avoid trading their vessels on the spot market where charterers who are less risk-averse may shoulder both the risk and enjoy the rewards of the market as it falls or rises. The M/V AMIS INTEGRITY was but one of several vessels under a long-term time charter to 24Vision. When 24Vision failed to pay charter hire under these time charters, the Owners had no choice but to withdraw to mitigate damages. Accordingly,

in an effort to mitigate damages from 24Vision's failure to pay hire, the Owners, via Wisdom S.A. as manager, withdrew the vessels from their time charters with 24Vision, including the M/V AMIS INTEGRITY at issue here. The withdrawal was timely and in accordance with the time charter. The resulting losses from 24Vison's time charter breaches have not yet been fully accounted for but exceed US$2,108,000, exclusive of third-party claims.

19. Under the circumstances of this case, subjecting Wisdom S.A. or Wisdom CO. Ltd. to the jurisdiction of the federal district court for Oregon would be unreasonable and unduly burdensome:

a. They have no direct contact with Oregon;

b. They are foreign corporations, one Cayman one Panamanian, and have no connections with Oregon, nor an office or agent anywhere else in the United States;

c. The withdrawal at issue occurred in international waters between Africa and South America, not in U.S. waters; and

d. The Charter Party/ies provide that disputes be referred for arbitration in London and governed by English law.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF OREGON AND THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED this 17 day of July, 2020 at Taipei, Taiwan.

_____
BRUCE HSUEH

HSUEH DECL. IN SUPP. OF OPP. TO MOT.TO AMEND- Page 7
[Case No. 3:19-cv-1671]

{29293-00620823;1}