**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Ian Christy**, OSB No. 160116
ian.christy@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

*Attorneys for Plaintiff Dry Bulk Singapore PTE. Ltd.*

(additional counsel listed on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD. | No.  3:19-CV-01671-BR |
| Plaintiff, | Admiralty |
| vs. | PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT |
| AMIS INTEGRITY S.A., *in personam* and M/V AMIS INTEGRITY (IMO 9732412), her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, | |
| Defendants. | |

Page 1 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
            OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
            COMPLAINT

4810-4514-5028.3

Plaintiff Dry Bulk Singapore PTE. Ltd. ("Dry Bulk") respectfully submits this Reply in support of its Amended Motion for Leave to Amend the Verified Complaint.

## INTRODUCTION

As demonstrated in its Motion to Amend (the "Motion," ECF 108), Dry Bulk seeks to amend its Verified Complaint to **(a)** add proposed plaintiff Tradewind GMBH ("Tradewind"); **(b)** add defendants Wisdom Marine Lines S.A. ("Wisdom Marine") and Wisdom Marine Lines Co. Ltd. ("Wisdom Ltd.," and together the "Wisdom Entities"); **(c)** add a claim of alter ego / veil piercing against and between defendant Amis Integrity S.A. ("Amis") and the Wisdom Entities; and **(d)** update the factual allegations in support of the underlying claims. All of the amendments are timely and pertain to the tortious interference with Dry Bulk's rights caused by the wrongful withdrawal of the M/V AMIS INTEGRITY ("Vessel") from Dry Bulk's custody and control.[1]

In response, Amis raises a multitude of challenges pertaining to the limited considerations set forth in *Foman v. Davis,* 371 U.S. 178, 182 (1962) and corresponding Ninth Circuit progeny as to whether Dry Bulk's amendments are untimely, futile, prejudicial, or made in bad faith. As discussed below, none of these bases supports denial of leave to amend. Rather, the amendments proposed by Dry Bulk (at what is still an early phase of this litigation) are both necessary and appropriate under the liberal standard set forth in Fed. R. Civ. P. 15. Under the circumstances, and in the interests of justice, the Court should grant Dry Bulk's Motion and allow leave to file the Amended Verified Complaint.

---

[1] *See* Dry Bulk's proposed Amended Verified Complaint ("AVC") (ECF 108-1).

Page 2 -   PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
            OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
            COMPLAINT

## ARGUMENT

### 1.    PROPOSED PLAINTIFF TRADEWIND IS A NECESSARY PARTY OR, ALTERNATIVELY, A PERMISSIVE PARTY, WHICH SHOULD BE JOINED.

Tradewind has standing to be included as a plaintiff because: **(a)** Tradewind provided general financing to Dry Bulk in connection with the transactions at issue, and **(b)** Tradewind funded the $350,000 in counter-security posted into the Court's Registry on June 17, 2020.  *See* AVC at ¶¶ 4, 10.  Tradewind plainly has a financial stake in any recovery from Defendants.

Adding Tradewind as a plaintiff would not meaningfully complicate this case or the discovery conducted herein.  Nonetheless, Amis opposes Tradewind's inclusion in this case, arguing that Tradewind is not a "necessary party" to this litigation under Fed R. Civ. P. 19, and that "Tradewind is merely a third-party with no connection to the underlying facts and circumstances giving rise to Plaintiff's existing claims."  Opp., p. 6.  Amis is mistaken.

As noted above, Tradewind provided financing to Dry Bulk in connection with the transactions that form the basis of this lawsuit—*i.e*., the charterparty and related voyage that the Vessel would have completed but for Defendants' tortious interference.  Defendants' wrongful actions impaired Tradewind's own financial interests based on its funding of the underlying charterparty and related expenses and Dry Bulk's assignment of certain of its rights to Tradewind.  Tradewind clearly has a cognizable interest in those funds and expenses, and should be allowed to join in this matter to prosecute its interests.  Tradewind's inclusion is therefore appropriate under Rule 19.  *See CP Nat. Corp. v. Bonneville Power Admin*., 928 F.2d 905, 912 (9th Cir. 1991) (holding that a necessary party under Rule 19 is one who has an interest in the

Page 3 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

controversy, and who ought to be made a party, so that the court may finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it).

