Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington  98106-1271
Phone:      206-623-4990
Facsimile: 206-467-4828
Email:  moberg@legros.com
Email:  dpark@legros.com
Attorneys for Defendant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> AMIS INTEGRITY S.A., WISDOM MARINE LINES, S.A., and WISDOM MARINE LINES CO. LTD. *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-01671-BR <br><br> IN ADMIRALTY <br><br> **DEFENDANT'S MOTION FOR ADDITIONAL COUNTER SECURITY** |

# I. MOTION

Amis Integrity S.A. ("Defendant" or "Amis"), by restricted appearance, respectfully

moves this Court pursuant to Supplemental Admiralty Rule E(7) for an Order requiring

DEFENDANT'S MOTION FOR ADDITIONAL COUNTER
SECURITY - Page 1
[Case No. 3:19-cv-01671-BR]

{29293-00642635;3}

Plaintiff Dry Bulk Singapore Pte Ltd. to post additional counter security in the amount of $600,000.

On February 11, 2020, the Court granted Defendant's Motion for Counter Security and ordered Plaintiff to post counter security of $350,000 relating to Defendant's counterclaim for wrongful arrest of the M/V AMIS INTEGRITY. Dkt. 60. Since the Court's Order, Defendant has incurred significant, additional fees and expenses due to Plaintiff's wrongful arrest, and Defendant was forced to settle a third-party claim against the Vessel due to Plaintiff's failure to pay for bunker fuel (marine fuel) Plaintiff ordered and received. Defendant posted a $2.5 million surety bond to release the Vessel following Plaintiff's wrongful arrest. Dkt. 41. Requiring Plaintiff to post additional counter security will place the parties on an equal footing and provide security to satisfy a future judgment on Defendant's counterclaims in accordance with Supplemental Admiralty Rule E(7).

In compliance with LR 7-1(a), Defendant's counsel confirms that the parties made a good faith effort through telephone conference on October 9, 2020, to resolve the dispute and have been unable to do so.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

A.   **Plaintiff's Wrongful Arrest of the Vessel**

The factual background of this lawsuit has been discussed at length in Defendant's Motion for Counter Security (Dkt. 48), Defendant's Response in Opposition to Plaintiff's Amended Motion for Leave to Amend Complaint (Dkt. 109), and other pleadings.

Briefly, on or about June 30, 2017, Amis Integrity S.A., as owner, chartered the M/V AMIS INTEGRITY (the "Vessel"), a bulk carrier, to 24Vision Chartering Solutions, DMCC

("24Vision") (hereinafter referred to as the "Head Charter"). Amended Complaint ¶ 13 (Dkt. 113). 24Vision subsequently sub-chartered the Vessel to Plaintiff Dry Bulk (hereinafter referred to as the "Sub-Charter"), and the Sub-Charter was memorialized in a fixture recap. Amended Complaint ¶¶ 14-15.

Under the Head Charter, Amis Integrity S.A. had the absolute right to "withdraw the Vessel from the service of Charterers" if 24Vision failed to make timely charter hire payments. Jang Decl. ¶ 4, Ex. 1 (Dkt. 4). 24Vision failed to make the required payments. Accordingly, on July 8, 2019, Amis Integrity S.A. issued a notice to 24Vision of its intent to terminate the Head Charter and withdraw the Vessel from 24Vision. Jang Decl. ¶ 6, Ex. 2. On July 12, 2019, at 05:56 GMT, following the expiration of a 3-bank day grace period, Amis Integrity S.A. properly withdrew the Vessel after 24Vision failed to make the past-due charter hire payments. Jang Decl. ¶ 7, Ex. 3. 24Vision has not disputed the termination of the Head Charter or the validity of the Vessel's withdrawal. Jang Decl. ¶ 8.

