**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Ian M. Christy**, OSB No. 160116
ian.christy@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

*Attorneys for Plaintiff Dry Bulk Singapore Pte. Ltd.*

(additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., | No. 3:19-CV-01671-BR |
| Plaintiff, | **Admiralty** |
| v. | **PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S OPPOSITION TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY** |
| AMIS INTEGRITY S.A., WISDOM MARINE LINES, S.A., AND WISDOM MARINE LINES CO. LTD. *in personam* and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem.*, | |
| Defendants. | |

Page 1 -   PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

Plaintiff Dry Bulk Singapore PTE Ltd. (hereinafter "Plaintiff" or "Dry Bulk"), by and through undersigned counsel, files this Opposition to the Motion for Additional Counter-Security [ECF 131] filed by Defendant Amis Integrity S.A. ("hereinafter "Amis").  Amis' motion should be denied for the reasons below.

## I.    <u>BACKGROUND</u>

The basic facts of this maritime commercial dispute have been discussed in the Court's prior rulings.  *See* Dkt 112.  To briefly summarize, Dry Bulk initiated this lawsuit as a result of wrongful acts and interference by Amis and its affiliated entities (i.e., defendants Wisdom Marine Lines, S.A. and Wisdom Marine Lines Co. Ltd.) in withdrawing the vessel M/V AMIS INTEGRITY ("Vessel") from Dry Bulk's use.  Dry Bulk arrested the vessel in October 2019 while it was berthed in Vancouver, Washington, and Amis made a restricted appearance as the registered owner of the Vessel.

On October 23, 2019, the parties appeared before the Court and, after off-record discussions between counsel, Dry Bulk agreed to reduce its security demand from $5.6 million to $2.5 million, with counsel for Amis suggesting that the security be in the form of a bond from International Sureties.  *See* **Exhibit "A,"** Hearing Transcript.  During the hearing, Amis also indicated that it would seek counter-security for the Vessel's alleged wrongful arrest and the alleged failure of Dry Bulk to pay for bunkers.  Ex. A, at 28:18-24.  Amis subsequently filed a motion to that effect, and, over Dry Bulk's objections, the Court ordered that Dry Bulk post counter-security in the amount of $350,000.  ECF 60.  Dry Bulk did so on June 17, 2020.  ECF 94. Now, less than 4 months later, Amis seeks to increase the amount of security posted by an additional $600,000.

Page 2 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
             INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

Amis' justification for this very substantial increase falls into two distinct components, both of which are without merit.  First, Amis claims it has incurred roughly $100,000 in administrative expenses for the security bond and its own attorneys' fees.  Second, Amis claims it received an assignment from two foreign bunker fuel providers, GP Global ARA B.V. ("GP ARA") and GP Global APAC ("GP APAC", with both referred to as the "GP Global Entities") for their separate claims against Dry Bulk for two deliveries of fuel to the vessel in Singapore and South Africa.  Amis claims the assigned claims have a value of $380,000, although Dry Bulk understands it paid only a fraction of that amount.

As shown below, however, Amis is not entitled to additional counter-security from Dry Bulk for either item.

## II.    ARGUMENT

### A.    The Court Should Deny Amis' Claims For Additional Counter-Security Because The GP Global Bunker Sales Transactions Do Not Arise Out Of The Same Transaction Or Occurrence As Dry Bulk's Claims

In its Order of February 11, 2020, the Court stated in pertinent part as follows:

> Supplemental Admiralty Rule E(7)(a) of the Federal Rules of Civil Procedure gives the Court the discretion to require security for "**a counterclaim that arises from the transaction or occurrence that is the subject of the original action**."

*See* ECF 60 (emphasis added).

It is plain that Amis' request for additional counter-security pertaining to its recently-assigned bunker claims from the GP Global Entities does not meet the threshold requirement of Supplemental Admiralty Rule E(7) that the counterclaim must arise out of the same transaction or occurrence that is the subject of the original action.

