Markus B.G. Oberg, OSB #112187
Daniel J. Park, OSB #132493
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Phone:      206-623-4990
Facsimile: 206-467-4828
Email: moberg@legros.com
Email: dpark@legros.com
Attorneys for Defendant Amis Integrity S.A.
by restricted appearance

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> AMIS INTEGRITY S.A., WISDOM MARINE LINES, S.A., WISDOM MARINE LINES CO. LTD., AND M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br> Defendants. | Case No. 3:19-cv-1671-BR <br><br> IN ADMIRALTY <br><br> DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY DEADLINE |

## I. **INTRODUCTION**

Plaintiff seeks an extension to obtain irrelevant and unduly burdensome discovery,

asking Wisdom Marine Lines S.A.'s numerous subsidiaries—not parties to this action—to

identify and produce documents for each and every purchase of incidental goods, materials or

professional services and crew changes in the United States over the past five years. Plaintiff's request for an extension should be denied. This is a fishing expedition not proportional to the needs of this case. Moreover, in the Court's scheduling order of September 14, 2020, the Court made clear that any request for an extension of jurisdictional discovery required Plaintiff to make a "substantial showing of good cause and a showing that the parties have made diligent use of the time permitted for jurisdictional discovery." (Dkt. 116). Plaintiff cannot make either showing.

Plaintiff has not made diligent use of the time permitted for jurisdictional discovery. The record shows that Plaintiff had the information needed to formulate the additional discovery requests before jurisdictional discovery even began. Contrary to Plaintiff's contention, Plaintiff did not need to complete the depositions of requested witnesses (Bruce Hsueh and Mike Chao) or obtain the Ship Management Contract to formulate these requests. Plaintiff also unduly delayed in completing the depositions. If Plaintiff had made diligent use of its time for jurisdictional discovery, no extension would have been required.

Plaintiff also cannot show good cause for the additional jurisdictional discovery. Defendants have already responded to written discovery requests asking Defendants to identify and produce any *contracts* for the purchase of goods, materials or professional services in the United States (Defendants are parties to no such contracts). Defendants also made witnesses available for deposition, as requested by Plaintiff, and produced copies of other contracts, corporate documents, and other financial records. Additionally, Wisdom

Marine Lines Co. Ltd. is a publicly traded company on the Taiwanese stock exchange and detailed information about its corporate structure and finances is easily accessible online.[1]

Plaintiff's proposed requests are procedurally improper and extraordinarily overbroad and unduly burdensome. The requests require the agreement and cooperation of Wisdom Marine Lines S.A.'s over 120 subsidiaries (which, aside from Amis Integrity, S.A., are not parties to this lawsuit) to conduct an exhaustive review of all shipboard records to determine if there are any invoices relating to an incidental purchase or service in the United States over a five-year period. Even assuming cooperation, the task of attempting to respond would materially disrupt daily operations or bring such operations to a complete halt. Although the Court has discretion to grant jurisdictional discovery, requests must be proportional to the needs of the case, and the Court is not required to grant requests that amount to little more than a fishing expedition.

Furthermore, even if it was possible to respond to these requests, the additional information requested by Plaintiff is irrelevant to the two main jurisdictional questions in this case: (1) whether the *in personam* defendants abused the corporate form to perpetuate a fraud to give rise to alter ego liability; and (2) whether the *in personam* defendants controlled the movements of the chartered vessels within the Wisdom Group's fleet such that the vessel's U.S. port calls can be attributed to the *in personam* defendants for the purposes of jurisdictional contacts. Plaintiff cannot make a substantial showing of good cause for an

---

[1]    *See*    http://www.wisdomlines.com.tw/wisdom/php/corporate_history_e.php    ("Wisdom Marine Group is the largest dry bulk shipowner in Taiwan by number of vessels. We have a fleet of 148 vessels, 12 of which are newbuildings as at September 30th, 2020. We were founded by our Founder and Chairman James Lan in March 1999. We have been listed on the Taiwan Stock Exchange since 2010 and trade under the stock code '2637.'").

extension because the information sought in Plaintiff's additional requests has no bearing on these issues.  The requests are not directed to these issues but aimed at non-parties.[2]

In short, Plaintiff's requested extension is not supported by a showing of good cause or diligent use of discovery and will achieve nothing but further delay.  Therefore Plaintiff's motion should be denied.

