IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., <br><br>      Plaintiff, <br><br>    v. <br><br>M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*, <br><br>      Defendant. | Case No. 3:19-cv-01671-IM <br><br>**OPINION AND ORDER** |

**IMMERGUT, District Judge.**

This Court has considered the parties' Joint Statement of Discovery Request and Joint Request for *In Camera* Review, ECF 167, as well as the supplemental briefing submitted in support of their positions, ECF 176, ECF 177. For the reasons set forth below, Plaintiff is ordered to produce Document Nos. 1–9 and 11–19, as identified in its privilege log, ECF 167-6.

## BACKGROUND[1]

Dry Bulk Singapore Pte. Ltd. ("Plaintiff") is a Singaporean corporation in the business of

---

[1] A more complete recitation of the facts can be found in the parties' Joint Statement of Discovery Request and Joint Request for *In Camera* Review. ECF 167 at 2–7.

PAGE 1 – OPINION AND ORDER

chartering vessels in international commerce in connection with the maritime transportation of goods. ECF 167 at ¶ 2. This matter arises from the withdrawal of M/V AMIS INTEGRITY ("Defendant" or "Vessel"), a bulk carrier, from the service of a charterer and sub-charterer, and the subsequent arrest of the Vessel in the United States District Court for the District of Oregon. *Id.* at ¶ 1. On or about June 27, 2017, Amis Integrity S.A., the registered owner of the M/V AMIS INTEGRITY, chartered the Vessel to 24Vision Chartering Solution ("24Vision"). *Id.* at ¶ 3. On or about January 10, 2019, 24Vision sub-chartered the Vessel to Plaintiff. *Id.* at ¶ 4. But in July 2019, the Vessel was withdrawn from 24Vision's service because of 24Vision's failure to make timely payments under the head charter. *Id.* at ¶ 5. Withdrawal under the head charter had the effect of withdrawing the Vessel from Plaintiff's use. *Id.* at ¶ 6. Claiming damages related to the withdrawal, Plaintiff brought suit and successfully arrested the Vessel on October 17, 2019. *Id.* at ¶¶ 9–10. On November 14, 2019, Defendant asserted a counterclaim for wrongful arrest. *Id.* at ¶ 12. Parties now present this Court with a discovery dispute about whether Plaintiff properly withheld certain documents—namely, pre-arrest communications between Plaintiff and its prior counsel—from production which could be responsive to Defendant's discovery requests.

## STANDARDS

Under Federal Rule of Civil Procedure 26(b)(1), parties may discover any unprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Pre-trial discovery is "accorded a broad and liberal treatment." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal quotation marks omitted) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication."

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (alterations in original) (internal quotation marks omitted) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)). An eight-part test determines whether the information sought is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quoting *Ruehle*, 583 F.3d at 607).

"The attorney-client privilege extends 'to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation.'" *Ozgur v. Daimler Trucks N. Am. LLC*, No. 20-35920, 2021 WL 4776994, at *1 (9th Cir. Oct. 13, 2021) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. Ariz.*, 881 F.2d 1486, 1492 (9th Cir. 1989)).

There are "several ways by which parties may waive the privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012) (citations omitted). First, "voluntarily disclosing privileged documents to third parties will generally destroy the privilege." *Id.* at 1126–27. Also known as an "express waiver," this type of waiver "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). "Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure—they merely recognize the waiver after it has occurred." *Id.*

PAGE 3 – OPINION AND ORDER

In contrast, waiver by implication, or implied waiver, is based on the rule that "a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Id.* at 718; *see also Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). ("[T]he federal cases presuppose that waiver may be effected by implication."). Waivers by implication rest on the "fairness principle," which:

> [I]s often expressed in terms of preventing a party from using the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.

*Bittaker*, 331 F.3d at 719 (citations omitted).

## DISCUSSION

In the parties' Joint Statement of Discovery Dispute, Plaintiff objects to Defendant's discovery requests[2] on the grounds of attorney-client privilege. ECF 167 at ¶ 20. Defendant claims that by asserting advice of counsel as a defense to its wrongful arrest counterclaim, Plaintiff has effectively waived its claim of privilege over these documents. ECF 177 at 5. This Court agrees and finds that Document Nos. 1–9 and 11–19, as identified in Plaintiff's privilege log, ECF 167-6, must be disclosed to Defendant.

