**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Ian Christy**, OSB No. 160116
ian.christy@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

*Attorneys for Plaintiff Dry Bulk Singapore Pte. Ltd.*

(additional counsel listed on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., | **No. 3:19-CV-01671-IM** |
| Plaintiff, | |
| vs. | **Admiralty** |
| AMIS INTEGRITY S.A. and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*. | **PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL ARREST** |
| Defendants. | **REQUEST FOR ORAL ARGUMENT** |

Page 1 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
             SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
             ARREST

## LR 7-1 CERTIFICATION

In accordance with LR 7-1, counsel for plaintiff Dry Bulk Singapore Pte. Ltd. certifies that they conferred with counsel for defendants about this motion by telephone in a good faith effort to resolve this dispute.

## I.  MOTION

Plaintiff Dry Bulk Singapore PTE. LTD. ("Dry Bulk") respectfully moves this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment and dismissing the wrongful arrest counterclaim asserted by Amis Integrity S.A. ("Amis"), by way of a restricted appearance under Supplemental Rule E(8) as claimant to the M/V AMIS INTEGRITY (the "Vessel").  Dkt. 134.  There can be no dispute that Dry Bulk acted reasonably and upon the advice of counsel in arresting the Vessel, and therefore has an absolute defense to Amis's counterclaim.

## II.  INTRODUCTION AND BACKGROUND

In order for Amis to prevail on its wrongful arrest counterclaim, it must show that Dry Bulk acted in bad faith when it arrested the Vessel.  However, the evidence produced herein, including the pre-suit attorney-client communications produced in accordance with the Court's order (Dkt. 179), establishes that Dry Bulk sought the advice of U.S. counsel before arresting the vessel, and that Dry Bulk's counsel advised that a good faith basis existed to proceed with the action under U.S. law.  *See, e.g.,* Ex. A at DB001317 ("I have reviewed the materials and I am of the opinion that your company has a very colorable right to arrest the vessel *in rem*…).  Even if that advice of counsel may later prove to have been erroneous (which Dry Bulk does not concede to be the case), under longstanding maritime law, "the advice of competent counsel, honestly sought and acted

Page 2 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
ARREST

upon in good faith is alone a **complete defense** to an action for malicious prosecution." *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) (emphasis added).  As such, Amis's wrongful arrest counterclaim must be dismissed and the monies posted as security for this counterclaim should be immediately released from the Court's registry.

The basic facts are that Dry Bulk was the sub-charterer of the M/V AMIS INTEGRITY, having chartered[1] the Vessel from 24Vision Chartering Solutions, DMCC ("24Vision").  While the parties dispute the exact timing, on or about July 11 or July 12, 2019, the Vessel was withdrawn by Amis from 24 Vision's service due to its failure to make timely hire[2] payments under the head charter.  (24 Vision had earlier on July 11, 2019, itself wrongfully withdrawn the Vessel from Dry Bulk's use.)  At the time of this withdrawal, Dry Bulk had already pre-paid hire to 24Vision for Dry Bulk's continued use of the Vessel, and the Vessel was in ballast[3] *en route* to a delivery port for Dry Bulk's sub-charter of the Vessel to Trithorn Bulk ("Trithorn").  At the time Amis withdrew the Vessel from 24Vision, Amis had notice of both Dry Bulk's status as sub-charterer of the Vessel from 24 Vision and of Dry Bulk's own sub-charter of the Vessel.  As a result of the withdrawal of the Vessel, Dry Bulk suffered damages in excess of $3,800,000.

On October 17, 2019, Dry Bulk commenced an *in rem* action against the Vessel under U.S. maritime law and had it arrested in Vancouver, Washington.  Dkt. 11.  Dry Bulk maintains that it possesses maritime liens against the Vessel for various maritime torts under U.S. maritime law, including tortious interference, conversion, and unjust enrichment.  Dkt. 1.  (To be clear, Dry

---

[1]  A charter party is a maritime contract between a vessel owner and charterer for the use of the ship. A time charter is a maritime contract for the use of a vessel for an agreed period of time.
[2]  "Hire" is the money paid by the charterer of a ship to the owner for the use of the vessel.
[3]  "In ballast" means the ship was proceeding without any cargo on board.

