**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Ian Christy**, OSB No. 160116
ian.christy@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

*Attorneys for Plaintiff Dry Bulk Singapore Pte. Ltd.*

(additional counsel listed on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DRY BULK SINGAPORE PTE. LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AMIS INTEGRITY S.A. and M/V AMIS INTEGRITY (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc., *in rem*. <br><br> Defendants. | No. 3:19-CV-01671-IM <br><br> **Admiralty** <br><br> **PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS** <br><br> **REQUEST FOR ORAL ARGUMENT** |

Page 1 - PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

159462.00601/128815070v.1

## LR 7-1 CERTIFICATION

In accordance with LR 7-1, counsel for plaintiff Dry Bulk Singapore Pte. Ltd. certifies that they conferred with counsel for defendants about this motion by telephone in a good faith effort to resolve this dispute.

## I.  MOTION

Plaintiff Dry Bulk Singapore PTE. LTD. ("Dry Bulk") moves this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment and dismissing defendant Amis Integrity S.A.'s ("Amis") counterclaims for breach of contract and unjust enrichment. The counterclaims are premised on purported assignments of bunker fuel claims (the "bunker claims") from GP Global ARA B.V. and GP Global APAC Pte. Ltd. (collectively, "GP Global").  Dkt. 126.  Amis filed its counterclaims on behalf of *in rem* defendant M/V AMIS INTEGRITY (the "Vessel") by a restricted appearance under Supplemental Admiralty and Maritime Rule E(8).  Because Amis has made a restricted appearance solely as the claimant to the Vessel, and has purportedly refrained from appearing *in personam*, the proponent of these counterclaims must be considered the Vessel. *See* Dkt. 163 at 25.  Dismissal of these counterclaims is required because the Vessel has no legal capacity to acquire the assignments or prosecute these claims. To the extent Amis is actually prosecuting these claims on its own account, they must be dismissed because they fall outside the scope of what a party making a restricted appearance is permitted to do under Supplemental Rule E(8).  Several other grounds for dismissal are discussed below.

/ / /

/ / /

Page  2  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

## II.  INTRODUCTION AND BACKGROUND

This is a civil *in rem* admiralty action filed by Dry Bulk against the Vessel for (A) the wrongful withdrawal of the Vessel by Amis and its related entities under a charter party[1] between Dry Bulk and 24 Vision Chartering Solutions ("24 Vision"); (B) conversion of unearned charter hire and bunkers; (C) tortious interference with Dry Bulk's sub-charter of the Vessel; and (D) unjust enrichment.

As shown in the Joint Statement of Facts, the basic facts are that the Vessel was owned by Amis and chartered to 24 Vision, which sub-chartered it to Dry Bulk.  *See* Joint Statement, ¶¶ 1-14.  While the parties dispute the exact timing, on or about July 11 or July 12, 2019, the Vessel was withdrawn by Amis from the service of 24 Vision due to its failure to make timely hire payments under the head charter.  *Id.*, ¶¶ 15-21.  24 Vision had earlier on July 11, 2019, itself withdrawn the Vessel from Dry Bulk's use, and Dry Bulk contends that withdraw was wrongful. *Id.*, ¶ 20.  At the time of the withdrawal, Dry Bulk had already pre-paid hire to 24 Vision for the continued use of the Vessel, and the Vessel was proceeding in ballast[2] to a delivery port for Dry Bulk's sub-charter of the Vessel to Trithorn Bulk ("Trithorn").  Amis's withdrawal of the ship from 24 Vision precluded any further employment of it by Dry Bulk.  At the time Amis withdrew the Vessel from 24 Vision, however, Amis had notice of both Dry Bulk's status as sub-charterer of the Vessel from 24 Vision, and of Dry Bulk's own sub-charter of the Vessel.  As a result of the withdrawal of the Vessel, Dry Bulk suffered damages in excess of $3,800,000.

---

[1] A charter party is a maritime contract for the use of a vessel. The charter between Amis and 24 Vision was a time charter by which the latter was entitled to the use of the vessel for an agreed period of time.  *See* Dkt. 182, Rule 56 Joint Statement of Agreed Facts (the "Joint Statement"), ¶¶ 1-14. The money paid for the use of the ship is called "hire."

[2] "In ballast" means the ship was proceeding without any cargo on board.

