IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DRY BULK SINGAPORE PTE. LTD**,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**M/V AMIS INTEGRITY (IMO 9732412),**<br>her engines, freights, apparel, appurtenances, tackle, etc., in rem,<br><br>　　　　　Defendant. | Case No. 3:19-cv-01671-IM<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO VACATE ARREST AND FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIM OF WRONGFUL ARREST, AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON VESSEL IN REM'S BUNKER COUNTERCLAIMS** |

**IMMERGUT, District Judge.**

This case is before the Court on three motions: Defendant M/V AMIS INTEGRITY's ("Defendant" or "Vessel") Motion to Vacate Arrest and for Partial Summary Judgment, ECF 183, Plaintiff Dry Bulk's ("Plaintiff" or "Dry Bulk") Motion for Summary Judgment on Defendant's Claim of Wrongful Arrest, ECF 186, and Plaintiff's Motion for Summary Judgment on Vessel in rem's Bunker Counterclaims, ECF 187. This Court heard argument on these

PAGE 1 – ORDER

motions on February 28, 2023. ECF 210. Based on the pleadings, arguments by counsel, and record of the case, this Court GRANTS IN PART Defendant's Motion to Vacate Arrest and for Partial Summary Judgment, ECF 183, DENIES Plaintiff's Motion for Summary Judgment on Defendant's Claim of Wrongful Arrest, ECF 186, and GRANTS Plaintiff's Motion for Summary Judgment on Vessel in rem's Bunker Counterclaims, ECF 187.

In its Motion to Vacate Arrest and for Partial Summary Judgment, ECF 183, Defendant first moves to vacate Plaintiff's arrest of the Vessel and release the attendant $2.5 million surety bond. *Id.* at 17. Defendant argues that Plaintiff lacks a maritime lien, as required for a Rule C arrest, because of the Head Charter's prohibition-of-liens clause and because Amis Integrity properly withdrew the Vessel. *Id.* at 17–18. Plaintiff contends that it has a valid maritime lien because of its pre-payment of hire to 24 Vision. ECF 191 at 6. This Court agrees with Defendant's position and GRANTS the motion to vacate because Plaintiff lacks a maritime lien due to the Head Charter's prohibition-of-liens clause and the proper withdrawal of the Vessel.

Second, Defendant moves for summary judgment on Plaintiff's tortious interference, conversion, and unjust enrichment claims. ECF 183 at 24. Defendant asserts that the claims fail as a matter of law because they are in personam claims, they should be dismissed under the doctrine of forum non conveniens, and they fail under Oregon law. *Id.* This Court's GRANTS this motion because tortious interference, conversion, and unjust enrichment are in personam claims improperly pled against an in rem defendant.

Third, Defendant moves for summary judgment in favor of its wrongful arrest counterclaim. *Id.* at 33. Defendant argues that Plaintiff acted in bad faith or with gross negligence in arresting the Vessel. *Id.* at 34. Plaintiff responds that it acted in good faith in reliance on advice of counsel. ECF 191 at 22. This Court DENIES Defendant's motion with

PAGE 2 – ORDER

regard to its wrongful arrest counterclaim because material facts concerning Plaintiff's bad faith remain in dispute and require an assessment of credibility. Plaintiff also moves for summary judgment on Defendant's wrongful arrest counterclaim. ECF 186. For the same reasons, this Court DENIES Plaintiff's motion.

In Plaintiff's Motion for Summary Judgment on Vessel *in rem's* Bunker Counterclaims, ECF 187, Plaintiff moves for summary judgment on Defendant's breach of contract and unjust enrichment counterclaims. *Id.* at 2. Plaintiff argues that these counterclaims should be dismissed because Defendant Vessel does not have standing or legal capacity to prosecute these counterclaims, which Defendant contests. *Id.* at 6. This Court GRANTS this motion because Defendant has presented no authority supporting its position that a vessel in rem can pursue these counterclaims.