Tradewind and Dry Bulk are both real parties in interest with respect to the claims against Defendants.  Rule 17(a) of the Federal Rules of Civil Procedure otherwise provides that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  Here, Tradewind is a real party in interest with respect to a portion of the amount of damages alleged against Defendants and for which it has an assignment of rights (*i.e.*, the amounts it financed to Dry Bulk); Dry Bulk is the party-in-interest for the remainder of damages claims.  Under Rule 17, leave for Tradewind to be added as a plaintiff should be automatic.

To the extent that Defendants may dispute the *validity* of the claims that Tradewind seeks to assert in its own name, or to dispute that Tradewind is entitled to recover any amounts on its own accord, those are substantive issues that should be resolved *after* Tradewind has formally joined the action and the parties have had the opportunity to develop the record.  Indeed, Defendants have not identified any prejudice resulting from Tradewind's joinder as a plaintiff.  Defendants' objections to Tradewind's presence in this case are simply premature and inappropriate at the pleadings stage.

Finally, to the extent applicable, the Court may also permit joinder of Tradewind under Fed. R. Civ. P. 20(a)(1), which allows permissive joinder where a prospective plaintiff asserts "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and. . . any question of law or fact common to all plaintiffs will arise in the action."  That is clearly the case in this matter for the reasons set forth above.

Page 4 -     PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
             OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
             COMPLAINT

## 2.    DRY BULK'S PROPOSED ALTER EGO AMENDMENTS ARE NOT "FUTILE" AND SHOULD BE GRANTED.

Amis next asserts a multi-pronged argument that Dry Bulk's amendments are "futile." They are not, and this Court should decline Amis' invitation to deny the proposed amendments on "futility" grounds.

### A.    The "Futility" Standard.

A proposed amendment is deemed to be futile *only* "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient legal claim or defense." *Sweany v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997); *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Moreover, a proposed amended pleading is futile only if "it appears beyond a doubt" that the claims sought to be added would be dismissed for failure to state a claim. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987); *see also Miller* 845 F.2d at 214 (9th Cir. 1988) (internal citations omitted); *Moore v. Kayport Package Express*, 885 F.2d 531, 542 (9th Cir. 1989). With that standard in mind, "[a] plaintiff should be afforded an opportunity to test his claim on the merits *rather than a motion to amend* unless it appears beyond doubt that the proposed amended complaint would be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *See Evers v. Troutman*, No. CV 03-145-BR, 2004 WL 5917590, at *2 (D. Or. Feb. 6, 2004) (Brown, J.) (citing *Miller*, 845 F.2d at 214) (emphasis added). "It follows, then, that in considering the proposed amendment, the Court must accept Plaintiff's factual allegations in the pleading as true." *See Zoe Marketing, Inc. v. Impressions*, LLC, No. 14cv1881 AJB, 2015 WL 12216341, *2 (S.D. Cal. Jun. 1, 2015) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336, 337-38 (9th Cir. 1996)).

Page 5 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

4810-4514-5028.3

Ultimately, denials of leave to amend based upon futility are "rare."  *Zoe Marketing, Inc.*, 2015

WL 12216341, at \*2.

> ### B.    Dry Bulk's Alter Ego Claims Against Amis and the Wisdom Entities are Adequately Pled and Not Futile.

Amis improperly seeks to force Dry Bulk into definitively proving its alter ego

claims now "on the merits" by demonstrating that its alter ego claims against the Defendants are

not "futile."  But that strawman argument flips the burden of proof:  Amis, not Dry Bulk, has the

burden of proving futility.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (party

opposing the amended complaint bears the burden of showing futility).  In any event, Amis's

attempt to counter Dry Bulk's alter ego allegations should be raised via a motion to dismiss after

the Wisdom Entities have been served with process, rather than in an opposition to Dry Bulk's

motion for leave to amend.

Putting aside that procedural issue, Amis fails to meet its burden to demonstrate

that Dry Bulk's alter ego amendments would be futile.  "Admiralty courts may pierce the

corporate veil in order to reach the 'alter egos' of a corporate defendant."  *OS Shipping Co. v.