Conveniently ignoring 24Vision's breach of the Head Charter, Plaintiff alleges that it never breached the Sub-Charter because it made timely charter hire payments to 24Vision. Amended Complaint ¶¶ 19-22. The timeliness of Plaintiff's payments to 24Vision under the Sub-Charter, however, is irrelevant to whether 24Vision made timely payments to Amis Integrity S.A. under the Head Charter, or whether Amis Integrity S.A. had the authority to withdraw the Vessel from 24Vision. Moreover, the Head Charter, which is governed by English law, contained an express prohibition-of-liens clause, prohibiting 24Vision from permitting the Vessel to be encumbered by a lien which might have priority over the owner's

interest in the Vessel. Jang Decl. ¶ 4, Ex. 1.[1]  Furthermore, as explained by barrister Michael Nolan, Plaintiff did not have a valid lien against the Vessel because "as a matter of English law a charterer does not have a general authority to create liens over a vessel in favour of a sub-charterer in respect of the sub-charterers' claims under a sub-charterparty[.]" Dkt. 59-1.

Nevertheless, despite lacking a valid maritime lien,[2] on October 17, 2019, Plaintiff filed a Verified Complaint seeking to arrest the Vessel under Supplemental Admiralty Rule C. Dkt. 1.  Plaintiff's Verified Complaint alleges that the case "involves a claim for the improper and unjustified withdrawal of the Vessel under an existing charter fixture with a company called 24Vision, conversion of unearned charter hire and bunkers, tortious interference with the existing charter fixture agreement and unjust enrichment." Verified Complaint ¶ 1 (Dkt. 1).  On or about October 17, 2019, Plaintiff arrested the Vessel at a grain terminal in Vancouver, Washington.  Dkt. 16.  Thereafter, Amis Integrity S.A. made a restricted appearance under Supplemental Admiralty Rule E(8) (Dkt. 17), and later posted a $2.5 million bond for the benefit of Plaintiff to obtain the release of the Vessel.  Dkt. 40-1, 41.

**B.     Plaintiff Ordered to Post Counter Security on Defendant's Counterclaim for Wrongful Arrest**

On November 14, 2019, Defendant answered the Verified Complaint and asserted a counterclaim for wrongful arrest of the Vessel. Dkt. 46.  On December 11, 2019, Defendant filed a Motion for Counter Security in connection to its counterclaim for wrongful arrest.

---

[1] As a matter of U.S. admiralty law, the Fifth Circuit has held that a sub-charterer does not possess a valid maritime lien against a vessel where the owner properly withdrew the vessel from the charterer, because such a rule would "effectively torpedo the owner's right of withdrawal[.]" *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 468 (5th Cir. 1984).

[2] A valid maritime lien is a prerequisite to a vessel arrest under Supplemental Admiralty Rule C.  *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 313 (1st Cir. 1997) ("In order to invoke Rule C to arrest a vessel, a plaintiff must have a valid maritime lien against the defendant's vessel.").

Dkt. 48.  In the Motion for Counter Security, Defendant explained that, as of the date of the Motion, Defendant had incurred costs of $298,951.05, excluding attorney's fees and costs, as a result of Plaintiff's wrongful arrest of the Vessel.  Such expenses included lost charter hire while the Vessel was under arrest, bunker fuel consumed while the Vessel was under arrest, port disbursements necessitated by the arrest (pilotage, towage, dockage, and line handling), and $50,100 for premiums and fees incurred to obtain the $2.5 million surety bond.  Motion for Counter Security at p. 5.  Defendant also incurred attorney's fees and costs in excess of $40,000.  Accordingly, Defendant requested counter security of at least $350,000 as a result of Plaintiff's wrongful arrest of the Vessel.  *Id.*

On February 11, 2020, the Court granted Defendant's Motion for Counter Security.  The Court's Order stated in relevant part as follows:

> Supplemental Admiralty Rule E(7)(a) of the Federal Rules of Civil Procedure gives the Court the discretion to require security for "a counterclaim that arises from the transaction or occurrence that is the subject of the original action."  **Based on the pleadings in this case the Court concludes Defendant's Counterclaim for wrongful arrest arises out of the same transaction or occurrence that gives rise to Plaintiff's claims asserted in its Complaint.**  Accordingly, the Court GRANTS Defendant's Motion and requires Plaintiff to post security in the amount of $350,000.00 no later than 3/12/2020.

Dkt. 60 (emphasis added).