Page 3 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

159462.00601/123972559v.2

Here, the initial action was brought by Dry Bulk against Amis (and subsequently the Wisdom Marine entities) for maritime torts arising out of Amis' wrongful interference with the time charter for the M/V AMIS INTEGRITY.  In its original motion for counter-security, Amis argued that security was warranted based upon a counterclaim of wrongful arrest of the Vessel in Vancouver, Washington.  Amis further noted that "Dry Bulk's [alleged] bad faith, malice, or gross negligence [which must be established to support a claim of wrongful arrest] will be proven by the same facts that underlie Dry Bulk's claims of interference with contract, conversion, and unjust enrichment [against Amis]."  *See* ECF 57 at p. 3-4.

Amis' new claim for additional counter-security is partly based on two contracts between the GP Global Entities and Dry Bulk for the purchase and sale of bunker fuel in Singapore and South Africa.[1]  These two contract claims have no relation whatsoever to Dry Bulk's maritime tort claims against Amis.  Amis simply acquired the GP Global Entities' bunker sale contract claims against Dry Bulk by way of assignment.[2]  In any event, the mere assignment of the bunker sales contract claims from the GP Global Entities to Amis does not transform them into claims "arising out of" Dry Bulk's claims.

Amis has concocted an "apples and oranges" situation, conflating two entirely separate and distinct international commercial transactions arising under different terms and conditions into the

---

[1] Specifically, GP ARA (a Dutch or Belgian company) provided bunkers to the Vessel in Cape Town, South Africa, allegedly worth $50,000.  GP APAC (a Singaporean company) provided bunkers to the Vessel in Singapore, allegedly worth $228,000.

[2] The substantive merits of each bunker sale contract claim are strongly disputed by Dry Bulk.  There is a genuine dispute as to whether Amis (now the assignee of the bunker sale contract claims) improperly deviated the Vessel from Dry Bulk's intended voyage instructions during the term of Dry Bulk's sub-charter with 24 Vision, thereby improperly consuming the very fuels at issue in each bunker sales contract claim.  There is also a separate dispute as to the amounts of fuel remaining onboard the Vessel at the time of Amis' improper withdrawal.  *See* ECF 134, Dry Bulk's *Amended Answer to Amis' Amended Verified Complaint*, pg. 6, 8th and 9th Affirmative Defenses.  Both issues have yet to be fully explored via discovery, given the timing of Amis' motion for additional countersecurity.

Page 4 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

"same transaction" for purposes of Rule E(7)(a).  That attempt is improper and should be denied. A claim for tortious interference and a breach of contract claim for failure to pay for goods (in the form of bunker fuel) are two separate and distinct claims which cannot be harmonized for purposes of Rule E(7)(a).  Indeed, other courts have struck demands for counter-security in similar scenarios where the initial and subsequent claims did not arise out of the same transaction or occurrence. *See, e.g.*, *Swaidan Trading Co., LLC v. M/V DONOUSA*, No. 3:18-CV-00398-HZ, 2018 WL 3414317 (D. Or. July 13, 2018),  *Norton Lilly Int'l., Inc. v. Kinatsi*, Civil Action No. 16-4118, 2017 WL 515095, at *3–4 (E.D. La. Feb. 8, 2017) (declining to grant counter-security for fees associated with a claim for wrongful attachment that did not clearly arise from the same "pre-attachment occurrences" that gave rise to the other alleged damages); *May Ship Repair Contr. Corp. v. Oil Barge HT-100¸* 2009 A.M.C. 721, 724 (E.D.N.Y. 2009) ("Wrongful arrest claims, however, do not arise from the same transaction or occurrence as the claims that initiate such arrests."); *Tennyo Maritime, Inc. v. Norsk Hydro S.S.*, 1994 A.M.C. 2687, 2689 (E.D. La. 1994) (denying a request for counter-security on a wrongful seizure claim); *Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394, 402 n.5 (2d Cir. 1995) ("[C]ountersecurity for a wrongful attachment counterclaim may not be required under Rule E(7), because the wrongful attachment would not have arisen out of the same transaction or occurrence with respect to which the action was originally filed.").