## II.  BACKGROUND

### A.    Background of Dispute.

This action relates to Plaintiff's misguided claims that Defendants are somehow liable to Plaintiff for the withdrawal of the M/V AMIS INTEGRITY ("Vessel").  Defendant Amis Integrity, S.A., the Vessel's owner, exercised its contractual rights by withdrawing the Vessel from the charterer, 24Vision Chartering Solutions, DMCC ("24Vision"), after 24Vision failed to make payments under their charter party agreement.  Plaintiff, who sub-chartered the Vessel from 24Vision, claims the withdrawal was improper because Plaintiff made timely payments to 24Vision under a sub-charter—payments which Amis Integrity, S.A. never received.  Plaintiff's claims lie against 24Vision—not Defendants—and Plaintiff has asserted claims against 24Vision in a London arbitration.[3]  Nevertheless, in an apparent attempt at double recovery, Plaintiff also initiated proceedings in this Court against Defendants.

---

[2] There is no evidence whatsoever of any abuse of the corporate formalities and the evidence establishes that the vessels were directed to the U.S. by charterers, not Defendants.

[3] Plaintiff's filings in a Singapore bankruptcy proceeding reveal that Plaintiff is pursuing claims against 24Vision in a London arbitration proceeding.  *See* Plaintiff's Proposed Scheme of Arrangement (Dkt. 141-1 at p. 52) listing "Claim against 24 Vision DMCC for damages in the amount of approximately USD 5.6 million for breach of charterparties and unlawful withdrawals of the M/V AMIS INTEGRITY and the M/V ETERNITY SW in 2019, which is now subject to ongoing arbitration proceedings in London" as one of Plaintiff's "receivables."  Plaintiff did not disclose the instant Oregon action against Defendants in the Singapore bankruptcy.

B.    **Procedural Background.**

Plaintiff's original complaint included not only *in rem* claims against the Vessel, but also *in personam* claims against Amis Integrity, S.A. for conversion of bunkers,[4] tortious interference, and other theories of liability.  The Court lacks personal jurisdiction over Amis Integrity, S.A., a Panamanian company, and a motion to dismiss was filed with the Court, to be renewed after the conclusion of jurisdictional discovery.  (Dkt. 83, 112).

On August 18, 2020, approximately ten months after Plaintiff filed the original complaint, the Court granted Plaintiff's motion to amend the complaint to add an alter ego claim and add Wisdom Marine Lines, S.A. and Wisdom Marine Lines Co. Ltd. as *in personam* defendants.  (Dkt. 112).  Wisdom Marine Lines, S.A., a Panamanian company, is the parent corporation of Amis Integrity, S.A. and over 120 other vessel-owning subsidiaries. Declaration of Bruce Hsueh ("Hsueh Decl.") ¶ 5 (filed herewith).  Wisdom Marine Lines Co. Ltd. is a Caymanian company and parent corporation of Wisdom Marine Lines, S.A.  Hsueh Dep. 13:25-14:7; 16:19-23, Ex. 2 (Declaration of Markus Oberg ("Oberg Decl.") ¶ 3, Ex. A).

The Court's August 18, 2020 Order also granted Plaintiff's request for jurisdictional discovery for purposes of determining whether the Court could exercise personal jurisdiction over these alleged *in personam* defendants.  The Court's opinion and order stated in part as follows:

---

[4] Plaintiff's claim for conversion of bunkers is perplexing because Plaintiff never paid for the bunkers.  As explained more fully in Defendants' Motion for Additional Counter-Security (Dkt. 131), after Amis Integrity, S.A. withdrew the Vessel from 24Vision, Plaintiff retaliated against Defendants by refusing to pay for bunkers (marine fuel) that Plaintiff ordered and received.  Plaintiff's actions prompted GP Global, which had supplied the bunkers, to threaten the arrest of the Vessel.  Amis Integrity, S.A. was later forced to settle GP Global's claims to avoid another arrest of the Vessel caused by Plaintiff's breach of its contractual obligations to GP Global.  *See also* Claim Assignment Agreement (Dkt. 132-2).