**A. Plaintiff's Invocation of the Advice of Counsel Defense Waives Its Privilege Claims**

On September 17, 2021, Plaintiff provided a privilege log that listed nineteen documents withheld on the basis of attorney-client privilege. *Id.* Plaintiff provides the following descriptions of the withheld documents:

- Document Nos. 1–9: "Communications pertaining to withdrawal of Vessel and legal strategy."

---

[2] The discovery requests at issue involve Interrogatory No. 11 and Request for Production ("RFP") Nos. 12, 22, and 28. ECF 167 at ¶ 18.

PAGE 4 – OPINION AND ORDER

- Document No. 10: "Communications regarding efforts to potentially attach 24 Vision funds in The Netherlands and legal strategy."

- Document Nos. 11–19: "Communications regarding arrest of Vessel and legal strategy."

*Id.* at 2–4. In separate correspondence, Plaintiff's counsel confirmed that all documents responsive to Interrogatory No. 11 and RFP Nos. 12, 22, and 28 had been produced "[a]side from general communications between [Plaintiff] and counsel protected by the attorney-client privilege[.]" ECF 167 at 7.

Plaintiff relies on the Fifth Circuit's decision in *Frontera Fruit Co. v. Dowling*, 91 F.2d 293 (5th Cir. 1937) to argue that "the advice of counsel, honestly sought and acted upon in good faith is alone a complete defense."[3] ECF 176 at 3 (internal quotation marks omitted) (quoting *Frontera Fruit Co.*, 91 F.2d. at 297). While the Ninth Circuit has not opined on this particular issue, this Court accepts the applicability of *Frontera* and finds that Plaintiff is entitled to invoke the advice of its counsel as a defense to Defendant's wrongful arrest claim.[4] But Plaintiff goes a step further to argue that not only is it entitled to assert advice of counsel as a complete defense, but the attorney-client communications that form the basis of this defense are also protected from discovery. *Id.* at 5.

There is a three-pronged test for determining whether there has been an implied waiver of

---

[3] Defendant does not dispute that Plaintiff is entitled to invoke an advice of counsel defense. ECF 177 at 5.

[4] In *Swaidan Trading Co., LLC v. M/V DONOUSA*, a case involving a counterclaim for wrongful attachment of a vessel under Admiralty Rule B, a court within this district applied the standard set forth in *Frontera*, acknowledging that "to succeed on its counterclaim [the defendant] must demonstrate that Plaintiff acted in bad faith, with malice, or with gross negligence in filing this action." No. 3:18-CV-00398-HZ, 2018 WL 3414317, at *4 (D. Or. July 13, 2018).

PAGE 5 – OPINION AND ORDER

the attorney-client privilege. First, this Court considers whether Plaintiff asserted the privilege as the result of some affirmative act. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). Second, this Court examines whether through this affirmative act, Plaintiff put the privileged information at issue. *Id.* Finally, this Court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense or case. *Id.* Considering that Plaintiff is affirmatively raising advice of counsel as a complete defense, these factors are plainly met. As a result, Plaintiff is not entitled to both its defense and a legitimate claim that these documents are not subject to waiver.

Contrary to Plaintiff's interpretation of *Frontera*, the case imparts no guidance on how a court should handle discovery requests related to attorney-client communications. Plaintiff provides no compelling argument to support its broad assertion that the advice of counsel defense under *Frontera* is somehow "expansive enough that fairness does not necessitate disclosure of the contents of privileged communications." ECF 176 at 5. To endorse Plaintiff's position, this Court would need to ignore some of the fundamental tenets governing waiver. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."). Most notably, Plaintiff's argument fails to adequately address the importance of the fairness principle, which prevents the holder of the privilege from "asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker*, 331 F.3d at 719.

If the advice of Plaintiff's counsel can be wielded as a complete defense, then at the very least, there must be some safeguard that allows Defendant to evaluate the communications at issue. After all, the court in *Frontera* specifically noted that this defense can only be invoked if

the advice is "honestly obtained and reasonably accepted." *Frontera*, 91 F.2d at 297. Thus, the logic of *Frontera* assumes that the viability of an arresting party's defense turns on issues like the accuracy and completeness of the information provided to counsel. Defendant should not be forced to blindly accept that Plaintiff's attorney-client communications were conducted in good faith.[5] To hold otherwise, this Court would be endorsing a legal scheme where any clever party could immunize itself from a wrongful arrest claim by simply providing misleading information to its counsel and obtaining a legal opinion exonerating it from liability.