Page 3 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
          SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
          ARREST

Bulk's arrest of the Vessel was premised on U.S. maritime law, and not English or any other foreign law.)  In response to the *in rem* action, Amis filed a counterclaim for wrongful arrest, alleging that Dry Bulk had arrested the vessel in bad faith.  Dkt. 46.  On August 26, 2020, Dry Bulk filed a verified amended complaint to add additional defendants.  Dkt. 113.  Amis filed its most recent amended answer on September 29, 2020.  Dkt. 126.

### III.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

### IV.  ARGUMENT AND AUTHORITY

While the Ninth Circuit has not expressly opined on the advice-of-counsel defense in the context of a vessel arrest, this Court has already "accept[ed] the applicability of *Frontera* and finds that Plaintiff is entitled to invoke the advice of its counsel as a defense to Defendant's wrongful arrest claim."  Dkt. 179 at p. 5.  Further, Amis has itself acknowledged that "Plaintiff is entitled to

Page 4 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
             SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
             ARREST

invoke advice of counsel as a defense to the wrongful arrest counterclaim." Dkt. 177 at p. 5. Accordingly, this Court's adoption of *Frontera* stands as law of the case. *See Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) ("The law of the case doctrine holds that 'a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case.'" (quoting *Gonzalez v. Ariz.*, 677 F.3d 383, 389 n. 4 (9th Cir. 2012))), aff'd, 794 F.3d 1136 (9th Cir. 2015).

With the threshold issue of the availability of the defense having been settled, Dry Bulk respectfully submits that the advice-of-counsel defense set forth in *Frontera Fruit Co. v. Dowling*, 91 F.2d 293 (5th Cir. 1937) acts as a **complete bar** to Amis's wrongful arrest counterclaim. Some 85 years ago, the Fifth Circuit in *Frontera* dismissed a claim for the alleged wrongful arrest of a vessel, holding as follows:

> The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party. The reasons for the award of damages are analogous to those in cases of malicious prosecution. The defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith, with malice, or through a wanton disregard of the legal rights of his adversary. The courts are institutions for the settlement of disputes both as to law and facts. Where citizens reasonably disagree concerning their rights, powers, and privileges, the doors should be kept open for an orderly determination of their differences. ***It has been held by this court that the advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution. The same principle controls the case at bar.*** The claim of the right to subrogation based on the advice of its attorney, erroneous though it may have been, honestly obtained and reasonably accepted, gave appellant access to the process of the court until that claim of right could be adjudicated, and no damages can be assessed against it for fairly submitting it for determination.

*Id*. at 297 (internal citations omitted; emphasis added).

Page 5 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
ARREST

Over the intervening years, multiple circuit courts have reaffirmed *Frontera*'s basic premise that proof of bad faith or maliciousness is necessary for a ship owner to recover for a claim of wrongful arrest of a vessel. *See, e.g., Indus. Mar. Carriers, LLC v. Dantzler, Inc*., 611 F. App'x 600, 603 and 606 (11th Cir. 2015); *Cent. Oil Co. v. M/V Lamma-Forest*, 821 F.2d 48, 51 (1st Cir. 1987); *Ocean Ship Supply, Ltd. v. MV Leah*, 729 F.2d 971, 974 (4th Cir. 1984).