Page  3 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
             SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
             CLAIMS

Dry Bulk filed its Verified Original Complaint in this action on October 17, 2019, naming as defendants Amis Integrity S.A. *in personam*, and M/V AMIS INTEGRITY *in rem*.  Dkt. 1.  A Warrant of Arrest was issued in accordance with the provisions of Supplemental Admiralty Rule C (Dkt. 11), and the Vessel was arrested on the same day.  Amis made a restricted appearance under Supplemental Admiralty Rule E(8) as the registered owner of the Vessel.  Dkt. 17.

Following a substitution of counsel for Dry Bulk, the Court granted Dry Bulk leave to file an amended complaint asserting claims against the Amis-affiliated entities Wisdom Marine Lines S.A. ("Wisdom Marine") and Wisdom Marine Lines Co. Ltd. ("Wisdom Limited"), along with separate allegations of alter-ego liability as to all defendants.  *See* Dkt. 112.  Dry Bulk filed the Amended Complaint on August 26, 2020 (*see* Dkt. 113) and served all *in personam* defendants within the timeline set by the Court.  Dkt. 127.

On September 29, 2020, Amis filed its Amended Answer and Counterclaims (Dkt. 126) in response to Dry Bulk's amended complaint, a filing made by a restricted appearance as claimant to the Vessel.  Notably, Amis included as counterclaims not just issues related to the vessel's purported wrongful arrest, but also entirely unrelated independent causes of action for breach of contract and unjust enrichment based on claims Amis allegedly acquired via assignments from GP Global (i.e., the bunker claims).  *See* Dkt. 126 at 10 and 12, attached hereto by Dry Bulk as Ex. A.[3]  On October 14, Amis's counsel filed notices of appearance on behalf of Wisdom Marine and Wisdom Limited.  *See* Dkts. 135 and 136.

---

[3] Please see Joint Statement ¶¶ 22-41 for the factual background pertaining to the GP Global assigned bunker claims and Dry Bulk's Singapore bankruptcy, which are all incorporated herein by reference.

Page  4 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
             SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
             CLAIMS

The Court allowed Dry Bulk to conduct jurisdictional discovery to determine whether there was a basis for asserting personal jurisdiction over Amis, Wisdom Marine and/or Wisdom Limited under Fed. R. Civ. P. 4(k)(2) for the *in personam* claims Dry Bulk asserted against them.  *See* Dkt. 116.  Once jurisdictional discovery closed, defendants moved for dismissal of the *in personam* claims based on the following arguments:

- Service of process was allegedly defective as to all Defendants; and,

- General personal jurisdiction was purportedly lacking for all *in personam* Defendants.

Dkt. 153.

On April 16, 2021, the Court (at the time, Senior Judge Anna J. Brown) issued its Opinion and Order.  *See* Dkt. 163.  The Court rejected Defendants' motion to dismiss based on the grounds of improper service but concluded the Court lacked personal jurisdiction over Wisdom Marine, Wisdom Limited and Amis and therefore dismissed the *in personam* claims against them, leaving only the *in rem* claims against the Vessel.  In response to arguments that Amis had waived its personal jurisdiction defense by pursuing the bunker claims which could not be affirmatively asserted by the Vessel *in rem*, "[t]he Court agree[d] with Amis that it is inappropriate to abrogate Amis's due-process rights **at this stage of the litigation** based on a jurisdiction motion founded on a technical waiver argument."  Dkt. 163 at p. 19 (emphasis added).  Implicit in the Court's statement is the recognition that the assigned bunker claims could not properly be brought by the Vessel in its *in rem* capacity, but had to have been asserted by Amis, *in personam*.