## PROCEDURAL HISTORY

On October 17, 2019, Plaintiff filed a Verified Complaint against the Vessel in rem and Amis Integrity S.A. ("Amis") in personam in U.S. District Court, for the District of Oregon, asserting claims for tortious interference, conversion, and unjust enrichment. ECF 1. Plaintiff also filed an ex parte motion to arrest the Vessel on October 17, 2019 under Supplemental Admiralty Rule C. ECF 4. U.S. District Court Judge Michael H. Simon granted the motion for a warrant and the Vessel was arrested that same day. ECF 11. On October 18, 2019, Amis filed an emergency motion to vacate the arrest by restricted appearance asserting that the arrest was improper, in part, due to the Head Charter's prohibition-of-liens clause. ECF 18. U.S. District Court Judge Anna J. Brown heard argument on Amis's motion on October 23, 2019. ECF 37. At the hearing, the parties stipulated to the release of the Vessel upon the posting of an agreed form of bond. *Id.* On October 25, 2019, Amis Integrity posted a $2.5 million bond for the benefit of Plaintiff to obtain the release of the Vessel. ECF 40-1; ECF 41.

PAGE 3 – ORDER

On November 14, 2019, Defendant answered Plaintiff's Complaint and asserted a wrongful arrest counterclaim. ECF 46. On August 26, 2020, Plaintiff filed a Verified Amended Complaint adding Wisdom Marine Lines Co. Ltd. and Wisdom Marine Lines S.A. as in personam defendants. ECF 113. On January 11, 2021, Wisdom Marine Lines, S.A., Wisdom Marine Lines Co. Ltd., and Amis Integrity filed a motion to dismiss. ECF 153. The Honorable Anna J. Brown granted the in personam defendants' motion on the ground that the Court lacked personal jurisdiction over those defendants. ECF 163. The Vessel in rem is the only remaining defendant in this case. In its Amended Answer to Plaintiff's Verified Amended Complaint, Defendant reasserted its wrongful arrest counterclaim and added breach of contract and unjust enrichment claims ("bunker counterclaims"). ECF 126. On May 13, 2022, Defendant filed a motion to vacate arrest and for partial summary judgment and Plaintiff filed motions for summary judgment on Defendant's wrongful arrest claim and on Defendant's bunker counterclaims. ECF 183; ECF 186; ECF 187.

## UNDISPUTED FACTS[1]

**A. Background Facts**

1. Plaintiff Dry Bulk Singapore Pte, Ltd. is a foreign corporation registered in Singapore in the business of chartering vessels.

2. Amis Integrity S.A. is the registered owner of Defendant M/V AMIS INTEGRITY ("Vessel").

3. Defendant Vessel is a Panamanian-flag bulk carrier.

4. 24 Vision Chartering Solutions DMCC is an entity engaged in the business of chartering vessels in international commerce.

5. GP Global ARA B.V. and GP Global APAC Pte. Ltd. (collectively, "GP Global") are bunker fuel providers.

---

[1] Unless otherwise cited, undisputed facts are contained in the Parties' Joint Concise Statement of Agreed Facts, ECF 182.

**B. Facts Related to Whether Plaintiff had a Valid Maritime Lien Prior to Arrest**

6. On June 30, 2017, Amis entered into a time charter party agreement with 24 Vision (the "Head Charter") for the Vessel.

7. Clause 23 of the Head Charter states in relevant part: "[t]he Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, [w]hich might have priority over the title and interest of the Owners in the Vessel."

8. Clause 11 of the Head Charter states in relevant part that Amis would be at liberty to withdraw the Vessel due to a failure to pay hire punctually and regularly and that "[w]here there is failure to make punctual and regular payment of hire," 24 Vision would be given three clear banking days written notice to rectify the failure. Failure to pay hire within three days of receiving the notice would entitle Amis to withdraw the Vessel.

9. Clause 18 of the Head Charter states that "[u]nless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of the time covered by this Charter party, but the Charterers remain responsible for the fulfillment of this Charter Party."

10. On January 10, 2019, 24 Vision entered into a sub-charter agreement with Plaintiff Dry Bulk (the "Sub-Charter"). The Sub-Charter was memorialized in a "clean fixture recap" email attaching the underlying Head Charter as a pro forma. The pro forma included the same Clauses 11 and 23 as set forth in the Head Charter. The fixture recap stated "[o]therwise as per Owner Pro Forma Charter Party as attached with logical alterations as per main terms agreed." ECF 193-1 at 10.