Glob. Mar. Tr.(s) Private Ltd.*, No. 11-CV-377-BR, 2011 WL 1750449, at \*6 (D. Or.

May 6, 2011) (Brown, J.) (quoting *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th

Cir. 1997).  Alter ego liability exists either "when the corporate form is used to perpetuate a

fraud or when one corporate entity exhibits 'total domination of the subservient entity.'"  *OS

Shipping*, 2011 WL 1750449, at \*6 (citing *Chan*, 123 F.3d at 1294).  Notably, in the context of

alter ego, "fraud" can be established by demonstrating fraud in the use of an entity's corporate

form, particularly when the entity attempts to avoid its obligations.  *Id.* at \*12.  There is no

mechanistic formula that applies to the alter-ego analysis, and there are no minimum number of

Page 6 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
COMPLAINT

4810-4514-5028.3

factors that must be satisfied.  *U.S. v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777

(9th Cir. 1977) ("Issues of alter ego do not lend themselves to strict rules and prima facie cases.

Whether the corporate veil should be pierced depends on the innumerable individual equities of

each case.").

           In attacking the sufficiency of Dry Bulk's alter ego allegations, Amis argues that

Dry Bulk failed to assert specific allegations of fraud as between Amis and the Wisdom Entities

and allegations regarding the time, place, content of communications, and identities of the

defendants who made the representations.  Opp., pp. 8-9.  But Amis is wrong.  The AVC alleges

numerous facts demonstrating that the Wisdom entities dominate and control Amis, and are

therefore alter egos of Amis, as well as other instances in which representatives of Wisdom

Marine and Wisdom Ltd. directed the wrongful termination of the charterparty at issue.[2]  To

briefly summarize:

- Wisdom Marine is Amis's parent company and is the active

  manager, operator, and beneficial owner of the Vessel.  Wisdom

  Ltd. is the parent company of Wisdom Marine.  AVC ¶ 7.

- All three entities operate collectively, along with other affiliated

  entities, as part of a single business entity known as the "Wisdom

  Marine Group."  AVC ¶ 44.

---

[2] *See* AVC, ¶¶ 11-14, 26-31, 46-48; *see also* Mot., pp. 6-9, which are incorporated herein by
reference.  Dry Bulk notes that Amis amended its Initial Disclosures on July 17, 2020, the same
date it filed its Opposition, to highlight that certain Wisdom-affiliated individuals are in fact
employed by another Wisdom entity called "Wisdom Marine International Inc."

Page 7 -     PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
                OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
                COMPLAINT

- All three entities share common key personnel, including individuals identified in Amis's initial disclosures as relevant witnesses.  AVC ¶ 44.

- All three entities share the same office, physical address, and website, among other things.  AVC ¶ 44.

- Employees of the Wisdom Entities made all of the decisions related to the wrongful withdrawal of the Vessel that led to this dispute.  AVC ¶¶ 29, 45.

- The Wisdom Entities were the beneficiaries of the alleged unjust enrichment—a profit of at least $800,000, plus savings of the positioning costs of at least $950,000.  AVC ¶ 30.

These facts, among others, demonstrate that far from being separate entities, Amis is a mere appendage of the Wisdom Entities and acted solely at the direction of the Wisdom Entities to serve their economic interests.  The Wisdom Entities abused the corporate form to totally dominate and control Wisdom Marine and caused it to fraudulently and wrongfully terminate the Dry Bulk charter at issue, thereby injuring Dry Bulk.

Amis submits the declaration of Wisdom Ltd.'s CFO, Bruce Hsueh ("Hsueh Declaration," at ECF 110), in an effort to counter these allegations and demonstrate the alleged "corporate separateness" between Amis, Wisdom Marine, and Wisdom Ltd.  Putting aside the fact that the Court must accept *Dry Bulk's* factual allegations as true for purposes of evaluating the motion *sub judice* (and not Mr. Hsueh's), the Hsueh Declaration is nothing more than self-serving commentary, which is insufficient at this stage to nullify the allegations set forth in the AVC.  Ironically, Amis criticizes undersigned counsel for now representing both Dry Bulk and

Page 8 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
            OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
            COMPLAINT

proposed-plaintiff Tradewind (Opp., p. 7), but, reciprocally, Amis proffers the declaration of

Mr. Hsueh—the CFO of Wisdom Ltd. and Director of Wisdom Marine—even though these

entities have yet to appear in the case.  Hsueh Decl., pp. 1-2.  The fact that Amis and the Wisdom

Entities use the same lawyers, the same personnel to make declarations, and chorus in one

coherent voice lends further credence to Dry Bulk's alter ego claim.