On June 17, 2020, after changing counsel and obtaining three extensions, Plaintiff finally posted counter security of $350,000 as ordered by the Court.  Dkt. 75, 89, 93, 94.

**C.    Defendant Incurs Additional Costs as a Result of Plaintiff's Wrongful Arrest of the Vessel**

Since the Court granted Defendant's Motion for Counter Security on February 11, 2020, Defendant has incurred significant, additional costs as a result of Plaintiff's wrongful

arrest. This case has now been pending for nearly one year. On August 4, 2020, Defendant received an invoice in the amount of $50,125.00 from International Sureties, Ltd., the bond broker, to renew the surety bond for a second one-year term, which it later paid. Declaration of Markus Oberg in Support of Defendant's Motion for Additional Counter Security ("Oberg Decl.") ¶ 3, Ex. A.

In addition, Plaintiff has expanded the litigation by adding new defendants and new alter ego claims against multiple *in personam* defendants which Plaintiff claims played a "substantial role in the wrongful withdrawal of the Vessel from the service of Dry Bulk." *See* Plaintiff's Amended Motion for Leave to Amend the Verified Complaint at 3. (Dkt. 108). The parties are currently engaged in jurisdictional discovery with respect to the newly added *in personam* defendants. Dkt. 116. Since the Court's Order granting Defendant's Motion for Counter Security, Defendant has incurred (and continues to incur) additional attorney's fees and costs of nearly $50,000 as a result of Plaintiff's wrongful arrest. Oberg Decl. ¶ 4.

### D.     Defendant Incurs Additional Costs to Settle Third-Party Claim Against the Vessel Caused by Plaintiff's Failure to Pay for Bunkers.

Defendant has also incurred costs to settle a third-party claim against the Vessel for bunker fuel that Plaintiff ordered and received but which Plaintiff refused to pay.

Before Defendant withdrew the Vessel from 24Vision, Plaintiff, as sub-charterer, ordered and received bunker fuel for the Vessel from GP Global ARA B.V. and GP Global APAC Pte. Ltd. (collectively, "GP Global"). On June 1, 2019, Plaintiff received bunker fuel for the Vessel from GP Global APAC Pte. Ltd. at Singapore. On June 1, 2019, GP Global sent an invoice, No. SPI190305/IB/SG, to Plaintiff for the bunker fuel in the principal amount of USD $228,601.08. Oberg Decl. ¶ 5, Ex. B. Per the terms of the invoice, payment

was due by July 1, 2019, and late payment interest accrued and continues to accrue at two percent (2%) per month from the due date until the date of settlement. *Id.*

Similarly, Plaintiff ordered and, on July 5, 2019, Plaintiff received bunker fuel for the Vessel from GP Global ARA B.V. at Cape Town, South Africa. On July 5, 2019, GP Global sent an invoice, No. SIP-19-07-199-NL, to Plaintiff for the bunker fuel in the principal amount of USD $50,419.66. Per the terms of the invoice, payment was due by August 4, 2019. Oberg Decl. ¶ 5, Ex. B. Paragraph 9.7 of the General Terms of Sale of Bunker Fuel by GP Global ARA B.V. ("General Terms") provides that interest accrues at two percent (2%) per month for delay in payment. Oberg Decl. ¶ 6, Ex. C. Paragraph 9.4(iv) of the General Terms provides that if payment was not made within thirty (30) days of the invoice, "the Buyer shall be liable for all costs (whether or not suit is filed) incurred by the Seller to recover such amounts including but not limited to attorneys' fees, court costs and collection expenses." *Id.*

Despite ordering and receiving the bunker fuel, Plaintiff failed to pay invoices No. SPI190305/IB/SG and No. SIP-19-07-199-NL. When Plaintiff failed to pay, GP Global threatened to arrest the Vessel. For example, on January 22, 2020, GP Global filed the action, *GP Global APAC Pte. Ltd. et al. v. M/S AMIS INTEGRITY*, No. 2:20-cv-00102-JCC, in the U.S. District Court for the Western District of Washington for the arrest of the Vessel pursuant to Rule C due to Plaintiff's failure to pay for the bunkers. GP Global claimed that it had a maritime lien against the Vessel because it had provided "necessaries" (bunker fuel) which was reasonably necessary to propel the Vessel through the water. GP Global did not successfully arrest the Vessel in Washington State at this time.