The assignment from GP Global Entities to Amis does not change this conclusion.  Amis' commercial decision to purchase GP ARA and GP APAC's separate bunker payment claims against Dry Bulk by way of assignment does not transform those claims to ones that arise out of the "same transaction or occurrence" as those initially raised herein.  In fact, an assignment of claims only vests Amis with such rights, if any, that GP ARA and GP APAC may have against

Page 5 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

159462.00601/123972559v.2

Dry Bulk. To the extent that Amis is the assignee of such claims and stands in the GP Global

Entities' shoes, it is also bound by the contractual conditions that the GP Global Entities were

subject to under each sale. *See, e.g.*, *Bassidji v. Goe*, 413 F.3d 928, 939 (9th Cir. 2005) ("an

assignee does not sue in its own right, but rather stands in the shoes of its assignor"); *U.S. ex rel.*

*Nw. Cascade Inc. v. Colamette Const. Co*., No. 3:13-CV-01498-AA, 2014 WL 5092253, at *6 (D.

Or. Oct. 8, 2014) ("an assignee stands in the shoes of the assignor and acquires no greater interest

than the assignor possessed").

Without commenting on the merits of any claims that GP ARA and GP APAC may possess

(or that Amis may now possess in their shoes as assignee), Dry Bulk notes that the terms and

conditions of each GP Global bunker contract contain binding forum selection and arbitration

clauses outside the jurisdiction of this Court. Amis has produced the "GENERAL TERMS OF

SALE OF BUNKER FUEL BY GP GLOBAL ARA B.V.", which Amis submits governed the

bunker sale transactions at issue. *See* ECF 132-3. That document provides in pertinent part:

> Any dispute arising out of or in connection with this Bunker
> Contract, including any question regarding its existence, validity or
> termination, shall be referred to and finally resolved by arbitration
> under the LCIA Rules, which Rules are deemed to be incorporated
> by reference into this clause. The number of arbitrators shall be
> three (3). **The seat, or legal place, of arbitration shall be London.**
> The language to be used in the arbitral proceedings shall be English.

ECF 132-3 at p. 15-16 (emphasis added).

Notably, Amis failed to include or reference the separate terms and conditions for GP APAC.

Those terms state in pertinent part:

> 19.2 Any dispute arising out of or in connection with this contract,
> including any question regarding its existence, validity or
> termination, shall be referred to and finally resolved by arbitration
> administered by the Singapore International Arbitration Centre

Page 6 -     PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

159462.00601/123972559v.2

("SIAC") in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause. **The seat of the arbitration shall be Singapore.** The Tribunal shall consist of three (3) arbitrator(s). The language of the arbitration shall be English.

**Exhibit "B"** at pg. 17, Term 19.2 – 19.3 (emphasis added).

In other words, any claim that GP ARA may have possessed against Dry Bulk for the alleged breach of that bunker sales contract is required to be brought in London arbitration and cannot be asserted in this Court. And any claim that GP APAC has against Dry Bulk for the alleged breach of that separate bunker sales contract is required to be brought in Singapore arbitration. Putting aside the fact that a claim for counter-security against Dry Bulk in this court would arguably be prohibited outright in accordance with the above-mentioned forum-selection clauses, to the extent that Amis was assigned GP Global's claims against Dry Bulk, then Amis is likewise required to resolve those claims against Dry Bulk in London and Singaporean arbitration. Amis' claims related to the GP Global-provided bunkers must therefore be dismissed by this Court pursuant to the terms of the Federal Arbitration Act, which implements the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See, e.g.*, *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000) ("An arbitration provision in an international commercial agreement ... is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201. The Convention must be enforced according to its terms pursuant to the enabling legislation adopted by Congress—Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208…").