> Plaintiff alleges in its Amended Verified Complaint that Wisdom Marine Entities are the alter egos of Defendant Amis and exercised control over Amis for the withdrawal of the Vessel from charter. The Court finds the plausibility of Plaintiff's claim cannot be resolved at this stage of the litigation and that Defendant has not established the futility of Plaintiff's claims at this time. In addition, whether this Court has jurisdiction over Defendant and Wisdom Marine Entities is an issue to be resolved after jurisdictional discovery has been completed.

(Dkt. 112).

On September 14, 2020, after receiving the parties' Joint Proposed Case-Management Plan, the Court issued a scheduling order directing Plaintiff to complete service upon the new *in personam* defendants by September 30, 2020, and to complete jurisdictional discovery, including discovery requests and depositions, by December 28, 2020. (Dkt. 116). The Court's order also stated that "[a]ny request for extension of these deadlines must be filed before the expiration of the discovery deadline and supported by both a *substantial showing of good cause and a showing that the parties have made diligent use of the time permitted for jurisdictional discovery*." (Dtk. 116) (emphasis added).

## C.    Summary of Jurisdictional Discovery to Date.

Defendants fully cooperated with Plaintiff's jurisdictional discovery and made no attempts to obstruct or delay such discovery. For example, Defendants did not oppose Plaintiff's motion for alternate service upon the *in personam* defendants. (Dkt. 120). In the parties' Joint Proposed Case-Management Plan, Defendants also agreed to respond to Plaintiff's written discovery requests even before Plaintiff completed service upon the new

defendants.  (Dkt. 115).[5]  As discussed further below, Defendants also promptly responded to an informal request to provide a copy of a Ship Management Contract.  Oberg Decl. ¶ 4.

Regarding written discovery, on September 25, 2020, more than a month after the Court issued its order allowing jurisdictional discovery, Plaintiff first served its written jurisdictional discovery requests upon Defendants.  Motion at 3 (Dkt. 147).  Defendants timely responded to Plaintiff's written discovery requests on October 26, 2020.[6]

As discussed below, Defendants initiated deposition scheduling on October 28, 2020. Oberg Decl. ¶ 6, Ex. C.

On November 9, 2020, Plaintiff's counsel requested a conference to discuss Defendants' discovery responses.  The parties conferred on November 12, and on November 24, Defendants served supplemental responses aimed at addressing Plaintiff's concerns raised during the conference.  Oberg Decl. ¶ 7; Motion, Ex. A (Dkt. 147-1).  The documents produced by Defendants in response to Plaintiff's requests for production include a list of the Vessel's port calls, certificates of good standing, docket reports for U.S. litigation, financial information disclosing consolidated revenue of Wisdom Marine Lines Co. Ltd. and its subsidiaries, and various charter party agreements identifying the unrelated vessels involved in the consolidated revenue allocated to the United States.  On December 4, 2020, Plaintiff's counsel informally requested a copy of a Ship Management Contract referenced in Bruce Hsueh's July 17, 2020 Declaration (Dkt. 110), which Defendants promptly produced on December 9, 2020 without insisting on a formal discovery request.

---

[5] See Paragraph 6 ("Any jurisdictional discovery that occurs prior to service upon the defendants shall not be construed as a waiver of any defenses of improper service of process or lack of personal jurisdiction.").

[6] On October 28, 2020, Defendants served amended discovery responses, correcting minor clerical errors with the previous responses.  Oberg Decl. ¶ 5.

Oberg Decl. ¶ 4, Ex. B.  In other words, Defendants' responses to Plaintiff's written requests were timely and complete.  Indeed, Plaintiff's Motion does not claim that Defendants' responses, after supplementation, were in any way deficient, or that Defendants failed to cooperate in jurisdictional discovery.