This Court also finds unpersuasive Plaintiff's arguments that nuances in admiralty law necessitate protecting the privilege in these circumstances. Specifically, Plaintiff argues that disclosure would result in an arresting party being put in the untenable position of having to retain an additional set of legal counsel to handle its attorneys becoming potential fact witnesses. ECF 176 at 6. Outside of the context of admiralty law, defenses based on a good faith reliance on counsel are common. *See, e.g.*, *Cahill v. Nike, Inc.*, No. 3:18-cv-1477-JR, 2020 WL 5989202, at *4 (D. Or. Oct. 9, 2020) (discussing the implied waiver of attorney-client privilege where the plaintiff claims that the defendant "asserts an affirmative defense such as good faith claiming it had a legitimate business purpose for its pay decisions"). As a result, this Court finds no reason to engineer a different rule for this case. *See id.* at *5 (noting that in the employment law context, if the defendant had raised an advice of counsel defense, then the potential of waiver would be implicated).

---

[5] This Court rejects Plaintiff's unsupported argument that the reputation of its former attorneys constitutes "irrefutable proof" that Plaintiff "honestly sought and acted upon in good faith" the "advice of competent counsel." ECF 176 at 5. The reputation of Plaintiff's attorneys, no matter how commendable, has no bearing on the merits of whether these documents can be withheld.

PAGE 7 – OPINION AND ORDER

More fundamentally, Plaintiff fails to acknowledge that it was never obligated to assert the advice of its counsel as a defense to Defendant's wrongful arrest claim. If Plaintiff believed that preserving the privilege protecting its attorney-client communications was of paramount importance, then it could have pursued a litigation strategy that did not involve the potential for waiver. But as Plaintiff continues to assert this defense, this Court cannot allow Plaintiff to wield the privilege "both as a sword and a shield." *Chevron Corp.*, 974 F.2d at 1162.

**B. The Scope of Disclosure Applies to Document Nos. 1–9 and 11–19**

This Court also rejects Plaintiff's request to limit disclosure to Document Nos. 11–19 in the privilege log because these communications were the only ones conducted with domestic counsel.[6] ECF 176 at 2. Plaintiff provides no authority to support its proposition that communications with foreign counsel would be irrelevant to the issue of whether an arrest was wrongful under United States law. Considering the cross-border nature of admiralty disputes, this Court is not inclined to invent an artificial distinction that only attorneys from the United States can qualify as "competent counsel" for the purposes of asserting an advice of counsel defense. *See Frontera*, 91 F.2d at 297; *see also Seguros La Metropolitana, S.A. v. Naviera Lavinel, C.A.*, No. 87-527-FR, 1989 WL 50115, at *2 (D. Or. May 11, 1989) (awarding attorney's fees to foreign counsel because "the international nature of this [action in admiralty]" made the defendant's use of Canadian counsel reasonable). Facing the imminent threat of waiver, Plaintiff cannot simply move these legal communications into a separate bucket because it now deems them "irrelevant."

Further, to the extent that Document Nos. 1–9 do not explicitly deal with the arrest of the

---

[6] While this Court finds that subject matter waiver is applicable to Document Nos. 1–9, the privilege log's description of Document No. 10 indicates that this document is not closely related to the arrest of the vessel. This Court will preserve the privilege for Document No. 10.

PAGE 8 – OPINION AND ORDER

Vessel, they are still germane to Defendant's request because they involve discussions about the Vessel's withdrawal. Subject matter waiver is applicable here because there was a "voluntary disclosure of the content of a privileged attorney communication [and that] constitutes waiver of the privilege as to all other such communications on the same subject." *Weil*, 647 F.2d at 24; *see also United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990) (finding disclosure of a privileged communication waived the privilege "on all other communications on the same subject"). By Plaintiff's own admission, there is a common thread running through almost all of the withheld documents. Plaintiff's description of the "nature of privilege" in its privilege log notes that *all* of the documents pertain to "[*p*]*re-arrest* attorney-client communications made in anticipation of litigation"—not just Document Nos. 11–19. ECF 167-6 at 2–4 (emphasis added). The "fairness principle . . . animates the concept of subject matter waiver" as it may be necessary for Defendant to reference earlier documents in order to understand the content of the legal communications contained in Documents Nos. 11–19. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020). Accordingly, in the interest of fairness, Document Nos. 1–9 and 11–19 contained in the privilege log must be disclosed to Defendant. This Court will preserve the privilege for Document No. 10.

## CONCLUSION

Defendant's request to compel the production of Document Nos. 1–9 and 11–19 contained in Plaintiff's privilege log, ECF 167-6, is GRANTED.

**IT IS SO ORDERED**.

DATED this 28th day of January, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 9 – OPINION AND ORDER