One district court expounded upon the trouble with wrongful arrest claims given the realities of international maritime trade as follows:

> The maritime doctrine of wrongful arrest is guided by two considerations: on the one hand, the right of ship owners to remain secure in their rights to possession; on the other, the need to swiftly arrest vessels that may soon flee to the high seas. See *Indus. Mar. Carriers, LLC v. Dantzler, Inc*., 611 Fed. Appx. 600, 602-03 (11th Cir. 2015). To balance those competing interests, the law provides a procedure to arrest vessels *ex parte*, without a hearing, and vessel owners the chance to vacate such arrests at prompt show cause hearings. See *id*. Within that framework, the right to recover damages for the wrongful arrest of a vessel acts as a ward against those who might abuse the law's need for haste in choppy situations of the sea. As it has developed within our jurisprudence, the right to recover damages for the wrongful arrest of a vessel has been limited to cases of bad faith, malice, or gross negligence, wherein a frivolous arrest appears to have been brought about with the intention of causing harm, akin to a malicious prosecution. ***It has not applied to arrests brought about by mere negligence because the need for haste often results in hasty decision-making, and to impose liability for wrongful arrest upon all those who, through certain errors, mistakenly cause a vessel to be arrested would be to diminish the viability of a procedure designed for haste in the first place.*** "Thus, the plaintiff bears the burden of proving that the attachment was done in bad faith, and ***if the defendant establishes that it honestly relied on the advice of counsel in attaching the vessel, then there is no liability***." *Dantzler*, 611 Fed. Appx. at 603.

*Middleton v. M/V Glory Sky I*, No. 13-21588-CV, 2016 WL 4923097, at *2 (S.D. Fla. Jan. 8, 2016) (emphasis added).

In cases where there may be a "bona fide dispute over the validity of [the] lien" and "the parties could have legitimately and honestly believed the lien would stand up," the Fifth Circuit

Page 6 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
ARREST

instructs that a party has acted in good faith in arresting a vessel. *See Casillo Commodities Italia S.P.A. v. M/V LONG CHEER*, No. CV 16-16612, 2017 WL 2804925, at \*5 (E.D. La. June 28, 2017) (citing *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 475 (5th Cir. 1984)).[4]

Here, the evidence (some 200+ pages of pre-arrest attorney-client communications produced in response to Amis's discovery requests, attached hereto as Ex. A) conclusively establishes that Dry Bulk sought the advice of competent U.S. counsel (attorney Michael G. Chalos[5]) before proceeding with the arrest of the M/V AMIS INTEGRITY in U.S. waters and based on U.S. law. These communications also establish that Mr. Chalos explicitly advised Dry Bulk that it possessed a good faith basis to proceed with a vessel arrest, notwithstanding some challenging legal arguments that might need to be overcome for an ultimate recovery. In this regard:

- On August 14, 2019, Dry Bulk's principal, Stavros Tsolakis, contacted Mr. Chalos' law firm to outline the underling dispute in broad terms and inquire whether a vessel arrest might be possible in the U.S. Ex. A at DB001304-1306.

- The following day, on August 15, 2019, Mr. Chalos responded by noting that "[y]our inquiry raises some very interesting legal issues. Under American law, a breach of a maritime contract (i.e. a C/P) creates both a maritime claim and right to attach the vessel (under Rule B of the Supplemental Rules for Admiralty), and a maritime lien against the vessel in rem which makes the vessel subject to arrest under Rule C." While noting that English law might be implicated, Mr. Chalos stated that the "general consensus in US courts is that assertion of a maritime claim or lien is procedural in nature (as opposed to substantive) and, as such, US law applies to the issue of whether the attachment

---

[4] Notably, Amis's counsel should be familiar with the fact that a legitimate dispute regarding the legal basis for a vessel arrest cannot sustain a wrongful arrest claim. *See Chemoil Corp. v. M/V DARYA VISHNU*, No. C13-5494 RBL, 2013 WL 6328829 (W.D. Wash. Dec. 5, 2013), where Mr. Oberg represented the defendant vessel *in rem*, and the court dismissed the vessel's wrongful arrest counterclaim, noting, "it is not bad faith for Chemoil to seek to procure payment through a maritime lien it honestly believes it possesses." *Id*. at \*3.