In the year since Amis was dismissed from the case, it has continued to pursue the GP Global-assigned bunker claims against Dry Bulk by its restricted appearance.  The parties have

Page  5  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

conducted extensive discovery into issues which related solely to the bunker claims which were contractually assigned to Amis and purportedly also assigned to the Vessel. Amis and Dry Bulk both retained experts in Singapore law to address whether the GP Global claims have any continued validity given Dry Bulk's Singapore bankruptcy proceeding. These experts both offered written opinions and were each deposed in April 2022. (The opinions of Dry Bulk's expert in Singapore law, M. Nawaz Kamil, are attached hereto as Exs. B and C and are discussed below.)[4]

Dry Bulk now seeks an order granting summary judgment and dismissing the GP Global-assigned bunker claims.[5] Dismissal is required for several reasons. The first, and most significant, is that while Amis has claimed that it is asserting the GP Global bunker claims in its restricted capacity on behalf of the *in rem* defendant, the Vessel is not a juristic person for the purpose of making *in personam* affirmative claims unrelated to the claims alleged in Dry Bulk's Complaint and which led to the Vessel's arrest under Rule C. As such, the Vessel *in rem* lacks both standing and capacity to sue Dry Bulk for alleged breach of contract and unjust enrichment bunker claims.

Second, to the extent Amis is pursuing the GP bunker claims for its own benefit, this goes well beyond the scope of what is permitted for a vessel owner making a restricted appearance.

Third, even if the Vessel possessed the ability to bring unrelated counterclaims without some juristic entity becoming subject to *in personam* jurisdiction (which is denied), the bunker

---

[4] Both foreign law experts prepared their opinions in "the Singapore way," meaning that all documents referenced and relied upon in their reports are appended thereto, and resulting in reports with more than 1,500 pages of attachments. To avoid unnecessarily voluminous filings with this Court, the expert reports included as exhibits to this motion only include the narrative portion of each expert's respective opinion, as well as excerpts of those reports' attachments that are specifically cited herein.

[5] Dry Bulk filed a separate motion for summary judgment for dismissal of Amis's wrongful arrest counterclaims.

Page  6 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
CLAIMS

159462.00601/128815070v.1

claims should be dismissed because GP Global's claims, which were assigned to Amis, were extinguished by Dry Bulk's Singapore bankruptcy proceeding.

Fourth, even if that were not the case, the bunker claims are still subject to dismissal based on GP Global's applicable Terms and Conditions, which call for arbitration in London and Singapore.

Finally, because Dry Bulk has been forced to incur substantial legal fees and expenses in defending against claims that cannot properly be maintained by the Vessel *in rem*, despite Amis having been put on notice of this fact more than a year ago, Dry Bulk should be awarded its reasonable legal fees related to such defense.

## III.  STANDARD OF REVIEW

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor.  *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).  In a non-jury setting, like the admiralty case at hand, "where there are no issues of witness credibility, the Court may make factual determinations and draw inferences at the summary judgment stage based on the affidavits, depositions and other evidence in the record, because '[a] trial on the merits would reveal no additional data' nor 'aid the determination.'"  *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1251 (11th Cir. 2016) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978)).  "Where the record taken as a whole

Page  7 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
             SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
             CLAIMS

could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## IV.  ARGUMENT AND AUTHORITY

Supplemental Admiralty Rule E, which provides the basis for Amis's restricted appearance, states as follows:

> RESTRICTED APPEARANCE.    An appearance **to defend against** an admiralty and maritime claim with respect to which there has issued process *in rem*, or process of attachment and garnishment, may be expressly restricted **to the defense of such claim**, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

Supp. Admiralty Rule E(8) (emphasis added).

Thus, while a vessel owner may file a restricted appearance under this rule, it may do so only to defend the claims which gave rise to the *in rem* action.

### A.  The Vessel, *in rem*, lacks the legal capacity to assert the GP Global-assigned bunker claims

In prior briefing, Amis argued that it was asserting the bunker counterclaims "on behalf of the Vessel." *See* Dkt. 157 at p. 9.  Specifically, Amis stated as follows:

> The bunkers counterclaim, which Amis Integrity S.A. asserted on behalf of the Vessel (Dkt. 126), was premised upon an assignment of GP Global's claims against Plaintiff (for failure to pay for bunker fuel) to Amis Integrity S.A. and M/V AMIS INTEGRITY, jointly and severally.  Amended Answer ¶ 25 (Dkt. 126), Exhibit A (Dkt. 126-1).  Under the admiralty law, *in rem* suit is possible because of the "long-standing admiralty fiction that a vessel may be assumed to be a person for the purpose of filing a lawsuit and enforcing a judgment." *Mazda Motors of Am., Inc. v. M/V Cougar Ace*, 565 F.3d 573, 576 (9th Cir. 2009) (citing *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 22-23, (1960)).  **Thus, the Vessel is fully capable of asserting the bunkers counterclaim under the admiralty law**...