11. Plaintiff was also provided with a copy of the Head Charter between Amis and 24 Vision on January 10, 2019.

12. The Sub-Charter provides that Plaintiff "shall have a lien on the Vessel for all monies paid in advance and not earned." ECF 193-1 at 18.

13. Clause 10 of the Sub-Charter states in part that "[l]ocal time to apply for delivery time and hire calculation to be in [Greenwich Mean Time] G.M.T."

14. Prior to July 8, 2019, 24 Vision had not paid hire to Amis under the Head Charter.

15. On July 8, 2019, in response to 24 Vision's failure to pay hire, Amis served 24 Vision at 9:28 G.M.T. with a three-day notice of intent to withdraw the Vessel. ECF 185, Ex. C, at 15.

16. Under Clause 11(b) of Head Charter, 24 Vision had three clear banking days (*i.e.*, July 9, July 10, and July 11 through 23:59 Hours G.M.T.) in which to effect payment of hire to Amis to avoid withdrawal of the Vessel based upon the Head Charter.

17. On July 8, 2019, believing that Dry Bulk had failed to pay 24 Vision amounts owed under the Sub-Charter, 24 Vision served Plaintiff with a three-day grace period notice pursuant to the terms of the Sub-Charter. ECF 185-6, Ex. F, at 59.

18. Dry Bulk contends that on July 11, 2019, Dry Bulk paid to 24 Vision all amounts owed under the Sub-Charter as well as pre-payments for hire. ECF 191 at 3. 24 Vision claims not to have received such payments. ECF 185-7, Ex. G, at 87.

19. On July 11, 2019, 24 Vision sent Plaintiff a notice of withdrawal of the Vessel. ECF 185, Ex. F, at 59.

20. 24 Vision failed to make the past-due charter hire payments to Amis.

21. Amis issued the notice of withdrawal to 24 Vision on July 12, 2019 at 05:56 G.M.T., after the expiration of the three-day grace period. ECF 188-1, Ex. 2; ECF 193-4, Ex. D.[2]

22. On October 17, 2019, Plaintiff filed a Verified Complaint against the Vessel in rem and Amis in personam in U.S. District Court, for the District of Oregon, asserting claims for tortious interference, conversion, and unjust enrichment based on its pre-payments for hire made during the grace period on July 11, 2019. ECF 1. Plaintiff included the Sub-Charter as an exhibit, but did not include the pro forma containing the language of the Head Charter's Clauses 11 and 23. ECF 1-2.

23. Plaintiff also filed an *ex parte* motion to arrest the Vessel on October 17, 2019 under Supplemental Admiralty Rule C. ECF 4. Plaintiff asserted that it had "a valid maritime lien against the M/V AMIS INTEGRITY for the improper and unjustified withdrawal of the Vessel from Dry Bulk's service under an existing charter fixture with a company called 24Vision, conversion of unearned charter hire and bunkers, tortious interference with the existing charter fixture agreement and unjust enrichment." *Id.* at ¶ 1. The Honorable Michael H. Simon granted the motion for a warrant and the Vessel was arrested that same day. ECF 11.

C. **Facts Related to Whether Plaintiff Arrested the Vessel in Bad Faith**

24. Prior to the arrest of the Vessel, Dry Bulk's head of chartering, Stavros Tsolakis, sent an email to Plaintiff's U.S. counsel, Michael Chalos, stating that the Vessel would be coming to the United States. ECF 186-1 at 77. Mr. Chalos replied on October 3, 2019, stating that Plaintiff had a "very colorable right to arrest the vessel." ECF 186-1 at 79. Mr. Chalos also stated: "I note that [paragraph] 23 of the [Head Charter] contains a not very comprehensive no lien clause. When did Dry Bulk first see the [Head Charter]? When did Dry Bulk first become aware of the no lien clause contained in that [charter party]?" *Id.* at 80. Mr. Tsolakis replied on that day stating that he had not seen it before