The contents of Mr. Hsueh's declaration also bolster Dry Bulk's alter ego claim.

Mr. Hsueh admits there is indeed "some overlap" between the various Defendants, and that he

personally wears multiple hats at each entity by sitting on the boards of Wisdom Marine and

Amis (and, of course, serving as the CFO to Wisdom Ltd.).  *Id.*, at ¶ 2 and n. 1.  He also notes

that Wisdom Marine "facilitated" the charter of the Vessel to 24 Vision and to a separate

company after the arrest at issue.  *Id.* at ¶ 6.  He further claims that various unnamed vessel

Owners "had no choice but to withdraw" the time charters of their separate vessels when 24

Vision allegedly failed to pay these Owners charter hire.  *Id.* at ¶ 18.  Of course, the "facilitation"

of the charter of the Vessel by Defendants to other parties beyond Dry Bulk, the events

surrounding the withdrawal of the Vessel(s) by Amis and other Wisdom-related "Owners," and

the alleged reasons for the withdrawal(s) are all hotly contested issues in this case.  The Wisdom

Entities' apparent involvement in such matters (as vaguely described by Mr. Hsueh in his

declaration) directly supports Dry Bulk's alter ego claims.

Amis also argues that Dry Bulk "fails to plausibly state that veil-piercing is

required to avoid an injustice," pointing to the $2.5 million security bond that has been posted in

the matter.  Opp., p. 11.  That argument is specious at best.  The surety bond only secures a

potential *in rem* judgment against the Vessel and is capped at **$2,500,000**.  ECF 40-1.  The

parties negotiated the surety bond security following an emergency Rule E(4)(f) hearing, but that

Page 9 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
           OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
           COMPLAINT

4810-4514-5028.3

is not the limit on Dry Bulk's claims or recoverable damages in this action, which are currently

estimated to be no less than **$3,760,938, plus interest and costs**. *See* AVC, pp. 9-12.  Moreover,

Dry Bulk has pleaded separate *in personam* claims against Amis, Wisdom Marine, and Wisdom

Ltd. for tortious interference with contract, conversion, and unjust enrichment, and there is no

separate security posted for *those* claims.  As such, Amis's statement (at p. 12) that Dry Bulk's

alter ego claims "*arise from nothing more than a simple (alleged) breach of contract*" is

inaccurate.  Dry Bulk has not asserted a claim for breach of contract, but has instead asserted the

torts referenced above arising out of Amis and the Wisdom Entities' wrongful withdrawal of the

Vessel, which in turn wrongfully deprived Dry Bulk's use of it.  Accordingly, Dry Bulk's

allegations of an alter ego relationship between and among Amis, Wisdom Marine and Wisdom

Ltd. should stand, and the Wisdom Entities should be added as defendants to this action to

preserve Dry Bulk's right of recovery on its claims beyond the partial security covered by the

surety bond.

### C.    *In the Alternative, the Court Should Allow Expedited Discovery Regarding Dry Bulk's Alter Ego Allegations.*

As demonstrated above, Dry Bulk has met its burden to plead sufficient facts in

support of its alter ego claims against the Defendants; reciprocally, Amis has failed to prove that

such claims are "futile" for purposes of this motion to amend.  If the Court deems it necessary

for purposes of resolving this Motion, however, Dry Bulk should be permitted to take limited

discovery to further develop the factual record in this case and examine the corporate

relationships between and among the Defendants.