GP Global continued to pursue the Vessel. On or about August 18, 2020, GP Global's attorney sent an email to Wisdom Lines stating that GP Global had continued to track the Vessel and threatening to arrest the Vessel in Recalada, Argentina unless Defendant paid Dry Bulk's unpaid invoices. Oberg Decl. ¶ 7, Ex. D.

Finally, on September 23, 2020, Amis settled GP Global's claims against Plaintiff, without prejudice as to the merits of GP Global's purported claims and liens against the Vessel. GP Global assigned its claims against Plaintiff for the unpaid bunkers to Amis Integrity S.A. and the Vessel (the "Assignment"). Oberg Decl. ¶ 5, Ex. B. As set forth in the Assignment, as of September 7, 2020, the total sum of GP Global's claims against Plaintiff, including interest accrued thereon, was $383,257.03. After settling GP Global's claims, Defendant filed an amended answer and counterclaims against Plaintiff adding the claim based on the Assignment. Dkt. 126.

### III.  ARGUMENT

#### A.  Legal Standards

"It is an established principle of maritime law that one who suffers a wrongful attachment may recover damages from the party who obtained the attachment, provided he prove that such party acted in bad faith." *Furness Withy (Chartering), Inc. v. World Energy Sys. Assocs., Inc.*, 854 F.2d 410, 411 (11th Cir. 1988) (collecting cases); *see also Stevens v. F/V BONNIE DOON*, 655 F.2d 206, 209 (9th Cir. 1981) (party has the right to recover damages for wrongful arrest or seizure in admiralty on a showing of bad faith, malice, or gross negligence).

"When a defendant asserts a counterclaim arising out of the events alleged in plaintiff's complaint and has posted security to respond in damages to the action, any

plaintiff for whose benefit such security has been given shall be required to give security to respond in damages to such counterclaims . . . ." *Whitney-Fidalgo Seafoods, Inc. v. Miss Tammy*, 542 F. Supp. 1302, 1305 (W.D. Wash. 1982).  As explained by this Court, "[t]he purpose of Supplemental Rule E(7) is to 'place the parties on a basis of equality as regards security.'"  *Swaidan Trading Co., LLC v. M/V Donousa*, No. 3:18-cv-00398-HZ, 2018 U.S. Dist. LEXIS 116821, *3-4 (D. Or. July 13, 2018) (Hernandez, C.J.) (citing *Whitney-Fidalgo Seafoods*, 542 F. Supp. at 1305)).  Counter security is intended as a means by which to "remedy a defendant's insecurity with regard to the plaintiff's ability to satisfy a judgment awarded by the court."  *Whitney-Fidalgo*, 542 F. Supp. at 1305.

"[R]ecent decisions of the district courts in this [Ninth] circuit have concluded that the plain language of SAR E(7) creates a presumption in favor of counter-security."  *Island Tug & Barge Co. v. Barge ProWest II,* No. C13-0031RSM, 2013 U.S. Dist. LEXIS 93058, at *5 (W.D. Wash. July 2, 2013) (granting motion for counter security and ordering plaintiff to post bond in amount of $250,000); *see also Seaworthy Serv. v. NANEA*, No. 09-5062BHS, 2009 U.S. Dist. LEXIS 40750, at *8 (W.D. Wash. Apr. 28, 2009) (ordering counter security in same amount as defendant was required to post in security).

As one court explained:

> The purpose is to force litigants to "put their money where there mouth is [*sic*]," so to speak. For example, Judge Learned Hand once required the United States of America to post counter-security on the defendant's cross-libel (today's counterclaim), staying the original action until such security was posted. *See The Gloria,* 267 F. 929, 930-931 (S.D.N.Y. 1919). One can hardly imagine a more financially secure plaintiff than the government, yet counter-security was required.