159462.00601/123972559v.2

**B.**   **Amis' Assigned Bunker Claims are Subject to an Ongoing Bankruptcy Restructuring Proceeding Filed by Dry Bulk in the High Court of Singapore, and this Court Should Defer to the Singapore Court Under Principles of Comity**

Alternatively, this Court should decline to consider the assigned GP Global bunker claims based on international comity, as those same claims are currently at issue in Dry Bulk's bankruptcy proceeding pending in Singapore.  Amis is attempting to "game the system" by seeking counter-security here on its assigned GP Global bunker claims when those claims are already pending in the Singapore Bankruptcy Court and that court has issued a moratorium order restraining all creditors (including the GP Entities) from pursuing their claims further.

Dry Bulk is a Singaporean-registered entity and filed for bankruptcy protection in the High Court of Singapore (the "Singapore Proceeding") in order to preserve its status as a going corporate concern.[3]   As part of this process, Dry Bulk was required to notify and outline a list of all of its secured and unsecured potential creditors.  Included within that list of unsecured potential creditors are the two assigned claims that Amis purchased from GP ARA and GP APAC.  GP ARA and GP APAC have both appeared in the Singapore Proceeding in connection with the same claims Amis has presented here, and Dry Bulk has disputed both claims in the Singapore Proceeding.  Furthermore, GP APAC (a Singaporean entity) is subject to the pending moratorium established in the Singapore Proceeding, which restrains them from bringing claims against Dry Bulk in any other forum.  A creditors' meeting has been ordered by the Singapore Court and is scheduled to occur in the near future, after which Dry Bulk will seek approval of a proposed restructuring plan (referred to in the attached Sept. 30, 2020 Singapore Bankruptcy Order as the "Scheme").  *See*

---

[3] *See* ECF 134, Dry Bulk's *Amended Answer to Amis' Amended Verified Complaint*, pg. 5, 3rd Affirmative Defense.

Page 8 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

159462.00601/123972559v.2

Exhibit "C."  As outlined above, Amis stands in the shoes of both GP Global Entities and has no greater or different rights than they have; it, too, is subject to the moratorium in the Singapore Proceeding and the Singapore Bankruptcy Court's rulings in that matter.

"Comity is a rule of practice, convenience, and expediency rather than of law that courts have embraced to promote cooperation and reciprocity with foreign lands." *Mujica v. AirScan Inc.*, 771 F.3d 580, 597 (9th Cir. 2014) (internal quotations omitted).  As explained by the Ninth Circuit, the form of the doctrine at issue in this case:

> is referred to as "comity among courts" or adjudicatory comity, which "may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." [*In re* ] *Maxwel*l [*Commc'n Corp. plc by Homan*], 93 F.3d [1036] at 1047 [(2d Cir. 1996)]; *see also Hartford Fire* [*Ins. Co. v. California*, 509 U.S. 764, 817, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)] (Scalia, J., dissenting) (describing "comity of the courts" as a set of principles "whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere").16  **Thus, adjudicatory comity "involves ... the discretion of a national court to decline to exercise jurisdiction over a case before it when that case is pending in a foreign court with proper jurisdiction."** *JP Morgan Chase Bank* [v. *Altos Hornos de Mexico, S.A. de C. V*., 412 F.3d 418, 424 (2d Cir.2005)].  In such a case, "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and ... do not contravene the laws or public policy of the United States. *Id*.

*Mujica*, 771 F.3d at 599 (emphasis added).