Significantly, it was Defendants who initiated the deposition scheduling.  On October 28, 2020, with two months left for jurisdictional discovery, counsel for Defendants emailed Plaintiff's counsel and reminded them that it may be "appropriate to arrange a conference to discuss deposition scheduling."  Oberg Decl. ¶ 6, Ex. C.  On November 9, 2020, Plaintiff's counsel responded stating that they hope to discuss deposition scheduling "in the near future."  Oberg Decl. ¶ 8, Ex. D.  On November 23, 2020, after conferring with Plaintiff's counsel, Defendants advised that Bruce Hsueh and Mike Chao, the witnesses Plaintiff requested to depose, were generally available the week of December 7.  The same day, Plaintiff's counsel asked if the depositions could be delayed to the week of December 14, citing Plaintiff's counsel's work conflicts.  Oberg Decl. ¶ 9, Ex. E.  The depositions took place on December 16, 2020 and December 17, 2020 (U.S. time), only 10 days before the discovery cut-off.  Motion at 6 (Dkt. 147).

## III.   DISCUSSION

### A.   Plaintiff Failed to Make Diligent Use of the Time Permitted for Jurisdictional Discovery.

Plaintiff's Motion should be denied because Plaintiff failed to make diligent use of its time for jurisdictional discovery.  Plaintiff's Motion suggests that an extension is necessary because Plaintiff first learned about potential purchases of U.S. goods and/or services by Defendants after taking the depositions of Bruce Hsueh and Mike Chao and receiving a "Ship

Management Contract."    Motion at 5-6.    Plaintiff, however, has long claimed that U.S. purchases confer personal jurisdiction over the *in personam* defendants.    For example, in Plaintiff's Reply in support of its original motion for leave to amend, filed on March 20, 2020, Plaintiff asserted that "Wisdom Marine" was responsible for the "purchase of certain lubricants, provisions, and stores required to maintain the Vessel."    (Dkt. 80 at 9).    The Declaration of Stavros Tsolakis, filed in support of the Reply, stated that in his experience, the manager of the vessel "normally appoints protective agents at loading and discharge ports" and claimed that "Wisdom Lines" does business in the United States due to the "purchase of lubricating oils and provisions for deck and engine room stores and repairs that may be required to maintain the vessel in Class."    Tsolakis Decl. ¶ 30 (Dkt. 81).

Indeed, Plaintiff served Interrogatories Nos. 13-14 and Requests for Production Nos. 14-15, which asked Defendants to identify *contracts* for the purchase of goods or materials and professional services within in the United States, *because* Plaintiff's jurisdictional claims were premised upon alleged U.S. purchases by Defendants.[7]    If Plaintiff had the wherewithal to ask about contracts for U.S. purchases during the outset of jurisdictional discovery, then (putting aside the objectionable nature of the additional requests) Plaintiff also could have asked about the actual purchases in discovery.

Moreover, even if the depositions of Bruce Hsueh and Mike Chao were somehow necessary for Plaintiff to formulate the additional discovery requests, Plaintiff unduly delayed in seeking these depositions.    Defendants—not Plaintiff—initiated the discussion about the jurisdictional depositions on October 28, 2020 when two months of jurisdictional

---

[7] Defendants are not parties to any contract responsive to Interrogatory Nos. 13-14 or Requests for Production Nos. 14-15 and therefore Defendants responded to these requests as "not applicable" or "none."  Hsueh Dep. 108:1-8 (Oberg Decl. ¶ 3, Ex. A).

discovery were still left.  Oberg Decl. ¶ 6, Ex. C.  Plaintiff did not respond until about two weeks later and then asked to put off the depositions until the week of December 14 due to Plaintiff's counsel's work conflicts.  Oberg Decl. ¶ 8, Ex. D.  Again, putting aside the objectional nature of Plaintiff's additional requests, if Plaintiff had been more diligent in advancing the depositions of Bruce Hsueh and Mike Chao, then no extension of jurisdictional discovery would be necessary.[8]