[5] Mr. Chalos has more than 40 years' experience in the practice of maritime law, is a member of the United States Maritime Law Association ("MLA") and is a Proctor in Admiralty. *See* Mr. Chalos's bio, available at https://chaloslaw.com/attorneys/michael-g-chalos/, last visited on May 5, 2022. To the extent necessary, Dry Bulk respectfully requests that the Court take judicial notice of the representations made on Mr. Chalos' webpage.

Page 7 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL ARREST

or arrest is valid. … At the end of the day, if US law were to apply to the attachment/arrest, then it doesn't really matter if English law recognizes a maritime claim/lien..." Ex. A. at DB001307-1308.

- On October 3, 2019, Mr. Chalos wrote to Dry Bulk and stated that "I have reviewed the materials and I am of the opinion that your company has a very colorable right to arrest the vessel *in rem*…" Ex. A at DB001317.

- Also on October 3, Dry Bulk's English counsel (Mr. Dominic Ward) wrote Mr. Chalos to explain that, under English law, the no-lien clause which may have existed in the Amis–24 Vision charter party would not prevent a third party from arresting the vessel, and "if the judge in the USA considers that DBS is entitled to arrest the vessel for its claim, the fact that the arrest would put 24Vision in breach of clause 20, and require 24 Vision to secure the claim, should not prevent the arrest being issued." Ex. A at DB001325-1326.

- On October 6, 2019, Mr. Chalos provided Dry Bulk with a draft of the Complaint that would eventually be filed, and stated in connection with that document that "the legal basis for the Complaint and request arrest of the vessel *in rem*, is that under US law a breach of a C/P for which C/P the vessel is the subject, gives rise to a maritime lien against the vessel for such breach, which lien can be exercised by an in rem arrest of the vessel. There will be an issue as to whether Dry Bulk was (or should have been) aware of the no lien provision of the Head charter between Amis Integrity S.A. and 24 Vision, but … we should be in a relatively good position to argue to the Court to uphold the arrest." Ex. A at DB001337.

- Also on October 6, Mr. Chalos wrote to Mr. Ward and noted that, while there may be some issues with respect to English law, the "argument we will raise under US law is that a vessel has an independent liability for breach of a charter party which creates a lien that can be enforced by an in rem arrest of such vessel. In other words, the vessel, under US law, creates its own lien for which it can be held liable. Since an arrest under the Supplemental Admiralty Rules is deemed to be procedural in nature, the court will apply US law to such lien and will uphold the arrest and demand for security in the first instance." Ex. A at DB001443.

As the Eleventh Circuit has noted, "[c]lients routinely rely on their attorneys to handle their

legal affairs. Our 'wrongful arrest' jurisprudence emphasizes this point by making honest reliance

on advice of counsel an absolute defense." *Dantzler*, 611 Fed. Appx. at 606.[6] That is exactly what happened here. Dry Bulk fully apprised its U.S. counsel of the relevant circumstances underlying the dispute, the U.S. counsel investigated and vetted potentially problematic issues involving a conflict of laws, but ultimately concluded and advised that Dry Bulk possessed claims sufficient to support a Rule C arrest, and U.S. counsel then commenced an action to arrest the Vessel. Dkt. 1. There can be no doubt that Dry Bulk's conduct leading up to the vessel arrest entitles it to the safe-harbor of *Frontera*'s advice-of-counsel defense.