Page  8  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

159462.00601/128815070v.1

Dkt. 157 at p. 10-11 (emphasis added). Dry Bulk respectfully submits this argument is nonsensical, as it flips the nature of *in rem* proceedings on its head.

Amis's citation of *Mazda Motors* was misleading and failed to quote the directly following sentence which explained that "[t]he purpose of this legal fiction is to allow actions **against ships** where a person owning the ship could not be reached." *Mazda Motors*, 565 F.3d at 576 (emphasis added; internal quotations omitted). Thus, the case does not hold that an *in rem* defendant has the capacity or standing to prosecute a claim, especially one that has no relationship to the claims alleged in Dry Bulk's amended complaint.

As the Ninth Circuit recognized in *Mazda Motors*, the ancient custom of maritime *in rem* actions almost uniformly involve claims brought ***against*** a vessel, not affirmative claims prosecuted ***by*** the vessel unrelated to the arrest.[6] In this regard, "[t]he legal fiction of the primary responsibility of property, under certain circumstances, is the basis of all proceedings *in rem*." Waples, *A Treatise on Proceedings In Rem I* (1882) at § 1, p. 1-2.[7] An *in rem* proceeding "treats property, therefore, as the defendant, susceptible of being tried and condemned, while the owner merely gets notice, along with the rest of the world, and may appear for his property or not." *Id.* at p. 2. "Such personification of the vessel, treating it as a juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the ship for which, as a juristic person,

---

[6] The sole "exception" to this rule which we have found in the case law involves cases where two vessels collide or allide, and the suit is styled as being "Vessel 1 v. Vessel 2," with each vessel seeking to recover *in rem* from the other for the damage incurred as a result of the impact between the ships. (In such cases, while the vessels may be the nominal parties for the purposes of the style of the case, vessel interests such as owners and managers frequently appear as well to pursue *in personam* claims against their counterparts.) However, this case does not involve a casualty resulting from the collision of vessels (i.e., competing property damage claims by vessels that are brought *in rem* versus *in rem*) – it is a simple breach of contract claim which is properly characterized as being between two companies (i.e., between two non-human juridical entities which have statutorily been granted the capacity to enter into contracts).
[7] *See* Ex. I, an extract from the Treatise.

Page 9 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
            SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
            CLAIMS

she is legally responsible, has long been recognized by this Court." *Canadian Aviator, Ltd., v. United States*, 324 U.S. 215, 224 (1945).  The key to status as an *in rem* defendant is that the vessel is being held directly liable for injuries it caused.

The legal theory pressed by Amis for the recognition of the personhood of a vessel outside the scope of claims which give rise to the arrest is quite novel, such that the undersigned were unable to find another similar case directly on point.  However, the First Circuit's commentary from a marine salvage case, where a "vessel" *in rem* ostensibly sought to recover as a plaintiff, is instructive:

> [T]he only ships involved as legal entities in cases of marine salvage are the vessels salved....  **[S]o far as we have been able to determine libels in admiralty for salvage have never been brought in this country by the rescuing vessel as a juristic person, nor has salvage ever been awarded to such a vessel as an entity.**  Here salvage suits are apparently always brought by, and salvage awarded to, the owner of the vessel making the rescue to compensate him for any monetary loss he may have suffered as a result thereof, and to reward him for such risks as his property may have incurred in the venture, and by the officers and crew of the rescuing vessel, either themselves or by the owner of their vessel on their behalf, to compensate them for their exertions and to reward them for their personal risk.

*United States v. The James L. Richards*, 179 F.2d 530, 532 (1st Cir. 1950) (emphasis added).