---

[2] In Plaintiff's Response in Opposition to Defendant's Motion to Vacate Arrest and for Partial Summary Judgment, Plaintiff states: "[J]ust before midnight (GMT) on July 11, Amis prematurely, and therefore wrongly, withdrew the Vessel from 24 Vision's service, citing 24 Vision's failure to pay Amis. *See* Tsolakis Decl., Ex. D, DB001006." ECF 191 at 4. The exhibit Plaintiff cites to, ECF 193-4, Ex. D, is a copy of a timestamped email with a July 12 date, so it does not support Plaintiff's assertion that Amis withdrew the Vessel on July 11, 2019.

PAGE 6 – ORDER

Mr. Chalos had mentioned the clause. *Id.* at 113 ("Not seen it before or yet until you mentioned[]. Will have a look at it.").

25. Later on October 3, 2019, Mr. Chalos, also sent an email to Mr. Ward and Mr. Tsolakis. In the email, Mr. Chalos asked: "[W]hen did your company first learn of the no lean [sic] clause contained in the head [charter party]?" ECF 186-1 at 84. Mr. Tsolakis replied that day, stating: "I have now located the clause you refer to . . . ." *Id.*

26. Mr. Ward, Dry Bulk's English counsel, also responded to Mr. Chalos' email on October 9, 2019, stating that "a copy of a redacted version of the [Head Charter between Amis and 24 Vision] was appended to the recap email fixing the Vessel between [Dry Bulk and 24 Vision]." ECF 186-1 at 87. Mr. Ward concluded that "[i]t is therefore the case that [Dry Bulk was] aware (or [was] on notice) of the wording of clause [23] of the head charter party and had agreed [to] clause [23] as between themselves and 24 Vision." *Id.* In the same email, Mr. Ward also advised that, under English law, this clause does not prohibit an arrest but means that the charterer must secure the release of the vessel if the third party arrests the vessel due to the charterer's neglect or fault. *Id.* He asserted that breach of the prohibition-of-liens clause should not prevent the arrest of the Vessel if Dry Bulk was entitled to its arrest. *Id.* at 88. He concluded that "The question is whether [Dry Bulk's] knowledge of [the prohibition-of-liens clause] means that it cannot arrest for its own claim either because a) it has agreed not to exercise a lien on the vessel itself or, b) it has agreed not to act in a way that would put 24 Vision in breach of its obligation under [the clause.]" *Id.* In a later deposition, Mr. Ward agreed that his opinion regarding the prohibition-of-liens clause under English law applied to third parties but did not apply to a sub-charterer. ECF 190-1 at 7–8.

27. On October 6, 2019, Mr. Chalos sent an email attaching a draft of the complaint to Mr. Tsolakis and Mr. Ward. ECF 186-1 at 98. Mr. Chalos requested that both recipients review the draft carefully to ensure that the facts alleged were correct. *Id.* Mr. Chalos also stated:

> There will be an issue as to whether Dry Bulk was (or should have been) aware of the [prohibition-of-liens] provision of the Head [C]harter between Amis . . . and 24 Vision but with [Mr. Ward's] Declaration of how the no lien clause is applied under English law and the fact that it will be the burden of the Owner of the M/V AMIS INTEGRITY to prove that Dry Bulk had some notice of such no lien provision, we should be in a relatively good position to argue to the Court to uphold the arrest.

*Id.* at 99.

28. Mr. Chalos also sent a separate email to Mr. Ward and Mr. Tsolakis on October 6, 2019, stating:

> The issue of the no lien prohibition clause in head charter parties . . . is always a close one in these types of arrest matters. The party asserting the existence of a no lien prohibition bears the burden of showing that the party against which it is being asserted knew or should have known of the existence of such clause. If there is good