4810-4514-5028.3

Notably, Your Honor allowed limited alter ego discovery to occur in *OS Shipping*

under analogous circumstances.  During an initial Supp. Adm. R. E(4)(f) hearing in that case, the

Court stayed a similarly situated defendant's motion to vacate pending discovery and held:

> *The plaintiff is hampered because the plaintiff can only know so*
> *much, given the posture of the case. And it may seem -- it may be*
> *fair to give them a brief opportunity to in fact inquire under oath of*
> *those declarants on whom you're relying and to ask questions*
> *about the pertinent issue, which is the elements of alter ego*
> *liability and what -- what might relate to that.*

*See OS Shipping*, USDC-D. OR*,* Case No. 11-cv-377-BR, ECF 30-2 Hr'g Tr. at p. 30.  A similar

grant of discovery on alter ego issues here is warranted in the event that the Court has ongoing

questions regarding the sufficiency of the alter ego allegations in the AVC.

Courts in the Ninth Circuit have allowed discovery of alter ego issues under

similar circumstances.  In *Twentieth Century* Fox *Int'l Corp. v. Scriba*, 385 F. App'x 651, 652-53

(9th Cir. 2010), the Ninth Circuit vacated a district court's dismissal of the action on personal

jurisdiction grounds, ruling that discovery over alter ego issues "is required before the district

court can adequately determine whether personal jurisdiction over [the defendant] exists."  In

another matter in this Circuit, District Judge Alsup (of the Northern District of California) issued

an Order holding defendants' motions to vacate a maritime attachment in abeyance pending

jurisdictional discovery.  *KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT*,

No. C 12-00710 WHA, 2012 U.S. Dist. LEXIS 37751 (N.D. Cal. Mar. 20, 2012).  In that matter,

plaintiff alleged, in relevant part, that one defendant controlled the other and that the defendants

failed to maintain corporate formalities.  *Id*.  In allowing limited jurisdictional discovery,

Judge Alsup held:

> Plaintiff seeks leave to conduct limited discovery into the
> relationship between Marina and Berlian, to support its alter ego
> allegations. ***Our court of appeals has held that, in general,***

Page 11 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
              OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
              COMPLAINT

> *"where further discovery on [the] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction," denial of jurisdictional discovery will be an abuse of discretion. Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Without ruling on defendants' evidentiary objections, this order finds cause to allow limited jurisdictional discovery on the issue of defendants' alleged alter ego relationship. … Plaintiff is not tasked, at this stage, with proving the merits of its claims, but rather their sufficiency. Absent express direction to the contrary, there is no reason to restrict the discretionary grant of limited jurisdictional discovery on the facts presented here.

*Id.*, at \*11-14 (emphasis added); *see also Kite Shipping LLC v. San Juan Navigation Corp.*, No. 11cv02694 BTM (WVG), 2012 U.S. Dist. LEXIS 96199, at \*19-21 (S.D. Cal. Sept. 13, 2012) (holding that denial of plaintiff's request for limited discovery on plaintiff's alter ego theory was an abuse of discretion and granting expedited jurisdictional discovery on the alter-ego allegations).

Based upon the above, and only if the Court deems necessary, the Court should allow Dry Bulk to file its AVC, after which point limited discovery could occur on the alter ego allegations.

3.      **THE COURT HAS PERSONAL JURISDICTION OVER THE WISDOM ENTITIES, AND THEY MUST BE ADDED AS PARTIES TO THIS LITIGATION.**

Amis separately argues that Dry Bulk's attempt to add the Wisdom Entities to this dispute is "futile" because, purportedly, neither entity is subject to the Court's personal jurisdiction. As an initial matter, that argument is premature. Amis cites no controlling authority for the proposition that a personal jurisdiction challenge may be asserted in an opposition to a motion for leave to amend a complaint, or that such a challenge is a factor to be considered under *Foman* and its progeny. That is because a challenge to personal jurisdiction is more appropriately raised in a motion to dismiss following service of process of a complaint, rather

Page 12 -     PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED COMPLAINT

than in an opposition to a motion for leave to amend.  *See, e.g.*, William W. Schwarzer, et al.,

Practice Guide; Federal Civil Procedure Before Trial § 8:422; *see also* Rule 12(b)(2).

     As the Court is aware from the procedural history of this case, Amis has filed a

motion to dismiss for lack of personal jurisdiction (and improper service), which the Court

stayed to allow for the appearance of new counsel for Dry Bulk (i.e., the undersigned counsel).