*Continental Shipping, Ltd. v. Telfair Int'l Corp.*, No. 88 Civ. 7257 (MBM), 1990 U.S. Dist. LEXIS 11549, *4-7, 1990 WL 130765 (S.D.N.Y. 1990).

Insecurity is a particular concern where the plaintiff is a foreign corporation with no presence in the District. *Cf. Superior Derrick Servs., LLC v. Lonestar 203*, No. 6:09-0484, 2010 U.S. Dist. LEXIS 61601, at *3 (W.D. La. 2010) (plaintiff arguing counter-security not warranted because it was a Louisiana corporation with substantial assets within the court's jurisdiction and therefore no insecurity with respect to satisfaction of any judgment awarded by the court in defendant's favor); *Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318, 326-327 (S.D.N.Y. 2006) (recognizing that a foreign corporation's lack of assets or presence and the substantial risk any judgment against such corporation would be unenforceable justifies imposition of security).

"The burden is on the plaintiff to show that '**good cause** exists to relieve the plaintiff of its obligation to provide counter-security.'" *Swaidan Trading*, 2018 U.S. Dist. LEXIS 116821, *3-4 (citing *Seaworthy Serv.*, 2009 U.S. Dist. LEXIS 40750, at *8) (emphasis added)).

**B.     Defendant's Counterclaims Arise from the Same Transaction or Occurrence**

This Court has previously recognized SAR E(7)(a) gives the Court the discretion to require security for "a counterclaim that arises from the **transaction or occurrence** that is the subject of the original action" and concluded that "Defendant's Counterclaim for wrongful arrest arises out of the same transaction or occurrence that gives rise to Plaintiff's claims asserted in its Complaint." Dkt. 60 (emphasis added).

As a result of Plaintiff's wrongful arrest, Defendant was forced to pay an initial premium and fees to obtain a $2.5 million surety bond and legal fees and costs to defend this

action.  As a result of Plaintiff's delay and litigation tactics, this action has been prolonged, requiring Defendant to pay an additional premium ($50,125.00) to renew the surety bond and incurred additional attorney's fees and costs (nearly $50,000).  As this Court previously held, Defendant's counterclaim for wrongful arrest arises from the same transaction and occurrence as Plaintiff's claims.  Plaintiff therefore should be required to post additional counter security for the additional costs Defendant incurred as a result of Plaintiff's wrongful arrest of the Vessel.

Defendant's counterclaim relating to the settlement and assignment of GP Global's claims against Dry Bulk also arise from the same transaction and occurrence.  As set forth in Plaintiff's Amended Complaint, Plaintiff's claims arise from the alleged "conversion of unearned charter hire and **bunkers** . . . ."  Amended Complaint ¶ 1 (emphasis added).  Dry Bulk claims that Defendant converted the bunkers which Dry Bulk ordered and received for the Vessel before Defendant withdrew the Vessel from 24Vision.  To the contrary, Plaintiff's other pleadings and discovery materials establish Plaintiff's full knowledge of its bunker obligations and its intent to breach the same, forcing the exposure onto Defendant.  For example, on July 12, 2019, Dry Bulk's head of chartering, Stavros Tsolakis, sent a message to Thomas Rolin, a chartering broker, stating as follows:  "You can tell them that bunkers are coming due[.]"  Declaration of Stavros Tsolakis ¶ 20, Ex. 5B (Dkt. 31-15).  The same day, Mr. Tsolakis stated to Mr. Rolin, "Furthermore there are fuel bills coming So need to find a solution with wisdom[.]"  Oberg Decl. ¶ 8, Ex. E.[3]

---

[3] In this conversation, Mr. Tsolakis also acknowledged that 24Vision failed to pay its past due charter hire under the Head Charter.  He states: "Honestly 24 vision is talking nonsense here since their arguments are childish according to our lawyers.  I believe wisdom withdrew the ship from them and now they try to do the same to us.  The difference is we paid which 24 vision obviously did not."