International bankruptcy cases are often recognized by federal courts in the interests of comity.  *See, e.g.*, *Daewoo Motor Am., Inc. v. Gen. Motors Corp*., 315 B.R. 148, 160 (M.D. Fla. 2004), aff'd, 459 F.3d 1249 (11th Cir. 2006) (comity extended for Korean bankruptcy); *Finanz AG Zurich v. Banco Economico, S.A*., 192 F.3d 240, 246 (2d Cir. 1999) (granting comity to Brazilian liquidation proceeding); *Allstate Life Insurance Co. v. Linter Group, Ltd*., 994 F.2d 996, 999 (2d

Page 9 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

159462.00601/123972559v.2

Cir. 1993) (Australian liquidation proceeding); *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987) (Swedish bankruptcy); *Canada Southern Ry v. Gebhard*, 109 U.S. 527 (1883) (barring suit in New York based on bankruptcy and reorganization in Canada).

Because the GP Global Entities' claims are still in dispute in the Singapore Proceeding, Amis should be subject to that separate action as it purchased the claims, and this Court should defer to the High Court of Singapore under principles of comity.

    **C.**    <u>**Amis' Request for Additional Counter-Security on the GP Global Claim Violates the Spirit of the Parties' Negotiations on the Original Security Demand**</u>

As outlined above, during the hearing on October 29, 2019, the parties conferred with the Court and separately off-record with each other to negotiate the amount of security and counter-security. During the conference, Amis expressly referenced the existence of the bunker sales dispute (*see* Exhibit A, pg. 26), but it was not then entitled to assert that claim as it had yet to pay for the assignment at issue. Dry Bulk ultimately demanded $5.6 million dollars in security during the conference, but after conferring with opposing counsel, that demand was reduced to $2.5 million. If Dry Bulk had known at the time that Amis would later assert a separate claim against it by way of assignment for the GP Global bunker sales disputes, then in addition to the defenses asserted herein, Dry Bulk would have renewed its request for the full amount of security originally requested (i.e., $5.6 million). This Court should refrain from inflating Amis' counter-security demand to include its assigned GP Global bunker claims, particularly as they were not a part of the original negotiations between the parties. Alternatively, if the counter-security is allowed to be increased, then this Court should in turn order Amis to post an additional security amount of $3.1 million as originally requested by Dry Bulk.

Page 10 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

**D.**      **Further Counter-Security Is Not Warranted For The Wrongful Arrest Claim**

Putting aside the substantive merits of Amis' claim for additional counter-security, it is inappropriate for Amis to seek an increase in security for its administrative bond expenses and attorneys' fees.  Amis alleges that it has "incurred significant, additional costs as a result of Plaintiff's wrongful arrest." ECF 131 at p. 5-6.  Amis then identifies those costs as approximately $50,000 for its next installment on the surety bond it posted, and $50,000 in legal fees it has incurred since February 2020.  But these costs were not incurred as a result of any change in position by Dry Bulk and cannot properly form the basis for additional counter-security.

Amis has cited no authority for the proposition that counter-security can be increased on a sporadic basis as a result of administrative costs associated with the security itself (i.e., surety bond) or otherwise for alleged attorneys' fees that may accrue in addressing the counterclaim at issue.  In the first instance, it was Amis' decision to post security in the form of a surety bond, as opposed to posting cash for the full amount of the security.  The fact that Amis would be responsible for paying the administrative costs for that bond during the pendency of this lawsuit was known to Amis at the time when Amis was negotiating with Dry Bulk with respect to the amount of security that Amis was to post, at the time the bond was secured by Amis, and at the time that Amis initially requested that Dry Bulk be required to post counter-security.  There has been no change in the case that would justify an increase in the amount of counter-security to be posted by Dry Bulk.

Similarly, Amis' attorneys' fees are a known by-product of litigation – the mere passage of time is no reason for the imposition of additional counter-security.  Does Amis intend to continue to seek redress from the Court for each bill issued by its counsel?  The answer to that

Page 11 -      PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
              INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

question must be "no", and Amis should not be allowed to include its attorneys' fees as a line-item for counter-security. Merely incurring additional attorney fees does not justify counter-security.