As for the Ship Management Contract, as set forth in Plaintiff's prior pleadings and declarations, Plaintiff contended that Defendant purchased supplies and services from U.S. suppliers even before receiving the Ship Management Contract.  (Dkt. 80, 81).  Moreover, Defendants disclosed the existence of the Ship Management Contract on July 17, 2020 in the Declaration of Bruce Hsueh (Dkt. 110 at ¶ 6), submitted in response to Plaintiff's original motion to amend, while discussing the nature of the relationship between Amis Integrity S.A. and Wisdom Marine Lines, S.A.  Defendants also referred to the Ship Management Contract in its answer to Interrogatory No. 9, which Defendants served on October 26, 2020.  Oberg Decl. ¶ 5; Motion, Ex. A (Dkt. 147-1).  Nevertheless, Plaintiff waited until December 4, 2020, with less than a month left of jurisdictional discovery, to informally request a copy of the Ship Management Contract (which Defendants promptly provided).  Oberg Decl. ¶ 4, Ex. B.  Thus, even if Plaintiff needed the Ship Management Contract to formulate its requests about U.S. purchases (which is demonstrably false), the record shows that Plaintiff failed to diligently pursue the Ship Management Contract in discovery.[9]

---

[8] Plaintiff also states that the depositions of Bruce Hsueh and Mike Chao were scheduled for December 16 and December 17, respectively, "[d]ue to the holidays."  Motion at 6 (Dkt. 147).  Bruce Hsueh and Mike Chao are located in Taiwan and do not observe U.S. holidays.

[9] Plaintiff misinterprets the Ship Management Contract.  Contrary to Plaintiff's allegation (Motion at p. 5), under this Contract Wisdom Marine Lines S.A. is "only responsible for

**B.      Plaintiff Lacks Good Cause for an Extension of Jurisdictional Discovery.**

      1.      <u>Plaintiff's requests are procedurally improper, overbroad, unduly burdensome and not proportional to the needs of the case.</u>

In addition to Plaintiff's failure to make diligent use of its time for jurisdictional discovery, Plaintiff's additional requests are procedurally improper because they are directed at non-parties.  The proposed requests ask Wisdom Marine Lines, S.A.'s subsidiary vessel owning companies to identify and produce records relating to the purchase of goods and services in the United States and U.S. port calls.  Plaintiff concedes that the subsidiaries are not parties to this lawsuit.  *See* Motion at 2 ("Even though these Wisdom SPVs are not parties to this litigation (aside from Amis) . . . .").  During his deposition, Mike Chao testified that the information requested in Plaintiff's additional requests would need to be obtained from the subsidiary corporations:

> Q.      Continuing with my questions about whether any of these vessels may have purchased -- or the vessel-owning companies may have purchased supplies in the United States, and beginning with the AMIS BRAVE, do you know if during any of the port calls of the AMIS BRAVE on the first page is in accordance with the ship management contract, there were any repairs done to the vessel during that time frame?
>
> . . . .
>
> A.      I don't.
>
> Q.      We would have to go to the ship-owning company of AMIS BRAVE to obtain that information, if it, in fact, exists?
>
> A.      Yes.
>
> Q.      And would your answer be the same with respect to whether you have any knowledge as to whether there were any

---

arrangements…"  Motion, Ex. C (Dkt #147-03), ¶ 3.  All costs are paid directly by the vessel owner. Id.  Moreover, the evidence establishes that Defendants did not enter into any contracts for goods or services in the U.S.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND
DISCOVERY DEADLINE - Page 11
[Case No. 3:19-cv-1671-BR]

crew changes for the vessel AMIS BRAVE during the port calls referenced on the first page?

      A.     No, I don't.

      Q.     We would have to go to the ship-owning entity for AMIS BRAVE for that?

      A.     Mm-hmm.

Chao Dep. 49:13-50:9 (Oberg Decl. ¶ 10, Ex. F).[10]

Accordingly, the proper vehicle for Plaintiff to obtain the requested information from non-parties is via subpoena under Rule 45 or *letters rogatory* to the individual vessel owning subsidiaries. *Contardo v. Merrill Lynch, Pierce, Fenner & Smith*, 119 F.R.D. 622, 624 (D. Mass. 1988) (for purposes of discovery, Rule 34 is directed at parties and Rule 45 is directed at non-parties).