Dry Bulk's former counsel advised that Dry Bulk possessed a colorable claim for a vessel arrest. While Amis's counsel may dispute that the vessel seizure was proper, even if Amis is ultimately vindicated on that point (which is not conceded), Dry Bulk cannot rightly be held liable for damages resulting from that arrest. **Simply pressing a losing legal argument cannot support a wrongful arrest claim against the seizing party**. *See, e.g.*, *Central Oil Co. v. M/V Lamma– Forest*, 821 F.2d 48, 51 (1st Cir. 1987) (affirming grant of summary judgment for defendant on a wrongful arrest claim where defendant had attached the plaintiff's vessel prior to a contractual payment due date, claiming that it anticipated a breach of contract and feared the vessel would have departed U.S. waters by the time the payment would be due); *Ocean Ship Supply, Ltd. v. MV Leah*, 729 F.2d 971, 974 (4th Cir. 1984) (in attachment action where there was a dispute concerning

---

[6] *See also Middleton v. M/V GLORY SKY*, 2017 WL 10718508, at *4 (S.D. Fla. Jan. 5, 2017), report and recommendation adopted, 2017 WL 10718509 (S.D. Fla. Jan. 19, 2017) ("Those pleadings establish that Plaintiff – although uncertain about the availability of filing an *in rem* action against the Glory Sky – believed he had colorable legal support for his position and relied on the advice of counsel prior to the arrest of the vessel. At worst, Plaintiff's behavior constitutes mere negligence, which is insufficient to establish bad faith or willful behavior on Middleton's part."); *Ray Cap. Inc. v. Castellano*, 2016 WL 3896515, at *3 (S.D. Ga. July 14, 2016), order vacated on reconsideration on other grounds, 2016 WL 4154459 (S.D. Ga. Aug. 4, 2016) ("While Defendants have demonstrated that the prior arrest was improper, they will not be awarded costs, attorney's fees, or damages… ***Plaintiffs relied on the advice of counsel in seeking the arrest***." (emphasis added)).

Page 9 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL ARREST

whether U.S. or Canadian law should apply, there was no bad faith sufficient to support a wrongful arrest claim despite a later determination that Canadian law applied and the attachment was illegal under Canadian law).

With respect to vessel seizures under Supplemental Admiralty Rule C, the Ninth Circuit has stated:

> [The plaintiff] cannot be held liable for [damages] resulting from having validly invoked judicial process by securing [the defendant's] vessel. "The arrest of a vessel in admiralty is an inconvenience to which the owners must submit as one caused by the exercise of a legal right on the part of the plaintiff, and unless the attachment is mala fide, or by such gross negligence as to amount to bad faith, no damages can be recovered for detention caused by such arrest."

*Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir. 1981) (quoting *The Swedish Bark Adolph*, 5 F. 114 (S.D.N.Y. 1880).

Here, Dry Bulk has produced clear evidence that the arrest of the M/V AMIS INTEGRITY was premised on the good faith advice of counsel concerning the application of U.S. law – *prima facie* proof under *Frontera* that there was no bad faith on the part of Dry Bulk. Amis's counterclaim for wrongful arrest must therefore be dismissed. Moreover, Dry Bulk respectfully requests that the Court order that the amounts it was required to post to the Court's registry as counter-security for the wrongful arrest claim be promptly disbursed back to Dry Bulk, care of its undersigned counsel.[7]

/ / /

/ / /

/ / /

---

[7] The funds were provided by Tradewind Finance, a company to which Dry Bulk assigned the proceeds of any recovery in this case. *See* Dkts. 108 and 112.

Page 10 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL ARREST

DATED:      May 13, 2022         Respectfully submitted,

MILLER NASH LLP

*s/ Ian M. Christy*

M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
Ian M. Christy, OSB No. 160116
ian.christy@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155


and

BLANK ROME LLP

*s/ John D. Kimball*

John D. Kimball, *pro hac vice*
jkimball@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.885.5000
Facsimile: 212.885.5001

and

Jeremy A. Herschaft, *pro hac vice*
jherschaft@blankrome.com
Zachary Cain, *pro hac vice*
zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: 713.632.8655
Facsimile: 713.228.6605

*Attorneys for Plaintiff*
*Dry Bulk Singapore Pte. Ltd.*


Page 11 -   PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL
ARREST

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

BY:   *s/ Ian M. Christy*
Ian M. Christy, OSB No. 160116

Page 1 –    CERTIFICATE OF SERVICE