Despite Amis's protestations to the contrary, the GP Global-assigned bunker claims which were acquired by Amis can only be asserted by a person or entity, appearing *in personam*, that possesses the legal capacity to sue on that claim.  Here, Amis received notice of the *in rem* claims brought by Dry Bulk against the Vessel and, as the vessel's registered owner, Amis was entitled to enter a restricted appearance as a claimant to the *res*, so as to protect its ownership interest.  But the *in rem* legal fiction does not grant the Vessel sentience; the AMIS INTEGRITY is not truly a person defending itself or an entity that possesses the legal right to sue for an alleged breach of

Page  10  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
CLAIMS

contract.  Instead, as an interested party, Amis is permitted by the Supplemental Admiralty Rules to appear in a limited capacity solely to **defend** the claims levied against the ship.[8]  The Vessel itself has not and cannot enter a formal appearance for itself before the Court.  In this regard, even the merits-based discovery ostensibly propounded by "M/V AMIS INTEGRITY" confirms that the "juristic personhood" fiction can only go so far – as shown on Dkt. 155-2 at p. 8, the signature block for "the Vessel's" discovery confirms that it was issued by "Attorneys for Defendant Amis Integrity, S.A., by restricted appearance."  Even more telling is the fact that, while the Vessel is purportedly a named "assignee" in the GP Global claim assignment, the agreement was only executed on behalf of and with the authority of Amis Integrity S.A.  No signature line is provided for the Vessel.  *See* Ex. A, Dkt. 126-1 at p. 3.

The omission of a signature block on the Assignment for the inanimate Vessel is a clear recognition that it lacks the juristic-personhood necessary for the ability to possess an *in personam* contract claim.  While the fiction of a Vessel arguably having a "personal" vested interest in a wrongful arrest counterclaim may make sense (to the extent the arrest might be characterized as wrongfully impeding the Vessel's movement), there is simply no logical or legal basis to support an argument that an inanimate Vessel can purchase assignments of rights from unrelated third parties which have claims against Dry Bulk and then sue on those claims.  The personhood fiction extended to corporations and other similar business entities (like Amis) to sue in their own capacity is established by statute and/or rule (*see, e.g.,* Fed. R. Civ. P. 17(b) and OR Rev Stat § 60.077(2)(a) – granting corporations the legal capacity of an individual to sue and be sued) has **not** been

---

[8] *See* Supplemental Admiralty Rule E(8) – "*RESTRICTED APPEARANCE*. An appearance **to defend against an admiralty and maritime claim** with respect to which there has issued process *in rem*, or process of attachment and garnishment, may be expressly restricted **to the defense** of such claim..."  *Id.* (emphasis added).

Page  11  -  PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
CLAIMS

extended to mere inanimate objects such as the Vessel.  Thus, at a bare threshold level, the Vessel lacks the requisite legal capacity and standing to prosecute the assigned breach of bunker contract claims.

To the extent that Amis wished to prosecute the assigned alleged breach of contract claims it acquired from GP Global against Dry Bulk, it was incumbent on Amis to appear *in personam* for the litigation those claims, rather than by a restricted appearance.  Because Amis instead sought, and was granted, dismissal from this case in its *in personam* capacity, there is no entity presently before the Court with standing or legal capacity to assert the GP Global-assigned bunker claims. Thus, those claims must be dismissed.

## B.  The assigned GP Global bunker claims were extinguished by Dry Bulk's Singapore bankruptcy

To the extent that the Court agrees that the Vessel lacks the capacity to pursue affirmative claim unrelated to Dry Bulk's seizure of the Vessel, it need not reach consideration of the additional bases for dismissal of the GP Global-assigned bunker claims argued by Dry Bulk herein. However, out of an abundance of caution, Dry Bulk would further show that the bunker counterclaims should also be dismissed based on principles of comity because the claims belonging to GP Global and assigned to Amis were subject to and later extinguished by Dry Bulk's insolvency proceeding in Singapore, as noted in Dry Bulk's answer to Amis's counterclaims.  *See* Dkt. 134 at p. 5.

Preliminarily, Dry Bulk notes that the Claim Assignment Agreement states that it is subject to federal maritime law, as supplemented by the laws of Oregon, as needed.  *See* Ex. A at Dkt. 126-1, p. 3.  "An assignment takes place when a third party pays off the creditor directly and is

Page  12  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
                SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
                CLAIMS

subrogated in the creditor's rights in the debt and lien.  Assignment should be in writing and notice thereof should be given to the debtor." *Tramp Oil & Marine Ltd. v. M/V MERMAID I*, 630 F.Supp. 630, 634 (D.P.R. 1986), affirmed, 805 F.2d 42 (1st Cir. 1986).  Maritime claims "may [] be assigned allowing for the assignee to stand in the shoes of the assignor provided the assignee has no close relationship to the owner." *Id*.  And under Oregon law, an assignee/subrogee stands in the shoes of the assignor and can assert rights no greater than those of the assignor.  *See Oregon Life & Health Ins. Guar. Ass'n v. Inter-Reg'l Fin. Grp., Inc*., 156 Or. App. 485, 491 (1998). Accordingly, it is necessary to assess whether Dry Bulk possesses any defenses to those bunker claims originally possessed by GP Global, on which Amis (or, ostensibly, the Vessel) now seeks to recover.