PAGE 7 – ORDER

> English law that such prohibition will not be recognized, as you suggest in your below e-mail, that would be very helpful to the no lien prohibition argument, but not dispositive. The countervailing argument we will raise under US law is that a vessel has an independent liability for breach of a charter party which creates a lien that can be enforced by an in rem arrest of such vessel. In other words, the vessel, under US law, creates its own lien for which it can be held liable. Since an arrest under the Supplemental Admiralty Rules is deemed to be procedural in nature, the court will apply US law to such lien and will uphold the arrest and demand for security in the first instance . . . . Consequently, we will require your initial opinion/thoughts as to whether English law recognizes the concept that a vessel has an independent liability for breach of the C/P for which it is the subject, or some other recognized legal principle that in a C/P breach situation the security posted by a vessel can be used to satisfy an Award against an offending Disponent Owner. In absence of such legal authority, we may simply be left to good negotiating skills in drafting language in the security agreement for the release of the vessel that would cover any breach of the C/P found in the English arbitration proceedings, which may be a tall order depending on who our opponent in the Oregon proceeding turns out to be.

ECF 186-1 at 205.

29. On October 18, 2019—one day after the Vessel's arrest—Amis filed an emergency motion to vacate the arrest by restricted appearance asserting that the arrest was improper, in part, due to the Head Charter's prohibition-of-liens clause. ECF 18.

30. On October 21, 2019, Plaintiff responded to Amis's motion to vacate the arrest and denied notice of the Head Charter's prohibition-of-liens clause. ECF 27. Plaintiff stated: "Here, the terms of the charterer party between Amis and 24 Vision were never disclosed to Dry Bulk and there was never any notice provided by either Amis or 24 Vision as to the notice of no lien provision contained in the head charter party agreement." *Id.* at 13. In a footnote, Plaintiff also reaffirmed its lack of notice:

> Indeed, it is uncommon in the maritime industry for a sub-charterer to know or otherwise be told of the terms of the head charter between an Owner (Amis) and the time charterer (24 Vision) . . . Consequently, the reasonable inquiry requirement in practice is theoretical, at best . . . [T]he best way for an Owner (Amis) to shield itself against prospective liens is to give notice to sub-charterers such as Dry Bulk . . . . This was not done in this case . . . .

*Id.* at 13 n.7.

31. On October 21, 2019, in support of Plaintiff's response to Defendant's motion to vacate, Plaintiff's English counsel, Dominic Ward, provided an opinion to this Court regarding the validity of Amis's withdrawal of the Vessel. ECF 30-2 at ¶ 3; ECF 30. That opinion stated: "My instructions are that the [V]essel was withdrawn from the Charterers, by the Owners, before 12 July 2019." *Id.* at ¶ 5.

32. At the hearing on Amis's motion to vacate the arrest before the Honorable Anna J. Brown on October 23, 2019, Mr. Chalos stated:

> [T]he prohibition of lien clause really has no application to this case, but even, hypothetically speaking, if it did, the other side has got to show that we had actual knowledge of a prohibition of lien clause. Mr. Tsolakis has stated in his declaration that he had no knowledge of the prohibition of lien clause. There is an oblique reference in the charter party that he entered with 24 Vision, saying the terms of the head charter that they had with Amis Integrity apply. But that's just a general statement. There's no statement that says there's a prohibition of lien clause in there.

    ECF 133 at 17. Mr. Tsolakis was present at this hearing. *Id.* at 2.

33. On October 25, 2019, Amis posted a $2.5 million bond for the benefit of Plaintiff to obtain the release of the Vessel. ECF 40-1; ECF 41.

34. On November 14, 2019, Defendant answered Plaintiff's complaint and asserted a wrongful arrest counterclaim. ECF 46.

D. **Facts Related to Whether Defendant has Standing or Capacity to Prosecute Unjust Enrichment/Breach of Contract Counterclaims**

35. On August 26, 2020, Plaintiff filed a Verified Complaint adding Wisdom Marine Lines Co. LTD and Wisdom Marine Lines S.A. as in personam defendants. ECF 113.

36. On January 11, 2021, Wisdom Marine Lines, S.A., Wisdom Marine Lines Co. Ltd., and Amis filed a motion to dismiss. ECF 153. The Honorable Anna J. Brown granted the motion on the ground that the Court lacked personal jurisdiction over the in personam defendants. ECF 163.