*See* ECF 83, 89.  Dry Bulk has not responded to Amis's motion to dismiss, as it has sought to

amend its complaint as outlined herein.  Under the circumstances, and for the sake of efficiency,

Amis's motion to dismiss can only be addressed effectively by Dry Bulk (and the Court) after

Dry Bulk has amended the Verified Complaint.  Once that occurs, Amis and the Wisdom Entities

can file an updated motion to dismiss, if necessary, to which Plaintiffs will respond in kind.

     Putting aside these procedural issues, Amis's argument also fails on the merits.

Amis argues that exercising jurisdiction over the Wisdom Entities based on their "national

contacts" under Fed. R. Civ. P. 4(k)(2) does not comport with due process.  *See* Opp., pp. 15-17.[3]

To the contrary, the Tsolakis Declaration (*see* ECF 81, ¶¶ 16-32) sets forth the Wisdom Entities'

extensive national contacts (and, indeed, Oregon contacts), which are more than sufficient to

pass the Rule 4(k)(2) hurdle.  *See* Mot., pp. 15-17.  In any event, Dry Bulk should be afforded

the opportunity to address this issue in more detail in the more appropriate setting of a response

to the Defendants' future motion to dismiss.

---

[3] "The constitutional requirements are the same under Rule 4(k)(2) as the minimum contacts analysis applied in normal jurisdictional inquiries, but the analytic exercises are performed with reference to the United States as a whole, rather than the reference to a particular state."  *See Seiko Epson Corp. v Print-Rite Holdings, Ltd.*, 2002 WL 32513403, *11 (D. Or. Apr. 30, 2002) (Brown, J.) (internal citation omitted).

Page 13 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
         OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
         COMPLAINT

Amis goes on to claim that "the nature of the charter is fundamental to the general

jurisdiction analysis," citing *Porina v. Marward Shipping Co.,* 521 F.3d 122, 128 (2d. Cir.

2008), for the proposition that a vessel owner is not subject to the jurisdiction of a U.S. court in

instances where a charterer coincidentally directs the movement of a particular vessel.  But in

*Porina*, the defendant *allowed* the plaintiff to amend its complaint and the plaintiff was permitted

to conduct jurisdictional discovery before the court ruled on the defendant's motion to dismiss.

*See Porina v. Marward Shipping Co.,* USDC-SDNY Case No. 05cv5621, ECF 22, Aug. 24, 2016

Order, p. 1 (Unpublished).  In light of this vastly different procedural posture, the court's

ultimate decision in *Porina* is irrelevant to the current issue before the Court—whether the Court

should permit Plaintiffs to add the Wisdom Entities to this action by way of a motion to amend.

As set forth above, Plaintiffs should be permitted to do so.

Accordingly, Dry Bulk should be allowed to add the Wisdom Entities as

defendants to this action via the requested amendments to the Verified Complaint.

### A.   *If Necessary, Jurisdictional Discovery is Warranted Once the Wisdom Entities Appear in the Action.*

Should the Court determine that the contacts presently identified on the record do

not yet establish personal jurisdiction over the Wisdom Entities, Dry Bulk alternatively requests

leave of the court to conduct jurisdictional discovery.  "[W]here issues arise as to jurisdiction or

venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund,*

*Inc. v. Sanders, et al*., 437 U.S. 340, 352 n.13 (1978).  "Discovery . . . 'should be granted where

pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more

satisfactory showing of the facts is necessary.'" *Wells Fargo & Co. v. Wells Fargo Exp. Co*.,

4810-4514-5028.3

556 F.2d 406, 430 n.24 (9th Cir. 1977) (internal citations omitted).[4]  A district court is vested

with broad discretion to permit jurisdictional discovery.  *Laub v. U.S. Dep't of the Interior*, 342

F.3d 1080, 1093 (9th Cir. 2003).  Such discovery "should ordinarily be granted where pertinent

facts bearing on the question of jurisdiction are controverted or where a more satisfactory

showing of the facts is necessary."  *Id*. (quotation marks and citation omitted).

In light of *Laub*, district courts in the Ninth Circuit have held that a plaintiff need

not establish a prima facie case of personal jurisdiction before it can obtain jurisdictional

discovery.  *See, e.g*., *eMag Solutions, LLC v. Toda Kogyo Corp*., No. 02 Civ. 1611, 2006 U.S.