Plaintiff did not actually pay for the bunker fuel referenced in Plaintiff's Amended Complaint and conversations with Mr. Rolin. Defendant did not convert the bunkers. Rather, Defendant was forced to satisfy Plaintiff's obligation to GP Global to resolve a threatened lien and arrest of the Vessel. Thus, the unpaid charter hire, withdrawal of the Vessel, and bunkers are all referenced in Plaintiff's Complaint and arise out of the same transaction or occurrence. As set forth in the Assignment, the current amount of GP Global's claims is $383,257.03, including interest accrued thereon. Accordingly, Plaintiff should be required to post additional counter security with respect to Defendant's counterclaims for breach of contract and unjust enrichment with regard to Plaintiff's failure to pay for the GP Global invoices.

## C.  No Good Cause for Denying Counter Security

Plaintiff cannot sustain its burden of showing good cause exists to relieve Plaintiff of its obligation to provide additional counter security. *Swaidan Trading*, 2018 U.S. Dist. LEXIS 116821, *3-4. Additional counter security would place the parties on equal footing as regards security, and it is the only means by which to remedy Defendant's insecurity with regard to Dry Bulk's ability to satisfy a potential judgment awarded by this Court. *Whitney-Fidalgo*, 542 F. Supp. at 1305.

Defendant has already been required to post security in the amount of $2.5 million to satisfy any judgment against it. Equity requires that Dry Bulk be required to provide additional counter security for any judgment against Dry Bulk. Dry Bulk is a foreign corporation with no known assets or presence in this District. *See* Amended Complaint ¶ 3 ("At all times material hereto, Plaintiff Dry Bulk was and still is a foreign corporation registered in Singapore."). If Defendant prevails on its counterclaims, Defendant lacks

assurances that Dry Bulk will satisfy a judgment issued against it. Dry Bulk obtained security by arresting Defendant's vessel. Defendant has no similar remedy except for the counter security afforded by Rule E(7).

The cost of posting additional counter security is not a reasonable basis for Plaintiff to avoid posting additional counter security. As set forth in Plaintiff's Amended Motion for Leave to Amend the Verified Complaint, Plaintiff is receiving general financing from Tradewinds GMBH, an international trade financing company. Motion to Amend at p. 2, 6 (Dkt. 108). Furthermore, Plaintiff is currently represented by five attorneys of record at well-respected law firms located in New York, Houston, and Portland. Dkt. 91, 96, 98, 100.

Defendant has been forced to incur significant fees and expense and faced massive disruption of its business operations as a direct result of Plaintiff's wrongful arrest of the Vessel and failure to pay GP Global's invoices. In the absence of adequate counter security, Dry Bulk will be allowed to wrongfully arrest without any risk or fear of repercussions. SAR E(7) creates a "presumption in favor of counter-security." *Island Tug & Barge Co.*, *supra*., 2013 U.S. Dist. LEXIS 93058, at *5 (citation omitted). In the absence of good cause to avoid its obligation to post counter security, Plaintiff should be ordered to post additional counter security of $600,000 to secure Defendant's counterclaims for wrongful arrest and breach of contract and unjust enrichment relating to the bunker fuel.

## IV. <u>CONCLUSION</u>

For all of the above reasons, Defendant's Motion for Additional Counter Security should be granted, and Plaintiff should be ordered to post additional counter security of $600,000.

DATED this 9th day of October 2020.

                         LE GROS, BUCHANAN & PAUL

                         By: *s/ Markus B.G. Oberg*
                         By: *s/ Daniel J. Park*
                              MARKUS B.G. OBERG, OSB #112187
                              DANIEL J. PARK, OSB #132493
                              4025 Delridge Way SW, Suite 500
                              Seattle, Washington 98106-1271
                              Phone: 206-623-4990
                              Facsimile: 206-467-4828
                              Email: moberg@legros.com
                              Email: dpark@legros.com

                              Attorneys for Defendant Amis Integrity S.A., by restricted appearance

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-l(c), or 54-3(e) because it does not exceed 11,000 words, or in the alternative, 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to The Honorable Anna J. Brown and serve it on all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 9th day of October, 2020.

*s/ Shelley Courter*
Shelley Courter, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone:      206-623-4990
Facsimile:       206-467-4828
E-mail:            scourter@legros.com