### E.    The Court Should Reconsider Its Decision Allowing Counter-Security for a Wrongful Arrest Claim

Given that Amis has elected to revisit the issue of counter-security, Dry Bulk respectfully reiterates that no counter-security was appropriate under the circumstances presented in this case. To state a claim for wrongful arrest, a party must allege bad faith, malice or gross negligence. *See, e,g.*, *Stevens v. F.V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir. 1981); *Chemoil Corp. v. M/V Darya Vishni*, 2013 U.S. Dist. LEXIS 171841, *7-8 (W.D. Wash, Dec. 5, 2013). The availability of counter-security for a claim of wrongful arrest was recently addressed in another action in this Court. In *Swaidan Trading Co., LLC v. M/V DONOUSA*, No. 3:18-CV-00398-HZ, 2018 WL 3414317 (D. Or. July 13, 2018), Judge Hernandez declined a request for counter-security, holding that a "counterclaim for wrongful attachment does not arise out of the same transaction or occurrence that gave rise to the original underlying maritime claim." *Id.* at *2 (internal quotations and marked alterations in original omitted). Judge Hernandez reasoned, in pertinent part:

> [A]s Defendant admits in its reply brief, to succeed on its counterclaim it must demonstrate that Plaintiff acted in bad faith, with malice, or with gross negligence in filing this action. *See Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) ("The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party."); *see also* Def. Reply at 3–4 (alleging that Plaintiff "knew" that Defendant was not the alter ego of either Androussa or Dileton prior to filing the present action). This case is distinguishable from *State Bank*, where the plaintiff's knowledge would be established by the same facts underlying the foreclosure, and *Norton Lilly*, where some of the counterclaimant's damages pertained to the seizure central to the underlying claim and wholly unrelated to the filing of the lawsuit. **In this case, the damages alleged are only related to the Court's attachment of**

Page 12 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

> **the M/V DONOUSA.  And the issue of Plaintiff's bad faith, negligence, or malice will not be proven by the facts underlying the breach of contract claim or its theory of alter ego liability. Because Defendant's claim does not arise out of the same transaction or occurrence as the present action, the Court declines to grant Defendant's motion for counter-security**.

*Id*. at \*4 (emphasis added).

The result in *Swaidan Trading Co*. is in accord with the Fifth Circuit's pronouncement that "[w]hether or not an action for wrongful seizure ... may be asserted as a counterclaim in admiralty practice, counter-security under Rule E(7) may not be required for such a claim." *Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN*, 747 F.2d 958, 964–65 (5th Cir. 1984). Dry Bulk respectfully requests that the Court reconsider whether Amis' wrongful arrest counterclaim arises out of the same transaction or occurrence as Dry Bulk's tortious interference claims, and rescind its prior order requiring counter-security.

## III.   CONCLUSION

The motion for additional counter-security should be denied and plaintiff should be granted such other and further relief as the Court considers appropriate.

DATED:  October 23, 2020                    Respectfully submitted,

                                            MILLER NASH GRAHAM & DUNN LLP

                                            *s/ Ian M. Christy*
                                            _____
                                            M. Christie Helmer, OSB No. 743400
                                            chris.helmer@millernash.com
                                            Ian M. Christy, OSB No. 160116
                                            ian.christy@millernash.com
                                            Telephone: 503.224.5858
                                            Facsimile: 503.224.0155

Page 13 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS
             INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

and

BLANK ROME LLP

*/s Jeremy A. Herschaft*
John D. Kimball, *pro hac vice*
jkimball@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.885.5000
Facsimile: 212.885.5001

and

Jeremy A. Herschaft, *pro hac vice*
jherschaft@blankrome.com
Zachary Cain, *pro hac vice*
zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: 713.632.8655
Facsimile: 713.228.6605

*Attorneys for Plaintiffs*
*Dry Bulk Singapore Pte. Ltd.*

Page 14 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD'S RESPONSE TO DEFENDANT AMIS INTEGRITY S.A.'S MOTION FOR ADDITIONAL COUNTER-SECURITY

159462.00601/123972559v.2