Moreover, Plaintiff's proposed requests are impermissibly overbroad and unduly burdensome. Under Rule 26(b), parties may obtain discovery regarding "any nonprivileged that is relevant to any party's claim or defense *and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.*" Fed. R. Civ. P. 26(b)(1) (emphasis added).

As explained in Bruce Hsueh's declaration, filed herewith, responding to Plaintiff's proposed requests would impose an undue, if not impossible burden on Defendants. Hsueh Decl. ¶ 4. Responding to these requests would require the agreement and cooperation of over

---

[10] Chao testified that there usually are no crew changes in the U.S. due to visa restrictions. Chao Dep. 37:25-38:11 (Oberg Decl. ¶ 10, Ex. F). Moreover, Chao testified that he was not involved in answering the discovery requests. Chao Dep. 48:3-22 (Oberg Decl. ¶ 10, Ex. F).

120 independent subsidiary corporations. Hsueh Decl. ¶ 10. Then, each and every vessel would also have to be independently contacted and the master requested to conduct an exhaustive review of all shipboard records for the past five years to determine if there are any contracts or invoices involving these nonparties relating to an incidental purchase or service in the U.S. Hsueh Decl. ¶ 10. The master cannot spare the time and does not have the resources to conduct such a search, particularly where the vessel is under charter and under the direction of a third party (a charterer) and the master follows the charterer's instructions. Hsueh Decl. ¶ 10. Furthermore, any such communications with vessel owners and/or vessels would have to involve the services of Wisdom Marine International, Inc., a separate subsidiary of Wisdom Marine Co. Ltd. Hsueh Decl. ¶ 12. Responding to these requests would involve all of Wisdom Marine International, Inc.'s company departments associated with vessel management services. Wisdom Marine International, Inc.'s daily operations would be brought to a halt or materially disrupted and Wisdom Marine International, Inc. may not be able to perform its contractual obligations while addressing such requests. Hsueh Decl. ¶ 12.

Although the Court has discretion whether to grant jurisdictional discovery, a party's request for jurisdictional discovery need not be granted when it amounts to little more than a fishing expedition. *Mireskandari v. Daily*, 2013 U.S. Dist. LEXIS 194438, at *28 (C.D. Cal. July 31, 2013) ("Jurisdictional discovery need not be allowed, however, when the request amounts to a 'fishing expedition.'"); *Johnson v. Mitchell*, 2012 U.S. Dist. LEXIS 65934, at *19 (E.D. Cal. May 10, 2012) ("However, [w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery. . . .  In other words,

limited discovery should not be permitted to conduct a 'fishing expedition.'"); *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 2012 U.S. Dist. LEXIS 46875, at *7 (D. Md. Apr. 3, 2012) ("Moreover, this Court determined that jurisdictional discovery was not warranted because 'jurisdictional discovery cannot simply be a fishing expedition, and absent allegations . . . that would provide a basis for piercing the corporate veil, plaintiffs are not entitled to such discovery.'").

Here, Plaintiff has already obtained discovery about Defendants' contracts for U.S. purchases and questioned witnesses about U.S. purchases at depositions.  Plaintiff has already compiled a list of "certain U.S. port calls made by vessels that were owned by the Wisdom SPVs in the prior five years."  Motion at 6.  Defendants have also testified that it is possible that a vessel owned by one of Wisdom Marine Lines S.A.'s subsidiaries paid for good or supplies, such as beef or pork, while the vessel was in the United States at the direction of the charterer.  Hsueh Dep. 107:7-109:4 (Oberg Decl. ¶ 3, Ex. A).[11]  Any such purchase incurred by the vessel owner would merely be an incidental expense.[12]  Hsueh Decl. ¶ 9.

Requiring Wisdom Marine Lines S.A.'s over 120 subsidiaries and other companies to undertake the extraordinary task of identifying and producing documents relating to these incidental expenses is not only procedurally improper, but also unduly burdensome and disproportionate to the needs of the case.