The declarations and testimony offered by Singapore insolvency law expert Mohamed Nawaz Kamil make clear that the claims relating to bunker invoices issued by GP Global ARA BV and GP Global APAC PTE. LTD have been extinguished by virtue of the Singapore bankruptcy proceeding, regardless of whether they are brought by GP Global or by Amis based on assignments.[9]  Specifically, Kamil opined as follows:

- Dry Bulk applied to the courts of Singapore for a moratorium and for leave to convene a Scheme Meeting with its creditors for the purpose of restructuring its debt. Ex. B at p. 3-4.

- Notice of the proposed Scheme and the timing of the Scheme Meeting was provided to Dry Bulk's creditors, including GP Global.  Ex. B. at p. 5 and p. 8-9.

---

[9] Amis tendered the opinion of a competing Singapore attorney, Alexander Yeo, who contends  the GP Global assignments had the effect of evading the ramifications of the Singapore proceeding on GP Global's bunker claims. *See* Exs. F-H, Yeo's three opinions offered in this matter, which are attached hereto for the sake of having a full record. But, as explained below by Kamil, Yeo is mistaken in his assessment.

Page  13  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

- GP Global appeared in the Singapore Proceeding (*see* Ex. B at p. 786), and thereby submitted to the jurisdiction of the Singapore court. Ex. B at p. 9.

- GP Global was explicitly listed as a Scheme Creditor in the proposed Scheme (*see* Ex. B at p. 35), and the definition of "Claims" subject to the proposed Scheme included "[t]he claims of each of the Scheme Creditors against the Company or any other claim against the Company arising out of any transaction, act or omission of the Company or of any person whether the claim be present, future or contingent, or whether liquidated or sounding only in damages and whether in contract or tort or howsoever arising…" Ex. B at p. 32.

- The Scheme was ultimately sanctioned by the High Court of Singapore. Ex. B at p. 4 and p. 6.

- Despite appointing counsel in connection with the Singapore Proceeding, GP Global failed "to lodge any proof of debts in respect of their purported claims against the Company in accordance with the terms of the Scheme (despite having been provided with adequate notice of the Scheme proceedings), [such that] the purported claims of the GP Entities has been 'forever waived, released, discharged and extinguished' vis a vis [Dry Bulk] and the GP Entities no longer have any residual rights and interests in respect of those claims." Ex. B at p. 9. *See* also Ex. B at p. 24.

- Because the definition of "claims" under the scheme extends to both claims by named Scheme Creditors and "any other claim" against Dry Bulk (and because the "claim" remains the same claim regardless of an assignment), the sanctioning of the Scheme by the High Court of Singapore acts to extinguish the bunker claims at issue, regardless of whether they were retained by GP Global or assigned to Amis.[10]  Ex. D, Kamil Depo at p. 30, p. 50-58, and p. 60-62. *See* also Ex. C at p. 5-6.

In sum, Amis obtained an assignment of claims from GP Global which were subject to the Singapore Proceeding.  On information and belief, Amis and Amis's counsel had knowledge that Dry Bulk was seeking bankruptcy protection as early as February 2020, and at the latest as of the date Dry Bulk filed its answer to Amis's bunker claims (i.e., October 13, 2020 at Dkt. 134).  If

---

[10] Kamil also noted that, to the extent that the assignment to Amis was made after GP Global had appeared and unsuccessfully attempted to resist the Scheme proposed in the Singapore proceeding, that there are serious doubts as to the bona fides of the assignment.  *See* Ex. C at p. 5-6.

Page  14  -  PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

Amis wished to preserve the value of the assigned bunker claims, it was incumbent on Amis to raise the issue to the Singapore High Court. Having failed to do so, Amis's claims, like the claims of GP Global from with they derive, have been extinguished upon the sanctioning of the Scheme. In light of these facts, and based on principles of international comity, this Court should recognize and give effect to the Singapore Proceeding and dismiss Amis's assigned bunker counterclaims.