37. The Vessel in rem is the only remaining defendant.

38. In its Amended Answer to Plaintiff's Amended Complaint, Defendant reasserted its wrongful arrest counterclaim and added breach of contract and unjust enrichment claims. ECF 126.

39. These breach of contract and unjust enrichment claims concerned unpaid bunker fuel invoices incurred by Plaintiff Dry Bulk before the Vessel was withdrawn. ECF 126. In 2019, Plaintiff ordered bunker fuel for the Vessel from GP Global ARA B.V. and GP Global APAC Pte. Ltd. (collectively, "GP Global").

40. On June 1, 2019, Plaintiff received bunker fuel from GP Global APAC Pte. Ltd. at Singapore. On July 5, 2019, Plaintiff received bunker fuel for the Vessel from GP Global ARA B.V. at Cape Town, South Africa.

41. GP Global sent invoices for both transactions. Plaintiff did not pay either invoice. As a result, GP Global threatened to arrest the Vessel in Washington.

42. On September 23, 2020, as part of a settlement, Amis paid GP Global $139,500 and entered into a "Claims Assignment Agreement."

43. Less than a week later, on September 29, 2020, Amis filed an Amended Answer by restricted appearance, asserting breach of contract and unjust enrichment claims based on Amis having to pay GP Global for the bunker fuel. ECF 126.

## CONCLUSIONS OF LAW

**A. Defendant's Motion to Vacate Arrest and for Partial Summary Judgment, ECF 183**

    **1. Defendant's Motion to Vacate Arrest**

Defendant moves to vacate this Court's October 17, 2019 arrest of the Vessel and release the attendant $2.5 million dollar surety bond, asserting that Plaintiff lacks a maritime lien as required under Supplemental Admiralty Rule C. ECF 183 at 21–28. This Court grants Defendant's Motion to Vacate Arrest because Plaintiff lacks a maritime lien.

First, this Court finds that Plaintiff lacks a valid maritime lien under the Head Charter's prohibition-of-liens clause. An arrest under Supplemental Admiralty Rule C requires a valid maritime lien. Fed. R. Civ. P. Supp. R. C(1). A prohibition-of-liens clause bars a maritime lien when the party asserting the lien knew of or could have discovered the clause through reasonable inquiry. *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 469–70 (5th Cir. 1984). This Court finds that there remains no genuine dispute of material fact that Plaintiff was on notice of prohibition-of-liens clause in the Head Charter when it was provided on January 10, 2019. The Head Charter was also appended to the fixture recap email fixing the Sub-charter between Plaintiff and 24 Vision as a pro forma. While a court must view the evidence in the light most favorable to the non-movant, a court "need not draw *all* possible inferences in [the non-movant's] favor, but only all *reasonable* ones." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (citing *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464,

PAGE 10 – ORDER

1466–67 (9th Cir. 1986)). Accordingly, this Court finds that Plaintiff lacks a maritime lien under the Head Charter's prohibition-of-liens clause.

Second, this Court finds that Plaintiff lacks a valid maritime lien because the Vessel was properly withdrawn under the Head Charter. The Head Charter provided that the Owners "shall be at liberty to withdraw the Vessel" due to failure to pay hire, subject to a three-day grace period. In response to 24 Vision's failure to pay hire, Amis served 24 Vision with a three-day notice of intent to withdraw the Vessel on July 8, 2019 at 9:28 G.M.T. ECF 185-3, Ex. C, at 15. Under Clause 11(b) of Head Charter, 24 Vision had three clear banking days (i.e., July 9, July 10, and July 11 through 23:59 Hours G.M.T.) in which to effect payment of hire to Amis to avoid withdrawal of the Vessel from the Head Charter. 24 Vision failed to make the past-due charter hire payments to Amis. There remains no genuine dispute of material fact that Amis issued the notice of withdrawal to 24 Vision on July 12, 2019 at 05:56 G.M.T., after the expiration of the three-day grace period. ECF 188-1, Ex. 2; ECF 193-4, Ex. D. Therefore, this Court finds that Amis properly withdrew the Vessel, such that Plaintiff lacks a maritime lien on this ground as well.