Dist. LEXIS 94462, at *2 (N.D. Cal. Dec. 21, 2006) (noting that it would be "counterintuitive to

require a plaintiff, prior to conducting discovery, to meet the same burden that would be required

to defeat a motion to dismiss") (emphasis in original) (quotation marks and citation omitted).  A

---

[4] Dry Bulk anticipates that limited discovery would reveal additional national and Oregon contacts that would further support this Court's exercise of personal jurisdiction over the Wisdom Entities.  For instance, Dry Bulk expects discovery would at a minimum reveal the precise number of Wisdom Marine managed vessels which called at United States and Oregon ports; the amount of hire or freight earned for those calls; the prior knowledge and consent of Wisdom Marine for their Vessels to call at U.S. ports; the business dealings with the three (3) global commodities traders cited on the Wisdom Marine website who are either headquartered or otherwise do business in the U.S. and have offices in Oregon; the requirements imposed by Wisdom Marine's crewing department to ensure that all prospective crewmembers hold valid U.S. visas in order to be employed on Wisdom Marine vessels; and the amounts paid to local vendors by Wisdom Marine for services and materials supplied to Wisdom Marine managed vessels.  Where a foreign entity "reaches out" to an entity within the forum, the foreign entity should reasonably expect to be haled into court.  *See Central Freight Lines v. APA Transport Corp*., 322 F.3d 376, 382 (5th Cir. 2003), *see also College Source, Inc. v. Academy One, Inc.*, 65 F.3d 1066, 1078-79 (9th Cir. 2011), *Ballard v. Savage*, 65 F.3d 1495, 1499 (9th Cir. 1995) ("By intentionally doing business with California and U.S. residents, [defendant] 'purposefully availed itself of the benefit and privilege of conducting activities in California' and the U.S.").  Dry Bulk also anticipates that further discovery will present a basis for the Court's exercise of specific jurisdiction as, at a minimum, the events giving rise to Dry Bulk's unjust enrichment claim were still occurring as of October 2019 when the Vessel called in the District and was arrested.  *See* Fn. 3 of Tsolakis Decl.

Page 15 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
             OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
             COMPLAINT

4810-4514-5028.3

plaintiff need only make out a "colorable basis" for jurisdiction, or "some evidence" that makes

out some lesser showing than a prima facie case. *Calix Networks, Inc. v. Wi-Lan, Inc*., No. C-09-

06038-CRB (DMR), 2010 U.S. Dist. LEXIS 97657, at *4 (N.D. Cal. Sept. 8, 2010).

Accordingly, should the Court require additional evidence of a systematic and continuous course

of dealing by the Wisdom Entities in the United States, jurisdictional discovery should be

granted to allow the parties to conduct limited discovery pertaining to the Wisdom Entities'

continuous and systematic general business contacts with the forum.

> ### 4.    AMIS HAS FAILED TO PROVE THAT PLAINTIFFS DELAYED
> ### IN FILING THE PROPOSED AMENDMENTS.

"Delay alone, no matter how lengthy is an insufficient ground for denial of leave

to amend." *U.S. v. Webb*, 655 F. 2d 977, 980 (9th Cir. 1981).  Indeed, the *Webb* court noted that

"the mere fact that an amendment is offered late in the case is . . . not enough to bar it." *Id*. at

980, citing 3 Moore's Federal Practice § 15.08(4) at 15-102.  Moreover, in *Howey v. U.S*., 481

F.2d 1187, 1190-92 (9th Cir. 1973), the court held that a district court had abused its discretion

in denying leave to amend even *five years* after the original pleadings, when neither bad faith nor

prejudice was apparent.

Here, Dry Bulk has acted expeditiously in seeking leave to amend.  Amis is

correct that on Oct. 17, 2019, Dry Bulk filed a copy of the sub-charter at issue as Exhibit 1 to the

original Verified Complaint, which referenced Wisdom Marine. *See* ECF 1-2.  However, the

parties then spent the next three months engaged in hotly contested motion practice concerning

Amis's emergency motion to vacate the arrest of the vessel, and thereafter the countersecurity

demanded by Amis. *See* ECF 2 through 59.  On March 3, 2020—just over four months after the

start of the case—Dry Bulk filed its first motion for leave to file an amended complaint to add

Page 16 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
COMPLAINT

4810-4514-5028.3

Wisdom Marine.  ECF 61.  Dry Bulk has since amended that motion to add Wisdom Ltd. and the

alter ego allegations at issue.