---

[11] Mr. Hsueh also confirmed that the response to Interrogatory No. 13, that none of the named Defendants contracted for the purchase of goods or services, was correct. Hsueh Dep. 113:10-20 (Oberg Decl. ¶ 3, Ex. A).

[12] During his deposition, Bruce Hsueh testified that incidental purchases made by a vessel during a U.S. port call could include the purchase of "beef or pork."  Hsueh Dep. 108:9-109:4 (Oberg Decl. ¶ 3, Ex. A).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND
DISCOVERY DEADLINE - Page 14
[Case No. 3:19-cv-1671-BR]

{29293-00668678;4}

2.    <u>Plaintiff's additional requests have no bearing on alter ego liability.</u>

Furthermore, Plaintiff cannot show good cause for the extension because Plaintiff's additional discovery requests will not assist the Court with determining jurisdictional issues relating to alter ego liability.  Plaintiff's additional requests, which are directed at non-party subsidiaries, are predicated upon a finding of alter ego liability.  Motion at 7 ("If the Wisdom Entities and the Wisdom SPVs in fact operate as one entity, and if the Wisdom SPVs purchased supplies, materials and services in the U.S. during port calls over the past five years, then such evidence would be highly relevant on the issue and extent of Defendants' national contacts with the U.S. as a whole.").

The additional requests, however, do not assist with answering the fundamental question whether the corporate forms of Wisdom Marines Co. Ltd. and Wisdom Marine Lines, S.A. should be disregarded and whether those foreign companies should be forced to litigate in the District of Oregon.  The Ninth Circuit has held that "disregard of corporate separateness 'requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own.'"  *Chan v. Soc'y Expeditions*, 123 F.3d 1287, 1294 (9th Cir. 1997) (citing *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)).  "[F]ederal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own."  *Id.*  "Mere overlap of a few directors or officers, without more, is insufficient to prove a theory of alter ego."  *Shagang Shipping Co. v. HNA Grp. Co.*, 2018 U.S. Dist. LEXIS

52169, at *9 (W.D. Wash. Mar. 28, 2018) (citing *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).

The plausibility of Plaintiff's alter ego claim was one of the reasons for which jurisdictional discovery was allowed.  (Dkt. 112).  Plaintiff's additional requests, however, have nothing to do with Wisdom Marines Co. Ltd. or Wisdom Marine Lines, S.A.'s degree of control of their named subsidiary corporation (Amis Integrity S.A.), any other subsidiary corporation, or whether the corporate forms were used to perpetuate a fraud.  Plaintiff should not be given an extension to engage in burdensome and overbroad discovery of non-parties that is completely irrelevant to the fundamental question jurisdictional question of alter ego liability.

     3.    <u>Plaintiff's additional requests have no bearing on control of chartered vessels.</u>

Finally, Plaintiff's request for an extension should be denied because the additional requests are irrelevant to the issue of control over a chartered vessel.  Courts have repeatedly held that U.S. port calls by chartered vessels which enter the United States at the direction of the *charterer* do not confer personal jurisdiction over the *owner* of the vessel for the purposes of Rule 4(k)(2).  *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008) ("In building their case that [defendant] had continuous and systematic contacts with the United States, plaintiffs rely primarily on the [vessel's] repeated visits to various ports on the Eastern Seaboard and the Gulf Coast, both before and after the Astrida sank. . . .  The difficulty with plaintiffs' reliance on the [vessel's] American port visits is that none of the visits were made at [defendant's] direction.  The decision to bring the [vessel] to the United States was made, in each case, by the ship's charterers, who were free under the charters to take the ship to any safe port in the world.  The unilateral activities of third parties -- here,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND
DISCOVERY DEADLINE - Page 16
[Case No. 3:19-cv-1671-BR]