### C. Amis's assigned bunker-claims are subject to foreign arbitration

As noted above, to the extent that the bunker claims are brought solely by the Vessel *in rem*, they are not properly before the Court. Regardless (and ignoring that such claims have also been extinguished by the Singapore Proceeding), to the extent these claims have been asserted in this action, they are subject to dismissal in favor of foreign arbitration.

Specifically, Amis and/or the Vessel brought suit in connection with two distinct bunker invoices. The first invoice was issued by GP Global ARA BV (a company of The Netherlands) in the amount of $50,419.66. *See* Ex. A, Dkt. 126-1 at p. 5.[11] Per the General Terms of Sale of Bunker Fuel by GP Global ARA BV at Ex. A, Dkt. 126-2 at p.15-16, "[a]ny dispute arising out of or in connection with this Bunker Contract … shall be referred to and finally resolved by arbitration under the [London Court of International Arbitration] Rules. [] The seat, or legal place, of arbitration shall be London."[12]

The second invoice was issued by Singapore company GP Global APAC PTE. LTD in the amount of $228,601.08, and provided that the sale was made "SUBJECT TO OUR GENERAL TERMS AND CONDITIONS." Ex. A, Dkt. 126-1 at p. 7.[13] While Amis did not include GP

---

[11] See Joint Statement ¶¶ 26-27.
[12] *Id*., ¶ 28.
[13] *Id*., ¶¶ 23-24.

Page  15  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
CLAIMS

Global APAC PTE. LTD's terms and conditions as an attachment to its counterclaim, they are publicly available online[14] and are attached hereto as Ex. E. The GP Global APAC PTE. LTD's terms also contain an arbitration clause, providing that "[a]ny dispute arising out of or in connection with this contract … shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre [] in accordance with [SIAC Rules]. The seat of the arbitration shall be Singapore." *See* Ex. E at p. 16.[15]

Dry Bulk raised the issue of Amis's claims being subject to arbitration in its Answer to Amis's Counterclaim. *See* Dkt. 134 at p. 8.

As an assignee, Amis steps into the shoes of the GP Global entities and is bound by the GP Global terms and conditions applicable to each respective bunker invoice on which it seeks to recover. As such, to the extent Amis seeks to recover for payment due for the bunkers from Dry Bulk, it is obligated by the Federal Arbitration Act ("FAA") and the New York Convention[16] to pursue those claims in London and Singapore, respectively.

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[T]he purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). As explained by the Ninth Circuit:

> Courts generally address four factors to determine whether to enforce an arbitration agreement under [the FAA and] the Convention. These four require that (1) there

---

[14] The terms and conditions can be found at http://www.gpglobal.com/wp-content/uploads/2019/09/general-terms-of-sale-of-bunker-fuel_singapore.pdf, last visited on May 10, 2022. To the extent necessary, Dry Bulk respectfully requests that the Court take judicial notice of the terms and conditions, as the source and accuracy of the document cannot be reasonably questioned given that they are publicly available on the GP Global website.

[15] See Joint Statement ¶¶ 25.

[16] The "New York Convention" refers to The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. The FAA is the statute which implements the New York Convention in the United States. *See* Chapter Two of the FAA, 9 U.S.C. §§ 201, *et seq*.

Page 16 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
             SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
             CLAIMS

is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland Am. Line Inc*., 583 F.3d 647, 654–55 (9th Cir. 2009) (internal citations and quotations omitted).

Here, all factors are satisfied. The GP Global invoices and their respective terms and conditions constitute written agreements. Both England and Singapore are contracting states to the New York Convention. *See* https://www.newyorkconvention.org/list+of+contracting+states. The invoices reflect the sale of bunker fuel, which is obviously a commercial transaction. And neither Dry Bulk nor GP Global ARA BV and GP Global APAC PTE. LTD (or their assignee, Amis) are citizens of the United States.