In the alternative, Plaintiff asserts that it has a maritime lien for pre-payment of hire. ECF 191 at 5–10. This Court finds that Plaintiff has failed to establish such a lien. The Sub-Charter provides that Plaintiff "shall have a lien on the Vessel for all monies paid in advance and not earned." Plaintiff contends that it transferred pre-payment for hire of the Vessel on July 11, 2019 before the expiration of its three-day grace period. ECF 191 at 3. Regardless of whether Plaintiff did transfer this pre-payment prior to the expiration of the grace period, Plaintiff cites no authority for the proposition that a sub-charterer may have a valid maritime lien against a vessel for pre-payment of hire. "Maritime liens must be construed 'stricti juris, and cannot be extended

PAGE 11 – ORDER

by construction, analogy, or inference.'" *Melwire Trading Co. v. M/V Cape Antibes*, 811 F.2d 1271, 1273 (9th Cir. 1987) (citation omitted) (quoting *Osaka Shosen Kaisha v. Pac. Exp. Lumber Co.*, 260 U.S. 490, 499 (1923)), *amended sub nom. Melwire Trading Co. v. M/V Cape Antibles*, 830 F.2d 1083 (9th Cir. 1987). "Consequently, '[t]he only liens recognized today are those created by statute and those historically recognized in maritime law.'" *Id.* (citation omitted). Accordingly, because Plaintiff cites no authority in support of its position, this Court declines to find that Plaintiff has a valid maritime lien for pre-payment of hire that would take priority over the Vessel owner's lien pursuant to the Head Charter.

### 2. Defendant's Motion for Summary Judgment on Plaintiff's Unjust Enrichment, Conversion, and Intentional Interference Claims

Defendant Vessel moves for summary judgment on Plaintiff's unjust enrichment, conversion, and intentional interference claims. This Court grants Defendant's motion because unjust enrichment, conversion, and intentional interference claims do not give rise to a maritime lien, which is a prerequisite for an in rem action. "A maritime action in rem has traditionally been available only in connection with a maritime lien. Claims not creating a maritime lien must be pursued in personam." *Melwire Trading Co.*, 811 F.2d at 1273. Unjust enrichment is an in personam claim in admiralty. *See, e.g.*, *ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 522 (2d Cir. 2018) ("[A]n unjust enrichment claim must be asserted in personam."). Plaintiff has failed to proffer a statute or case where conversion or intentional interference has given rise to a maritime lien. As maritime liens must be construed stricti juris, this Court declines to recognize a maritime lien on account of these claims.

In the alternative, Plaintiff asserts that it would be able to assert these claims under a theory of Rule B attachment. Accordingly, Plaintiff requests that this Court construe Plaintiff's Rule C arrest as a Rule B attachment for the purposes of these claims. This Court declines to do

PAGE 12 – ORDER

so. Under Rule B, a plaintiff may attach a defendant's property within the district—up to the amount sued for—if the defendant is not found within the district. Fed. R. Civ. P. Supp. R. B(1)(a). If a plaintiff improperly arrests a vessel under Rule C, a court may convert the action to a Rule B attachment if the conversion does not prejudice the defendant. *See Sembawang Shipyard, Ltd. v. Charger*, *Inc.*, 955 F.2d 983, 989 (5th Cir. 1992); *Heidmar, Inc. v. Anomina Ravennate di Armamento Sp.A*, 132 F.3d 264, 268 (5th Cir. 1998). This Court finds that allowing Plaintiff to convert its claims to a Rule B attachment at this late stage of the litigation would prejudice Defendant. More than thirty-two months have passed since Plaintiff filed its verified complaint. Moreover, Defendant challenged the validity of Plaintiff's maritime lien the day after Plaintiff filed its complaint. *See Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613 (11th Cir. 1992) (disallowing conversion due to prejudice to the defendant where twenty months had passed after the filing of the complaint). This Court finds that conversion to a Rule B attachment would unduly prejudice Defendant and declines to convert Plaintiff's unjust enrichment, conversion, and intentional interference claims.