Accordingly, given that limited passage of time and the intervening events and

motion practice, Dry Bulk has not unduly delayed in seeking leave to amend.

### 5.    AMIS HAS FAILED TO DEMONSTRATE UNDUE PREJUDICE OR BAD FAITH.

Amis's vague assertions of "undue prejudice" and "bad faith" are without merit.

Amis argues that Dry Bulk's proposed amendments will "drastically expand and

alter" the scope of the litigation and inevitably cause additional discovery, delay and defense

costs.  Amis further argues that the alter ego allegations have no relation to the claims set forth in

the original complaint and will "force" the employees of the Wisdom Entities to take time away

from their normal work duties to deal with the new allegations.  Opp., p. 20.  However, these

vague allegations are inaccurate and in any event do not warrant denial of leave to amend.

In the context of a motion for leave to amend a complaint, undue prejudice is

typically found when the proposed amendments are made shortly before or after the close of

discovery.  *See Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming

denial of motion for leave to amend when filed five days before close of discovery); *DCD*

*Programs, Ltd. v. Leighton*, 833 F. 2d 183, 186 (9th Cir. 1987) (prejudice found where

amendment filed within days of discovery cutoff and less than three months before trial).  In

contrast, the discovery deadline in this case is not until December 11, 2020, and as such the

proposed amendments can hardly be said to be "prejudicial" as they have been timely filed long

before the close of the discovery window.

Page 17 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
COMPLAINT

4810-4514-5028.3

Amis otherwise claims that the alter ego amendments will "change" the nature of this case, but that suggestion is also inaccurate. A "proposed new claim for alter ego liability does not change the nature of the case; rather, it only seeks to impose personal liability, as opposed to holding Defendant solely liable." *See Zoe Marketing*, No. 14cv1881 AJB (WVG), 2015 WL 12216341, *5 (S.D. Cal., Jun. 1 2015) (adding alter ego claims against parties related to defendant would not be "prejudicial" for purposes of Rule 15). In any event, the Wisdom Entities are indisputably related to Amis, and it is clear from the discovery produced thus far that the Defendants share many of the same employees. Moreover, Dry Bulk has alleged that key personnel amongst Defendants were involved in the dispute at issue. *See* Mot., pp. 6-9. This fact alone undercuts Amis's argument that the Wisdom Entities' employees will face an increased burden participating in the case because they already *are* participating in the case.

Amis is also wrong in arguing that Dry Bulk has acted in bad faith and "falsely claimed" to have only recently obtained information to support the amendment. As demonstrated above, Dry Bulk's amendments were not filed with undue delay, and Amis has asserted a valid basis for adding the Wisdom Entities to the litigation. Aside from conclusory statements, Amis has failed to produce any evidence whatsoever of any bad faith on the part of Dry Bulk that would warrant a denial of the motion to amend.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 18 -   PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S REPLY IN SUPPORT
OF AMENDED MOTION FOR LEAVE TO AMEND THE VERIFIED
COMPLAINT

4810-4514-5028.3

## CONCLUSION

For the reasons more fully stated above, and in the Motion and supporting

memorandum, Dry Bulk respectfully requests that the Court grant Dry Bulk's Amended Motion

for Leave to Amend Verified Complaint.

DATED:        July 24, 2020                    Respectfully submitted,


MILLER NASH GRAHAM & DUNN LLP

 s/ Ian M. Christy
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
Ian M. Christy, OSB No. 160116
ian.christy@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

 and

BLANK ROME LLP

 s/ John D. Kimball
John D. Kimball, *pro hac vice*
jkimball@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.885.5000
Facsimile: 212.885.5001

 and

Jeremy A. Herschaft, *pro hac vice*
jherschaft@blankrome.com
Zachary Cain, *pro hac vice*
zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: 713.632.8655
Facsimile: 713.228.6605

*Attorneys for Plaintiff Dry Bulk Singapore
PTE. Ltd.*

4810-4514-5028.3