{29293-00668678;4}

the charterers -- cannot, in themselves, satisfy the requirement of contact with the forum."); *Catlin Ins. Co. v. Bernuth Lines Ltd. (In re MS "ANGELN" GMBH & Co. Kg)*, 510 F. App'x 90, 92 (2d Cir. 2013) ("The district court correctly concluded that these factors do not demonstrate that Brise 'purposefully availed itself. . . .' Here, as in Porina, the visits made to the United States ports by Brise-managed vessels were done at the direction of the ship's charterers."); *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 600-01 (S.D.N.Y. 2017) ("For similar reasons, the Second Circuit's decision in Porina is also consistent with the Court's analysis and conclusion. There, the Court found insufficient contacts for the defendant under the 'more stringent' general jurisdiction standard because a third party, not the defendant, was solely responsible for each of the vessel's trips to the United States."); *Del Monte Fresh Produce N.A., Inc. v. M/V Africa Reefer*, 2013 U.S. Dist. LEXIS 37991, at *11-14 (S.D.N.Y. Mar. 19, 2013) ("These contacts, however, do not suffice because it is well-established that a defendant must 'purposefully avail[] itself of the privilege of conducting activities within the forum. . . .' [E]ven if Lavinia were a party, 'the decision to bring the [M/V Africa Reefer] to the United States was made . . . by the ship's charterers' and not by Lavinia."); *Nursan Metalurji Endustrisi A.S. v. M/V "Torm Gertrud"*, 2009 U.S. Dist. LEXIS 75805, at *11-12 (S.D.N.Y. Feb. 27, 2009) ("The allegation of vessel calls to U.S. ports in the past year, many of which are at the behest of time charterers, cannot amount to the purposeful contact necessary to satisfy constitutional due process guarantees.").

As set forth in Bruch Hsueh's Declarations and as Mike Chao also testified, Wisdom Marine Lines S.A. does not direct, operate, or otherwise control the vessels that are under time charter.  Hsueh Decl. ¶ 9 (filed herewith); Hsueh Decl. ¶ 13 (Dkt 110); Chao Dep. 25:5-26:11 (Oberg Decl. ¶ 10, Ex. F) (the owner does not decide where the vessel might call, the

charterer makes that decision).  If a vessel owned by a subsidiary corporation was in the United States, the vessel's presence in the United States was at the direction of the charterer and any expense incurred by the vessel owner merely incidental.  Hsueh Decl. ¶ 9.  Plaintiff's additional discovery requests, which ask about incidental U.S. purchases and crew changes at U.S. port calls, is irrelevant to the jurisdictional question of whether the M/V AMIS INTEGRITY or other vessels owned by Wisdom Marine Lines S.A.'s subsidiaries called to the United States at the direction of the charterers or Defendants.  This is the critical jurisdictional inquiry under Rule 4(k)(2) with respect to time-chartered vessels.  Because the additional requests proposed by Plaintiff have nothing to do with this issue, Plaintiff should not be given an extension to engage in burdensome discovery that will not assist the Court in determining whether personal jurisdiction exists over the *in personam* defendants.

## IV.  CONCLUSION

For all the above reasons, Plaintiff's Motion to Extent Discovery Deadline should be denied.

DATED this 30th day of December, 2020.

LE GROS, BUCHANAN & PAUL

By: *s/ Markus B.G. Oberg*
By: *s/ Daniel J. Park*
    MARKUS B.G. OBERG, OSB #112187
    DANIEL J. PARK, OSB #132493
    4025 Delridge Way SW, Suite 500
    Seattle, Washington  98106-1271
    Phone: 206-623-4990
    Facsimile: 206-467-4828
    Email:  moberg@legros.com
    Email:  dpark@legros.com

    Attorneys for Defendant Amis Integrity, S.A.,
    by restricted appearance

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND
DISCOVERY DEADLINE - Page 18
[Case No. 3:19-cv-1671-BR]
{29293-00668678;4}

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,073 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to The Honorable Anna J. Brown and serve it on all associated counsel.

   I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

   Signed at Anacortes, Washington this 30th day of December, 2020.

*s/ Jenny Bond*
Jenny Bond, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone:  206-623-4990
Facsimile:  206-467-4828
E-mail:   jbond@legros.com