When a district court "determines that all of the claims raised in the action are subject to arbitration," it "may either stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's, Inc*., 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 638 (9th Cir. 1988) (holding that a district court may *sua sponte* dismiss a case if all claims are subject to an arbitration agreement)). Under the facts of this case, full dismissal of Amis's GP Global-assigned bunker claims is appropriate. In this regard, Dry Bulk must again note that the GP Global bunker claims are **<u>entirely unrelated</u>** to the Rule C arrest which Dry Bulk initiated against the AMIS INTEGRITY, or to Amis's counterclaim for alleged wrongful arrest. They have nothing to do with the underlying wrongful withdrawal of the Vessel from Dry Bulk's use, or to the damages Dry Bulk suffered as a result. The bunker claims did not originally belong

Page 17 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER CLAIMS

159462.00601/128815070v.1

to Amis – Amis is only able to raise the bunker claims by virtue of the assignment by a stranger to this lawsuit: GP Global. If Dry Bulk was raising the defense of arbitration against GP Global as the party asserting the bunker claims against Dry Bulk, then all claims possessed by GP Global would be subject to arbitration – with one invoice requiring arbitration in London and the other in Singapore. There would be nothing remaining for GP Global to assert in the Rule C action that would prompt the court to retain jurisdiction over the parties via staying the action pending arbitration. The Court should follow that result here, where Amis can only assert the bunker claims via the GP Global assignment – it should fully dismiss the bunker claims, and leave Amis to pursue them (if at all) in foreign arbitration as it bargained for in accepting the claim assignment.

## V. CONCLUSION

Dry Bulk takes no issue with the mere filing of a counterclaim by Amis, especially to the extent that it is directly related to the underlying exercise of *in rem* jurisdiction (*i.e.*, the wrongful arrest claim). But once Judge Brown sustained Amis's *in personam* personal jurisdiction defense and dismissed Amis from the case, she effectively dismissed the non-wrongful-arrest-related bunker claims. Stated differently, Amis won – following Judge Brown's ruling, the only target to respond to Dry Bulk's claims was the Vessel *in rem*. Amis, in its restricted appearance, remained in the case only to the limited extent it sought to **defend** the Vessel from the remaining *in rem* claims against it. But as explained above, the Vessel *in rem* cannot assert affirmative claims unrelated to either wrongful arrest or some other physical damage to the Vessel – a juristic person must be present before the Court to assert the *in personam* breach of contract claims against Dry Bulk. Because Amis, *in personam*, is not present to do so, this Court should make clear what Judge Brown's prior order only implied, namely the GP Global-assigned bunker claims against

Page 18 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
CLAIMS

159462.00601/128815070v.1

Dry Bulk must be dismissed.  Further, because Dry Bulk has incurred substantial costs in defending itself from claims that could not properly be prosecuted by the Vessel, the Vessel should be obligated to reimburse Dry Bulk for its reasonable costs incurred.[17]

DATED:        May 13, 2022                    Respectfully submitted,

                                              MILLER NASH LLP


                                              *s/ Ian M. Christy*
                                              M. Christie Helmer, OSB No. 743400
                                              chris.helmer@millernash.com
                                              Ian M. Christy, OSB No. 160116
                                              ian.christy@millernash.com
                                              Phone: 503.224.5858
                                              Fax: 503.224.0155



                                              and

                                              BLANK ROME LLP

                                              *s/ John D. Kimball*
                                              John D. Kimball, *pro hac vice*
                                              jkimball@blankrome.com
                                              1271 Avenue of the Americas
                                              New York, New York 10020
                                              Telephone: 212.885.5000
                                              Facsimile: 212.885.5001

                                              and

---

[17] Dry Bulk will supplement with evidence of its costs should the Court grant this request.

Page  19  -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
               SUMMARY JUDGMENT ON VESSEL *in rem*'s BUNKER COUNTER
               CLAIMS

Jeremy A. Herschaft, *pro hac vice*
jherschaft@blankrome.com
Zachary Cain, *pro hac vice*
zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: 713.632.8655
Facsimile: 713.228.6605

*Attorneys for Plaintiff*
*Dry Bulk Singapore Pte. Ltd.*

Page 20 -    PLAINTIFF DRY BULK SINGAPORE PTE. LTD.'S MOTION FOR
SUMMARY JUDGMENT ON VESSEL *in rem's* BUNKER COUNTER
CLAIMS

159462.00601/128815070v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all associated counsel.

BY:    <u>*s/ Ian M. Christy*</u>
              Ian M. Christy, OSB No. 160116