### 3. Defendant's Motion for Summary Judgment on Defendant's Wrongful Arrest Counterclaim

Defendant moves for summary judgment on Defendant's wrongful arrest counterclaim. This Court denies Defendant's motion. To state a claim for wrongful arrest of a vessel, a plaintiff must plead facts showing that the seizing party acted in bad faith, with malice, or with gross negligence. *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. Berhad*, 464 F. App'x 647, 648 (9th Cir. 2011) (citing *Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir. 1981)). Citing emails between Plaintiff's Head of Chartering, Mr. Tsolakis, and Plaintiff's counsel, Defendant maintains that Plaintiff had actual knowledge of the prohibition-of-lien clause prior to the Vessel's arrest. ECF 183 at 34. Defendant asserts that this knowledge amounts to the required

PAGE 13 – ORDER

bad faith, malice, or gross negligence. *Id.* Defendant also flags alleged misrepresentations by Plaintiff to the Court about its knowledge of the clause. *Id.* at 34–35. For example, Defendant asserts that, in response to Defendant's Motion to Vacate, Plaintiff falsely represented to the Honorable Anna J. Brown that the terms of the Head Charter "were never disclosed to [Plaintiff]" and notice was never provided to Plaintiff of the "no lien provision contained in the head charter party agreement." *Id.*; *see* ECF 27 at 13.

Plaintiff responds that its counsel determined that it possessed a good faith basis to arrest the Vessel. ECF 191 at 22. Plaintiff explains that its United States and English counsel did discuss the potential implications of a prohibition-of-lien clause, and its English counsel advised that the clause did not actually prohibit an arrest of a vessel, but merely obligated the charterer to secure the vessel's release. *Id.* Plaintiff also maintains that it only obtained the Head Charter as a pro forma for the Sub-Charter, such that there was no evidence or notice to Plaintiff at the time that the Head Charter was "the actual charter between the head owners and 24 []Vision." *Id.* at 7 n.3.

Plaintiff asserts that even if its counsel were mistaken in their assessment, Defendant's wrongful arrest counterclaim should be dismissed on account of Plaintiff's advice of counsel defense. *Id.* at 22–23. The advice of counsel defense acts as a complete defense and requires good faith reliance on an attorney's advice. *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937). Defendant maintains that Plaintiff cannot benefit from this defense, because Plaintiff misled its attorneys regarding the withdrawal of the Vessel. ECF 189 at 14–15. Plaintiff argues that its attorneys were aware of the facts underlying the Vessel's seizure and believed its actions to be above board, because the prohibition-of-liens clause had no application with respect to an arrest based on a pre-paid hire maritime lien. ECF 196 at 4.

This Court finds that factual disputes persist regarding Plaintiff's bad faith in arresting the Vessel and in seeking counsel's advice, both of which require assessments of credibility. Specifically, this Court finds genuine issues of material fact remain regarding whether Plaintiff made knowing misrepresentations both to the Court in seeking the arrest of the Vessel and to its counsel in seeking advice regarding the arrest. Accordingly, Defendant's motion regarding its wrongful arrest counterclaim is DENIED.

**B. Plaintiff's Motion for Summary Judgment on Defendant's Claim of Wrongful Arrest, ECF 186**

Plaintiff also moves for summary judgment on Defendant's wrongful arrest counterclaim. For the reasons stated regarding Defendant's Motion for Summary Judgment on this claim, this Court DENIES this motion.

**C. Plaintiff's Motion for Summary Judgment on Vessel in rem's Bunker Counterclaims, ECF 187**

Plaintiff moves for summary judgment on Defendant's breach of contract and unjust enrichment counterclaims. Among other arguments, Plaintiff contends that these counterclaims should be dismissed because Defendant does not have standing or legal capacity to prosecute these counterclaims. Defendant has offered no legal authority for its position that a vessel in rem may pursue unjust enrichment or breach of contract counterclaims. Absent persuasive authority, this Court declines to find that a vessel may pursue these claims. Accordingly, this Court GRANTS Plaintiff's Motion for Summary Judgment on Defendant's breach of contract and unjust enrichment claims.

///

**IT IS SO ORDERED.**

DATED this 15th day of March, 2023.

                                                /s/ Karin J. Immergut
                                                Karin J. Immergut
                                                United States District Judge